

**Jeremiah C. Hollembeak**

1700 Farnam Street
Suite 1500
Omaha, NE  68102-2068
Tel: 402.344.0500
Fax: 402.344.0588
Direct: 402-636-8317
jhollembeak@bairdholm.com
www.bairdholm.com
Admitted in New York

May 5, 2022

**VIA ECF**
Hon. Lewis A. Kaplan
United States District Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 21B
New York, NY 10007

Re:    *In re Ex Parte Application of SPS I Fundo De Investimento De Ações – Investimento No
Exterior, 22-MC-00118-LAK*

Dear Judge Kaplan:

We represent SPS I Fundo De Investimento De Ações – Investimento No Exterior ("SPS"),
the applicant in the above-referenced proceeding seeking certain discovery in this District pursuant
to 28 U.S.C. § 1782 (the "1782 Proceeding") in aid of a Contemplated Proceeding[1] in Brazil.  We
write on behalf of SPS to respond to the letter submitted May 3, 2022 [Dkt. 9] (the "Intervention
Request") asking this Court's permission for Joesley Batista, Wesley Batista, JBS S.A. ("JBS"),
and J&F Investimentos S.A. ("J&F") (collectively, the "Proposed Intervenors") to intervene in the
1782 Proceeding.  Although agreeable to the their limited participation as discussed herein, SPS
does not consent to the Proposed Intervenors intervening as party in the 1782 Proceeding because
they lack the direct, substantial and legally protectable interest required to intervene as of right
pursuant to Federal Rule of Civil Procedure 24(a), and permissive intervention under Rule 24(b)
is not warranted under the circumstances.  SPS further writes to clarify those circumstances in light
of certain misleading statements and implications in the Intervention Request.

**I.    Background**

By its Application, SPS sought authority to subpoena two banks (the "Respondents") to
obtain information about the banking activity of four companies: Unifleisch Limited, Unifleisch
SA, Lunsville International Inc. and Valdarco Investments Inc. (collectively, the "Target
Companies").  SPS has alleged – and hopes to obtain evidence from Respondents to confirm – that

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in SPS's
application commencing the 1782 Proceeding [Dkt. 6] (the "Application").

*Providing Exceptional Legal Service Since 1873*

the Target Companies are beneficially owned and controlled by the Batista family, and that through such ownership and control the Batista family has used the Target Companies to conduct illicit activity and defraud Proposed Intervenor JBS and its minority shareholders (of which SPS is one).

This 1782 Proceeding did not arise in a vacuum.  In a 2020 plea agreement, Proposed Intervenor J&F – which is wholly owned by Proposed Intervenors Joesley and Wesley Batista (referred to in the plea agreement as "J&F Executive 1" and "J&F Executive 2") – plead guilty to engaging in a bribery scheme between 2005 and 2017 in violation of the Foreign Corrupt Practices Act of 1977.  *See* Dkt. 6, Exhibit B.  The US plea agreement followed on the heels of similar 2017 agreements reached with Brazilian authorities by which J&F and the Batistas plead guilty to corruption and other criminal conduct.  These developments caused great harm to JBS, which at all relevant times was majority owned and controlled by J&F.  As disclosed in SPS's foreign counsel declaration, SPS is involved in pending arbitration proceedings in Brazil seeking to force the Batista family to pay JBS for the harm caused by the actions outlined in these agreements (the "Arbitration").  *See* Dkt. 6, Exhibit A, ¶ 25.  The Arbitration was commenced several years ago, is now in an advanced stage and further evidentiary submissions are not expected.  For the avoidance of doubt, SPS does not intend to use evidence from this proceeding in the Arbitration.

Separately, starting in September 2020, information released as part of the FinCen Files brought public attention for the first time to suspicious financial activity involving the Targeted Companies, and linked those companies and that activity to the Batistas.  SPS has been investigating these Companies for the purpose of making a formal complaint against the Batista family to the CVM – the Brazilian governmental agency with the authority to regulate Brazil's securities and capital markets and to bring enforcement actions against and punish bad actors in those markets.  Such punishments could include assessing fines or prohibiting the bad actors from participating in those markets by, for example, remaining the controlling shareholders of a public company such as JBS.[2]  Moreover, for reasons discussed in the Application and supporting foreign counsel declaration, the CVM may – and often does – commence enforcement proceedings based on evidence furnished by private parties such as SPS.

By the 1782 Proceeding, SPS seeks evidence to add to its impending complaint to the CVM for it to pursue an enforcement action against the Batista family (i.e. the Contemplated Proceeding).  After commencing the proceeding and obtaining an order from this Court authorizing issuance of subpoenas to the Respondents [Dkt. 8] (the "Order"), SPS was contacted by the Proposed Intervenors.  In no uncertain terms, the Proposed Intervenors declared to SPS their intention not only to intervene in the 1782 Proceeding but to seek to vacate the Order and quash the subpoenas in their entirety.  For the following reasons, SPS does not consent to their intervention on those terms.

## II. Proposed Intervenors Should Not Be Permitted To Intervene As Of Right Absent Admission That They Beneficially Own And Control Targeted Companies

---

[2] Notwithstanding all that has transpired, the Batistas remain in beneficial control and ownership of JBS to this day, as demonstrated by their joint appearance and request to intervene here.

