**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE EX PARTE APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE ACOES – INVESTIMENTO NO EXTERIOR |

Case No. 22-MC-00118-LAK

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS' MOTION TO VACATE THE COURT'S APRIL 26, 2022 *EX PARTE* ORDER AND TO QUASH THE SUBPOENAS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................3

     A.    Current Proceedings Involving the Parties In Brazil .............................................3

     B.    SPS Takes Its Harassment Global.........................................................................5

ARGUMENT ...............................................................................................................................6

I.     THE APPLICATION DOES NOT SATISFY THE STATUTORY
     REQUIREMENTS OF SECTION 1782 ........................................................................6

     A.    SPS Seeks Evidence That Is Not "For Use" In The Foreign Proceeding ...............6

     B.    SPS Will Not Be An Interested Person In Its Contemplated Proceeding.............11

     C.    Discovery Targets Are Not Found In This District .............................................13

II.    THE DISCRETIONARY *INTEL* FACTORS WEIGH HEAVILY AGAINST
     PERMITTING THE REQUESTED DISCOVERY .......................................................14

     A.    *Intel* Factor 1: Evidence Is Within The Jurisdiction Of The CVM......................14

     B.    *Intel* Factor 2: The Character And Nature Of The Hypothetical CVM
          Action Weigh Against Granting § 1782 Discovery.............................................16

     C.    *Intel* Factor 3: SPS Attempts To Circumvent Brazilian Proof-Gathering
          Restrictions ......................................................................................................18

     D.    *Intel* Factor 4: SPS's Requested Discovery Is Unduly Intrusive And
          Burdensome .....................................................................................................20

CONCLUSION...........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Ayyash v. Crowe Horwath LLP,*
    2018 WL 2976017 (S.D.N.Y. June 13, 2018) .......................................................................... 9

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.,*
    798 F.3d 113 (2d Cir. 2015)............................................................................ 6, 7, 8, 11

*Gulf Investment Corp.,*
    2020 WL 7043502 (S.D.N.Y. Nov. 30, 2020) ...................................................................... 10

*IJK Palm LLC v. Anholt Servs. USA, Inc.,*
    33 F.4th 669, 2022 WL 1435270 (2d Cir. May 6, 2022)............................................. 6, 7, 8, 12

*In re Alghanim,*
    2022 WL 1423088 (S.D.N.Y. May 5, 2022) ...................................................................... 16

*In re Apotex Inc.,*
    2009 WL 618243 (S.D.N.Y. Mar. 9, 2009) ...................................................................... 20

*In re App. of CBRE Glob. Investors (NL) B.V.,*
    2021 WL 2894721 (S.D.N.Y. July 9, 2021) ...................................................................... 14

*In re Application of Caratube Int'l Oil Co., LLP,*
    730 F. Supp. 2d 101 (D.D.C. 2010) .................................................................................... 18, 19

*In re del Valle Ruiz,*
    939 F.3d 520 (2d Cir. 2019)............................................................................................... 13

*In re Fagan,*
    2019 WL 2267063 (D. Mass. May 28, 2019) ...................................................................... 12

*In re G2A.com SP. Z.O.O. (LTD.),*
    412 F. Supp. 3d 145 (E.D.N.Y. 2019) ................................................................................ 18

*In re Gorsoan Ltd. v. Bullock,*
    652 F. App'x 7 (2d Cir. 2016) .......................................................................................... 14

*In Re Guo,*
    965 F.3d 96 (2d Cir. 2020)........................................................................................... 10, 18

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions,*
    2015 WL 4040420 (S.D.N.Y. June 29, 2015) ................................................................ *passim*

*In re Intel Corp. Microprocessor Antitr. Litig.*,
  2008 WL 4861544 (D. Del. Nov. 7, 2008) ........................................................... 20

*In re IPC Do Nordeste, LTDA*,
  2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) .................................................... 18

*In re Jud. Assistance by Macquarie Bank Ltd.*,
  2015 WL 3439103 (D. Nev. May 28, 2015) .......................................................... 21

*In re King Baby Marine LLC*,
  2017 WL 6940563 (S.D.N.Y. Dec. 22, 2017) ....................................................... 17

*In re Mare Shipping Inc.*,
  2013 WL 5761104 (S.D.N.Y. (Oct. 23, 2013) ...................................................... 16

*In re Meallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997) .................................................................................... 21

*In re Michael Page do Brasil Ltda.*,
  2018 WL 7018716 ................................................................................................. 20

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
  2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ............................................................ 9

*In re Petrobras Sec. Litig.*,
  393 F. Supp. 3d 376 (S.D.N.Y. 2019) .................................................................. 10

*In re Postalis*,
  2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ....................................................... 14

*Intel v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ....................................................................................... *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2d Cir. 2018) .......................................................................... 14, 16

*Mees v Buiter*,
  793 F.3d 291 (2d Cir. 2015) ................................................................................. 20

*Rep. of Kaz. v. Biedermann Int'l*,
  168 F.3d 880 (5th Cir. 1999) ................................................................................ 19

*RTI Ltd. v. Aldi Marine, Ltd.*,
  523 Fed. App'x 750 (2d Cir. 2013) ...................................................................... 11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,

376 F.3d 79 (2d Cir. 2004)............................................................................................................ 16

### **Statutes**

28 U.S.C. § 1782(a) ............................................................................................................. 6, 13

Intervenors Joesley Batista, Wesley Batista, JBS S.A., and J&F Investimentos ("Intervenors") respectfully submit this Memorandum of Law in support of their Motion to Vacate the Court's April 26, 2022 *Ex Parte* Order (the "Order") and to Quash the Subpoenas served by Petitioner SPS I Fundo De Investimento De Ações – Investimento No Exterior ("SPS") on J.P. Morgan Chase Bank, N.A. ("JPM") and Barclays USA Inc. ("Barclays") (together, with JPM, "Respondents").

