# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE AÇÕES – INVESTIMENTO NO EXTERIOR FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | C.A. No. 1:21-mc-00532-RGA |

**RESPONDENT'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO VACATE THE COURT'S ORDER AND TO QUASH THE SUBPOENAS**

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
Barlow@AbramsBayliss.com
Cordle@AbramsBayliss.com

*Attorneys for Respondent Colorado Investment Holdings LLC*

DATED: January 10, 2022

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NATURE AND STAGE OF PROCEEDINGS ................................................................1

SUMMARY OF ARGUMENT ....................................................................................2

STATEMENT OF FACTS ..........................................................................................3

    A.     JBS-Bertin Merger ...........................................................................3

    B.     CVM Proceeding ..............................................................................3

    C.     CAM Arbitration..............................................................................4

    D.     Section 1782 Proceeding..................................................................5

ARGUMENT ...........................................................................................................5

    A.     Petitioner Fails to Satisfy the Section 1782 Statutory Requirements. ....................5

           1.     SPS Is Not an Interested Person in the Brazilian CVM Proceeding...........6

           2.     Petitioner Seeks Evidence That Is Not "For Use In A Foreign or International Tribunal"......................................................................7

                i.     SPS Cannot Use § 1782 Evidence in the CVM Proceeding ...........8

                ii.     The CAM Arbitration is Not a Foreign or International Tribunal..............................................................................9

           3.     Discovery Targets Are Not Found in This District....................................11

    B.     The *Intel* Factors Weigh Heavily in Favor of Vacating the Order and Quashing the Subpoenas. ..................................................................12

           1.     *Intel* Factor 1: Evidence Is Already Within The Jurisdiction Of Foreign Tribunals....................................................................12

           2.     *Intel* Factors 2 and 3: The Application Seeks To Side-Step Arbitration Procedures and Therefore Circumvents Both Foreign and U.S. Laws and Policies......................................................13

           3.     *Intel* Factor 4: The Application is Overly Intrusive and Burdensome ...................................................................16

    C.     The Subpoenas Should Be Quashed Under Rule 45...........................................18

CONCLUSION ........................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Akhmedova*,
  2020 WL 6376651 (W.D. Tex. Oct. 30, 2020) .......................................................................19

*In re Apotex Inc.*,
  2009 WL 618243 (S.D.N.Y. Mar. 9, 2009 ...........................................................................18

*In re Application of Caratube Int'l Oil Co., LLP*,
  730 F. Supp. 2d 101 (D.D.C. 2010) .....................................................................................15

*In re Application of CBRE Glob. Invs. (NL) B.V.*,
  2021 WL 2894721 (S.D.N.Y. July 9, 2021) ........................................................................11

*In re Application of Digitechnic*,
  2007 WL 1367697 (W.D. Wash. May 8, 2007)....................................................................15

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...............................................................................17

*Application of Esses*,
  101 F.3d 873, 876 (2d Cir. 1996).........................................................................................20

*Application of the Rep. of Kaz. v. Biedermann Int'l*,
  168 F.3d 880 (5th Cir. 1999) .........................................................................................10, 14

*In re Asia Mar. Pac. Ltd.*,
  253 F. Supp. 3d 701 (S.D.N.Y. 2015)..................................................................................16

*c.f. Aventis Pharma v. Wyeth*,
  2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) .......................................................................15

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113, 120 (2d Cir. 2015)...........................................................................................7

*Eggerson v. Fed. Express Corp.*,
  2007 WL 9706598 (W.D. Tenn. Apr. 17, 2007)...................................................................20

*In re EWE Gasspeicher GmbH*,
  2020 WL 1272612 (D. Del. Mar. 17, 2020) (Andrews, J.)...................................................10

*In re Guo*,
  965 F.3d 96 (2d Cir. 2020)...................................................................................................10

*Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) ..........................................................................................19

*Hallamore Corp. v. Capco Steel Corp.*,
    259 F.R.D. 76 (D. Del. 2009) ........................................................................18, 19

*In re Harbour Victoria Inv. Holding Ltd. Section 1782 Petitions*,
    2015 WL 4040420 (S.D.N.Y. June 29, 2015) ................................................17

*In re Intel Corp. Microprocessor Antitr. Litig.*,
    2008 WL 4861544 (D. Del. Nov. 7, 2008) ................................................ *passim*

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)....................................................................7, 12, 16, 20

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015)......................................................................7, 9

*In re IPC Do Nordeste, LTDA*,
    2012 WL 4448886 (E.D. Mich. Sept. 25, 2012)..........................................16

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018)........................................................................13

*In re Kivisto*,
    521 F. App'x 886 (11th Cir. 2013) ............................................................16

*Kulzer v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ..................................................................12

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
    197 F.3d 922 (8th Cir. 1999).......................................................................18

*In re Mota*,
    2020 WL 95493 (D. Del. Jan. 8, 2020).......................................................17

*Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc.*,
    165 F.3d 184 (2d Cir. 1999).........................................................................10

*In re Petrobras Sec. Litig.*,
    393 F. Supp. 3d 376 (S.D.N.Y. 2019)..........................................................10

*Pinchuk v. Chemstar Prods. LLC*,
    2014 WL 2990416 (D. Del. June 26, 2014)..................................................12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    233 F.R.D. 143 (D. Del. 2005) ....................................................................11

*In re Rivada Networks*,
    230 F. Supp. 3d 467 (E.D. Va. 2017) ..........................................................19

*RTI Ltd. v. Aldi Marine Ltd.*,
    523 Fed. Appx. 750 (2d Cir. 2013) ........................................................................7

