**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE AÇÕES – INVESTIMENTO NO EXTERIOR<br><br>*Petitioner,*<br><br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for use in Contemplated Proceeding in the Federative Republic of Brazil. | Case No. 22-mc-00118-LAK |

**PETITIONER SPS I FUNDO DE INVESTIMENTO DE AÇÕES –**
**INVESTIMENTO NO EXTERIOR'S MEMORANDUM OF LAW**
**IN OPPOSITION TO INTERVENOR'S MOTION TO VACTE THE COURT'S**
**APRIL 26, 2022 *EX PARTE* ORDER AND TO QUASH THE SUBPOENAS**

**BAIRD HOLM LLP**
Jeremy C. Hollembeak
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402.636.8317
Email: jhollembeak@bairdholm.com

*Attorneys for Petitioner SPS I Fundo de Investimento de Ações – Investimento no Exterior.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................**Error! Bookmark not defined.**

ARGUMENT .................................................................................................4

I.     THE BATISTAS' MOTION TO VACATE EX PARTE DISCOVERY
ORDER SHOULD BE DENIED.................................................................4

     A.     CONTRARY TO THE BATISTAS' CLAIMS, THE APPICATION
SATIFIES THE STATUTORY REQUIREMENTS OF SECTION
1782.........................................................................................5

          1.     SPS Seeks Evidence That is "For Use" In A Foreign
Proceeding.........................................................................5

               a.     Contemplated Proceeding Is Qualifying Foreign
"Proceeding" For Purposes of Section 1782 Because
SPS Has Demonstrated Sufficient "Reliable
Indications" It Will Be Commenced........................................6

               b.     Application Seeks Discovery "For Use" in
Contemplated Proceeding Because SPS Has
Demonstrated "Practical Ability To Inject Requested
Information" Into That Proceeding........................................12

          2.     SPS Will Be "Interested Person" In Foreign Proceeding ..................14

          3.     The Batistas' Self-Serving Speculation That Respondent
Barclays Is Not "Found" In This District Should Be Rejected..........17

     B.     CONTRARY TO THE BATISTAS' CLAIMS, ALL FOUR
DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF
PERMITTING REQUESTED DISCOVERY .................................22

          1.     *Intel* 1:  Respondents Are Not Participants In Foreign
Proceeding.........................................................................22

          2.     *Intel* 2:  CVM Will Be Receptive To U.S. Court Judicial
Assistance .........................................................................25

          3.     *Intel* 3:  SPS Is Not Seeking To Circumvent Foreign Proof
Gathering Restrictions .......................................................26

          4.     *Intel* 4:  SPS Subpoenas Are Not Unduly Intrusive Or
Burdensome .......................................................................29

II.     THE BATISTA LACK STANDING TO BRING MOTION TO QUASH,
WHICH IN ANY EVENT SHOULD BE DENIED..................................32

CONCLUSION..................................................................................................33

i

## ABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Application of Sarrio, S.A.*, 119 F.3d ................................................................................ 18, 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ......................................................................................... 5

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113, 122-24 (2d Cir. 2015) ............................................................. *passim*

*del Valle Ruiz*, 939 F3d 520 (2d Cir. 2019) .............................................................. 17, 19, 20

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir.1995) ...................................................................................... 28

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011) ................................................................................... 28

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
    33 F.4th 669 (2d Cir. 2022) ............................................................................. 5, 8, 16

*In re Accent Delight Int'l Ltd.*,
    696 F. App'x 537 (2d Cir. 2017) ............................................................................. 28

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ..................................................................... *passim*

*In re Accent Delight Int'l Ltd.*,
    No. 16-MC-125 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018),
    *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ................................................................. 15

*In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in
the Lab. Ct. of Brazil*,
    466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................................................... 27

*In re Application of Caratube Int'l Oil Co., LLP*,
    730 F.Supp.2d 101 (D.D.C. 2010) .......................................................................... 27

*In re Application of Grupo Qumma*,
    No. M 8-85, 2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) ....................................... 29

*In re Aso*,
    No. 19MC190JGKJLC, 2019 WL 2345443 (S.D.N.Y. June 3, 2019) ............... 18, 30, 31

*In re Atvos Agroindustrial Investimentos S.A.*,
    481 F. Supp. 3d 166 (S.D.N.Y. 2020) ..................................................................... 29

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................................................................ 20, 32

*In re Furstenberg Fin. SAS*,
No. 18-MC-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ......................*passim*

*In re Gorsoan Ltd. v. Bullock*,
652 F. App'x 7 (2d Cir. 2016) .......................................................................23

*In re Hansainvest Hanseatische Inv.-GmbH*,
364 F. Supp. 3d 243 (S.D.N.Y. 2018)................................................................7

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018).......................................................................7

*In re Investbank PSC*,
No. 20 MISC. 260 (AT), 2020 WL 8512850 (S.D.N.Y. Dec. 30, 2020)..........................21

*In re IPC Do Nordeste, LTDA, For an Ord. Seeking Discovery Under 28
U.S.C. 1782*,
No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012)......................................27

*In re King Baby Marine LLC*,
No. 17-MC-488 (LAK), 2017 WL 6940563 (S.D.N.Y. Dec. 22, 2017)............................8

*In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*,
No. 17-CV-01287, 2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) .....................................32

*In re Martinez Sampedro*,
No. 3:18-MC-47 (JBA), 2019 WL 3423568 (D. Conn. July 30, 2019), *aff'd
sub nom. Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14 (2d Cir.
2020), *as amended* (June 5, 2020) ...................................................................11

*In re Postalis*,
2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ...................................................24

*In re Top Matrix Holdings Ltd.*,
No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ..............................7

*Intel v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..............................................................................*passim*

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020).......................................................................8

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)......................................................................*passim*

*Pfaff v. Deutsche Bank AG*,
No. 20 MISC. 25 (KPF), 2020 WL 3994824 (S.D.N.Y. July 15, 2020) ....................20, 25

*Porsche Automobil Holding*, No. 15-MC-417................................................................*passim*

*Sampedro v. Silver Point Cap., L.P.*,
818 F. App'x 14 (2d Cir. 2020), *as amended* (June 5, 2020)...........................................11

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004) ................................................................................ 27

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    No. 21-401, 2022 WL 2111355 (U.S. June 13, 2022) ........................................ 4

**Statutes**

28 U.S.C. § 1782 ........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(h) ...................................................................................... 21

Lucas V.M. Bento, *The Globalizatoin of Discovery: The Law and Practice
    under 28 U.S.C. §1782,* published by Kluwer Law International B.V.
    (2020) ................................................................................................................ 25

SPS I Fundo de Investimento de Ações – Investimento no Exterior ("**SPS**"), petitioner in this action seeking discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 ("**Section 1782**"), hereby opposes and respectfully submits this memorandum of law in opposition (the "**Opposition**") to the motion (ECF No. 20, the "**Motion**") and supporting papers (ECF No. 21, "**Batistas MoL**" and ECF No. 22, the "**Renteria Decl.**") of Intervenors Joesley Batista, Wesley Batista, JBS S.A. and J&F Investimentos (collectively, the "**Batistas**") to vacate the Court's April 26, 2022 *Ex Parte* Order (ECF No. 8, the "**Order**") and quash the subpoenas SPS served in accordance therewith (the "**Subpoenas**") on J.P. Morgan Chase Bank, N.A. ("**JPM**") and Barclays USA, Inc. ("**Barclays**" and, together with JPM, the "**Respondents**").  In support of its Opposition, SPS hereby incorporates its original application and all exhibits thereto (ECF No. 6, the "**Application**").  In further support of its Opposition, SPS hereby incorporates the supplemental declaration (and exhibits thereto) of Gustavo Machado Gonzalez (the "**Suppl. Gonzalez Decl.**") and declaration of Fabiano Robalinho Cavalcanti (the "**Cavalcanti Decl.**"), two of SPS's Brazilian attorneys, and the declaration (and exhibits thereto) of SPS's undersigned U.S. counsel (the "**Hollembeak Decl.**").  For the reasons set forth below, based on the incorporated submissions, and the record before the Court, SPS respectfully submits the Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

By its Application, SPS sought authority to subpoena two banks (the Respondents) to obtain information about the banking activity of four companies: Unifleisch Limited, Unifleisch SA, Lunsville International Inc. and Valdarco Investments Inc. (the "**Target Companies**").  SPS alleged – and has substantial basis to believe evidence from Respondents will confirm – that the Target Companies are beneficially owned and controlled by the Batista brothers, and that through such ownership and control the Batista brothers have used the Target

Companies to conduct illicit activity and defraud JBS and its minority shareholders (of which SPS is one).

