**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE *EX PARTE* APPLICATION OF
SPS I FUNDO DE INVESTIMENTO DE AÇÕES –
INVESTIMENTO NO EXTERIOR

                       *Petitioner,*

For an Order Pursuant to 28 U.S.C. § 1782 to Take
Discovery for use in Contemplated Proceeding in the
Federative Republic of Brazil.

Case No. 22-mc-00118-LAK

---

**SUPPLEMENTAL DECLARATION OF GUSTAVO MACHADO GONZALEZ**
**IN SUPPORT OF PETITIONER SPS I FUNDO DE INVESTIMENTO DE**
**ACÕES – INVESTIMENTO NO EXTERIOR'S MEMORANDUM OF LAW**
**IN OPPOSITION TO INTERVENOR'S MOTION TO VACTE THE COURT'S**
**<u>APRIL 26, 2022 *EX PARTE* ORDER AND TO QUASH THE SUBPOENAS</u>**



SUPPLEMENTAL DECLARATION OF
GUSTAVO MACHADO GONZALEZ

I, Gustavo Machado Gonzalez, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.      I previously submitted a declaration, dated April 20, 2022 (ECF No. 6, Ex. A) ("First Gonzalez Declaration"), in support of the request of SPS I Fundo de Investimento de Ações – Investimento no Exterior ("SPS") for entry of an order allowing it to take discovery for use in a proceeding in Brazil, pursuant to 28 U.S.C. § 1782 ("1782 Application").

2.      On June 3, 2022, Joesley Batista, Wesley Batista, JBS S.A. ("JBS") and J&F Investimentos S.A. (jointly, "Intervenors") filed a motion to vacate the Court's *ex parte* order, dated April 26, 2022, and to quash the subpoenas served pursuant to the 1782 Application. The motion of the Intervenors contains supporting documents, including a declaration of Mr. Pablo Renteria (ECF No. 22) ("Renteria Declaration") and a declaration of Mr. Lucas Bento (ECF No. 23) ("Bento Declaration").

3.      The motion of the Intervenors raises certain matters in connection with the First Gonzalez Declaration and Brazilian Law – more specifically, regulation and case law related to the Brazilian securities and exchange commission – *Comissão de Valores Mobiliários* ("CVM"). Accordingly, I hereby submit this second declaration for purposes of addressing those issues. This second declaration supplements and incorporates the First Gonzalez Declaration.

4.      All facts set forth in this declaration are based upon: (i) my personal knowledge; (ii) my review of the documents that SPS provided to me; and (iii) information obtained from SPS.

**The role of investors in the CVM administrative enforcement proceedings**

5.      I would like to start with some general comments regarding the participation of third parties – namely, investors – in administrative enforcement proceedings initiated by the CVM.



6.      Pursuant to Law No. 9,784/1999, which regulates the administrative proceedings within the scope of Federal Public Administration (of which the CVM is part[1]), the following persons are legitimated as interested parties in an administrative proceeding[2]:

> "I – individuals or legal entities that initiate it as holders of rights or individual interests or when exercising a representation right;
>
> II – those that, without having initiated the proceeding, have rights or interests that may be affected by the decision to be rendered;
>
> III – organizations and representative associations, in relation to collective rights and interests;
>
> IV – the persons or associations legally constituted, in relation to diffuse rights or interests."

7.      CVM Resolution No. 45/2021 – which currently regulates enforcement proceedings with the CVM – does not regulate participation rights of third parties in an enforcement proceeding. The absence of an express provision in CVM Resolution No. 45/2021 does not mean that CVM does not recognize that third parties may have a legitimate interest in administrative enforcement proceedings. In fact, CVM Resolution No. 45/2021 cannot contradict Law No. 9,784/1999 and CVM has, in a series of decisions, confirmed that third parties have participation rights in its administrative enforcement proceedings.

8.      In his declaration[3], Mr. Renteria makes reference to the March 17, 2020 decision of the Board of Commissioners of the CVM in PAS CVM 19957.005983/2019-18 ("PAS Argucia"). At the time, I was still a CVM Commissioner, and, in this capacity, I participated on such decision process.

9.      The March 17, 2020 decision in PAS Argucia discussed whether an investor could participate in an enforcement proceeding in the capacity of *amicus curiae*.