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is granted when a putative intervenor: "(1) timely file[s] an application, (2) "show[s] an interest in the action, (3) demonstrate[s] that the interest may be impaired by the disposition of the action, and (4) show[s] that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (citation omitted). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (internal quotations omitted). "[T]he word 'interest' as it is used in Rule 24(a) has been construed very narrowly.  In order to intervene as of right, the putative intervenor […] must advance a concern that is 'direct, substantial, and legally protectable.'  Put another way, '[a] Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent.'"  *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2011 WL 2150450, at *2 (S.D.N.Y. May 31, 2011) (citations omitted).

The only parties with a sufficiently "direct, substantial, and legally protectable interest" vis-à-vis the discovery SPS seeks in this 1782 Proceeding are the Target Companies and anyone else that shares that interest by virtue of a close relationship with the Target Companies.  If the Proposed Intervenors are willing to admit on the record they are seeking to intervene because they are the beneficial owners and controllers of the Target Companies, then SPS would concede full intervention is appropriate.  On the other hand, if the Proposed Intervenors are unwilling to make that admission – ostensibly because they deny any relationship or involvement with the Target Companies – they have no basis to claim the same protectable interest as the Target Companies.

Courts have rejected requests to limit or prohibit 1782 discovery by entities who are not expressly targeted by a 1782 application but nevertheless claim to be its true focus. *See, e.g., In re Belparts Grp., N.V.*, No. 3:21-MC-0062 (VAB), 2021 WL 4942134, at *4 (D. Conn. Oct. 22, 2021) (rejecting argument that 1782 subpoena issued to US subsidiary company should be quashed on the basis it "effectively seeks" information from its foreign parent and affiliate companies).  Here, the Application exclusively seeks documents evidencing transactions conducted by the Targeted Companies.  In fact, only one document request (out of twelve) in SPS's subpoenas references the Proposed Intervenors, and does so merely as an attempt by SPS to minimize the burden on Respondents.[3]  The Proposed Intervenors gloss over this fact because they want this Court to assume – without their having to explain why – that they share a unity of interests with the Target Companies in protecting against improper disclosure of privileged or confidential information in documents concerning the transaction history *of the Target Companies*.  If the Proposed Intervenors do in fact share in that interest, it is necessarily because they share a close relationship the Target Companies, at minimum.

However, the Proposed Intervenors should not be allowed to benefit from a relationship they refuse to acknowledge exists.  Their refusal to admit any ownership or control over the Target

---

[3] Document Request No. 3 in both subpoenas asks for "All documents and communications concerning [the Proposed Intervenors] in connection with [the Target Companies] including documents sufficient to identify any transactions between those parties" Dkt. 7 at 16, 31. SPS just as easily could have sought all documents and communications evidencing transactions between the Targeted Companies and "all counterparties" without any limiting references.

Companies, in the face of SPS's allegations to the contrary, is itself tacit admission that their interest diverges from that of a true 1782 target. The Proposed Intervenors are not concerned with protecting against the improper disclosure of evidence, but rather what that evidence, once properly disclosed, will show about their own conduct. That concern and their desire to avoid the Contemplated Proceeding altogether are indirect and contingent at best, and SPS respectfully submits they fall short of the "direct, substantial, and legally protectable interest" required by Rule 24(a). *Cf. Chevron Corp. v. Donzinger*, No. 11 CIV. 0691 LAK, 2011 WL 2150450, at *3 ("[Proposed Intervenor's] other putative interests – his desire to avoid being enjoined from seeking to collect attorneys' fees from enforcing the Judgement and to defend his reputation against allegations of wrongdoing—are even more removed from the area protected by Rule 24(a).").

### III.   Alternatively, Proposed Intervenors' Participation In 1782 Proceeding Should Be Limited To Extent Necessary to Ensure Protection Of Truly Confidential Information

Before granting permissive intervention under Rule 24(b), this Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), and other relevant factors including "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978). The Proposed Intervenors' singular purpose in seeking to intervene is to prevent SPS from obtaining *any* discovery from Respondents at all. That outcome will not contribute to the development of factual issues in this 1782 Proceeding or the just and equitable adjudication of the legal issues it presents. Even if SPS ultimately prevails in opposing their motions to vacate the Order and quash the subpoenas, SPS will have to incur substantial costs and wait many additional months to obtain the discovery it seeks. Accordingly, the Court should not exercise its discretion under Rule 24(b) to allow the Proposed Intervenors to permissively intervene in full in this 1782 Proceeding.

SPS does not oppose the Proposed Intervenors participation in the 1782 Proceeding to the limited extent necessary to protect truly confidential information (*e.g.* personal and/or sensitive information). Although it is unclear why the Respondents would have business records or financial information over which the Proposed Intervenors (as opposed to the Target Companies) could assert a valid privilege, SPS is willing to negotiate a limited protective order with the Court's guidance and oversight. But given the Proposed Intervenors' long and admitted history of using secrecy and international corporate and financial sophistication to engage in illicit transactions, SPS respectfully submits that no greater participation by the Proposed Intervenors is warranted.

Respectfully submitted,

Jeremiah C. Hollembeak
FOR THE FIRM

CC:   All counsel of record (via email).

4