## PRELIMINARY STATEMENT

SPS, by bringing the Application now before this Court, has set out on a textbook fishing expedition. SPS, which first became a shareholder of JBS on June 13, 2018 and currently owns 0.01% of JBS S.A. ("JBS"),[1] seeks discovery of information dating back to 2001 about various transactions conducted by four entities with purported ties to JBS and its governing family that were allegedly identified in a FinCEN report issued five years ago. It claims, without any basis, that it will use this evidence in a "contemplated complaint" to the Brazilian securities and exchange commission – *Comissão de Valores Mobiliários* (the "CVM") which it believes, without any basis, will then decide to initiate proceedings against Mr. Wesley and Joesley Batista (the "Batistas"). The breadth of the discovery requested compounded with the purely hypothetical nature of SPS's claimed foreign proceeding makes clear that SPS has no permissible use for the information it seeks here, and is using § 1782 to harass the Batistas and JBS in an attempt to gain leverage in private arbitration proceedings against J&F Investimentos S.A. ("J&F") and the Batistas pending before the Câmara de Arbitragem do Mercado ("CAM").

---

[1] *See* Declaration of Pablo Renteria ("Renteria Decl."), at ¶9, which is filed concurrently with Intervenors' Motion.

This blatant fishing expedition should not be entertained. SPS's Application seeking overbroad and irrelevant discovery fails to comply with the statutory requirements for discovery pursuant to Section 1782 because: (a) the discovery is not "for use" in a foreign proceeding, as SPS' contemplated CVM proceeding is entirely speculative and is dependent upon the CVM exercising discretion to initiate its hypothetical proceeding, (b) even if the CVM were to initiate SPS's hypothetical proceeding against the Batistas, SPS does not qualify as an "interested person" because it lacks participation rights in said CVM proceeding, and (c) SPS actually seeks discovery from targets not "found" in this District.

Moreover, even setting aside SPS's clear inability to meet the requirements of the statute, the discretionary *Intel* factors considered widely by courts in the context of Section 1782 applications weigh heavily against allowing § 1782 discovery. *First*, the CVM has mechanisms to obtain the requested discovery such that the requested discovery is within the jurisdiction of the CVM. Indeed, Petitioner's own materials filed in this action confirm that one of the Respondents has already provided information to the CVM in a separate CVM proceeding. *Second*, the hypothetical nature of SPS's contemplated CVM proceeding—a proceeding where the CVM retains complete discretion to investigate and sanction—underscores that SPS's Application is nothing more than a fishing expedition. *Third*, SPS's Application circumvents the CVM's investigatory authority as well as SPS's obligation to arbitrate any discovery disputes before the CAM. And *fourth*, the requested discovery unduly burdens Respondents by requesting more than two decades worth of information that happens to be equally accessible to the CVM (if the CVM deems the information worthy of obtaining).

Because SPS has failed to satisfy the statutory requirements and the discretionary *Intel* factors uniformly weigh against discovery, this Court should grant Intervenors' Motion.

## BACKGROUND

### A.      Current Proceedings Involving the Parties In Brazil

As outlined below, SPS is seemingly seeking at any cost to manufacture a "foreign proceeding" in order to take its harassment campaign global via Section 1782.

*CAM Arbitrations*: SPS's Application fails to mention several crucial facts which reveal that SPS's claim of a contemplated CVM proceeding against the Batistas, JBS, and J&F is merely pretext in order to gain leverage over controlling shareholders in connection with two arbitration proceedings before the CAM in São Paulo, Brazil (the "CAM Arbitrations").  SPS initiated one of the arbitrations before the CAM in June 2018 – just days after it became a shareholder in JBS – seeking damages allegedly caused to JBS due to facts involving the plea agreement proceedings and JBS-Bertin merger, which is not encompassed by the plea agreements.  Renteria Decl. ¶10. That arbitration has been stayed by the Brazilian Court of Justice pending resolution of another CAM arbitration initiated by JBS (in which SPS acts as an "assistant") also related to the JBS-Bertin merger.[2]  *Id.* ¶11.

In addition to the CAM Arbitrations, SPS has attempted, without success, to insert itself into at least four Brazilian proceedings involving controlling shareholders here: three criminal proceedings against controlling shareholders, and a fourth proceeding before the CVM related to the JBS-Bertin merger as further explained below.

---

[2]   SPS is not a party to the arbitration initiated by JBS, but the arbitration panel accepted SPS as an assistant of JBS.