*Sabre GLBL, Inc. v. Kimpton Hotel & Rest. Grp., LLC*,
    2021 WL 1839689 (N.D. Cal. May 6, 2021) .......................................................20

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ..................................................................11, 13, 16

*In re Storag Etzel GmbH*,
    2020 WL 1849714 (D. Del. Apr. 13, 2020) .......................................................10

*Travelers Indem. Co. v. Metro Life Ins. Co.*,
    228 F.R.D. 111 (D. Conn. 2005) .......................................................................20

**Statutes**

28 U.S.C. § 1782 ............................................................................................... *passim*

28 U.S.C. § 1782(a) ........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26 .......................................................................................9, 16, 18

Fed. R. Civ. P. 45 .......................................................................................1, 18, 19

Fed. R. Civ. P. 45(a)(4) ...........................................................................................19

Fed. R. Civ. P. 45(c)(1) ...........................................................................................18

Fed. R. Civ. P. 45(c)(3) ...........................................................................................19

Fed. R. Civ. P. 45(d) ...............................................................................................18

Fed. R. Civ. P. 45(d)(1) ...........................................................................................18

iv

## NATURE AND STAGE OF PROCEEDINGS

On December 6, 2021, Petitioner SPS I Fundo de Investimento de Ações – Investimento No Exterior ("SPS" or "Petitioner") brought in this Court an *ex parte* application for an order to take discovery in aid of foreign proceedings in Brazil pursuant to 28 U.S.C. § 1782. D.I. 1 (the "Application"). On December 8, 2021, this Court granted the *ex parte* Application. D.I. 4 (the "Order"). Thereafter, Petitioner served two subpoenas on Respondent Colorado Investment Holdings LLC f/k/a Blessed Holdings LLC ("Colorado Investment" or "Respondent")—one seeking broad discovery from Colorado Investment and any related party, and a second subpoena seeking a deposition (the "Subpoenas").

Although Petitioner alleged that its § 1782 Application was supposedly brought in pursuit of evidence to support proceedings in Brazil, its application is really a trojan horse that abuses the aims of § 1782. Petitioner, a fund constituted in April 2018—almost ten years after the alleged events occurred—is not even a party to the Brazilian administrative proceeding for which it is allegedly using § 1782. In actuality, it appears that Petitioner is attempting to use the § 1782 Application to gather evidence for use in a private commercial arbitration that Petitioner commenced over the same transactions that are at issue in the Brazilian administrative proceeding. Petitioner's § 1782 Application thereby seeks to circumvent its obligations to resolve its dispute, including any discovery sought, in the arbitration to which it agreed.

Respondent now submits this Opening Brief in support of its Motion to Vacate the Order and to quash the Subpoenas issued to Respondent. As further explained below, Petitioner's Application should be denied and its Subpoenas should be quashed because the Application does not comply with the requirements of § 1782, the discretionary factors applicable to § 1782 overwhelmingly favor denying the Application, and the Subpoenas are an unduly burdensome fishing expedition in violation of Federal Rule of Civil Procedure 45.

## SUMMARY OF ARGUMENT

1.      Petitioner fails to satisfy all three statutory requirements under § 1782.  In order to take discovery under § 1782, an applicant must be an "interested person" seeking discovery "for use" in a "proceeding in a foreign or international tribunal."  Despite Petitioner's claim to the contrary, it is not an "interested person" in the Brazilian administrative proceeding (as described below, the "CVM Proceeding").  Nor can Petitioner "use" the requested discovery in the CVM Proceeding, as it lacks standing to submit evidence in the CVM Proceeding, on both procedural and substantive grounds, having purchased shares in the company at issue, JBS S.A., almost ten years after the complained transactions at issue.  Petitioner's § 1782 Application is thus obviously directed to its separate arbitration, but Petitioner cannot circumvent its obligation to resolve discovery disputes before the arbitral tribunal, which is not a "foreign or international tribunal" for purposes of § 1782.

2.      Even if this Petitioner could satisfy all three statutory requirements, the discretionary *Intel* factors weigh against Petitioner's sought discovery.  Petitioner, who has no standing to introduce evidence in the CVM Proceeding, seeks information from Respondent that is within the jurisdictional reach of the CVM, the securities regulatory authority of Brazil.  To top it off, the Subpoenas are unduly intrusive and overly burdensome, as they request documents spanning a 15-year timeframe despite Respondent having no office, no IT systems, and no employees.  As to the deposition, this Court should follow an earlier decision of this Court that denied a deposition subpoena directed at Respondent requesting similar information purportedly for use in foreign proceedings relating to the same transactions.[1]

---

[1]    That proceeding was another § 1782 action filed in 2019 by an applicant that Respondent believes is financed by the same funder behind the present Application.  Freire Decl. ¶20; *see In re Mota*, No. 19-mc-369 (D. Del.) ("Mota 1782 Action").

2

3. The Subpoenas should be quashed as unduly burdensome under Federal Rule of Civil Procedure 45. Critically, Petitioner never notified the parties to the CVM Proceeding that it had issued the Subpoenas, rendering the Subpoenas defective. And even if Petitioner had provided notice, the Subpoenas are still unduly burdensome as they are overly broad and seek publicly available information.

Respondent therefore respectfully requests that the Court vacate its Order and quash the subpoenas issued, thus preventing SPS from abusing Section 1782 and its intended purpose.