This 1782 proceeding did not arise in a vacuum. In a 2020 U.S. Plea Agreement, J&F – which is wholly owned by Joesley and Wesley Batista (referred to in the Plea Agreement as "J&F Executive 1" and "J&F Executive 2") – plead guilty to engaging in a bribery scheme dating as far back as 2005 in violation of the Foreign Corrupt Practices Act of 1977. The Plea Agreement followed on the heels of similar agreements with Brazilian authorities in 2017 by which J&F and the Batista brothers plead guilty to corruption and other serious criminal infractions. These developments caused great harm to JBS, which at all relevant times has remained majority owned and controlled by J&F (hence its appearance in this proceeding alongside the rest of the Batistas). Separately, starting in September 2020, information released as part of the FinCEN Files brought public attention for the first time to suspicious financial activity involving the Targeted Companies, and linked those companies and that activity to the Batistas.

SPS has been investigating the Target Companies for the purpose of making a formal complaint against the Batistas to the CVM – the Brazilian governmental agency with the authority to regulate Brazil's securities and capital markets and to bring enforcement actions against and punish bad actors in those markets. The CVM has formal procedures for handling the intake and disposition of investor complaints, and is duty-bound to analyze all complaints received, conduct investigations should significant evidence of wrongful activity be identified, and ultimately make a charging decision. If brought, charges are adjudicated as enforcement proceedings by CVM's Board of Commissioners, during which the original complainant and other interested parties may submit additional evidence for admission into the record. To invoke this process, SPS has put together a substantial complaint, including 115 paragraphs of detailed allegations and 15 annexed exhibits demonstrating what SPS has uncovered to date

2

about the Batistas' illicit use of the Target Companies.  SPS is ready to file its complaint and trigger a new CVM proceeding (the "**Contemplated Proceeding**").  But for various reasons – including risks posed by CVM's chronic lack of investigatory resources, and SPS's desire to present the results of its investigation in the most comprehensive and effective manner possible – SPS is waiting to commence the Contemplated Proceeding so its complaint can include documents and information obtained from Respondents through this proceeding.

After this Court granted the Application and SPS served the Subpoenas on the Respondents, but before any productions were made, the Batistas intervened and filed their Motion. Notably, in their supporting papers, the Batistas baselessly accuse SPS of "trickery and gamesmanship" and characterize the Application as a "blatant fishing expedition" and "pretext" for SPS to obtain evidence for use in other pending Brazilian proceedings that they know have nothing to do with the Target Companies.  Equally notable is what they do not say. The Batistas nowhere admit in their moving papers to having any beneficial ownership or control over the Target Companies – something they have denied before Brazilian authorities, but would be required for them to claim in this proceeding a commonality of interest with the Target Companies reserved for affiliates and insiders.  Nor, among all their arguments and accusations, do the Batistas ever represent that there is no truth to SPS's allegations – that they did not use the Target Companies to commit sham transactions and fill their personal coffers with JBS profits.  Perhaps they recognize by now such a representation cannot be squared with their level of protest against light being shown on the Target Companies' transaction history.

In any event, the Court now has the Motion before it to vacate the Order and quash the Subpoenas.  It was not brought (or joined) by the parties issued those Subpoenas.  Nor was it brought by the parties whose bank records are being sought.  It was brought by the Batistas, whose only admitted interest in this proceeding is that SPS is seeking documents to be used against them in the Contemplated Proceeding before the CVM in Brazil.  In support of their

Motion, the Batistas argue SPS has failed to meet ever statutory and discretionary factor the Court must consider.  For the reasons explained below, the Batistas are wrong on each count, and the Motion should be denied in its entirety.

## ARGUMENT

I.    **THE BATISTAS' MOTION TO VACATE *EX PARTE* DISCOVERY ORDER SHOULD BE DENIED**

"As a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." *In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at \*2 (S.D.N.Y. Feb. 18, 2016) (hereinafter "**Porsche Automobil Holding**").  That hospitality derives from Congress's desire to make the United States a helpful world citizen and, moreover, in the hope of obtaining similar receptivity abroad to efforts by litigants in American courts to obtain evidence located in other countries." *Id.*; *see also ZF Auto. US, Inc. v. Luxshare, Ltd.*, No. 21-401, 2022 WL 2111355, at \*7 (U.S. June 13, 2022) ("After all, the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance.").  As a result, "[t]he availability of Section 1782 discovery therefore is quite broad and only has broadened through successive amendments over the years." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) (hereinafter "**Accent Delight**").  "Most relevant here, Section 1782 leaves to the district courts' discretion both the decision to grant discovery and to 'prescribe the practice and procedure' for its production." *Id.* (quoting Section 1782).

4

By their Motion, the Batistas ask this Court to take an inhospitable view of SPS's application in conflict with Congressional intent and applicable case law, and to exercise its discretion by granting SPS no discovery at all. As demonstrated below, however, none of the Batistas arguments can be sustained, SPS continues to satisfy the statutory requirements and discretionary factors of Section 1782, and the Court's April 26, 2022 Order should not be vacated.

### A.   CONTRARY TO THE BATISTAS' CLAIMS, THE APPICATION SATIFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

The Batistas claim SPS has failed to satisfy all three statutory requirements for Section 1782 discovery, specifically that (1) SPS does not seek discovery "for use in a foreign proceeding," (2) SPS is not an "interested person," and (3) the Respondents are not "found" in this District. *See* Batistas MoL at 6. The Batistas are wrong on all three counts.

### 1.   SPS Seeks Evidence That is "For Use" In A Foreign Proceeding

The Second Circuit has addressed the "for use in a foreign proceeding" requirement on several occasions. *See, e.g.*, *IJK Palm LLC v. Anholt Servs. USA, Inc.,* 33 F.4th 669 (2d Cir. 2022); *Accent Delight*, 869 F3d at 128-33; *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122-24 (2d Cir. 2015); *Mees v. Buiter*, 793 F.3d 291, 298-301 (2d Cir. 2015); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81-84 (2d Cir. 2012). In each instance, the Court has "approached the issue according to the particular facts of each case and the arguments presented." *Accent Delight*, 869 F3d at 131. Here, the Batistas argue SPS fails to satisfy this statutory requirement on two basic grounds, (a) the Contemplated Proceeding is not a qualifying "proceeding" for purposes of Section 1782, and (b) even if it was, SPS does not seek evidence "for use" in that proceeding (Batistas MoL at 8-10). SPS addresses these arguments in turn.

5

        **a.**       ***Contemplated Proceeding Is Qualifying Foreign "Proceeding"
For Purposes of Section 1782 Because SPS Has Demonstrated
Sufficient "Reliable Indications" It Will Be Commenced***

The "starting line of any Section 1782 analysis [is] the Supreme Court's seminal *Intel*

decision. *Accent Delight*, 869 F3d at 129 (discussing *Intel v. Advanced Micro Devices, Inc.*,

542 U.S. 241 (2004) (hereinafter "***Intel***")). In *Intel*, the Supreme Court held Section 1782 does

not require an applicant to show that the foreign proceeding on which it relies is pending or

even imminent, only that it is "within reasonable contemplation." *Intel*, 542 U.S. at 259. To

demonstrate that showing, SPS must provide "reliable indications of the likelihood that

proceedings will be instituted within a reasonable time." *KPMG*, 798 F.3d at 123. Here, the

Batistas claim SPS has failed to provide the requisite "reliable indications" on two grounds:

(1) because it did not state with certainty in the Application that it would file a complaint with

CVM, and (2) because there would be no certainty even if SPS files its complaint that the CVM

will initiate a qualifying foreign "proceeding." *See* Batistas MoL at 7-8.

The first ground can be easily dispatched – SPS *will* file its complaint with CVM. The

only reason SPS has not done so already is that it hopes to include therein information obtained

through this 1782 action. *See* Suppl. Gonzalez Decl. ¶ 44, 50. Even without such information,

the complaint in its current form has 115 paragraphs of information and allegations and

references 15 different documents, each of which will be attached to the complaint as exhibits

and provided to the CVM therewith. *See* Suppl. Gonzalez Decl. ¶ 42. In this form (which it

has been in since prior to SPS filed its Application with this Court), SPS believes the complaint

is already sufficient and contains enough detailed allegations and supporting evidence to file

as is with CVM, which would automatically trigger an administrative proceeding that SPS is

confident will cause CVM to conduct further investigation and ultimately bring charges against

the Batistas for use of their control of JBS to cause it to engage in sham transactions, breaches

of fiduciary duties in management; and failure to properly disclose corporate transactions and

their purposes. *See* Suppl. Gonzalez Decl. ¶ 43. In fact, SPS considered filing the complaint with CVM and thereafter submitting evidence obtained from the Respondents as supplemental filings, but for the time being has determined in consultation with Brazilian counsel that it would be most efficient and effective to present all the information it can collect into a comprehensive single filing. *See* Suppl. Gonzalez Decl. ¶ 44.