---

[1] CVM is a special federal entity associated to the Brazilian Ministry of Economy and, therefore, is part of the Federal Public Administration.

[2] Article 9 of Law No. 9,784/1999.

[3] *See* Renteria Declaration at ₱₱77 and 78.



10.     The CVM Commissioners concluded that the participation of the investor as an *amicus curiae* was not possible, considering the fact that the investor was not in a neutral position.

11.     Although the decision of March 17, 2020, in PAS Argucia, rejecting the participation as *amicus curiae*, was unanimous, the Commissioners made individual statements during the respective judgement session. Those statements clarified that the decision rejecting the participation as *amicus curiae* should <u>not</u> be interpreted as denying the right of third parties to participate in any proceedings with the CVM whatsoever.

12.     CVM Chairman Marcelo Barbosa expressed that the appellant, as an investor, had a personal interest in the case, since the result of administrative enforcement proceedings could impact – albeit indirectly – the legal sphere of investors of the company involved in the respective proceeding. And, as described below, in a subsequent decision Chairman Barbosa agreed with the participation of the same investor in that enforcement proceeding, as an interested third party who recommended several measures to the CVM.

13.     Commissioner Henrique Machado expressed that "the Commissioner in-charge, during the evidentiary phase of a proceeding, may allow manifestations of interested third parties, upon a reasoned decision, subject to appeal".

14.     In the same direction, I pointed out that "information provided by third parties – such as shareholders, director, officers, members of fiscal committees and auditors – are historically extremely important for the investigations conducted by CVM. It was also noted that the *amicus curiae* is only one of the manners by which third parties may participate in a proceeding, highlighting that Law No. 9,784/1999, which regulates the administrative proceedings within the scope of Federal Public Administration, sets forth several provisions regarding the participation of interested third parties in administrative proceedings.".

15.     Mr. Renteria makes reference to an excerpt of CVM Chairman Marcelo Barbosa's vote in the March 17, 2020 decision in PAS Argucia to claim that the CVM regulations do "not permit the participation of third parties in disciplinary proceedings"[4]. This is a wrong interpretation of the Chairman's vote. First, the excerpt of the Chairman's vote

---

[4] *See* Renteria Declaration at ¶¶78 and 79.

3



refers to the participation of a third party in the capacity of *amicus curiae*. Second, Chairman Barbosa highlighted that the Commissioner in-charge could request additional diligences, including as a result of instigation of investors. Third, such interpretation is contradicted by a subsequent decision in the same enforcement proceeding (the PAS Argucia), as described below.

16.     On March 9, 2021, the Board of Commissioners issued a second decision within PAS Argucia analyzing a request from the same investor to produce additional evidence (including the performance of diligences) in the context of such enforcement proceeding. In this second attempt, the investor did not request to be formally admitted as a party in the proceeding (as an *amicus curiae* or in any other capacity)[5].

17.     The March 9, 2021 decision clearly stated that, during any evidentiary phase[6], an investor that is not formally a party in the enforcement proceeding has the right to furnish additional evidence for the review of the Commissioner-in-charge, suggesting him or her additional diligences.

18.     On the March 9, 2021 decision in PAS Argucia, CVM Chairman Marcelo Barbosa stated the following:

> "2. Despite the Claimants not being parties in this Administrative Proceeding (nor act as *amicus curiae*, as already decided by the Board of Commissioners), they submitted a request for the production of evidence, based on article 42 of CVM Instruction No. 607, which provides that the Commissioner in-charge may 'determine, at any time, the performance of diligences, in addition to any of those required by the defendant in its defense'. The Defendants, in turn, defend, in summary, the unsuitability of the request, the illegitimacy of the person that presents it and the dispensability of the evidence required.
>
> 3. When dealing with the inadmissibility of the Claimants intervention as *amicus curiae*, I emphasized that the Commissioner in-charge of this Administrative Proceeding could

---

[5] A certified English translation of the decision issued on March 9, 2021, is attached hereto as Exhibit I.