*CVM's JBS-Bertin Investigation and Proceeding* (the "CVM Merger Proceeding"):  On September 4, 2020 and following administrative investigations, the CVM's *Superintendent of Administrative Proceedings* commenced a proceeding by issuing an Indictment against the Batistas (and other defendants) in connection with the 2009 merger between JBS and Bertin S.A.  *Id.* ¶12. SPS first endeavored to inject itself into this proceeding on October 22, 2021 by filing a statement in the record requesting that the CVM rapporteur consider information and documents SPS believed to be relevant to the CVM Merger Proceeding.  *Id.*  The defendants in the CVM Merger Proceeding objected to SPS's requests and sought to strike the SPS's filing from the record.  *Id.* ¶13.  In an order on December 30 2021, the CVM stated that SPS was not a formal participant in the CVM Merger Proceeding because it has not formally requested for its admittance as an interested third party, but deferred ruling on whether to admit SPS's documentary evidence.  *Id.* Then, on April 20, 2022, the CVM issued an order upholding SPS's submission of evidence on the basis that the information SPS submitted was already publicly available.  *Id.* ¶14.  In light of the apparent tension between the CVM's December 30, 2021 and April 20, 2022 orders, several parties sought reconsideration of the CVM rapporteur's April 20, 2022 order.  *Id.* ¶15.  The CVM rapporteur issued a May 13, 2022 order stating that it had resolved the issue of SPS's status as an formal participant in its December 30, 2021 order (confirming that it wasn't a participant).  *Id.*

*Brazilian Criminal Proceedings*:  The CVM Merger Proceeding was not the first time that Petitioner's attempts to intervene or be admitted in Brazilian proceedings relating to JBS matters have fallen short.  Indeed, last year, SPS sought to intervene in three criminal proceedings related to plea agreements based on SPS's alleged interest in repairing damage caused to JBS.  *Id.* ¶16. However, the Brazilian courts denied those requests for lack of standing. *Id*.

**B.      SPS Takes Its Harassment Global**

Having little success in Brazil, SPS took its campaign of harassment global.  Specifically, on December 6, 2021, SPS filed in the United States District Court for the District of Delaware a Section 1782 application seeking discovery from Colorado Investment Holdings LLC ("Colorado Investment") about the JBS-Bertin merger for purported use in the CVM's Merger Proceeding.  *In Re: Letter of Request from SPS I Fundo de Investimento de Acoes*, Case No. 21-mc-00532-RGA, (D. Del.) (the "Delaware 1782 Action") at Dkt. 1; Ex. 1 to the Declaration of Lucas Bento ("Bento Decl.").[3]  In the Delaware 1782 Action, SPS has requested a broad swath of documents and communications that include all communications concerning the Batistas and JBS over a nearly 15-year time-period.  *See* Bento Decl. Ex. 2 (Delaware 1782 Action, Dkt. 2-1, Ex. A at Doc. Requests 1&2). Colorado Investment has opposed SPS's Delaware 1782 Action, (Bento Decl. Exs. 3-4 (Delaware 1782 Action at Dkts. 9-10)), which is pending adjudication.

Apparently frustrated with its inability to play a role in the various Brazilian proceedings involving JBS's controlling shareholders and the Delaware court's inaction with respect to the SPS's 1782 application in the Delaware 1782 Action, SPS has taken a fishing trip to lower Manhattan.  In its § 1782 Application here, SPS seeks discovery from two entities about transactions involving four other entities for a proceeding that it hopes the CVM will initiate based on a petition SPS *intends* to (but has the discretion not to) file with the CVM against the Batistas for purported misrepresentations to the CVM, a baseless allegation that is belied by the magnitude of the scope and the meticulous form of the investigations conducted as part of the leniency agreements.  *See* Renteria Decl. ¶¶45-48 (noting the extent of the investigations, which cost the

---

[3]   The Declaration of Lucas Bento is filed concurrently with Intervenors' Motion.

company over R$156 million, and included extensive work by multiple renowned forensic and investigatory firms who reviewed and collected over 213 terabytes of data, including from 616 computers and 443 mobile phones). Tellingly, SPS does not allege with respect to its new petition any damages or losses, and the basis for SPS's purported petition, the FinCEN files, is a report that was first issued five years ago.

## ARGUMENT

### I.   THE APPLICATION DOES NOT SATISFY THE STATUTORY REQUIREMENTS OF SECTION 1782

The foreign proceedings that underlie SPS's 1782 Application do not qualify for assistance under Section 1782 because (1) SPS is not an "interested person" in the Contemplated CVM Proceeding; (2) the evidence SPS seeks here is not "for use" in a foreign tribunal. 28 U.S.C. § 1782(a); and (3) the discovery targets are not "found" in this District. Because Petitioner cannot satisfy the three § 1782 statutory requirements, the Court should vacate the Order and quash the Subpoenas.

#### A.   SPS Seeks Evidence That Is Not "For Use" In The Foreign Proceeding

SPS is using § 1782 to obtain evidence that it is not "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). In order to satisfy § 1782's "for use" requirement, the Supreme Court has held that § 1782 requires that the foreign proceeding be "within reasonable contemplation," *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004), which the Second Circuit has interpreted as "requir[ing] a petitioner to show 'reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'" *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 2022 WL 1435270, at *5 (2d Cir. May 6, 2022) (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015)); *see also*

*Certain Funds*, 798 F.3d at 124 ("the [contemplated foreign] proceedings cannot be merely speculative"); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) ("*Intel* does not . . . sanction the use of nonexistent, purely hypothetical proceedings to satisfy § 1782's requirements."). In addition, the Second Circuit has held that "a Section 1782 applicant must establish that [it] has the practical ability to inject the requested information into [the] foreign proceeding that it contemplates." *Id.* (alterations in original) (internal quotation marks omitted).