## STATEMENT OF FACTS

### A. JBS-Bertin Merger

JBS S.A. ("JBS") is a publicly-traded Brazilian company that is the world's largest meat processing company. The stock of JBS is traded in Brazil on B3's Novo Mercado, a listing segment made up of companies committed to complying voluntarily with corporate governance practices above and beyond those required by law. Renteria Decl. ¶9. Over a decade ago, JBS and Bertin S.A ("Bertin") announced a merger agreement, which was approved by JBS stockholders on December 29, 2009 ("JBS-Bertin Merger"). Renteria Decl. ¶¶10-11; Freire Decl. ¶8. Significantly, both the CVM and the Brazilian antitrust regulator approved the JBS-Bertin Merger. Renteria Decl. ¶12.

### B. CVM Proceeding

With the belief that Respondent was owned by members of the family that controls JBS—the family of Wesley and Joesley Batista—CVM's Superintendent of Administrative Proceedings launched an administrative inquiry to investigate and investigate the JBS-Bertin Merger, including Respondent's role therein. Renteria Decl. ¶14. That investigation resulted in an indictment, dated September 4, 2020, against the Batistas and three other individuals

(collectively, the "CVM Defendants"), alleging that the CVM Defendants sought to fraudulently increase their stake in JBS (the "CVM Proceeding"). Renteria Decl. ¶¶15-16.

During the CVM Proceeding, Petitioner attempted to file a statement requesting the CVM Commissioner, who acts the adjudicator in the CVM Proceeding, consider certain information and documents that it believed was material to the CVM Proceeding. Renteria Decl. ¶17. The CVM Defendants objected to Petitioner's filing because Petitioner is not a party to the proceeding. *Id.* Thus far, the CVM tribunal has made no decision on Petitioner's request to introduce evidence in the CVM Proceeding. *Id.* at 18. But in a decision dated December 30, 2021, the ***CVM tribunal made explicit the fact that SPS is not an interested party*** in the CVM Proceeding. *Id* ¶¶20, 68. Specifically, the CVM tribunal explained that SPS is "a third party that does not comprise part of the legal-procedural relations set forth by the [CVM Proceedings]" and there was "no existence of any formal request by [Petitioner] to see its hypothetical right to formally intervene in these Proceedings as an interested third party, either as assistant, *amicus curiae* or under any other form of third-party intervention permitted under the Brazilian legal system." Renteria Decl., Exs. 9-10 (Translated CVM Decision) at ¶¶4, 8(ii), 9(ii). Accordingly, under Brazilian law, Petitioner has no standing to introduce any evidence in that proceeding. Renteria Decl. ¶69.; *see also* Freire Decl. ¶13.

### C.    CAM Arbitration

In August 2017, certain minority stockholders of JBS initiated arbitral proceedings against JBS and its controlling stockholders before the Câmara de Arbitragem do Mercado (translated, the "Market Arbitration Chamber" or "CAM") to seek damages purportedly arising from the JBS-Bertin Merger. Renteria Decl. ¶21; Freire Decl. ¶13. Petitioner, just days after becoming a stockholder of JBS in June 2018, initiated a parallel arbitration proceeding alleging breach of fiduciary duty and fraud, which was later consolidated with the arbitration initiated in

August 2017 (collectively, the "CAM Arbitration").  Renteria Decl. ¶¶21-22; Freire Decl. ¶13.
The CAM Arbitration is about to proceed into discovery.  Renteria Decl. ¶23.[2]

### D.  Section 1782 Proceeding

On December 6, 2021, Petitioner filed this *ex parte* § 1782 Application (D.I. 1), seeking
five broad categories of document production and deposition testimony on eleven broad topics
from Respondent—including numerous categories of documents and testimony covering
Respondent's ownership and formation, its purported involvement in the JBS-Bertin Merger, its
communications with Bertin, JBS (including numerous alleged corporate affiliates),[3] and the
Batistas, and numerous financial documents—all *from 2007 to the present*.  *See* D.I. 2 at Exs. A
& B.  On December 8, 2021, while noting its Order was "without prejudice to the Respondent's
right to assert objections in relation to the subpoenas," this Court granted Petitioner's
application.  D.I. 4 at 2.

### ARGUMENT

### A.  Petitioner Fails to Satisfy the Section 1782 Statutory Requirements.

The foreign proceedings that underlie Petitioner's 1782 Application do not qualify for
assistance under Section 1782 because (1) Petitioner is not an "interested person" in the CVM
Proceeding; (2) the evidence Petitioner seeks here is not "for use" in a foreign tribunal; and (3)
Respondent is not "found" in this district.  28 U.S.C. § 1782(a).  Because Petitioner cannot

---

[2]  Based on Respondent's investigation, Respondent has reason to believe that the Mota 1782
Action applicant and the CAM Arbitration claimants are funded by the same entities that are
funding this Section 1782 proceeding.  Freire Decl. ¶19.
[3]  The Subpoenas define "JBS" to include virtually any company purportedly affiliated with
JBS, regardless of its connection (if any) to JBS-Bertin transactions.  *See* D.I. 2-1, Ex. A at 13
(defining "JBS" as "JBS S.A. and/or any of its parent companies/persons . . . , subsidiary
companies, affiliated companies, . . .").  Petitioner's document subpoena even seeks information
from entities with no affiliation to Respondent.  *See id.* at 16, Doc. Req. No. 2 (requesting "[a]ll
financial statements" and other financial documents from, *inter alia*, Blessed Holdings, Inc.);
Freire Decl. ¶21 (stating Blessed Holdings Inc. has no relation to Respondent).

satisfy the three § 1782 statutory requirements, the Court should vacate the Order and quash the Subpoenas.