These circumstances align SPS with the Section 1782 petitioners in those cases where Courts have found sufficient indicia of a reasonably contemplated foreign proceeding. *See, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018) (summary order) ("reasonably contemplated" proceeding found where petitioner who was already engaged in related litigation "represented that it intended to initiate further litigation once it obtained additional information"); *In re Top Matrix Holdings Ltd.,* No. 18 MISC. 465 (ER), 2020 WL 248716, at *4–5 (S.D.N.Y. Jan. 16, 2020) ("reasonably contemplated" proceeding found, where petitioner submitted a sworn statement from its Swiss lawyer attesting to its intent to litigate in Switzerland and providing the legal theories on which it intends to rely); *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249–50 (S.D.N.Y. 2018) ("reasonably contemplated" proceeding found, upon evidence that foreign counsel and experts had been retained, a detailed demand letter had been prepared and applicant would commence proceeding by year-end); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) ("reasonably contemplated" proceeding found, where petitioners submitted sworn declarations that they intended to file complaint and articulated specific legal theory on which they tend to rely).[1] Accordingly, there is sufficient certainty

---

[1] Contrary to the Batistas' suggestion, circumstances here are readily distinguishable from those cases in which the foreign proceeding was "just a twinkle in counsel's eye." *See* Batistas MoL at 10 (quoting *KPMG*, 798 F.3d at 123). *See IJK Palm,* 33 F.4th at 681 ("reasonably contemplated" proceeding not found where "[t]he only concrete step IKJ has taken toward initiating its proposed suit is to obtain funding for, and to retain, counsel"); *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101–02 (2d Cir. 2020) (same, where applicant had not yet

that Applicant will file its complaint and trigger commencement of the Contemplated Proceeding.[2]

That leaves the issue of whether and when Contemplated Proceeding, once commenced, becomes a qualifying "proceeding" for purposes of Section 1782.  The CVM has adopted the so-called accusatorial system which proceeds in two stages.  *See* Renteria Decl. ¶ 26.  The first stage is the administrative proceeding[3] for the investigation of relevant facts, and the second is the enforcement proceeding which begins when charges are brought.  *See* Suppl. Gonzalez Decl. ¶ 52.  The Batistas' argument that the Contemplated Proceeding is not "within reasonable contemplation" is built on the premise that the first stage administrative proceeding does not qualify as a "proceeding" under Section 1782.  That premise is wrong.

The Contemplated Proceeding will qualify as a foreign "proceeding" under Section 1782 as soon as SPS files its complaint commencing the first stage administrative proceeding before the CVM.  Once that filing occurs, SPS has triggered a process under which it is assured (a) the complaint and supporting evidence it submitted will be reviewed by the relevant CVM

---

drafted complaint, did not provide US court with articulated legal theory or claim details, and counsel indicated commencement of foreign proceeding was dependent upon what requested Section 1782 evidence revealed); *Gulf Investment Corp.*, 19-mc-593(VSB), 2020 WL 7043502, at 4-5 (S.D.N.Y. Nov. 30, 2020) (same, where applicant failed to identify potential form of foreign litigation it intended to bring in its Section 1782 application, and when it subsequently identified such form it had yet to retain foreign counsel to commence such litigation); *cf. In re King Baby Marine LLC*, No. 17-MC-488 (LAK), 2017 WL 6940563, at *2 (S.D.N.Y. Dec. 22, 2017) (where applicant indicated that it had only consulted with foreign attorney and was evaluating its legal options, Court exercised its discretion to dismiss application without prejudice on basis that "applicant's need for the requested discovery remains speculative").

[2] If, notwithstanding the foregoing, the Court determines there are insufficient indicia in the record to conclude SPS's Contemplated Proceeding is "within reasonable contemplation"at this time, SPS respectfully requests that the Court, similar to *King Baby Marine*, vacate the Order without prejudice to allow SPS to refile an application at an appropriate time.

[3] According to the Batistas declarant, this stage, "strictly speaking", is not an "administrative *proceeding*, but only a declarent *procedure* ('precedimento administrativo') for investigation purposes."  *See* Renteria Decl. ¶ 38 (emphasis added).  Regardless of its proper name, it is the procedures that actually take place during this stage that should determine whether it qualifies as a "proceeding" under Section 1782.

unit, (b) further investigation may be conducted, but either was a charging decision will be made by the relevant CVM unit, and either (c) charges are brought, in which case a stage two enforcement proceeding will commence, or (d) no charges are brought, in which case an appeal may be made by SPS to the respective CVM unit and Board of Commissioners.  *See* Suppl. Gonzalez Decl. ¶ 52.  These features of CVM's first stage administrative proceeding place it squarely among "the types of proceedings within the ambit of Section 1782."  *Accent Delight*, 869 F.3d at 131.

The history and broad language of the statute support this result.  In particular, Congress added the phrase "criminal investigations conducted before formal accusation" to Section 1782 in 1996, as an *example* of the broad range of foreign "proceedings" to which the statute applies. *See Intel*, 542 U.S. at 259 (discussing added language and noting that "[n]othing suggest that this amendment was an endeavor to rein in, rather than to confirm, *by way of example*, the broad range of discovery authorized") (emphasis added).[4]  Thus Section 1782 applies to the investigative stage of proceedings before any charges are brought.  And because not all investigations result in charges, it stands to reason Section 1782 discovery is available before it is known, and without any requirement an applicant prove, whether charges and enforcement proceedings will ensue.

*Intel* itself is also strongly supportive.  There, as here, the proceeding in question was triggered by the Section 1782 applicant's filing of a complaint with a regulatory body (the Directorate-General for Competition of the Commission of the European Communities) that,

---

[4] Given its broad interpretation by the Supreme Court, there is no basis to cabin the amendment language as relevant only to "criminal" investigations.  *See Intel*, 542 U.S. at 259 (noting indication in Section 1782 legislative history that discovery "be available whether the foreign or international proceeding *or investigation is of a criminal, civil, administrative or other nature*") (emphasis added) (citation omitted).  To the extent the Batistas argue otherwise, it is worth noting CVM's accusatorial system was "originated" from and "inspired" by Brazilian criminal procedure.  *See* Renteria Decl. ¶ 76; *see also* Bento Declaration [ECF No. 23], Exhibit 5, ¶¶ 91, 99.

like the CVM, had the power "to conduct investigations" into alleged violations of governing law, to issue a "formal written decision whether to pursue the complaint," and to elevate the matter to a governing body like CVM's Board of Commissioners (specifically, the European Commission). *Id.* at 246, 254-55 (internal quotation marks omitted). Like SPS, the *Intel* applicant lacked "formal 'party' or 'litigant' status" in the proceeding, but did possess "significant procedural rights" including the power to submit "information in support of its allegations" and to seek review of the tribunal's disposition of its complaint. *Id*. at 255. On these facts, the Supreme Court held Section 1782's requirement that discovery be "for use in a proceeding in a foreign or international tribunal" was satisfied. Given this substantial overlap with the proceeding in *Intel*, the same result is warranted here regarding CVM's first stage administrative proceeding.[5]

Assuming, *arguendo*, that the filing of SPS's complaint will not trigger a qualifying "proceeding" under Section 1782 until charges are brought commencing a CVM stage two enforcement proceeding, that proceeding is nevertheless "within reasonable contemplation" as well. To argue otherwise, the Batistas point to the fact that SPS cannot itself trigger an enforcement proceeding, a decision left to the discretion of the reviewing and investigating CVM unit(s). But that discretion is not unbounded. The Batistas themselves admit CVM has formal procedures for handling the intake and disposition of investor complaints, that one possible response when a complaint is filed is for the reviewing CVM unit to immediately issue charges without conducting further investigation, and that in any event the reviewing CVM unit has "the duty to analyze all complaints received" and conduct investigations "should they identify significant evidence of wrongful activity." *See* Batistas MoL at 9; Renteria Decl. at

---

[5] To the extent there are material distinctions between the proceedings and circumstances in *Intel* and here, it does not warrant a different result. See *KPMG*, 798 F.3d 113, 118 (*Intel* was an "easy case" and does not establish minimum requirements for Section 1782 eligibility).

¶¶ 36, 40.   The ability of SPS to invoke these predictable procedures and obligations is sufficient to bring an enforcement proceeding within reasonable contemplation.