[6] Pursuant to CVM regulation, after a commissioner is appointed as the Commissioner in-charge of a CVM enforcement proceeding, an evidentiary phase may begin. Upon the presentation of their defenses, the defendants may ask to produce additional evidence that complements those that they have presented with their defenses (article 29 of CVM Resolution No. 45/2021). The Commissioner-in-charge must decide on any requests of the defendants in connection with evidence production (article 43 of CVM Resolution No. 45/2021) and has the prerogative to request, at any time, additional diligences that he or she deems to be useful for the decision of the case (article 42 of CVM Resolution No. 45/2021).



request additional diligences, after a more in-depth analysis of the case, including as a result of instigation of the claimants. As such diligences can be determined irrespective of the intention of the parties, I see no reason to simply ignore the allegedly controversial points, brought by the Claimants, just because they were presented by a third party which is not part of this proceeding. More than that: ruling out the need of further evidence production on those grounds would mean nothing less than to disregard a decision of the Board of Commissioners in this same proceeding.

4. In my opinion, if the evidence required is consistent with the object of the proceeding, capable of resolving controversial points and the request is duly substantiated, the Commissioner in-charge may, in light of the arguments presented, decide in favor of further evidence production – as long as, of course, the principles of adversarial system and ample defense are respected –, taking into consideration the room for discretion conferred by article 42 of CVM Instruction No. 607/2019."[7]

19.      Accordingly, on the decision issued on March 9, 2021, in PAS Argucia, the Board of Commissioners granted the following requests made by the investor concerning the production of evidence: (i) the inclusion of documents submitted by the investor into the docket of the enforcement proceeding; and (ii) the performance of diligences by the relevant CVM unit in order to obtain certain additional documents from third parties, to be included into the proceeding.

20.      Such decision considered that such additional evidence could contribute to the formation of the conviction of the Board of Commissioners to rule a final decision on the case – to be rendered after the defendants were able to make their own statements on the new evidence.

21.      The documents filed by the Intervenors also refer to SPS intervention on PAS 19957.008434/2019-03, in which Intervenors Joesley Batista and Wesley Batista, among

---

[7] CVM Instruction No. 607/2019 mentioned by Chairman Marcelo Barbosa was replaced by CVM Resolution No. 45/2021, which currently regulates enforcement proceedings with the CVM. Nevertheless, such replacement was only due to an administrative/procedural matter (CVM was statutorily required to replace an "instruction" with a "resolution"), and the content of CVM Resolution No. 45/2021 maintains the substance of CVM Instruction No. 607/2019. Therefore, such replacement has absolutely no impact on the current understanding of the CVM on third-party participation on administrative proceedings, which was formed based on CVM case law.



other defendants, are accused of engaging in a fraudulent transaction (*operação fraudulenta*) to defraud JBS and their minority shareholders, in the context of the merger of Bertin S.A. into JBS ("PAS Bertin").

22.     On September 4, 2020, after completion of its investigations, the CVM unit accused the defendants. The defendants were served with process and filed their defenses to the accusations. On June 1st, 2021, a CVM Commissioner (Mr. Alexandre Rangel) was appointed as the Commissioner in-charge of the PAS Bertin.

23.     On October 22, 2021, SPS filed a formal petition in the PAS Bertin presenting additional evidence to the Commissioner in-charge[8]. In its petition, SPS requested the Commissioner-in-charge to (i) consider the information and documents presented in the petition; (ii) summon the defendants to opine on such information and documents; and (iii) determine further additional actions that Mr. Rangel would deem necessary.

24.     It is important to emphasize that SPS did not request to be a formal party to PAS Bertin, as, pursuant to Law No. 9,784/1999 and in accordance with the CVM March 9, 2021 decision in PAS Argucia, an investor does not need to be formally admitted as a party in an enforcement proceeding in order to request the production of additional evidence.

25.     Differently than suggested by Mr. Renteria[9], the orders issued by the Commissioner-in-charge (Mr. Alexandre Rangel) on December 30, 2021, April 20, 2022, and May 13, 2022, as a matter of fact, recognized SPS as an interested third party in PAS Bertin (despite not being a formal party), which allowed for the inclusion of the additional evidence produced by SPS into the docket of the case.[10]

26.     In the order of December 30, 2021, the Commissioner-in-charge highlighted the following: (i) that the Brazilian Federal Constitution grants all persons the right of invoking the attention of the Public Authority regarding an issue or situation; and (ii) that "Law No. 9,784/1999 – which relates to the administrative proceedings within the scope of Federal Public Administration, subsequently applicable to the administrative disciplinary

---

[8] *See* First Gonzalez Declaration at ¶25.