Here, SPS fails to satisfy these requirements. *First*, SPS has not offered any "reliable indications" that the CVM will initiate its contemplated proceeding within a reasonable amount of time. All SPS has asserted is that it "***intends*** to file" a complaint with the CVM that it "***expects*** will lead CVM to start an enforcement proceeding against the Batista family (the 'Contemplated Proceeding').") Dkt. 6 at 3 (emphasis added); *see also* Dkt. 6 at 11 (SPS intends to "file a complaint ***asking*** the CVM to initiate the Contemplated Proceeding" against the Batistas). But the Second Circuit has expressly held that "discovery material is not 'for use' in a foreign proceeding if it must first be used to persuade a third party to initiate that proceeding." *IJK Palm*, 2022 WL 1435270, at *5. SPS's intentions and expectations, therefore, are plainly insufficient to meet the "for use" requirement. *See, e.g.*, *Certain Funds*, 798 F.3d at 121 ("for use" requirement not satisfied where applicant intended to provide information to third party "*in the hope* that it might be used" by the third party to initiate foreign proceedings (emphasis in original)).

Notably, SPS does not claim (nor could it), that its filing of a complaint with the CVM requires the CVM to initiate proceedings. *C.f. Intel*, 542 U.S. at 254-57 (finding § 1782 applicant satisfied "for use" requirement where the applicant's complaint to the European Commission

7

automatically triggered an investigation and further requiring that a reasonably contemplated proceeding involve a "dispositive ruling"); Renteria Decl. ¶38 (noting that no dispositive ruling is made at the investigatory stage).   Indeed, SPS correctly acknowledges that the CVM "commence[s] investigations at its own discretion."  Dkt. 6 at 8; *see also* Renteria Decl. ¶49 ("it is exclusively up to the CVM . . . to assess whether the complaint contains information that justifies conducting an investigation."); *id.*¶¶28,33, 49-51, 76-80 (explaining that the CVM has exclusive authority with respect to initiating and conducting investigations and enforcement proceedings). Thus, what SPS is doing here "is no different from a third party . . . approaching a prosecutor's office claiming to have knowledge of a crime.  Such information might be relevant or interesting to the recipient, but it is not 'for use' in any proceeding in which the *recipient* is a party unless the recipient takes some further, independent action to introduce it."  *Certain Funds*, 798 F.3d at 121; *see also* Renteria Decl. ¶¶31, 72 (observing a complainant is a "mere informant").

   *Second*, even if SPS could satisfy the "reliable indication" standard, SPS has independently failed to establish that it has the "practical ability to inject the requested information" into a CVM enforcement proceeding against the Batistas.  *IJK Palm*, 2022 WL 1435270, at *5.  Outside of presenting the CVM with information upon filing its hypothetical petition–a petition that merely *asks* the CVM to initiate SPS's Contemplated Proceeding–SPS has not identified any mechanism for injecting evidence into a hypothetical CVM proceeding against the Batistas.  This failure is fatal to its Application because the Second Circuit has held that the "mere opportunity to present material to a party to a potential future lawsuit does **not** satisfy the requirement of § 1782 that the material be 'for use' in a foreign proceeding."  *Id.* (emphasis added); *see also Certain Funds*, 798 F.3d at 121 ("Even assuming that the [petitioner] ha[s] the ability to submit information to the

[foreign party], who can then decide whether or not to use that information, that does not establish that the information is 'for use' in a foreign proceeding.").[4]  That is precisely what SPS intends to do here: present documents to the CVM's Superintendence for the Protection and Guidance of Investors ("SOI"), who in turn *may* pass that information to another branch of the CVM that *may* decide to investigate SPS's allegations and initiate enforcement proceedings against the Batistas. *See* Renteria Decl. ¶¶22, 29-40.

Moreover, when considered in connection with SPS's actions against JBS's controlling shareholders and affiliated entities, both in Brazil and in the United States, *see supra*, pg. 3-6, as well as the fact that SPS states in its proposed order that it is "authorized in its discretion to use *or not use* any discovery obtained by this Order in aid of the Brazilian Proceedings," Dkt. 7 at 2, the hypothetical nature of SPS's "Contemplated Proceeding" highlights that its Application is a fishing expedition.  To the extent SPS does not submit the evidence to the CVM, there will not be a foreign proceeding suitable for aid under § 1782.  And even if SPS files its hypothetical complaint with the CVM, it is "highly unlikely" that the CVM will ultimately initiate SPS's desired proceeding. Renteria Decl. ¶53.  Where, as here, a § 1782 application constitutes a fishing expedition, courts deny the application for failure to satisfy the "for use" requirement. *See, e.g.*, *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018); *In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015); *In re Harbour Victoria Inv. Holdings*, 2015 WL 4040420, at *7.

---

[4]  Indeed, in the CVM's Merger Proceeding, the CVM held that SPS was not a formal participant in that proceeding.  Renteria Decl. ¶¶13-15.  And although the CVM did not strike from the record an evidentiary submission by SPS, it noted that the evidence SPS was seeking to adduce was already in the public record.  *Id.* ¶14.