### 1. SPS Is Not an Interested Person in the Brazilian CVM Proceeding

Petitioner does not qualify as an "interested person" in the foreign "proceeding" because it lacks standing to introduce evidence in the CVM Proceeding. 28 U.S.C. § 1782(a). This Court has held that foreign plaintiffs must have a legitimate basis under local law to be recognized as a potential litigant. *In re Intel Corp. Microprocessor Antitr. Litig.*, 2008 WL 4861544, *8-10, 12-15 & n.11 (D. Del. Nov. 7, 2008) (denying Section 1782 application where plaintiff had no standing to bring foreign claims). As the Renteria Declaration explains, the CVM does not allow a third party such as SPS to participate in its sanctioning administrative proceedings. Renteria Decl. ¶¶54-69.

Petitioner contends that it qualifies as an interested person in the CVM Proceeding because "[i]t has been *formally recognized* as an interested party in the Brazilian Proceeding, and the evidence that it *formally submitted* to the foreign tribunal has been accepted for review." D.I. 2 at 18 (emphasis added). This is a misstatement of the facts. There has been no decision accepting Petitioner's submission of documents, let alone admitting it as an interested third party to the CVM Proceeding. Renteria Decl. ¶57. Indeed, in a decision dated December 30, 2021, the CVM tribunal made explicit the fact that Petitioner is not an interested party in the CVM Proceeding. *Id.* ¶¶19, 68-69; *Id.* at Exs. 9-10 at ¶¶4, 8(ii) (stating Petitioner is a "third party that does not comprise part of the legal-procedural relations [of the CVM Proceedings]" and did not file "any formal request . . . to see its hypothetical right to formally intervene in these Proceedings as an interested third party, either as assistant, *amicus curiae* or under any other form of third-party intervention permitted under the Brazilian legal system."); *see also id.* Exs. 9-10 at ¶9(ii).

Given these deficiencies, Petitioner has not shown that it "possesses a reasonable interest in obtaining judicial assistance" such that it "qualifies as an interested person" worthy of receiving Section 1782 discovery. D.I. 2 at 17 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004)); *see also Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) ("[T]he ability simply to pass on information to parties in a proceeding, without more, cannot confer "interested person" status any more than the ability of *amicus* counsel to pass along evidence and arguments to counsel representing one of the parties in litigation."); *RTI Ltd. v. Aldi Marine Ltd.*, 523 Fed. Appx. 750, 752 (2d Cir. 2013) (holding applicant was not an "interested person" where it failed to show that it enjoyed "significant participation rights" in foreign proceeding). This is not the first time that Petitioner's attempts to intervene or be admitted in Brazilian proceedings relating to JBS matters have fallen short. Indeed, last year, SPS sought to intervene in two criminal investigations into JBS and others. Renteria Decl. ¶51; Freire Decl. ¶12. However, on June 9, 2021 and August 27, 2021, the Brazilian court denied those requests. *Id*.

Because Petitioner has failed to establish that it is an "interested person" in the CVM Proceeding, the Court must vacate its Order.

### 2. Petitioner Seeks Evidence That Is Not "For Use In A Foreign or International Tribunal"

As an independent basis for vacating the Court's Order, Petitioner is using § 1782 to obtain evidence that it not "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). While Petitioner claims it intends to use § 1782 to obtain evidence for the CVM Proceeding, Petitioner, as a non-party, has no ability to introduce any evidence in the CVM Proceeding. Respondent has strong reasons to believe that Petitioner's true purpose in seeking discovery from Respondent under § 1782 is to use evidence in the CAM Arbitration, the

only forum in which Petitioner is contractually bound to resolve its disputes relating to JBS, its stockholders and directors, and that does not qualify as a "tribunal" under Section 1782. Petitioner's failure to satisfy this statutory requirement requires this Court to vacate its Order.

### i.    SPS Cannot Use § 1782 Evidence in the CVM Proceeding

There is no dispute that Petitioner is not a party to the CVM Proceeding—let alone an "interested party." As a non-party to a Brazilian governmental agency's proceeding, Petitioner lacks standing to introduce the evidence obtained in the United States in the CVM Proceeding. Freire Decl. ¶13 ("since SPS is not an interested party to the CVM Proceeding, it has no ability to use or introduce any evidence therein.").

As the declaration of Pablo Renteria—a former Commissioner of the CVM—explains, the CVM will accept evidence submitted by a non-party only if (i) the non-party is in a position to clarify the facts examined in the records; (ii) the non-party petitions the rapporteur stating that he is in a position to contribute to the proceeding (unless the non-party is summoned by the rapporteur's initiative); *and* (iii) the reporting judge grants the requests indicating the scope of what the non-party is authorized to provide. Renteria Decl. ¶75. But Petitioner cannot satisfy *any* of these three criteria.

*First*, Petitioner is not in a position to clarify the facts examined by the CVM. Petitioner was not a stockholder of JBS at the time of the JBS-Bertin Merger nor otherwise involved in the facts at issue in the CVM Proceeding. Renteria Decl. ¶77; Freire Decl. ¶¶9-10 (noting that SPS was formed in April 2018, "almost 10 years after the JBS-Bertin Merger"). Moreover, to the extent any evidence Petitioner intends to offer to the CVM has any relevance to the CVM Proceeding, the CVM could request production of that evidence directly. Renteria Decl. ¶78.