*In re Martinez Sampedro*, No. 3:18-MC-47 (JBA), 2019 WL 3423568, at \*3 (D. Conn. July 30, 2019), *aff'd sub nom. Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14 (2d Cir. 2020), *as amended* (June 5, 2020) is instructive.  In that case, at the time the applicant sought permission to provide 1782 discovery to a Spanish regulator (the CNMV), it had submitted a complaint with the CNMV for review and was waiting for the CNMV to make a decision whether it would initiate a sanctioning proceeding against the respondents.  *Id*.  The respondents objected that a proceeding was not "within reasonable contemplation" because a sanctioning proceeding "would take place only if the CNMV determines that one is warranted upon completion of an investigation," and "the CNMV is not presently conducting an investigation and is unlikely ever to do so."  *Id*.  The court overruled the objection and permitted discovery, explaining although applicant's filing of a complaint did not trigger a sanction proceeding automatically, the fact that it commenced a review process by the CNMV was sufficient to make the sanctioning proceeding "within reasonable contemplation."  *Id*. (citing *Intel*, 542 U.S. at 259).  The respondents appealed, but the Second Circuit affirmed, explaining "[g]iven the district court's factual findings regarding the CNMV process, we find no basis to disturb its ruling".  *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 19–20 (2d Cir. 2020), *as amended* (June 5, 2020).

Finally, the Batistas' argument that an enforcement proceeding is too remote because it is "highly unlikely" the CVM will find merit in SPS's complaint is based on self-serving speculation and should be rejected.  *See* Batistas MoL at 9.  The argument is based entirely on Mr. Renteria's alleged analysis of SPS's supposed speculative allegations and lack of supporting evidence set forth in its papers before this Court.  For the record, Mr. Renteria has never seen SPS's 115 paragraph draft complaint or the 15 exhibits thereto.  *See* Suppl. Gonzalez

11

Decl. ¶ 46.Nor, so far as SPS is aware, is he an expert on U.S. banking law and regulations capable of speaking to the likely substance and evidentiary weight of a suspicious activity report he ostensibly has never seen as well.  *See* Renteria Decl. ¶¶ 43-44.  In any event, SPS's complaint is based on much more than the FinCEN files and the Barclays report thereunder. *See* Suppl. Gonzalez Decl. ¶ 47. Finally, contrary to Mr. Renteria's assumption, evidence that the Batistas have good reasons not to commit the bad acts and disclosure failures addressed in SPS's complaint does not constitute evidence that they did not commit such acts and failures. See Renteria Decl. ¶¶ 45-48 (explaining Batistas have previously undergone internal investigations and produced large amounts of data at great cost, made supplemental public disclosures in 2017, and signed plea agreements with Brazilian and US authorities in 2017 and 2020 that would subject them to "serious consequences" if they are found to have withheld information). Those reasons did not prevent the Batistas from being charged in the pending CVM enforcement procedure concerning the JBS-Bertin merger, and there is no basis to assume they will prevent charges in the Contemplated Proceeding either. *See* Bento Declaration [ECF No. 23], Exhibit 5, ¶ 15 (acknowledging Batistas were charged by CVM on September 4, 2020, commencing still-pending CVM enforcement proceeding, on allegations that "transaction details were not disclosed to the public so that the Batista Brothers may have increased their shares in JBS to the detriment of the Company's minority shareholders.").

      For all these reasons, the Contemplated Proceeding is within reasonable contemplation.

      **b.**    ***Application Seeks Discovery "For Use" in Contemplated Proceeding Because SPS Has Demonstrated "Practical Ability To Inject Requested Information" Into That Proceeding***

      The discovery SPS seeks satisfies the statutory "for use" requirement because SPS has the demonstrated practical ability to place beneficial documents—or the information they contain—before CVM, the foreign tribunal in the Contemplated Proceeding.  *Accent Delight*, 869 F.3d at 131.  In *Accent Delight*, the Court found the "for use" requirement was met where

the "[p]etitioners are parties to that proceeding who, while they have abandoned any claim there for monetary relief, retain the procedural right to submit the requested documents to the magistrate overseeing the investigation." *Id.* at 132.  Following *Accent Delight*, the Court in *Furstenberg Fin. SAS* reached the same conclusion, but in a context even chosen to this case: "[The evidence obtained via the requested discovery ... would be directly presented to the Luxembourg investigating judge, in support of the criminal complaint *to be filed by the Applicants ....*"  2018 WL 3392882, at *4 (emphasis added).  The Court explained "[t]he ability to present documents to an investigating judge for consideration in the foreign proceeding is sufficient 'use' of the discovery to satisfy the statutory requirement." *Id.*

The Batistas admit SPS has the right to file its complaint with CVM, but does not explain why that right is not tantamount to a "practical ability to inject" discovery from Respondents SPS includes therein.  *See* Batistas MoL at 8.  *But see Intel*, 542 U.S. at 262, n.14 ("In civil law countries, documentary evidence is generally submitted as an attachment to the pleadings [....]") (citation omitted).  They fault SPS for not identifying any other mechanism, but as Mr. Gonzalez has clarified, SPS will be able to submit evidence even after it files its complaint during CVM's stage one administrative proceeding.  *See* Suppl. Gonzalez Decl. ¶ 44.  And SPS's ability to submit evidence to the CVM after charges have been made during an enforcement proceeding has been put beyond dispute by recent decisions in the pending CVM enforcement proceedings concerning the JBS-Bertin merger.  In that proceeding SPS submitted evidence for inclusion in the record, the Batistas formally objected, and the CVM overruled those objections and admitted the evidence.  *See* Suppl. Gonzalez Decl. ¶¶ 21-29.  The Batistas try to shield these decisions from undermining their argument by suggesting, incorrectly, that the only reason the CVM decided to admit the evidence was because it was already a publicly available document.  *See* Batistas MoL at 9, n.4.  To the contrary, however, that was not the basis of the CVM's decision, and although it was public, the evidence SPS submitted and the

CVM admitted was not previously in the record of the proceeding.  *See* Suppl. Gonzalez Decl. ¶ 27, n.12.

Next, baselessly accusing SPS of "trickery and gamesmanship," the Batistas suggest SPS may be attempting to obtain evidence to use in the pending CAM Arbitrations.  Not so. As explained in the declaration of Fabiano Robalinho Cavalcanti submitted herewith, the arbitrations do not involve claims involving the Unifleisch entities and therefore the discovery sought here would not be useful therein.  *See* Cavalcanti Decl. ¶¶ 12, 19.  Moreover, the arbitrations are at an advanced stage, further evidentiary submissions are not expected and, in any event, arbitration rules would require the agreement of all parties, including J&F, before any new evidence could be admitted. *See* Cavalcanti Decl. ¶¶ 14-18.  Therefore, and for the avoidance of doubt, SPS is not seeking Section 1782 discovery in this action for use in the pending CAM Arbitrations.  *See* Cavalcanti Decl. ¶ 23.

For all these reasons, SPS seeks discovery "for use" in the Contemplated Proceeding.

## 2. <u>SPS Will Be "Interested Person" In Foreign Proceeding</u>

The requirement that a Section 1782 applicant be an "interested person" focuses on the applicant's "participation rights" in the foreign proceeding for which discovery is being sought. There is "considerable overlap" between the "interested person" and "for use" requirements. *KPMG*, 798 F.3d at 118.  Therefore, for many of the reasons already discussed above, SPS will be an "interested person" in the Contemplated Proceeding.  *See* Suppl. Gonzalez Decl. ¶ 35, 55-58, 60.

Once again, comparison to *Intel* is instructive.  "The *Intel* applicant was not a party to the foreign proceeding, it there pressed no claim for relief on its own behalf, and it stood no chance of obtaining a damages award."  *Accent Delight*, 869 F.3d at 129.  "*Intel* thus supports the view that Section 1782 does not impose such requirements."  *Id*.  It's not entirely clear what the Supreme Court viewed as the minimum required "participation rights" because *Intel* was

an easy case.  *KPMG*, 798 F.3d at 118.  But by way of example, the applicant's "participation rights" in *Intel*, on which the Supreme Court relied in finding that the applicant was an "interested person," "prominently included the applicant's ability to use the evidence it sought in the U.S. courts before the foreign administrative tribunal and courts by submitting the evidence to the investigating agency in the foreign proceedings."  *Id*.  Following the guidance of *Intel* and *KPMG*, the Court in *Furstenberg Fin. SAS* considered the issue on facts similar to here.  There, the applicant's filing of a criminal complaint would trigger legal proceedings and an independent criminal investigation.  2018 WL 3392882, at *5.  Thereafter, the applicant's "participation rights" would include, for example, the right to participate by presenting evidence to the investigating judge and the right to appeal a decision by the investigating judge, if the judge decided not to proceed with an investigation.  *Id*.  On this record, the Court concluded that level of participation in an investigation is sufficient to qualify the petitioners as "interested parties" under § 1782.  *Id*.; *cf*.  *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724, at *3 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) (rejecting Intervenors' contention that Petitioners were guilty of bad faith, abuse of process and chicanery for doing "nothing" with previously obtained discovery other than hand it over to Monaco's investigating magistrate, explaining "Section 1782 did not require that they do anything more").