[9] *See* Renteria Declaration at ¶¶13 – 15.

[10] Certified English Translations of the of the December 30, 2021, April 20, 2022, and May 13, 2022 decisions are attached hereto as Exhibits II, III and IV, respectively.



proceedings pending before the CVM – contains a range of provisions regarding the participation of interested parties in proceedings, in particular acknowledging under Art. 9, Section II, thereof, being legitimized as interested parties 'those that, without having commenced proceedings, have rights or interests that may be affected by the decision to be adopted'"[11].

27.     In the order of April 20, 2022, when deciding to admit the inclusion of the additional evidence provided by SPS into the docket of the case, the Commissioner-in-charge emphasized that such evidence "consists in a document that has a relationship, pertinence and connection with the object and matters discussed in this Proceeding". Accordingly, the essence of the reasoning of the Commissioner-in-charge to admit the evidence submitted by SPS was not the mere fact the document was public[12] – as Mr. Renteria suggests[13] –, but the pertinence of such evidence with the object of PAS Bertin.

28.     The decisions issued by the Commissioner-in-charge of PAS Bertin were, therefore, completely in line with the second decision issued on PAS Argucia (on March 9, 2021), which set the current understanding of the CVM in connection with the participation of interested third parties in CVM administrative proceedings, to produce evidence. As the investor in PAS Argucia, SPS was allowed to participate in PAS Bertin as an interested third party, and the evidence presented by SPS was maintained into the docket of PAS Bertin, considering its pertinence with the proceeding.

29.     The declaration of Mr. Renteria attached as Exhibit 5 of Bento Declaration emphasized on several occasions that any order of the Commissioner-in-charge in PAS Bertin in favor of SPS's participation in the proceeding was subject to appeal to the CVM

---

[11] It is worth noting that, in the order of December 30, 2021, the Commissioner-in-charge briefly addresses an argument made by the defendants raising doubts in connection with SPS's discovery proceeding pursuant to 28 U.S.C. § 1782, before Delaware courts, for obtaining evidence for use in PAS Bertin. In this regard, the Commissioner-in-charge stated that "any acts performed by the Fund in other jurisdictions do not have the capacity to suppress or prevent its constitutionally granted right to petition". This indicates that the Commissioner-in-charge is aware of the existence of the discovery proceeding before Delaware courts and makes no objections against it.

[12] And, although the document that SPS submitted was already public, it was not part of the record or otherwise subject to contemplation by CVM prior to SPS's submission.

[13] *See* Renteria Declaration at ¶14.



Board of Commissioners[14]. Nevertheless, it is worth noting that none of the abovementioned orders issued by the Commissioner-in-charge in PAS Bertin (on December 30, 2021, April 20, 2022, and May 13, 2022) were subject to an appeal by the Batistas to the Board of Commissioners of the CVM. In my opinion, the Batistas have strategically chosen not to appeal these orders to prevent an additional decision (by the Board of Commissioners) from confirming the status of SPS as an interested third party in PAS Bertin.

**Claimants' participation in CVM enforcement proceedings**

30.     For clarity's sake, I would like to highlight that SPS role in the new proceeding would be different from the role of the investors in the PAS Argucia and PAS Bertin referred above.

31.     The participation of investors in both enforcement proceedings was discussed in a context in which an accusation by the relevant CVM units had already been made and the defendants had presented their defenses[15].

32.     The decisions rendered on PAS Argucia and PAS Bertin to admit further evidence from interested third parties, as a matter of fact, reflect a legitimate concern of the Board of Commissioners to promote an adequate and comprehensive set of evidence for the formation of their conviction in the decision-making process, admitting additional evident even after the CVM unit in charge of bringing the accusation had perceived to exist sufficient evidence for an accusation, provided that the right of the defendants to make their own statements on any new evidence is respected[16].

33.     The present situation is substantially different as the investor is preparing a complaint to the CVM.

34.     The possibility of an investor to file a complaint to the CVM or to participate in an administrative proceeding arising from such complaint (*i.e.* prior to any accusation) is

---

[14] *See* ¶¶28, 30, 32, 38 and 69 of Mr. Renteria's declaration attached as Exhibit 5 of Bento Declaration.

[15] *See* First Gonzalez Declaration at ¶¶16 – 18.