Further highlighting SPS's trickery and gamesmanship is that its Proposed Order (and the Order endorsed by this Court) refers to using discovery in more than one "Brazilian Proceeding**s**." Dkt. 7 at 2 (emphasis added).  SPS's Application, however, only asserts that its requested discovery is for use in a single contemplated proceeding brought by the CVM against the Batistas.  *See* Dkt. 6 at 3 (defining "Contemplated Proceeding").  To the extent SPS may somehow attempt to use evidence obtained here in any other proceeding, none of the current proceedings in Brazil satisfy the statutory criteria for § 1782 discovery:  The CAM Arbitrations do not qualify as a foreign "tribunal[s]" under § 1782, *see In Re Guo*, 965 F.3d 96, 107 (2d Cir. 2020) ("[I]nternational arbitral panels created exclusively by private parties" are not "foreign or international tribunals within the meaning of § 1782."); *see also In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 386 (S.D.N.Y. 2019) (denying Section 1782 discovery for use in CAM arbitration), and SPS is not an interested person in the CVM JBS Proceeding or any of the criminal investigations, *see infra*, Section I.B (explaining how SPS does not have significant participation rights in any CVM proceeding); *supra*, pg. 4 (explaining that three Brazilian courts have held SPS lacks standing to participate in criminal proceedings).

Ultimately, whether the CVM will initiate SPS's desired hypothetical proceeding against the Batistas is "just a twinkle in counsel's eye," *Certain Funds*, 798 F.3d at 123 (citation omitted). As a result, SPS fails to satisfy the "for use" requirement for discovery under § 1782 and the Court should grant Intervenors' motion.  *See, e.g.*, *Gulf Investment Corp.*, 2020 WL 7043502, at *4 (S.D.N.Y. Nov. 30, 2020) (denying § 1782 application where applicant "inten[t] to use [§ 1782] discovery to gather evidence to initiate a proceeding" "underscore[d] the mere speculativeness of" its contemplated proceeding).

**B.** **SPS Will Not Be An Interested Person In Its Contemplated Proceeding**

As an independent basis for vacating the Court's Order, SPS's 1782 Application fails to satisfy the "interested person" statutory requirement, which turns on whether the § 1782 applicant "possesses a reasonable interest in obtaining judicial assistance." *Intel*, 542 U.S. at 256. Although Intervenors acknowledge that the "interested person" requirement does not mandate that the applicant is one of the litigants in the foreign proceeding, an "interested person" under § 1782 must have significant participation rights in the foreign proceeding. *See id.* at 256-57 (finding § 1782 applicant satisfied "interested person" requirement where the applicant (1) triggered an automatic investigation by submitting information to the European Commission, (2) had the right to submit information to Commission for its consideration, and (3) had the option to proceed in court if the Commission discontinued its investigation).

Here, assuming *arguendo* that the CVM initiates SPS's hypothetical proceeding against the Batistas, SPS will not be an "interested person" in that proceeding because it will not have significant participation rights thereto. *See, e.g.*, *RTI Ltd. v. Aldi Marine, Ltd.*, 523 F. App'x 750, 752 (2d Cir. 2013) (vacating district court's decision to grant § 1782 application and deny motion to quash subpoenas where applicant had "not shown that it enjoy[ed] significant participation rights" in the relevant foreign proceedings). Indeed, SPS does not dispute that it will not be a party to its hypothetical proceeding. Rather, SPS merely asserts that it may pass on information to the CVM with its petition and that the CVM may elect to act on that information. Dkt. 6 at 8. But SPS's ability to pass on information to the CVM's SOI, "without more, cannot confer 'interested person' status" under binding Second Circuit authority. *Certain Funds*, 798 F.3d at 120; *see also*

11

*IJK Palm*, 2022 WL 1435270, at *6 ("the opportunity to present evidence to a party to a potential lawsuit does not render a movant under § 1782 an 'interested party'").

The Renteria Declaration confirms that SPS will not possess significant participation rights in its hypothetical CVM proceeding. *See* Renteria Decl. ¶¶24-40, 69-81  Specifically, there is no dispute that SPS has the right to petition the Brazilian authorities – the right of petition under the Brazilian constitution is applicable to "any person, regardless of the demonstration of their interest in the matter." *Id.* ¶29.  But the right to petition is not a blanket right to participate in administrative proceedings conducted by a public Brazilian authority. *Id.* ¶¶31, 74.  To hold otherwise would essentially vest all 215 million Brazilian citizens with a right to seek § 1782 relief by virtue of their right to "complain" to public authorities, irrespective of their right to actually participate in a proceeding, and thus turn U.S. federal courts into global clearinghouses for foreign discovery by non-parties. *See In re Fagan*, 2019 WL 2267063, at *3 (D. Mass. May 28, 2019) (denying § 1782 application where applicant did not show "any likelihood that he will have a meaningful role or rights in" the foreign proceeding).

Here, SPS does not claim (nor could it) that it will be recognized by the CVM as an interested third party, let alone that the CVM has provided it with "any assurance that [it] will act on any information that [it] receive[s]." *IJK Palm*, 2022 WL 1435270, at *6 (holding § 1782 applicant failed to satisfy "interested person" requirement where applicant intended to provide discovery to party in foreign country that was empowered but not required to investigate).[5]  Indeed,

---

[5]   To the extent the CVM may have some interest in the evidence at issue here, that "general indication of interest in the material that [SPS] might obtain is not sufficient to render [SPS] an 'interested person' with respect to the suit that it hopes the [CVM] will decide to bring." *IJK Palm*, 2022 WL 1435270, at *6.

with respect to its proceedings, the CVM has long recognized that interested third parties cannot participate in its sanctioning administrative process.  Renteria Decl. ¶¶75-79.  Accordingly, SPS cannot (and will not) be an "interested person" in its "contemplated" CVM proceeding, and Intervenor's motion should be granted.