*Second*, Petitioner does not allege (nor could it) that it petitioned the CVM to inform it that Petitioner was in a position to contribute to the CVM Proceeding. *Id.* ¶79. Likewise,

8

Petitioner does not allege (nor could it) that it was summoned by the CVM to provide evidence. *Id.*

*Third*, the CVM has not decided, let alone granted, any request by Petitioner to gather and submit evidence in the CVM Proceeding. *Id.* ¶80. The CVM has not authorized SPS to do anything at this point nor has indicated the scope of what the Petitioner is authorized to provide or how SPS may provide it.

Standing alone, Petitioner's inability to introduce any evidence obtained here in the CVM Proceeding is reason to vacate the Order. *See KPMG*, 798 F.3d at 120 (concluding that non-parties to a foreign litigation are not entitled to discovery under section 1782 where they cannot establish "they are in a position to use the evidence they seek" in those proceedings). Further, and contrary to Petitioner's assertion (D.I. 2 at 13), even if Petitioner somehow had the ability to introduce evidence obtained here in the CVM Proceeding, the evidence would be useless as the CVM would not be able to add new accusations or charges within the scope of the CVM Proceeding. Renteria Decl. ¶¶89-95; *see also* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to needs of the case, considering [inter alia] the importance of the discovery in resolving the issues . . .").

### ii.   The CAM Arbitration is Not a Foreign or International Tribunal

Petitioner also fails to satisfy this statutory requirement because the only proceeding to which it would be entitled to introduce evidence is the CAM Arbitration. *See* Renteria Decl. ¶¶57-67, 92-102. But the CAM Arbitration is <u>not</u> a tribunal as that term is used in § 1782(a).

As explained above, Petitioner has no avenue to introduce any evidence obtained from Respondent in the CVM Proceeding. In fact, Petitioner is bound to resolve *all* of its disputes with JBS, its stockholders, directors, and officers via arbitration. Renteria Decl. ¶¶ 53, 108.

Thus, it is evident from Petitioner's discovery requests that it is attempting to use § 1782 to gather evidence for the CAM Arbitration, which is a private, corporate dispute in which SPS and other minority stockholders have alleged that the CAM Defendants engaged in illegal practices in connection with, *inter alia*, the JBS-Bertin Merger. Renteria Decl. ¶¶93-94.  But the CAM is not a "tribunal" under § 1782.   While Section 1782 does not define "tribunal," at least two decisions of this Court have held that § 1782 cannot be used for use in private arbitrations because private arbitral bodies are not "tribunals" under § 1782(a).  *In re EWE Gasspeicher GmbH*, 2020 WL 1272612, at *2, *3 (D. Del. Mar. 17, 2020) (Andrews, J.) (holding that "a private commercial arbitration is not a 'tribunal' within the meaning of § 1782"); *see also In re Storag Etzel GmbH*, 2020 WL 1849714, at *3 (D. Del. Apr. 13, 2020) (holding "tribunal" under § 1782 "extend[s] only to courts and government agencies, not to private arbitral bodies").  Other federal courts agree that a "tribunal" for purposes of Section 1782 excludes private commercial arbitral tribunals such as the CAM.  *See*, *e.g.*, *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 386 (S.D.N.Y. 2019) (denying Section 1782 discovery for use in CAM arbitration); *In re Guo*, 965 F.3d 96, 104-107 (2d Cir. 2020) (holding "private international commercial arbitration" falls outside the scope of § 1782); *Nat'l Broad. Co.*, *Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 191 (2d Cir. 1999) ("Congress did not intend for [§ 1782] to apply to an arbitral body established by private parties."); *Application of the Rep. of Kaz. v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) (same).

Because Petitioner would only be able to use any evidence obtained here for use in a foreign arbitration, which is not a "tribunal" as the term is used in § 1782, Petitioner cannot satisfy the "for use" statutory requirement, and the Court should vacate its Order and quash the Subpoenas.

### 3. Discovery Targets Are Not Found in This District

Finally, Petitioner cannot satisfy the final statutory requirement that the discovery targets "resides or is found" in this District. 28 U.S.C. § 1782(a). While Respondent does not dispute that it is incorporated in Delaware, Petitioner's broad Subpoenas demand information not only from Respondent but also from "any of its parent companies, affiliates, subsidiaries." *See e.g.* D.I. 2-1, Ex. A at 13 (defining "Colorado Investment"); *see also id.* at 16, Doc. Req. No. 2 (requesting information from Cayman entity). Petitioner has not shown (or even attempted to show) that any of Respondent's parents, affiliates or subsidiaries are "found" in this District.[4] In fact, Respondent's parent is a foreign entity. Freire Decl. ¶22; Murphy Decl. ¶3.

The breadth of Petitioner's Subpoenas makes clear that Petitioner seeks to end-run the statutory "found" requirement by requesting foreign documents from foreign entities through a subpoena ostensibly directed at Respondent. While courts have required parent corporations to produce documents held by their subsidiaries, "the converse is not true. A subsidiary, by definition, does not control its parent corporation." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005). Accordingly, Petitioner is plainly seeking evidence beyond the jurisdictional reach of this Court—which is limited to a person found in this district. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (affirming denial of § 1782 application and observing that "[a]lthough technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation."); *In re Application of CBRE Glob. Invs. (NL) B.V.*, 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021) ("[A] petitioner

---

[4]   As a further example of Petitioner's fishing expedition, the Subpoenas seek information from entities that are unrelated to the Respondent other than for sharing a similar corporate name. *See* D.I. 2-1, Ex. A at 16 (requesting documents relating to "Blessed Holdings Inc.", a New York corporation that has no affiliation to the Respondent). Freire Decl. ¶21.

may not use section 1782 to require an affiliate or related third party to obtain documents from its opponent in the foreign litigation."); D.I. 2-1, Ex. A at 16, Doc. Req. No. 1 (seeking "all" information "concerning Joesley Batista, Wesley Batista, and/or JBS").