It is clear from this precedent that SPS is an "interested person" whose complaint, once filed with CVM, will trigger a process of review and likely investigation, an eventual charging decision, the ability to seek further review of that decision and the ability (in addition to the complaint itself) to inject additional evidence into the pending administrative or enforcement proceeding as the case may be.  *See* Suppl. Gonzalez Decl. ¶¶44, 52.  To argue otherwise, the Batistas try to liken these circumstances with those in select case law decisions where the

applicant had no direct access to the foreign tribunal.[6]  Those decisions are inapposite, because

SPS will file its complaint directly with the CVM – the regulatory body obligated to review its

complaint, make a determination whether charges should be brought, and to adjudicate any

such charges.  SPS is not merely in the position of presenting evidence to a third party that in

turn must access the tribunal and commence litigation on SPS's behalf, such as a liquidator or

litigation agent under a syndicated financial instrument.  SPS will be presenting evidence

directly to the tribunal.

      The Batistas' remaining "global clearinghouse" argument – that finding SPS is an

"interested person" in this case today will open the courtroom doors to 215 million Brazilian

applicants tomorrow – is unavailing.  *See* Batistas MoL at 12.  The Second Circuit considered

and rejected effectively the same argument in *Accent Delight*:

> Finally, we respond to Bouvier's contention that our holding today "would
> permit virtually anyone to obtain discovery under Section 1782."  We think his
> professed fears are unwarranted for three reasons.  First, it is unlikely that any
> member of the public with no apparent connection to a dispute in the foreign
> tribunal would have procedural opportunities to "use" discovery there as we
> have defined that term.  Second, Section 1782's distinct requirement that
> applicants be "interested persons" serves as an adequate roadblock to applicants
> with connections too attenuated to justify granting discovery in this country.
> Third, even if the statutory requirements are met, a grant of discovery under
> Section 1782 remains within the discretion of the district court and therefore its
> misuse can be avoided through the prudent exercise of that court's discretion.

869 F.3d at 133.  In other words, the "use" and "interested person" requirements serve as a

check on one another, two applicants with the same "participation rights" in a type of foreign

proceeding will not necessarily both qualify (or fail) for 1782 relief on that basis, and courts

---

[6] *See* Batistas MoL at 11-12, citing *RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 752 (2d
Cir. 2013) ("[Applicant] RTI has not shown that it enjoys significant participation rights, *but
instead that its sister corporations do*.") (emphasis added); *KPMG*, 798 F.3d at 121 (applicant
Funds admittedly lacked 25% stake necessary to direct Delegate to commence quasi-judicial
proceedings, and "[c]onsequently, the Funds are not in a position to direct the Delegate to
consider their evidence or submit that evidence to the tribunal"); *IJK Palm*, 33 F.4th at 678
("The 'proceeding' on which IJK relies is the potential action that *the liquidators* would have
discretion to file in a Cayman Court.") (emphasis added).

have sufficient discretion to make appropriate calls on a case-by-case basis that will prevent Section 1782 from turning U.S. Federal Courts into global clearinghouses for discovery. Thus, the Batistas warning to the Court that millions of Brazilians will begin to petition US Courts if their Motion is denied rings hollow.

For all these reasons, SPS will be an "interested person" in the Contemplated Proceeding.

### 3. The Batistas' Self-Serving Speculation That Respondent Barclays Is Not "Found" In This District Should Be Rejected

The Batistas argue SPS cannot satisfy the final statutory requirement that a discovery target be "found" in the district with respect to one of the Respondents, Barclays.[7] As an initial matter, the Batistas' standing to make this argument under the circumstances is questionable. In *del Valle Ruiz*, the Second Circuit held that "found" limits the reach of a district court under Section 1782 to the outer bounds of personal jurisdiction it can exercise over a subpoena recipient without violating that recipient's right to Constitutional due process. 939 F.3d 520, 528-30 (2d Cir. 2019). Thus, the "found" requirement is focused on protecting rights of those from whom discovery is being sought, not those against whom it will be used.

Courts often recognize the standing of those against whom Section 1782 discovery will be used to bring challenges on behalf of a subpoena recipient when there is a close relationship between the two. *See, e.g.*, *Porsche Automobil Holding*, No. 15-MC-417 (LAK), 2016 WL 702327, at *2, n.8 (recognizing parties to foreign proceeding "have standing to move to quash Porsche's subpoenas even though the subpoenas were directed to and served on their affiliates."); *In re Aso*, No. 19MC190JGKJLC, 2019 WL 2345443, at *3–4 (S.D.N.Y. June 3, 2019) (allowing husband to challenge "found" requirement with respect to Section 1782 subpoena issued to his employer for use by his wife in foreign divorce proceeding). But the

---

[7] The Batistas do not argue this requirement is not met with respect to Respondent JPM.

standing of an entity against whom Section 1782 discovery will be used to challenge truly third-party subpoenas is not unlimited.  Indeed, standing to assert some rights belonging to a subpoena recipient is outright prohibited.  For example, in *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997), the Second Circuit explained that although the entity against whom Section 1782 discovery would be used "may well have standing to contend that [applicant's] subpoena to [its New York bank] was unenforceable under the terms of the enabling statute […] it does not have standing to assert an attorney-client privilege belonging to [bank itself]").

Here, the relationship between the Batistas and Barclays is even more remote.  SPS is seeking from Barclays primarily documents concerning the transaction history of Unifleisch UK and Unifleisch SA – two entities over which the Batistas have affirmatively disavowed any common ownership or control before Brazilian authorities.  Thus, by arguing Barclays is not "found" in this District, the Batistas are attempting to assert due process rights belonging to a third-party bank with whom they deny having even an indirect relationship.  Under these circumstances, SPS submits that recognizing the Batistas' standing to make this argument is neither required nor appropriate under applicable law.

Assuming, *arguendo*, the Batistas have standing to assert their argument that the Order should be vacated because Barclays cannot be "found" in this District, it is based entirely on speculation and should be rejected.  *See KPMG*, 798 F.3d at 117 and n.5 (expressing skepticism that arguments by foreign subpoena recipients that they were not "found" in the Southern District of New York and that their U.S. affiliates possessed none of the requested documents could be properly addressed without "a more fully developed record generated by, for example, a motion to quash or a response to the subpoena asserting that no responsive documents have been found").  For several reasons, unless and until Barclays appears before the Court and indicates how it intends to respond to SPS's subpoena, the Batistas' argument is premature at best.

First, the Court has and should exercise personal jurisdiction over Barclays. As an internal matter, if the relevant Barclays entity is incorporated in New York or headquartered in this District, it is subject to the Courts general jurisdiction.[8] Assuming, that the subpoena is directed to the New York branch of non-US Barclays entity, then under *del Valle Ruiz*, the court can exercise specific jurisdiction either where "the respondent's having purposefully availed itself of the forum [is] the primary or proximate reason that the evidence sought is available at all," or "where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts" 939 F.3d at 530. A quick review of publicly available information about Barclays indicates its contacts in this District are broad and significant.[9] As a result of its US presence headquartered in this District, Barclays is subject to "a comprehensive regulatory framework involving numerous statutes, rules and regulations in the U.S."[10] Barclays' compliance with this framework – obligations and efforts it ostensibly agrees to as a cost of doing business in this District and across the US – is the genesis of the documents and information SPS seeks demonstrating the red flags Barclays reported to FinCEN

---

[8] *See* discussion in note13, *infra.*

[9] *See* https://home.barclays/careers/barclays-office-locations/, last visited on June 17, 2022. ("New York is home to Barclays' US headquarters, and the Americas hub for our Corporate and Investment Bank"); *id.* (Barclays maintains a 32-story office tower at 745 Seventh Avenue in Times Square where it has over 4500 employees).

*See also* Barclays PLC – Form 20-F/A, available https://home.barclays/content/dam/home-barclays/documents/investor-relations/reports-and-events/annual-reports/2021/Barclays%20PLC%20-%2020-F%20-%202021%20Final%20.pdf, last visited on June 17, 2022, at 279, 316, 321 and 323 (indicating, among other things, Barclays (a) trades American Depository Receipts (ADRs) on the New York Stock Exchange (NYSE), (b) it is subject to numerous pending legal actions in this District, and (c) certain of its key personnel work out of this District, including Paul Compton, the President of Barclays Bank PLC, Global Head of the Corporate and Investment Bank and member of the Barclays Group Executive Committee).