[16] As mentioned by CVM Chairman, Marcelo Barbosa, in the decision of March 9, 2021, in PAS Argucia: "if the evidence required is consistent with the object of the proceeding, capable of resolving controversial points and the request is duly substantiated, the Commissioner in-charge may, in light of the arguments presented, decide in favor of further evidence production – as long as, of course, the principles of adversarial system and ample defense are respected".



even more evident. There is no question as to an investor's right to file a complaint with the CVM, which even has a complaint channel and a specific CVM unit designed to receive information from third parties regarding possible irregularities.

35.    The investor who filed a complaint will be an interested third party[17]. As an interested third parties, investors may participate in administrative proceedings pending before the CVM in various forms. The investor may, for instance, submit documents, expose clarifications, and suggest additional diligences for the appreciation of the CVM. Any petitions presented by an investor must be reviewed and the investor will receive a response to its submission[18].

36.    A decision of a CVM unit not to pursue an accusation, upon a complaint made by an investor, may even be subject to an appeal by the respective investor to the Board of Commissioners. Considering the decision of the Board of Commissioners, the CVM unit may perform further investigations/analyses on the matter and, as applicable, revert its initial decision not to bring charges.

37.    For instance, PAS CVM RJ2018/8272, decided on March 23, 2021, was originated after an appeal made by an investor to the Board of Commissioners against a decision of a CVM unit not to pursue an accusation relating to facts under a complaint.

38.    In that precedent, an investor filed a complaint with the CVM, which was investigated by the relevant CVM units. After their analyses and diligences, the CVM units, initially, decided not to pursue charges. Such decision was notified to the investor, which made additional suggestions of diligences to the CVM units. The CVM units decided that such diligences were not essential and notified the investor of such new decision, informing that the investor could file an appeal.

39.    Upon the appeal of the investor, the Board of Commissioners decided that the relevant CVM unit should further analyze certain aspects of the facts relating to the complaint. Based on such additional analysis, the CVM unit decided to bring charges against

---

[17] Pursuant to Law No. 9,784/1999, among others, individuals or legal entities that initiate an administrative proceeding as holders of rights or individual interests are legitimated as interested parties in the respective proceeding (article 9, item I).

[18] The CVM unit responsible for the interface with an investor that makes a complaint is usually the Division of Investors Protection and Guidance (*Superintendência de Proteção e Orientação aos Investidores* – SOI), which oversees investor protection and guidance (*see* Renteria Declaration at ¶¶32 – 35).



the defendant, which resulted in the initiation of the enforcement proceeding. The defendant was found guilty by the Board of Commissioners.

**SPS's drafted complaint**

40.      In the past few years, authorities in different jurisdictions have unveiled wrongdoings perpetrated by (or pursuant to the instructions of) the indirect controlling shareholders of JBS, the Batista family (the "Batistas")[19]. The fact that SPS has been taking different courses of action against the Batistas[20], under the applicable laws, demonstrates SPS's commitment and diligence to defend JBS's and its minority shareholders' interests, which have been severely harmed by the mentioned illicit conducts.

41.      The new complaint that SPS will submit to the CVM is based on various pieces of evidence, which have been put together by SPS, revealing an additional set of wrongdoings performed by the controlling shareholders of JBS, involving funds originated from the company. The evidence gathered by SPS includes, but is not limited to, information arising from the "FinCen Files"[21]. Those potential wrongdoings are likely unknown to the relevant authorities and are unrelated to the object of any other legal actions initiated by SPS against the Batistas in recent years.

42.      As a matter of fact, at the direction of SPS, before starting the discussions that lead to the filing of this 1782 Application, I have drafted a substantial complaint that, in its current form, has 115 paragraphs of information and allegations and references 15 different documents, each of which will be attached to the complaint as exhibits and provided to the CVM therewith.

43.      The draft complaint sets forth evidence for charges to be brought against the Batistas for violating Brazilian corporate and securities laws and CVM regulations, including for use of their control of JBS to cause it to engage in sham transactions; breach of fiduciary duties in management; and failure to properly disclose corporate transactions and their purposes.

---

[19] *See* First Gonzalez Declaration at ¶24.

[20] *See* First Gonzalez Declaration at ¶25.

[21] *See* First Gonzalez Declaration at ¶¶28 – 29.