### C.   Discovery Targets Are Not Found In This District

Finally, SPS cannot satisfy the final statutory requirement that the discovery targets "reside[] or [are] found" in this District.  28 U.S.C. § 1782(a).  SPS misleadingly asserts that Respondents are found in this District because both banks "have offices operating and representing" them in the District.  Dkt. 6 at 12.  But an individual branch of a foreign bank located in New York is not "found" in this District under § 1782.  *See In re del Valle Ruiz*, 939 F.3d 520, (2d Cir. 2019) (holding § 1782's "found" requirement was not satisfied where respondent-bank's contacts with the Southern District of New York were unrelated to its in-forum conduct).

SPS's only aims to tie its requested discovery to this District through the declaration of its foreign counsel, who only does so in a footnote and without providing a copy of or a citation to the source.  Specifically, Mr. Gonzalez claims that the FinCEN Files state that "The New York Branch of Barclays Bank PLC ("Barclays NY"), a United Kingdom ("UK") banking corporation, maintains a United States Dollar ("USD") correspondent account for its affiliate, Barclays Bank Plc, Knightsbridge ("Barclays UK Wealth"). A Barclays UK Wealth account in the name of Unifleisch Limited, also known as Unifleisch SA and Unifleisch S/A ("Unifleisch") was flagged for review as part of Barclays NY's surveillance program."  Dkt. 6, Ex. A at ¶37 n.9.  But this

excerpt does not show that ***Barclays USA Inc.***, a different entity (to the extent it even exists)[6] than

Barclays PLC and its New York branch, was mentioned in the FinCEN report.  Accordingly, there

is no evidence or basis that Barclays USA Inc. is located in this district, let alone that it has any

relevant information here.  *See, e.g.*, *In re CBRE Glob. Investors (NL) B.V.*, 2021 WL 2894721, at

*6 (S.D.N.Y. July 9, 2021) (denying § 1782 application where applicant's arguments that US bank

had possession, custody, or control of documents of affiliated entities were "based almost entirely

on conjecture").

## II.   THE DISCRETIONARY *INTEL* FACTORS WEIGH HEAVILY AGAINST PERMITTING THE REQUESTED DISCOVERY[7]

"[A] district court is not required to grant a § 1782(a) discovery application simply because

it has the authority to do so."  *Intel*, 542 U.S. at 264.  Even if the statutory requisites were met

(they are not), this Court should use its discretion to vacate the Order and quash the Subpoenas.

*See, e.g.*, *In re Harbour Victoria Inv. Holdings*, 2015 WL 4040420, at *5.

### A.   *Intel* Factor 1: Evidence Is Within The Jurisdiction Of The CVM

Under the first *Intel* factor, courts consider "whether the requested discovery is within the

foreign tribunal's jurisdictional reach and thus accessible without § 1782 aid."  *In re Gorsoan Ltd.*

*v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) (citation omitted). But SPS sidesteps this standard to

---

[6]   Indeed, a search of "Barclays USA Inc." on the New York Department of State, Division of Corporations website lists ***zero results***, and a further search of entities containing the term "Barclays" in it does not return any results for "Barclays USA Inc."  Bento Decl. Exs. 6-7.  The Application provided no evidence that Barclays USA Inc, specifically, is located in this District. *See* Dkt. 6, at 13.

[7]   The *Intel* factors "are not to be applied mechanically" and a district court "should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

assert that the first *Intel* factor weighs in its favor because Respondents are not parties to its hypothetical CVM enforcement proceeding.  *See* Dkt. 6 at 17.  SPS's argument is without merit.

Here, the first *Intel* factor weighs against discovery because the documents sought by SPS are within the CVM's jurisdictional reach.  *See, e.g.*, *In re Postalis*, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018) ("the first *Intel* factor weighs against granting the discovery application because the evidence sought is within the foreign tribunal's jurisdictional reach").  The CVM may obtain information relevant to SPS's hypothetical proceeding directly from the Batistas and JBS, Renteria Decl. ¶¶54-55, or issue subpoenas to obtain information from the Respondents.  *Id.* ¶¶56-57.  Additionally, the CVM may also leverage agreements with various institutions, including the Central Bank of Brazil and the Brazilian Federal Public Prosecutor – MPF, to obtain information from Respondents.  *Id.* ¶¶58-68.

Indeed, the CVM has already been able to obtain information from JPM in connection with a separate CVM proceeding.  As illustrated in Exhibit C to SPS's Application here, JPM's Brazilian affiliate, J.P. Morgan S.A. Distribuidora de Titulos e Valores Mobiliarios ("JPM Brazil") responded to a CVM request seeking information about the identities of financial beneficiaries of Blessed Holdings LLC.  In its response to the CVM, JPM Brazil expressly provided that it received relevant information from JPM.  Dkt. 6, Ex. C at 126-27.  Thus, that the CVM successfully obtained information from JPM in connection with an ongoing CVM proceeding further confirms that the CVM is capable of, if it so chooses, obtaining information from Respondents in connection with SPS's hypothetical proceeding.