**B.     The *Intel* Factors Weigh Heavily in Favor of Vacating the Order and Quashing the Subpoenas.**

"[A] district court is not required to grant a [Section] 1782 discovery application simply because it has the authority to do so."  *Pinchuk v. Chemstar Prods. LLC*, 2014 WL 2990416, at *2 (D. Del. June 26, 2014) (citing *Intel*, 542 U.S. at 264).  Even if the statutory requisites were met (they are not), this Court should use its discretion to vacate the Order and quash the Subpoenas.  *Intel*, 542 U.S. at 264.

**1.     *Intel* Factor 1: Evidence Is Already Within The Jurisdiction Of Foreign Tribunals.**

As Petitioner correctly acknowledges (D.I. 2 at 19), the first *Intel* factor is "whether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782."  *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010) (citation omitted).  But Petitioner sidesteps this standard to assert that the first *Intel* factor weighs in its favor because Respondent is not a party to the CVM Proceeding and is "beyond the CVM's subpoena powers."  D.I. 2 at 19.  That is misleading.

The documents sought by Petitioner are within the jurisdictional reach of the CVM. Although Respondent is not a party to the CVM Proceeding, the Subpoenas request "[a]ll documents and communications concerning the acquisition, merger, transaction(s) and/or partnership by and between Bertin and JBS," and "[a]ll documents and communications concerning Joesley Batista, Wesley Batista, and/or JBS."  D.I. 2, Ex. A at 16-17, Requests 1 & 5. Thus, the Subpoenas seeks communications and documents with and from named parties to the CVM Proceeding (and some also in the CAM Arbitration) underlying the Application.  "[W]hen

12

the real party from whom documents are sought" is "involved in [the] foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (reversing and remanding grant of petition under § 1782 from a law firm); *see also Schmitz*, 376 F.3d at 85 ("Although technically the respondent in the district court was [a firm], for all intents and purposes petitioners are seeking discovery from [the firm's client], their opponent in [foreign] litigation.").

Moreover, as the Renteria Declaration explains, the CVM and the United States Securities and Exchange Commission ("SEC") are signatories to the Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information of the International Organization of Securities Commissions. Renteria Decl. ¶¶43, 46. As a result, the CVM has the ability to request assistance from the SEC at any time in obtaining information and documents held by entities incorporated in the United States, and the SEC in turn may assist the CVM's investigation of alleged fraudulent transactions on the Brazilian securities market. *Id.* ¶¶44-46. Indeed, Mr. Renteria has used this mechanism while he was a Director and Superintendent of the CVM Administrative Proceedings, including to obtain information from an entity located in Delaware. *Id.* ¶48.

Accordingly, the information sought by Petitioner here is plainly within the jurisdictional reach of the CVM (and from the parties to the CAM tribunal) and the first *Intel* factor weighs heavily in Respondent's favor.

2. ***Intel* Factors 2 and 3: The Application Seeks To Side-Step Arbitration Procedures and Therefore Circumvents Both Foreign and U.S. Laws and Policies.**

Although Petitioner claims that it intends to use any evidence obtained from this § 1782 proceeding in the CVM Proceeding, it appears that Petitioner's true purpose in filing this § 1782 is to obtain evidence for use in the CAM Arbitration. By using § 1782 in this way, Petitioner

13

attempts to circumvent the jurisdiction of the CAM and the JBS bylaws providing for arbitration of Petitioner's claims.

At the outset, the nature and character of the CAM Arbitration weighs against § 1782 discovery for the simple reason that foreign, private arbitrations are not the type of proceedings for which § 1782 is intended to be used. *See supra* § II.A.2.ii. *Intel* factor 2, therefore, weighs in Respondent's favor.

With respect to *Intel* factor 3, and setting aside the fact that the CAM Arbitration is not a "foreign . . . tribunal" for purposes of § 1782, Petitioner's use of § 1782 is intended to circumvent its obligations to arbitrate any disputes related to JBS as well as the jurisdiction of the CAM to determine the scope of any discovery. As a stockholder of JBS, Petitioner is bound by the arbitration clause in Article 48 of JBS' bylaws, which provides that it will arbitrate "any dispute that may arise" . . . related to or arising from its condition as . . . "[a] shareholder[.]" Renteria Decl. ¶108. Within Petitioner's obligation to arbitrate its dispute is an inherent obligation to resolve disputes regarding the scope of discovery before the arbitrator. *See id.* ¶¶106-107.