To the extent necessary, SPS requests the Court take judicial notice of these publicly available websites and documents.

[10] *Id.*, at 187-88.

concerning suspicious transactions involving the Unifleisch entities and the Batistas.  In other words, Barclays' contacts with this District are a "primary or proximate reason that the evidence [SPS seeks] is available at all" and such evidence "would not be available but for the respondent's forum contacts."  *del Valle Ruiz*, 939 F.3d at 530.  Accordingly, if Barclays were to appear and oppose this Court's exercise of jurisdiction over it, the record presently before the Court strongly indicates that opposition would be overruled. *See, e.g.*, *Pfaff v. Deutsche Bank AG*, No. 20 MISC. 25 (KPF), 2020 WL 3994824, at *8–10 (S.D.N.Y. July 15, 2020) (holding, over their objection, that foreign banks were "found" in district because "[t]he Court is, therefore, satisfied that the discovery material sought – which largely relates to Moving Respondents' silver trading through COMEX – proximately resulted from the respondent's forum contacts"); *cf. In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (foreign subpoena target "found" in district because of systematic and regular business in United States and New York, including trading ADRs on NYSE, regularly filing forms with SEC, and significant ties to New York-based affiliate that imported its nickel product).

Second, it is far from clear that Barclays will appear and challenge the Order or move to quash SPS's subpoena on the basis that it is not "found" in this District.[11]  Due process rights to challenge a court's exercise of personal jurisdiction are waived if not timely asserted.  *See generally* Fed. R. Civ. P. 12(h).  Barclays may decide to forego any pre-emptive challenges to its subpoena before producing documents to SPS, or otherwise take actions that effectively waive its right to do so.  *See generally* 26 U.S.C. § 1782(b) ("This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international

---

[11] SPS expressly reserves all rights should Barclays subsequently seek to vacate the Order or quash SPS's Subpoena on this or any other basis.

tribunal before any person and in any manner acceptable to him"). *Cf. Application of Sarrio, S.A.*, 119 F.3d at 147 (subpoenaed bank tacitly waived attorney-client privilege "by which it successfully defended itself in the proceeding below"). Should Barclays proceed in that fashion it would be neither novel nor remarkable. For example, *In re Investbank PSC*, No. 20 MISC. 260 (AT), 2020 WL 8512850, at *1 (S.D.N.Y. Dec. 30, 2020), Judge Torres granted a Section 1782 applicant's request to subpoena sixteen banks in this District – including Barclays Bank PLC and several other foreign banks. In doing so, Judge Torres ordered the applicant to file reports with the Court every thirty days thereafter "describing the status of its subpoenas and whether discovery is sufficiently complete to permit service on the potential defendants [in the Emirate proceeding that applicant planned to commence]." *Id.* 2020 WL 8512850, at *2. Four months later, the applicant reported to the Court that all but two of the respondents had produced responsive documents. *See* ECF No. 13, *In re Investbank PSC*, No. 20 MISC. 260 (AT) (S.D.N.Y. filed April 30, 2021) (explaining productions received from all respondents except Clearing House Payment Company LLC and The Bank of New York Mellon).[12]

Finally, it should be noted Barclays is aware of the Batistas Motion and to date has not joined therein. On May 4, 2022, SPS served the Subpoena on Barclays in accordance with the Court's April 26, 2022 *Ex Parte* Order. *See* Affidavit of Service (ECF Nos. 24). On May, 18, 2022, SPS's undersigned counsel received a letter response from the Americas Head of Civil Litigation at Barclays, Ms. Jimenez Train. *See* Hollembeak Decl. ¶ 7. In her letter, Ms. Jimenez Train, writing "[o]n behalf of Barclays USA, Inc."[13] set forth Barclays' responses and

---

[12] A copy of this report is being provided contemporaneously herewith as Exhibit A to the Hollembeak Declaration.

[13] The Batistas make much of fact that Barclays USA, Inc. is a dissolved entity. *See* Batistas MoL at 13-14; Bento Declaration [ECF no. 23], Exhibits 6, 7. Ms. Jimenez Train confirms the entity's dissolved status in her letter as well, but nevertheless accepted service of SPS's subpoena, responded thereto and expressed a willingness to meet and confer with SPS to discuss the production of documents requested by the Subpoena as is. *See* Hollembeak Decl. ¶ 8. In any event, SPS did not intentionally name a dissolved domestic entity in lieu of a non-

objections to SPS's subpoena, after which she stated that "Barclays is willing to meet and confer to discuss the production of certain categories of non-privileged documents […]." *See* Hollembeak Decl. ¶ 8.  On May 25, 2022, the parties met and conferred during which, Ms. Jimenez Train noted that subsequent to her letter, the Batistas had been allowed to intervene and, as a result, that Barclays did not intend to produce any documents until the Batistas' Motion had been resolved.  *See* Hollembeak Decl. ¶ 12.  In response, SPS's undersigned counsel urged Ms. Jimenez Train that, for the sake of efficiency and clarity, Barclays should formally join in the Batistas' Motion to the extent it wanted SPS's subpoena quashed on any of the same grounds.  *See* Hollembeak Decl. ¶ 13.  As of the date hereof, Barclays has taken no position on the Motion.  *See* Hollembeak Decl. ¶ 14.

For the foregoing reasons, SPS submits the record before the Court sufficiently establishes at this stage of its Section 1782 action that Barclays is "found" in this District.

### B.   CONTRARY TO THE BATISTAS' CLAIMS, ALL FOUR DISCRETIONARY *INTEL* FACTORS WEIGH IN FAVOR OF PERMITTING REQUESTED DISCOVERY

#### 1.   *Intel* 1:  Respondents Are Not Participants In Foreign Proceeding

The first *Intel* factor favors a Section 1782 applicant where the subpoena recipients are not participants in the foreign proceeding.  It is indisputable that neither Respondent will be a participant in the Contemplated Proceeding to be brought before the CVM.  As a result, this factor weighs in favor of SPS's requested discovery.

The Batistas allege in passing that "[t]he CVM may […] issue subpoenas to obtain information from the Respondents."  *See* Batistas MoL at 15 (citing Renteria Decl. ¶¶ 54-55).

---

US entity in an attempt to limit Barclays ability to raise a "found" factor objection. Nevertheless, SPS reserves the right to amend its Application or commence a new Section 1782 proceeding to name a different Barclays entity or entities.  However, in an effort not to further tax judicial and party resources, SPS does not intend to do so unless necessary.  For the reasons, stated above, SPS submits the Order should not be vacated solely on the basis of the Batistas' opposition.

But the relevant paragraphs of the Renteria Declaration make no reference to Respondent Barclays at all, and suggest no plausible scenario by which the CVM itself could compel discovery from either Respondent.  The Batistas cannot turn the first *Intel* factor in their favor where they "have not offered any evidence that the [CVM] can compel production of documents located in New York from the Banks when the Banks are not parties to the proceeding." *Furstenberg Fin. SAS*, 2018 WL 3392882, at *4.

The remainder of the Batistas argument – that the CVM has the ability to obtain some unknown quantum of information from the Batistas themselves, "*various institutions*" within the Brazilian government, or Respondent JPM's Brazilian affiliate – is beside the point.  *See* Batistas MoL at 15.  The focus of the first *Intel* factor is the foreign tribunal's ability (or lack thereof) to obtain *the same discovery* from *the same entities* being asked to provide it through a 1782 proceeding.  To argue otherwise, the Batistas selectively quote from case law in an attempt to ignore that focus and replace it with "whether the requested discovery is within the foreign tribunal's jurisdictional reach and thus accessible without § 1782 aid." *See* Batistas MoL at 14 (quoting *In re Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016)).  In *Gorsoan Ltd.*, the very next sentence of the order reads:  "Indisputably, [the objecting subpoena recipients] are not parties to the Cyprus proceedings, and so the first *Intel* factor weighs in favor of discovery against them."  *Id.*[14]  Thus, the Second Circuit clearly did not intend to de-emphasize the first *Intel* factor's specific focus on the relationship between the foreign proceeding and the Section 1782 discovery target(s), or to replace it with a focus on the foreign tribunal's ability to obtain similar discovery from other parties.

---

[14] Similarly, the Batistas left out the underlined portion below when quoting from *In re Postalis*, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018): "<u>Courts in this district have held that when a subsidiary is party to a foreign proceeding and the parent is the discovery target</u>, the first Intel factor weighs against granting the discovery application because the evidence sought is within the foreign tribunal's jurisdictional reach."  *See* Batistas MoL at 15.