44.    SPS has further directed me to wait to submit this complaint and exhibits to the CVM until it can obtain additional supporting evidence through its 1782 Application in New York.  In making that direction, SPS consulted me and I advised SPS that, although it would have the right to submit additional evidence to CVM after filing its complaint, it is preferable and would be most efficient and effective for SPS first to collect all reasonably available supporting evidence and include it in the original complaint before it is filed.

45.    Nevertheless, I believe the complaint and exhibits in their current form – without the addition of evidence SPS seeks to obtain by its 1782 Application – is in sufficient form and contains enough detailed allegations and support to file as is with the CVM, which would automatically trigger an administrative proceeding that in my opinion would cause the CVM to conduct further investigation and ultimately bring charges against JBS's controlling shareholders.

46.    Accordingly, differently than affirmed by Mr. Renteria, the complaint that SPS will submit is not speculative, groundless, nor unlikely to cause CVM to commence an enforcement proceeding[22]. Mr. Renteria has never had access to the existing draft complaint and, therefore, is not able to opine on the sufficiency of the support therein.

47.    As mentioned, SPS's complaint relates to a set of illicit conducts that is likely unknown to the CVM, which involve entities under the name "Unifleisch". For sake of clarity, the existing draft complaint gathers evidence that is not solely based on the journalistic operation named "FinCen Files", or the Barclays report thereunder. In any event, in my opinion, the CVM will not refuse information arising from the "FinCen Files". Based on my experience, the CVM gives press coverage on matters under its jurisdiction substantial importance. As a matter of fact, many of the CVM's investigations are initiated and/or supported by evidence extracted from media coverage.

48.    Moreover, the facts under the evidence already gathered by SPS, as well as the information sought by SPS by means of the 1782 Application, do not fall outside of CVM's jurisdiction. The complaint to be filed by SPS relates to funds originated from a Brazilian public company (JBS), which is unquestionably under the CVM's jurisdiction. Also, such facts relate to illicit actions that have an impact in the Brazilian capital markets

---

[22] *See* Renteria Declaration at ¶¶42, 48 and 53.



and publicly traded companies and constitute violations under Brazilian law. Therefore, those facts cause a legitimate interest of CVM to investigate them (and bring charges against violators), irrespective of whether such conducts were performed in Brazil or abroad. It is worth mentioning, that facts under SPS's complaint would not be time barred under Brazilian laws, considering that Law No. 9,873/1999 provides that when a fact also constitutes a crime, the statutes of limitations under the relevant criminal laws apply[23], which are more extensive than the general 5-year statute of limitation mentioned by Mr. Renteria[24].

49.     The fact that SPS was not a shareholder of JBS at the time of any of the facts under its complaint is not material for the assessment of whether SPS is an interested third party in any CVM administrative proceedings. I understand that some jurisdictions require shareholders to have held shares at a particular point in time to have standing[25]. I am not aware of any case where the CVM denied a shareholder its right to petition based on the fact that he or she was not a shareholder at the time of the wrongdoing. I understand that, except for the purposes of withdrawal rights, there is no requirement under Brazilian law regarding contemporaneous ownership, including for indemnification claims[26].

50.     In that context, in my opinion, the documents to be produced pursuant to the 1782 Application will further corroborate to a robust set of evidence, which would enable a thorough investigation by the CVM. As mentioned, although SPS is ready to file its drafted complaint, it wishes to submit the evidence to be obtained through the 1782 Application altogether in the complaint, in order to avoid several filings with the CVM, therefore, making the process more efficient and effective.

---

[23] Pursuant to article 1, §2, of Law No. 9,873/1999: "When a fact object of an enforcement action of the Administration also constitutes a crime, the statute of limitations will be governed by the term provided under the criminal law".

[24] *See* Renteria Declaration at ¶50(iv).

[25] *See* GELTER, Martin. Report on derivative litigation. OECD (2020), "Private enforcement of shareholder rights: A comparison of selected jurisdictions and policy alternatives for Brazil" at p. 35. Available at: http://www.oecd.org/corporate/shareholder-rights-brazil.htm. I understand that the discussions regarding this "contemporaneous ownership requirement" (to use Professor Gelter's terminology) usually take place when the shareholder is seeking indemnification, which is not the case in a CVM enforcement proceeding.