The Subpoenas themselves confirm that SPS seeks evidence within the jurisdictional reach of the CVM.  For example, Document Request No. 3 seeks "[a]ll documents and communications

concerning Joesley Batista, Wesley Batista, J&F and/or JBS in connection with Lunsville, Valdarco, Unifleisch UK and/or Unifleisch SA, including documents sufficient to identify any transaction between those parties." Dkt. 7-1 at Request 3.   Thus, the Subpoenas seek communications and documents with and from named parties to SPS's contemplated CVM Proceeding.   "[W]hen the real party from whom documents are sought" is "involved in [the] foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition." *Kiobel*, 895 F.3d at 245 (reversing and remanding grant of petition under § 1782 from a law firm); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was [a firm], for all intents and purposes petitioners are seeking discovery from [the firm's client], their opponent in [foreign] litigation."); *In re Alghanim*, 2022 WL 1423088, at *1 (S.D.N.Y. May 5, 2022) (similar); *In re Mare Shipping Inc.*, 2013 WL 5761104, at *4-5 (S.D.N.Y. (Oct. 23, 2013) (similar).

Accordingly, the information sought by Petitioner here is within the jurisdictional reach of the CVM such that the first *Intel* factor weighs heavily in against discovery.

**B.      *Intel* Factor 2: The Character And Nature Of The Hypothetical CVM Action Weigh Against Granting § 1782 Discovery**

Under the second *Intel* factor, courts "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."   *Intel*, 542 U.S. at 264.   These considerations counsel against granting discovery here.

At the outset, because there are no proceedings "underway" the character of the SPS's contemplated proceeding counsels against discovery.[8]  There is no guarantee that the CVM will initiate proceedings against the Batistas (indeed, in the opinion of Mr. Renteria, a former [Commissioner] of the CVM, it is "highly unlikely"), which suggests that SPS is using § 1782 to fish for evidence and to harass JBS and the Batistas.  Renteria Decl. ¶53.  This alone warrants granting Intervenors' motion.  *See, e.g.*, *In re Harbour Victoria Inv. Holding*, 2015 WL 4040420, at *7-8 (exercising discretion to deny § 1782 petition where court was "concern[ed] for abuse of the § 1782 petition, as in the form of a fishing expedition to determine what other proceedings might be brought"); *In re King Baby Marine LLC*, 2017 WL 6940563, at *2 (S.D.N.Y. Dec. 22, 2017) (denying § 1782 application where the "applicant's need for the requested discovery remain[ed] speculative").

Nonetheless, assuming the CVM were to initiate SPS's contemplated proceeding, the character of such a proceeding weighs against SPS's requested discovery.  As explained in the declaration of Pablo Renteria, it is entirely up to the CVM to assess whether SPS's hypothetical complaint contains information that justifies an investigation.  Renteria Decl. ¶¶49-50.  If SPS were genuinely interested its having the CVM conduct an investigation related to the FinCEN Files, it would have already brought the FinCEN Files to the CVM SOI's attention so that the appropriate arm of the CVM could determine whether the FinCEN Files warranted further investigation.  *Id.* ¶51.

---

[8]   To the extent SPS intends to use § 1782 evidence in other proceedings not disclosed in its Application, namely, the CVM's current proceeding against JBS and the CAM Arbitration, the nature and character of such proceedings weighs against § 1782 discovery.  *See supra*, fn. **Error! Bookmark not defined.**.

Similarly, the CVM, while receptive to U.S. federal court judicial assistance, has its own mechanisms for requesting such assistance when it requires it. As explained in the Renteria Declaration, the CVM may either request information directly from Respondents or Intervenors or may leverage agreements with other public and private bodies that expand the CVM's investigation capabilities. *See supra*, pg. 14-15 (citing Renteria Decl. ¶¶54-68). Accordingly, the second *Intel* factor weighs against discovery.

C.    ***Intel* Factor 3: SPS Attempts To Circumvent Brazilian Proof-Gathering Restrictions**

Under the third *Intel* factor, courts consider whether the discovery requests "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *In re G2A.com SP. Z.O.O. (LTD.)*, 412 F. Supp. 3d 145, 146 (E.D.N.Y. 2019) (quoting *Intel*, 542 U.S. at 264–65). SPS's § 1782 Application seeks to circumvent the CVM's exclusive power over its investigations and proceedings, the jurisdiction of the CAM, and the JBS bylaws providing for arbitration of SPS's claims.

*CVM's Authority*: Under Brazilian law, the CVM has exclusive power over its investigations and proceedings. *See* Renteria Decl. ¶¶24, 49, 71. SPS's § 1782 discovery requests here seek to usurp the CVM's authority to decide how to conduct its investigations and proceedings. *Id.* ¶¶42-53. Accordingly, the third *Intel* factor weighs against discovery. *See, e.g.*, *In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (third *Intel* factor weighed against granting petition where evidence suggested that petitioner was "using section 1782 in an attempt to circumvent the [foreign tribunal's] control over" its procedures); *Schmitz*, 376 F.3d at 84-85 (affirming denial of § 1782 application where foreign authorities expressed concerns that granting discovery would jeopardize ongoing criminal investigation); *In re IPC Do*

*Nordeste, LTDA*, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012) (weighing third *Intel* factor against petitioner where "reasonable explanation" for petitioner seeking discovery in the United States was that petitioner was "attempting to circumvent proof-gathering restrictions of the Brazilian court").