While Petitioner may argue that it seeks evidence from Respondent, a nonparty to the CAM Arbitration, rather than from the CAM Defendants directly, that Respondent is not a party to the CAM Arbitration has no bearing on whether Petitioner is obligated to comply with the arbitration clause in JBS' bylaws or the rules governing CAM arbitrations. *Id.* In the CAM Arbitration, only the arbitrator has the authority to control discovery. *Id.* ¶¶95, 102-105. Petitioner must therefore seek evidence via the arbitration and should not be allowed to side-step that obligation by resorting to judicial assistance in the United States. *See Rep. of Kaz.*, 168 F.3d at 883 (stating that Section 1782 "was enlarged to further comity among nations, not to

complicate and undermine the salutary device of private international arbitration."). To date, Petitioner has not requested that the arbitrator in the CAM Arbitration allow it to seek discovery from Respondent (something which it could do), making it clear that Petitioner is attempting to circumvent Brazilian law No. 9,307 of 1996 and its obligation to arbitrate instead of litigate. *See* Renteria Decl. ¶111 (observing that under Brazilian law, "upon establishing an arbitration agreement, the parties waive their right to resolve their disputes through court venues, in Brazil or overseas."); *see also id.* ¶113; *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010) (holding that unilateral decision to "side-step[]" the evidentiary rules by seeking Section 1782 discovery from third parties without leave of the tribunal weighed against discovery under third *Intel* factor); *In re Application of Digitechnic*, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (finding that "discovery application seeking discovery never sought in France certainly appears to be a circumvention attempt"); *c.f. Aventis Pharma v. Wyeth*, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (§ 1782 application was an "attempt to circumvent foreign proof gathering restrictions that were contractually provided for by the parties' in the choice of forum (France) clause.").

Moreover, with respect to the CVM Proceeding, only the CVM Commissioner has exclusive power to decide discovery matters. Renteria Decl. ¶¶32-40. Under Articles 42 and 43 of the CVM Resolution No. 45/2021, the Commissioner has the power to evaluate and decide which evidence should be presented and admitted in the CVM Proceeding. *Id.* ¶38. Petitioner's § 1782 Application violates the rules governing discovery in the CVM Proceeding and thus seeks to circumvent the CVM's exclusive power over discovery matters. *Id.* ¶¶39-40. *See In re Caratube Int'l Oil*, 730 F. Supp. 2d at 107 (third *Intel* factor weighed against granting petition where evidence suggested that petitioner was "using section 1782 in an attempt to circumvent the

[foreign tribunal's] control over" its procedures); *see also Schmitz*, 376 F.3d at 84-85 (affirming denial of § 1782 application where foreign authorities expressed concerns that granting discovery would jeopardize ongoing criminal investigation); *In re IPC Do Nordeste, LTDA*, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012) (weighing third *Intel* factor against petitioner where "reasonable explanation" for petitioner seeking discovery in the United States was that petitioner was "attempting to circumvent proof-gathering restrictions of the Brazilian court").

It therefore appears that Petitioner is attempting to manufacture jurisdiction here with the CVM Proceeding to obtain evidence for use in the CAM Arbitration.  Regardless of Petitioner's motivations, because Petitioner's § 1782 Application circumvents the jurisdiction of both the CAM and CVM and does not seek evidence for use in a foreign proceeding under Section 1782, the second and third *Intel* factors weigh heavily in Respondent's favor.

### 3. *Intel* Factor 4: The Application is Overly Intrusive and Burdensome

Finally, Respondent, a third party to the CVM Proceeding to which Petitioner is also a third party, should not be burdened to engage in a discovery dispute where Petitioner has propounded discovery requests that plainly are not "relevant" and "proportional to the needs of the case," in accordance with Federal Rule of Civil Procedure 26.  *See, e.g., In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[D]iscovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." (citation omitted)); *Intel*, 542 U.S. at 265("[U]nduly intrusive or burdensome requests may be rejected or trimmed."); *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013) (observing district courts "may consider whether the application contains 'unduly intrusive and burdensome requests,' is 'made in bad faith, for the purpose of harassment,' or is part of a 'fishing expedition.'") (citations omitted); 28 U.S.C. § 1782(a) (incorporating Federal Rules of Civil Procedure).  Indeed, Petitioner cannot explain

the relevance of most of its extremely broad document and deposition requests to Respondent.[5] Petitioner appears to be using this § 1782 Application as a fishing expedition designed to pursue carte-blanche discovery for use in private arbitration, not the CVM Proceeding. Renteria Decl. ¶¶92-104.  *See, e.g., In re Harbour Victoria Inv. Holding Ltd. Section 1782 Petitions*, 2015 WL 4040420, at *9 (S.D.N.Y. June 29, 2015) (exercising discretion to deny § 1782 application where "it appear[ed] that Petitioner [was] engaging in a fishing expedition to identify other foreign venues in which to bring suit"); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (weighing fourth *Intel* factor in respondents' favor where discovery requests sought confidential information and "appear[ed] to be a broad 'fishing expedition' for irrelevant information").

Indeed, another judge in this district denied in part in a similar § 1782 application as unduly burdensome where the application, like the Application here, sought information from Colorado Investment relating to the JBS-Bertin transactions.  *In re Mota*, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) (quashing deposition subpoena).  Shortly after the *Mota* Court issued its order, the applicant voluntarily dismissed the action.  *In re Mota*, No. 19-mc-369-MN at D.I. 29.

Moreover, as noted above, *supra* at 11, Petitioner's Subpoenas demand information not only from Respondent but also from its foreign parents and affiliates, which would be unduly burdensome, particularly where Respondent has no office, no employees, no IT systems, and no right or practical ability to obtain responsive information from its parent.  Murphy Decl. ¶4.  Yet

---

[5]  As mentioned above, another example of Petitioner's fishing expedition is found in the definition of "JBS" in the subpoenas, which includes virtually any company purportedly affiliated with JBS, regardless of its connection (if any) to JBS-Bertin transactions.  *See supra* fn. 3. Petitioner has similarly requested extensive discovery including "All documents and communications…" and "All financial statements, bank statements, accounting records, and financial reports…" without regard to the enormous burden that such discovery would put on Colorado Investment, a third-party.  *See* D.I. 2-1, Ex. A at 16.