Even if broader inquiry into the CVM's "jurisdictional reach" is appropriate, it should not be the theoretical exercise the Batistas suggest.  The Court's decision in *Porsche Automobil Holding* is instructive.  There, parties opposing Section 1782 discovery argued the applicant "may be able to obtain" the information it was seeking through the underlying German proceeding, which "required some disclosure." 2016 WL 702327, at *8.  In doing so, however, the opposing parties offered "no evidence concerning how long this process takes" and "no indication that the disclosures would be sufficiently broad to give Porsche all that it seeks in this Section 1782 proceeding."  *Id*.  The Court concluded the first *Intel* factor favored 1782 discovery.  *Id*.  Critically, the Court based its conclusion on what was likely to be *actually disclosed* in the German proceeding under the circumstances, not just what *could be disclosed* theoretically under Germany's civil law regime.  *Id*.

The same outcome is warranted here, where the Batistas' claims that the of foreign tribunal's ability to obtain discovery from the Respondents are even more speculative and conditional.  *See* Batistas MoL at 15 (asserting CVM "*may* obtain information relevant to SPS's hypothetical proceeding" and "*may* also leverage agreements with various institutions") (emphasis added).  For example, their declarant, Mr. Renteria, posits a serpentine hypothetical path: the CVM could turn to the Brazilian Prosecutor's Office (MPF), which in turn could work with Brazil's Secretariat of International Cooperation to contact "relevant North American authorities" under a US-Brazil mutual legal assistance treaty (MLAT) and obtain information from those authorities about the Respondents which would then be returned back down the chain to CVM.  *See* Renteria Decl. ¶¶ 60-65.  But neither Mr. Renteria nor the Batistas provide any evidence on the likelihood such a serpentine process would be successful, how long it would take, or that it would provide CVM with anywhere near the scope of evidence SPS can obtain in this proceeding.  Nor do they address the practical constraints on CVM investigations

generally due to its severe underfunding in recent years or suggest why those constraints will not be an issue in this case. *See* Suppl. Gonzalez Decl. ¶ 51, 59.

Furthermore, in light of the Batistas' admitted acts of bribery, history of failing to disclose information and ongoing refusal to admit any ownership or control over the Unifleish entities, no weight should be given to their self-serving suggestion that CVM could obtain all the information it needs from them. *See, e.g. Furstenberg Fin. SAS*, 2018 WL 3392882, at *6 (rejecting argument foreign court could obtain information from party before it alleged to be purposefully concealing his ownership interest in entities at heart of dispute, explaining "[Section 1782] petitioners therefore have reason to believe that [party's] own production may not be entirely forthcoming in regards to the ownership interest").

Finally, assuming, *arguendo*, all of the information SPS seeks could be obtained by the CVM, by direct subpoena or via the MLAT, this factor still would not weigh against granting Section 1782 discovery. Even where "there is no allegation that any document requested here is beyond the reach of the [foreign tribunal's] jurisdiction […] courts applying § 1782 have outright rejected a 'quasi-exhaustion' requirement." *Pfaff v. Deutsche Bank AG*, 2020 WL 3994824, at *11 (citing *Mees*, 793 F.3d at 303). *See also* Lucas V.M. Bento, *The Globalization of Discovery: The Law and Practice under 28 U.S.C. § 1782*, published by Kluwer Law International B.V. (2020), at §3.03[D] ("The existence of an MLAT between the United States and another state does not affect the availability of Section 1782 relief."). Accordingly, the first *Intel* factor cuts in favor of SPS.

## 2. *Intel* 2: CVM Will Be Receptive To U.S. Court Judicial Assistance

The law on the second *Intel* factor is clear: "District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance." *Porsche Automobil Holding*, 2016 WL 702327, at *8. "Courts have found such proof in cases where the foreign tribunal or government has written to the district court hearing

the application and expressly stated that it did not want the American court's help." *Id*. "The party opposing a Section 1782 application bears the burden of demonstrating that a foreign court would not be receptive to assistance from a U.S. court." *Id*.

The Batistas cannot meet that burden here. In fact, they admit the CVM is and will be "receptive to U.S. federal court judicial assistance." *See* Batistas MoL at 18. The few arguments they raise – that the Foreign Proceeding is not yet underway, and that once it is, the CVM has the discretion whether and how to investigate the allegations or request additional information – all speak to other statutory or discretionary factors and have been addressed by SPS elsewhere in this Opposition. Accordingly, the second *Intel* factor cuts in favor of SPS.

### 3.   *Intel* 3:  SPS Is Not Seeking To Circumvent Foreign Proof Gathering Restrictions

The third *Intel* factor turns on whether a Section 1782 applicant is attempting to circumvent "foreign proof gathering restrictions," which in this context "are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303, n.20 (emphasis in original). SPS is not seeking to circumvent assertions of privilege or any other such prohibitions under CVM regulation or applicable Brazilian law. Thus, the third *Intel* factor weighs in favor of granting its requested discovery.

The Batistas erect two arguments on this factor, both of which fall under scrutiny. First, they argue SPS's discovery requests are an attempt to "usurp" the CVM's "exclusive power" to decide "how to conduct its investigations and proceedings." *See* Batistas MoL at 18-19.[15]

---

[15] All of the decisions cited by the Batistas for support are distinguishable. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F.Supp.2d 101, 108 (D.D.C. 2010) (applicant circumvented arbitration rules it had agreed to which contained specific procedures to obtain information from non-parties that requried advance authorization by arbitration panel) *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, (2d Cir. 2004) (did not discuss third *Intel*

As an initial matter, however, it's worth noting the conflict between this and prior arguments the Batistas have made. In their arguments on the statutory "for use" and "interested person" factors, the Batistas insist that once SPS files its complaint with the CVM it "will not have significant participation rights" or the "practical ability to inject the requested information" therein. *See* Batistas MoL at 9-12. If that were true, it begs the question how SPS could use 1782 discovery to "usurp" the CVM's "exclusive power" over investigations and proceedings SPS has no right to participate in?

There is no reason to believe SPS will use the discovery it seeks in this proceeding to usurp anything. SPS intends to use the information and documents it obtains to include in its complaint to CVM (or in supplemental evidentiary submissions if the complaint has already been filed). The Batistas admit SPS can lawfully submit a complaint to the CVM and that the CVM has an entire process for handling the intake and disposition of such investor complaints. *See* Batistas MoL at 9. *Cf. In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the Lab. Ct. of Brazil*, 466 F. Supp. 2d 1020 (N.D. Ill. 2006) (no showing of attempt to circumvent where opposing party's own Brazilian lawyers "admit that a party may introduce evidence that comes into its possession after the trial has started"). Tellingly, the Batistas do not suggest that SPS can force the CVM to admit or give particular weight to any evidence it receives from SPS.

In fact, the record reflects that the CVM has full control over what evidence it admits and considers. That alone strongly suggests the Batistas circumvention argument lacks all

---

factor, but found second *Intel* factor weighed against discovery after receiving "specific requests from the German Ministry of Justice and Bonn Prosecutor to deny 1782 discovery because of concerns it would jeopardize ongoing German criminal investigation); *In re IPC Do Nordeste, LTDA, For an Ord. Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886, at *7 (E.D. Mich. Sept. 25, 2012) (holding third *Intel* factor weighed against discovery "regardless of what the Brazilian proof-gathering restrictions or other policies are" because applicant had commenced 1782 proceeding to obtain evidence from Dow Brasil's US parent company even though applicant was suing Dow Brasil in Brazilian Court and did not dispute evidence it sought was in Dow Brasil's possession).

merit.  *See generally Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir.2011) ("[S]ince the foreign court could always exclude the fruits of U.S. discovery, it seemed that allowing such discovery could only help, and not hurt, the foreign tribunal.") (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir.1995)).  In the separate pending CVM proceeding involving the Batistas, the CVM agreed to admit evidence submitted by SPS *only* (a) after considering and ultimately rejecting arguments against admission by the Batistas, and (b) with the express caveat that its admission decision did not mean the CVM necessarily would give any particular weight to the evidence in its ultimate resolution of the proceeding.  *See* Suppl. Gonzalez Decl. ¶¶ 23-29.  Furthermore, when rejecting one of the Batistas' arguments in its admission decision, the CVM acknowledged that SPS was seeking to obtain additional evidence for that proceeding in its pending 1782 action in Delaware, without giving any indication that SPS's efforts were improper or were circumventing its authority.  *See* Suppl. Gonzalez Decl. ¶ 26, n.11.  Clearly the CVM is capable of acting as its own evidentiary gate-keeper, a fact that weighs heavily in favor of allowing Section 1782 discovery.  *Cf. In re Accent Delight Int'l Ltd.*, 696 F. App'x 537, 539 (2d Cir. 2017) ("As to the third factor, the letter from the magistrate in Monaco, in which he stated that he would accept Petitioners' submission of the requested discovery, defeats Bouvier's argument that Petitioners' application was an attempt to circumvent the evidence-gathering policies of that country.").