[26] Accordingly, "[t]here is no requirement under Brazilian law regarding contemporaneous and continuous ownership of stock of the harmed company at the time when the wrongdoing was committed or when the court decision is rendered." Guilherme Setoguti J. Pereira, Report on derivative litigation and collective arbitration in Brazil. OECD (2020), p. 123.



51.      Without the substantial set of evidence that SPS will submit together with its complaint, there is a material risk the CVM may not be able to satisfactorily pursue the breadth and depth of investigation warranted by the underlying facts of the controlling shareholders' actions[27]. That is the case, especially, since the CVM has been suffering from a major insufficiency of resources in recent years[28], which restrains its ability to sufficiently monitor all information on potential wrongdoings available and to perform broad investigations – especially, an international investigation with the cooperation of various local and foreign authorities, as the Intervenors suggest in their motion.

52.      The filing of a complaint by SPS with the CVM will result in the initiation of an administrative proceeding for the investigation of the relevant facts. This means that the CVM will certainly review and consider the evidence to be provided by SPS within an administrative proceeding. The relevant CVM units could, thereafter, bring charges against the controlling shareholders, resulting in the initiation of an administrative enforcement proceeding[29]. If the relevant CVM units decide not to investigate or bring charges initiating an enforcement proceeding, SPS will be able to appeal that decision to the respective CVM units and the Board of Commissioners.

53.      As I expressed in my statement in the decision of March 17, 2020, in PAS Argucia, information provided by third parties – such as shareholders, investors, directors, officers, members of fiscal committees and auditors – are, historically, extremely important for the investigations conducted by the CVM. Several enforcement proceedings initiated by the CVM began with complaints filed by third parties.

54.      In addition, SPS has a true interest in any such administrative proceedings with the CVM (whether for purposes of the relevant investigations, or any subsequent enforcement proceeding) in connection with the object of the drafted complaint. That arises from the fact that SPS is a minority shareholder of JBS whose interests have been harmed by the illicit conducts performed by the controlling shareholders of JBS. Such interest, in my opinion, is protected by Brazilian law.

---

[27] As mentioned in the First Gonzalez Declaration, the CVM has acknowledged that third party contribution is important and complementary to its enforcement activity (*see* First Gonzalez Declaration at ¶20 and 22).

[28] *See* First Gonzalez Declaration at ¶20.

[29] *See* First Gonzalez Declaration at ¶17.



55.    As mentioned, pursuant to Law No. 9,784/1999, among others, individuals or legal entities that initiate an administrative proceeding as holders of rights or individual interests are legitimated as interested parties in the respective proceeding[30].

56.    SPS's interests are contemplated by the mentioned provision of Law No. 9,784/1999. As a minority shareholder of JBS, SPS holds several interests that would cause it to file its drafted complaint with the CVM and, therefore, initiate and participate in the respective administrative proceedings in connection with such complaint.

57.    First, there is a true interest of market investors in uncovering wrongdoings and punishing violators. In fact, CVM's sanctioning powers focus on discouraging the practice of illegal acts, contributing to build and sustain a solid capital markets' environment, benefiting shareholders of publicly held companies and, ultimately, all current and future investors in the Brazilian capital markets.

58.    Secondly, certain penalties that CVM may apply because of an administrative proceeding may have effects on other market participants. For example, CVM may suspend the Batistas – who, admittedly, committed and caused JBS to commit a series of illicit acts – from acting as corporate officers or directors of any publicly-held companies, including JBS.

**Conclusion**

59.    Based on the above, in my view, the evidence to be obtained pursuant to the 1782 Application would further contribute to the robustness of the complaint to be filed by SPS, contributing to CVM's enforcement activity (especially, in a scenario of shortage of resources), in connection with potentially severe wrongdoings performed by the controlling shareholders of JBS to the detriment of the company and its minority shareholders.

60.    In my opinion, SPS would be an interested third party to any administrative proceedings in connection with the object of the complaint, and, consequently, SPS would be able to participate in such proceedings to provide evidence, in accordance with the current understanding under the mentioned CVM precedents.

61.    I declare under penalty of perjury that the foregoing is true and correct.

---

[30] Article 9, item I, of Law No. 9,784/1999.

14



Respectfully Submitted,

Executed on June 20, 2022.

15