<u>*CAM Arbitration & JBS Bylaws*</u>: Setting aside the fact that the CAM Arbitrations are not a "foreign . . . tribunal" for purposes of § 1782, *In Re Guo*, 965 F.3d at 107, SPS's use of § 1782 also circumvents both its obligation to arbitrate any disputes related to JBS and the arbitrator's jurisdiction to determine the scope of any discovery.  As a stockholder of JBS, SPS is bound by the arbitration clause in Article 48 of JBS' bylaws, which provides that it will arbitrate "any dispute that may arise . . . related to or arising from its condition as  . . . [a] shareholder[.]"  *See* Bento Decl. Ex. 5 (Delaware 1782 Action, Dkt. 13 at ¶108); *see also* Renteria Decl. ¶17.  Within Petitioner's obligation to arbitrate its dispute is an inherent obligation to resolve disputes regarding the scope of discovery before the arbitrator.  *See id*.

While Petitioner may argue that it seeks evidence from Respondents, nonparties to the CAM Arbitrations, rather than from the CAM Defendants directly, that Respondents are not parties to the CAM Arbitrations has no bearing on whether SPS is obligated to comply with the arbitration clause in JBS' bylaws or the rules governing CAM arbitrations.  *See id*. ¶109.  In CAM arbitrations, only the arbitrator has the authority to control discovery.  *See id*. ¶110.  SPS must therefore seek evidence via arbitration and should not be allowed to side-step that obligation by resorting to judicial assistance in the United States.  *See id*. ¶111 (observing that under Brazilian law the parties waive their right to resolve their disputes via state channels, in Brazil or overseas, upon establishing an arbitration agreement); *Rep. of Kaz. v. Biedermann Int'l*., 168 F.3d 880, 883 (5th

Cir. 1999) (stating that Section 1782 "was enlarged to further comity among nations, not to complicate and undermine the salutary device of private international arbitration."); *see also In re Caratube Int'l Oil*, 730 F. Supp. 2d at 107–08 (holding that unilateral decision to "side-stepped" the evidentiary rules by seeking Section 1782 discovery from third parties without leave of the tribunal weighed against discovery under third *Intel* factor).

For these reasons, the third *Intel* factor heavily weighs in Respondents' favor.

**D.**   ***Intel* Factor 4: SPS's Requested Discovery Is Unduly Intrusive And Burdensome**

The fourth *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). Applying this standard, it is clear that the fourth *Intel* factor weighs heavily against discovery.

Here, SPS, which first became a JBS shareholder in 2018, seeks documents from Respondents related to transactions allegedly occurring over a 21-year period. *See* Dkt. 7-2 at Instruction No. 1 (requesting documents from "May 11, 2001 to present"). SPS's requested discovery is unduly intrusive and burdensome as it would require Respondents, non-parties to SPS's hypothetical CVM proceeding, "to devote substantial resources to perform onerous searches and then review voluminous documents" that date back more than 20 years. *In re Apotex Inc.*, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (quashing § 1782 subpoenas seeking documents over an inappropriately broad time frame); *In re Intel Corp. Microprocessor Antitr. Litig.*, 2008 WL 4861544, at *15 (D. Del. Nov. 7, 2008) (finding that § 1782 discovery "must be bounded by

some temporal component"); *In re Michael Page do Brasil Ltda.*, 2018 WL 7018716, at *9-10 (D.N.J. Jan. 19, 2018) (denying § 1782 subpoenas that sought "expansive and burdensome discovery" which did not "appear to be justified by the needs of" the foreign proceeding).

Moreover, SPS seeks discovery from Respondents that is equally available to the CVM. As described above, *see supra*, pg. 14-15, the CVM has several mechanisms it can utilize to obtain relevant discovery such that the information sought by SPS is available to the CVM if it deems the information worthy of its attention. For this reason, the Subpoenas are unduly burdensome and should be quashed. *See, e.g.*, *In re Meallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (when the discovery sought is "equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative"); *In re Jud. Assistance by Macquarie Bank Ltd.*, 2015 WL 3439103, at *9 (D. Nev. May 28, 2015) ("When the information sought is equally available through the foreign proceedings from a party to that proceeding, such requests targeting a different person in the United States *are by their very nature unduly burdensome*." (emphasis added)).

Additionally, SPS's subpoenas unduly burden Respondents as they seek information that SPS could reasonably have requested in its § 1782 application in the District of Delaware from Blessed Holding LLC. For example, SPS here allegedly seeks evidence from Respondents regarding Lunsville's relationship with Blessed Holding LLC, *see* Dkt. 6, Ex. A.¶ 45, despite not requesting that information from Blessed Holding LLC in the Delaware 1782 Action. *See generally* Bento Decl. Ex. 2. SPS's failure to seek this information where it had the opportunity to do so underscores that its Application here is a thinly-veiled fishing expedition.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court vacate the April 26, 2022 Order, quash the Subpoenas served on Respondents by SPS, and deny SPS's 1782 Application.

Respectfully submitted,

DATED:   New York, New York
        June 3, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By:  */s/ Michael B. Carlinsky*
    Michael Carlinsky
    Lucas Bento

    51 Madison Avenue, 22nd Floor
    New York, New York  10010
    (212) 849-7000
    michaelcarlinsky@quinnemanuel.com
    lucasbento@quinnemanuel.com

    -and-

    Gavin Frisch
    111 Huntington Avenue, Suite 520
    Boston, Massachussetts 02199
    (617) 712-7100
    gavinfrisch@quinnemanuel.com

    *Attorneys for Intervenors Joesley Batista, Wesley Batista, JBS S.A., and J&F Investimentos*