Petitioner's Subpoenas are even broader than that—they also demand information from entities that have no relation to Respondent. *See supra,* fn. 3.

Finally, Petitioner's requests are temporally overbroad as they span a period of **nearly 15 years**. *See In re Intel Corp. Microprocessor Antitr. Litig.*, 2008 WL 4861544, at *15 (finding that § 1782 discovery "must be bounded by some temporal component"); *In re Apotex Inc.*, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (denying § 1782 discovery because subpoena's proposed time frame was inappropriate). Such unbridled discovery requests are a further compelling reason to quash the discovery Petitioner seeks here.

### C.      The Subpoenas Should Be Quashed Under Rule 45

As a third-party to the CVM Proceeding, Respondent is entitled to the protections of Rules 45 and 26 of the Federal Rules of Civil Procedure.[6]  Respondent's needs and burdens are given "special weight" in evaluating the competing needs of an opposing party. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999); *see also Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 81 n.13 (D. Del. 2009) ("The underlying purpose of Rule 45(c)(1), is to protect a non-party witness as a result of a misuse of the subpoena") (citation omitted).  Rule 45(d) requires a "party or attorney responsible for issuing and serving a subpoena" to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  "The court 'must enforce this duty and impose an appropriate sanction—which may include lost earnings or reasonable attorney's fees—on a party or attorney who fails to comply.'"  *Hallamore*, 259 F.R.D. at 80 (quoting Fed. R. Civ. P. 45(c)(1)).

---

[6]      *See* 28 U.S.C. § 1782 ("To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure").

Petitioner has failed to take reasonable steps to avoid imposing undue burden or expense on Respondent by issuing the Subpoenas without meeting requirements of Rule 45(a)(4). Rule 45(a)(4) requires Petitioner to serve notice of the Subpoenas on the parties to the CVM Proceeding prior to serving Respondent. *See In re Rivada Networks*, 230 F. Supp. 3d 467, 473 (E.D. Va. 2017) ("[O]nce [petitioner]'s § 1782 application was granted, [opposing party in foreign litigation] was entitled to notice of the subpoenas . . . as required by the Federal Rules of Civil Procedure"); *In re Akhmedova*, 2020 WL 6376651, at *4 (W.D. Tex. Oct. 30, 2020) (finding that petitioner must provide notice of subpoenas to opposition in foreign tribunal in part to address "the due process concerns inherent with this request, particularly in the light of the fact that her Application requests ex parte relief."); *see also Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (stating that respondent's due process rights are ordinarily protected under § 1782 because "he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."). But the parties to the CVM Proceeding were never notified of the Subpoenas. *See* Freire Decl. ¶16. Had Petitioner provided notice, the CVM Defendants could have raised their threshold objections to the § 1782 Application such that Petitioner and the CVM Defendants could have litigated these threshold issues without involving Respondent, a third party. Because the Subpoenas should not have been served on Respondent in the first place, "literally everything done in response to [them] constitutes undue burden or expense within the meaning of" Rule 45. *Hallamore*, 259 F.R.D. at 81(citations omitted).

Moreover, even if Petitioner provided notice as required by Rule 45(a)(4), the Subpoenas should still be quashed as unduly burdensome because, in addition to the argument set out above, *supra* I.B.3, they seek public information from Respondent that is equally available to Petitioner. Specifically, Petitioner seeks discovery from Respondent regarding its beneficial ownership. *See*

D.I. 2 at 2 ("This Application seeks discovery from Blessed Holdings regarding its beneficial ownership…"). But this information is publicly available. Freire Decl. ¶20. Since this information is publicly available, Respondent, as a non-party to the CVM Proceeding, should not be burdened to produce documents that Petitioner can obtain elsewhere. *See, e.g.*, *Travelers Indem. Co. v. Metro Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (granting motion to quash subpoena seeking publicly available documents that were equally accessible to the party issuing the subpoena); *Sabre GLBL, Inc. v. Kimpton Hotel & Rest. Grp., LLC*, 2021 WL 1839689, at *2 (N.D. Cal. May 6, 2021) (granting motion to quash subpoena "to the extent that it seeks documents equally available from" the subpoenaed party); *Eggerson v. Fed. Express Corp.*, 2007 WL 9706598, at *2 (W.D. Tenn. Apr. 17, 2007) (quashing subpoena "due to the undue burden it imposes on a non-party" where information was equally available to the plaintiff).

Thus, Petitioner's failure to comply with Rule 45 warrants quashing the Subpoenas and awarding Respondent its reasonable expenses.[7]

## CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Court vacate the Order and quash the Subpoenas.

---

[7]   To the extent the Court is inclined to grant discovery, the Court should grant Respondent reciprocal discovery. In light of Petitioner's tactics and the mysterious circumstances surrounding its beneficial ownership, Petitioner should be ordered to provide Respondent with information pertaining to Petitioner's beneficial ownership. Freire Decl. ¶19. Under Section 1782, district courts have the discretion to order reciprocal discovery from the applicant "so long as the district court fashions it order in accordance with the 'twin aims'" of the statute. *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (holding district court acted within its discretion ordering reciprocal discovery); *see also Intel*, 542 U.S. at 262 (observing "district court could condition relief upon . . . reciprocal exchange of information").

_/s/ Michael A. Barlow_____

Michael A. Barlow (#3928)
Samuel D. Cordle (#6717)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000
Barlow@AbramsBayliss.com
Cordle@AbramsBayliss.com

*Attorneys for Respondent Colorado Investment Holdings LLC*

DATED:  January 10, 2022