Second, the Batistas argue SPS's discovery requests also seek to circumvent the jurisdiction of the CAM and JBS bylaws.  *See* Batistas MoL at 19-20.  To the extent this is a rehash of their suggestion SPS is really seeking evidence for use in the pending CAM Arbitrations, it is a red herring. *See* Cavalcanti Decl. ¶ 21. The Court would not even reach the Intel factors if it were not already satisfied SPS is seeking evidence "for use" in the Foreign Proceeding.  Moreover, one or more of the Batistas is party to each of the pending CAM Arbitrations and the JBS bylaws.  If SPS were truly violating those bylaws and circumventing

the Brazilian arbitrator's jurisdiction, the Batistas should raise that issue in the pending arbitrations or before other appropriate Brazilian authorities. They cannot do neither and expect this Court to vacate to Order based on the mere assertion that SPS is prohibited from seeking any discovery at all by an "inherent" obligation imposed by Brazilian arbitration law.

The Court should not take the bait:  "It is not incumbent on this Court to predict or construe substantive law in Brazil in order to determine if the discovery sought by [SPS] will be admissible in a Brazilian [CVM proceeding]."[16]  Moreover, "[t]he Supreme Court and the Second Circuit have made clear that the third *Intel* factor does not turn on whether the evidence sought in the U.S. proceeding would be available in the foreign proceeding."  *Porsche Automobil Holding*, 2016 WL 702327, at *8.  And if the Batistas believe any evidence should not be part of the Foreign Proceeding because it was improperly obtained, recent events in the pending CVM proceeding concerning the JBS-Bertin merger have demonstrated that (a) the Batistas will have ample opportunity to make that argument to the CVM, and (b) if the CVM agrees with them, it will either not admit the evidence or give it no weight in its ultimate resolution of the matter. For all these reasons, the third *Intel* factor cuts in SPS's favor.

### 4.    *Intel* 4:  SPS Subpoenas Are Not Unduly Intrusive Or Burdensome

The fourth and final I*ntel* factor focuses on the burden the requested Section 1782 discovery will place on the targets to be compelled by the Court's subpoena power to gather, review and produce documents and information.  Those targets here are the Respondents – *not* the Batistas.  Moreover, (a) both Respondents were served with their subpoenas on May 4, 2022; (b) both Respondents sent letters to SPS's counsel on May 18, 2022 setting forth their respective responses and objections; (c) both Respondents offered in their letter to meet and

---

[16] *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020); *see also In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican Court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if [applicant] is permitted to conduct the requested discovery first.").

confer to discuss production of requested documents; (d) both Respondents separately met and conferred with SPS's undersigned counsel; (e) both Respondents were urged by SPS's undersigned counsel, for the sake of efficiency and clarity, to formally join in the Batistas' Motion if and to the extent they wanted the Subpoena quashed on any of the same grounds; and (f) neither Respondent has appeared before the Court and/or taken a position on the Batistas' Motion as of the date hereof.  *See* Hollembeak Decl. ¶¶ 6-14.

Under these circumstances, the Batistas' attempt to defeat SPS's discovery requests is disingenuous and should not be countenanced.  *See, e.g.*, *In re Aso*, No. 19MC190JGKJLC, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) (holding Section 1782 subpoenas not unduly intrusive or burdonsome, and further stating "[i]t appears disingenuous for [party against whom discovery would be used] to protest the burden of the requests *addressed to the subpoena targets* when none of them have intervened (though they have all been served with the Application)") (emphasis in original).  The burden of production (costs, etc.) will be borne by SPS and the Respondents.  And if the Batistas truly have no ownership or control over the Unifleish entities and otherwise did not engage with them, Lunsville or Valdarco in any illicit transactions, nothing the Respondents disclose to SPS could be an intrusion or cause for concern.  In fact, only one document request (out of twelve) in SPS's Subpoenas references the Batistas, and does so merely as an attempt by SPS to minimize the burden on Respondents.[17]  In short, the Batistas have no legitimate basis to claim any burden or intrusion.

SPS should not have to defend the scope of its document requests at this stage, without dashes the true parties-in-interest joined before the Court.  Nevertheless the Batistas claims of

---

[17] Document Request No. 3 in both Subpoenas asks for "All documents and communications concerning [the Batistas] in connection with Lunsville, Valdarco, Unifleisch UK and/or Unifleisch SA, including documents sufficient to identify any transactions between those parties." *See* ECF No. 8 at 16, 31. SPS just as easily could have sought all documents and communications evidencing transactions between the Target Companies and "all counterparties" without any limiting references.

overreach, in addition to being self-serving, are patently overstated.  The Subpoenas are targeted requests asking two of the largest banks in the world for account records, related information and communications concerning only four entities.  *See* ECF No. 8 at 16-17, 31-32.  Concerning their temporal scope, the subpoenas requested documents dating back to the earliest known incorporation date among those four entitites (on or about May 9, 2001).  The Batistas have no one to blame but themselves for this timeframe.  By way of example only, less than two years ago the Batistas admitted to engaging in a bribary scheme spanning back to 2005, *see* ECF No. 6, Exhibit B (Plea Agreement), Attachment A ("Statement of Facts"), at ¶17, and they remain the subject of an ongoing CVM proceeding in which they have been charged with failing to disclose information regarding a merger that took place in 2009, *see* Renteria Decl. ¶ 12.  Under the circumstances, the temporal scope of the subpoenas is appropriate.  *See, e.g.*, *In re Aso*, 2019 WL 2345443, at *8 (rejecting argument that requests of Section 1782 applicant which sought "broad discovery from five entities across 22 years" were unduly burdensome and should be limited in temporal scope, especially becasue applicant had asserted plausible allegations that objecting party had secreted assets over same time period, and  none of the subpoenaed banks, including JPM, had raised objections).

In any event, the fact that neither Barclays nor JPM have joined in the Motion is "strong support" for this factor weighing in favor of SPS.  *Furstenberg Fin. SAS*, 2018 WL 3392882, at *7 (stating fact that none of subpoenaed banks, including JPM, objected to requests as unduly intrusive and burdensome is "strong support for finding in favor of the petitioners on this factor").  SPS is confident through the meet and confer process it can address any legitimate concerns the Respondents may have concerning the scope of documents requested.  Accordingly, the fourth Intel factor cuts in favor of SPS.

## II.    THE BATISTA LACK STANDING TO BRING MOTION TO QUASH, WHICH IN ANY EVENT SHOULD BE DENIED

A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520 (S.D.N.Y. 2016).   Applied in the context of a Section 1782 action, this means an entity against whom discovery will be used does not have standing to move to quash subpoenas served on unrelated entities. *See, e.g.*, *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, No. 17-CV-01287, 2017 WL 3386115, at *4 (N.D. Ill. Aug. 7, 2017).   In other words, if the Court denies the Batistas' request to vacate its April 26, 2022 *Ex Parte* Order, the Batistas do not get a second bite at the apple by nominally incorporating a request to quash the subpoenas into their Motion as well.

Nevertheless, for reasons already discussed above concerning the fourth *Intel* factor, the subpoenas are not unduly intrusive or burdensome and should not be quashed.   Should the Court for any reason disagree, SPS respectfully requests an opportunity to supplement the record to address any specific concerns raised by the Court or a party with standing to do so. The Second Circuit has instructed "that 'it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.'" *Porsche Automobil Holding*, 2016 WL 702327, at *9 (quoting *Mees*, 793 F.3d at 302). Accordingly, it would not be appropriate at this stage to quash the Subpoenas in their entirety.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## <u>CONCLUSION</u>

For the foregoing reasons, SPS respectfully requests that the Court enter an order denying the Motion in its entirety.

Dated:   June 20, 2022
          Omaha, Nebraska

                                   Respectfully submitted,

                                   **BAIRD HOLM LLP**

                                   */s/ Jeremy C. Hollembeak*
                                   Jeremy C. Hollembeak
                                   1700 Farnam Street, Suite 1500
                                   Omaha, NE 68102-2068
                                   Phone: 402.636.8317
                                   Email: jhollembeak@bairdholm.com

                                   *Attorneys for Petitioner SPS I Fundo De*
                                   *Investimento De Ações – Investimento No*
                                   *Exterior*