

# EXHIBIT I



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 122

210.955(002) Livro 976 Fl. 122-146

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243----------------HEREBY CERTIFY IN GOOD FAITH-------------------------------------------------------------THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS:-------------------------------------------------------------------------**

-----------------------------------------------------------------

*(Coat of Arms)* ------------------------------------------------

**CVM [BRAZILIAN SECURITIES & EXCHANGE COMMISSION]** ----------

**CVM ADMINISTRATIVE SANCTIONING PROCEEDINGS Nº 19957.005983/2019-18** -------------------------------------

Reg. Col. no. 1675/20 -------------------------------------

-----------------------------------------------------------------

| Defendants | Attorneys |
|---|---|
| Aguinaldo Barbieri | Plínio Pinheiro Guimarães Neto OAB/RJ [Brazilian Bar Association/Rio de Janeiro section] no. 78.176 |
| André Augusto Telles Moreira | |
| Dailton Pedreira Cerqueira | |
| Fernando Arronte Villegas | |
| Francisco de Almeida Soares Júnior | |
| José Eduardo Pinheiro Santos Tanure | |
| Marcus Moreira de Almeida | |
| Mário José Ruiz-Tagle Larrain | |
| Rogério Aschermann Martins | |
| Sandro Kohler Marcondes | |
| Solange Maria Pinto Ribeiro | |
| Eduardo Capelastegui Saiz | Carlos Augusto Leite Junqueira de Siqueira OAB/RJ no. 114.289 |
| Eunice Rios Guimarães Batista | |
| Fulvio da Silva Marcondes Machado | |
| Eduardo Valdes Sanchez | Julian Fonseca Peña Chediak OAB/RJ no. 78.241 |
| Francesco Gaudio | |
| Luiz Carlos Faria Ribeiro | |
| Nélio Henriques Lima | |
| Wagner dos Reis | |



PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 123

----------------------------------------------------------

**Subject:** Request for production of evidence by third parties -------------------------------------------------

**Rapporteur:** Presidente Marcelo Barbosa --------------------

***Object and origin*** ------------------------------------------

**Report** -------------------------------------------------------

1. This is a request for production of evidence filed by Argucia Income Fundo de Investimento em Ações, Argucia Endowment Fundo de Investimento Multimercado, Sparta Fundo de Investimento em Ações and Galileu Fundo de Investimento Multimercado ("<u>Plaintiffs</u>"), funds managed by Argucia Capital Gestão de Recursos Ltda. ("<u>Argucia</u>") and Coelba's shareholders, to clarify issues they believe to be relevant to the outcome of this administrative penalty proceeding ("<u>PAS</u>"). ---------------------------------------

2. The PAS is investigating the liability of managers and members of the audit committee of Companhia de Eletricidade do Estado da Bahia ("<u>Company</u>" or "<u>Coelba</u>") for alleged irregularities in the Company's capital increase transactions approved on 07.20.2017, 01.26.2018 and 06.08.2018. ------------------------------------------

3. The accusation has its origin in investigations conducted within the scope of CVM Case No. 19957.007943/2018-20, filed as a result of a complaint filed by funds managed by Argucia, in which they alleged, in short, that "*in three consecutive capital increases, in the short period of 1 (one) year, blatantly illegal acts were practiced with the sole purpose of promoting the underpricing of the price of issue of the Company's*



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

*shares*", whose effect would have been the "*unjustified dilution of the former shareholders*" ("Complaint")[1].-------
[1] Doc. SEI 0577604, p. 3. --------------------------------
 ------------------------------------------------------------
4. After analyzing the Claim and conducting its investigations, the Corporate Relations Superintendence ("Prosecution") considered that some of the conduct mentioned by the claimants presented sufficient indications of authorship and materiality for the formulation of an accusation against the defendants. ------
5. Considering that the request for production of evidence addresses merit arguments related to the capital increase transaction that are the subject of the PAS, it is initially worth recalling the factual context on which the Accusation was based. -------------------------------------
***Transaction questioned in this PAS*** -----------------------
6. On 07.20.2017, Coelba's board of directors approved a capital increase, within the limit of the authorized capital, at a price of BRL15.71 per share, set based on Coelba's shareholders' equity as of 12.31.2016 ("First Capital Increase"). --------------------------------------
7. To justify the criterion chosen to fix the price of the shares, Coelba's managers argued that the stock market quotation (art. 170, §1, item III) would not be the most appropriate, in view of the low percentage of outstanding shares and the reduced trading history[2]. They also argued that the prospect of future profitability of the Company (art. 170, §1, clause I) would not be a good parameter either, given Coelba's leverage at the time and the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 125

absence of other means of capitalization in the very short term[3]. ---------------------------------------------------

[2]  According to Coelba's Notice to Shareholders of 07.20.2017: "[i]n the case of the company, the percentage of pulverization of its shares is very small (1.37%) and the share trading history shows that in the last 5 years an average of 120 annual trading of common shares with an average volume traded per year of BRL 5 million and 70 annual trades of class A preferred shares, with an average volume traded per year of BRL 570 thousand (source Bloomberg) were carried out. These volumes represent, respectively, 0.2% and 0.1% of the total amount in reais of the company's ON and PNA shares. Therefore, to the extent that the market for this security has a low negotiability index, the "quotation" parameter is no longer of great significance, and the other two parameters (Asset Value and Prospects of Profitability) emerge as the only ones worthy of consideration in setting the price of issue." ---------------------------------------------------

[3] According to the Notice to Shareholders of the Company dated 07.20.2017: "[w]ith regard to the Company's "Prospects of Profitability" parameter, considering (i) Coelba's momentary leverage situation and (ii) the absence of other means of capitalization in the very short term, within the parameters of costs and deadlines necessary to meet its commitments, including to creditors, its managers consider that the equity value should prevail as a parameter for determining the value for purposes of the capitalization proposed herein." --------------------------

---------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 126

8. However, for the Prosecution, the choice of this criterion was not justified in detail. According to its understanding, the explanations provided by the Company to justify its choice (referring to financial obligations, the tariff revision cycle, the absence of other means of capitalization in the very short term to face commitments with creditors) could explain Coelba's need for capitalization, but would not serve the purposes of art. 170, §7, of Act nº 6.404/19764. Thus, even though the justification regarding the market price (i.e., the low liquidity of Coelba's shares) was sufficient, the Prosecution considered that management failed to demonstrate why the future profitability perspective criterion could not be used at that time. -----------------
4 "Art. 170 (...) § 7 The proposal for the capital increase shall clarify the criteria adopted, pursuant to § 1 of this article, justifying in detail the economic aspects that determined its choice" -------------------------------
 ------------------------------------------------------------
9. When verifying the alleged non-compliance of art. 170, §7, of Act 6,404/1976, the Prosecution concluded that the members of Coelba's Board of Directors and Executive Board at the time of the First Capital Increase should also be held liable for breach of their duty of care. In addition, since Coelba's audit committee members were in favor of the First Capital Increase, the Prosecution understood that they should be held responsible for the violation of art. 1535 c/w [combined with] arts. 166, §2 6, and 170, §7, of Act nº 6.404/1976. -------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

[5] "Art. 153. The manager of the company must employ, in the performance of his duties, the care and diligence that every active and upright man is wont to employ in the management of his own affairs." --------------------------
[6] "Art. 166 (...) § 2 The audit committee, if functioning, shall, except in the cases of number III, be mandatorily heard before the resolution on the capital increase." -----
--------------------------------------------------------

10. On 01.26.2018, a new extraordinary general meeting of Coelba had already been held to resolve on another capital increase of the Company ("Second Capital Increase"). At that time, the management had chosen to use, as a criterion for setting the price of issue of the shares, Coelba's future profitability prospects, calculated from an appraisal report prepared by an independent advisor ("Appraisal Report")[7]. -------------------------------------
[7] For the analysis of the present request, it is sufficient to point out that the Appraisal Report calculated the economic value of the Company's shares by means of the discounted cash flow method, whose methodology presupposes the application of a discount rate, determined by the weighted average cost of capital (WACC). The WACC calculation, in turn, demands, among other elements, the calculation of the beta coefficient. ----------------------
--------------------------------------------------------

11. However, in the technical area's view, the EAppraisal Report presented "*objective technical inconsistencies*" [8], which should have been identified by the Company's managers. To this effect, it points out that the beta[9] attributed to Coelba would be high, which would have





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

caused a reduction in the economic value per share determined in the Appraisal Report. -----------------------
[8] Cf. §82 of the indictment. -----------------------------
[9] Beta is a relative measure of non-diversifiable risk - that is, it indicates the degree of variability of an asset's return in response to a change in market return. According to Aswath Damodaran: "[i]*n the CAPM, the beta of an investment is the risk that the investment adds to a market portfolio"* *(Investment Valuation: Tools and Techniques for Determining the Value of Any Asset*. 3rd Edition. New Jersey: WILEY, 2012, p 183). This coefficient, in turn, is multiplied by a risk premium to calculate the cost of equity of an investment (Ke), from the CAPM *(Capital Asset Pricing Model*) model. With the cost of equity capital one can then determine the weighted average cost of capital (WACC) and consequently the discount rate applied in the discounted cash flow method. -
-----------------------------------------------------------
12. In the understanding of the technical area, although the discussion about this coefficient is complex, the allegedly atypical value of the beta adopted, as opposed to the values that were usually employed by the Company[10], added to the context of questioning by plaintiffs, should be understood by the managers as warning signs, demanding, therefore, a more detailed analysis of the assumptions adopted in the Appraisal Report. -------------------------
[10] According to the Indictment, the "cost of capital, in turn, cannot be dissociated from the *valuation of* the company. If the company systematically uses the capital it obtains in such a way as to obtain returns lower than the



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 129

cost with which it remunerates the capital providers, its market value is reduced and, in the limit, its access to this capital ceases to exist. On the other hand, if the company employs the capital in a way that generates returns greater than the costs incurred to access this capital, its market value increases. ----------------------

For the purposes of this case, the relevance of these considerations is that if there were indications that Coelba's management had been working with a cost of equity capital of 17.9% per year, the BNP Report may not have drawn their attention. However, Coelba produced no such data and implied that its activities are routinely conducted without regard to the cost of capital, which is in itself evidence of negligent conduct" (§§101-102 of the indictment). ------------------------------------------------

 -----------------------------------------------------------

13. Thus, by approving the price of issue of the shares in the Second Capital Increase based on the Appraisal Report, Coelba's managers and board members would have failed to observe art. 153 combined with art. 170, §1, both from Act n° 6.404/1976[11]. -------------------------------------------

[11] Regarding the members of Coelba's audit committee, even though they have pronounced favorably on the Second Capital Increase, the Prosecution understood that, since it is not a management body, the thesis that they would not be aware that the Company's cost of capital indicated in the Appraisal Report would present inconsistencies would be plausible. In other words, for them, there would be no warning signs that would require a deeper analysis of the subject. -------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

------------------------------------------------------------
14. Finally, on 06.08.2018 Coelba's new capital increase
was approved ("<u>Third Capital Increase</u>"). To set the price
of issue of the shares, Coelba's management adopted the
same economic value indicated in the Appraisal Report,
used in the Second Capital Increase. ----------------------
15. The Prosecution understands that the lack of updating
the price per share by the cost of capital calculated in
the Second Capital Increase would lead to the liability of
Coelba's managers[12]. For the technical area, even if the
price of issue of the shares had been correctly set in
that transaction, the Appraisal Report could not be
automatically reused in the Third Capital Increase, since
the assumptions adopted to evaluate the Company would have
changed in the period between one transaction and the
other. -------------------------------------------------------
[12] §145 of the indictment. --------------------------------
------------------------------------------------------------
16. In view of this, the technical area sustains the
accountability of the administrators, for violation of
art. 153 c/c art. 170, §1, and of the members of Coelba's
audit committee, for violation of art. 153 c/c art. 162,
§2, and to art. 170, §1, all of Act 6.404/1976. -----------
***Request for production of evidence*** ------------------------
17. In view of the accusations made, as well as the
arguments presented in the Defendants' defenses[13],
Plaintiffs filed a request for the production of evidence,
under the argument that, pursuant to art. 42 of CVM
Instruction No. 607/2019, the rapporteur of the proceeding
has the prerogative to produce the evidence he deems





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

useful to clarify the facts under discussion, "in *addition to those eventually requested by the accused in his defense*." ----------------------------------------------
[13] Docs. SEI 0870592, 0870604 and 0870732. -----------------
 ----------------------------------------------------------
18. In this regard, they request, initially, that the Company be ordered to provide a list of shareholders who did not subscribe to shares in the First Capital Increase, indicating the number of shares to which they would be entitled to subscribe. ------------------------------------
19. This is because, according to Plaintiffs, the Defendants seek to mislead the Panel by asserting that the First Capital Increase was attended by 99.84% of Coelba's capital stock - and, therefore, there would be no unjustified dilution in this case. In his view, such percentage "*masks the fact* that a significant *part of the above subscription occurred within the scope of the exercise of subscription rights to the* shares not subscribed*"*[14]. --------------------------------------------
[14] Doc. SEI 1105757, p. 3 - highlights omitted. As Plaintiffs have ascertained, based on public data, at least 37% of the shares owned by minority shareholders have not exercised their subscription right - not counting any shareholders who have assigned this right. ------------
 ----------------------------------------------------------
20. Plaintiffs also challenge some explanations, given by the Defendants, with the purpose of ruling out the application of the future profitability perspective criterion to define the price of issue of the shares in the First Capital Increase, and to "*provide the consulting*





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 132

*company hired to issue an opinion with the elements that would allow it to corroborate the narrative that the identified WACC would be correct"* [15] ("<u>Technical Opinion</u>").
[15] Doc. 1105757, p. 5.-------------------------------------
------------------------------------------------------------
21. For the Plaintiffs, the Company's *rating* reports issued in the period from 2016 to 2018 demonstrate that Coelba was not in the debt situation presented by the Defendants and, more than that, the debt existing at the time would not lead to the conclusions sustained by them. -
22. In addition, they point out that, at the time the First Capital Increase was carried out, Neoenergia S.A. ("<u>Neoenergia</u>"), Coelba's[16] controlling shareholder, was in the midst of a public offering registration process. Although it withdrew the offer, Plaintiffs allege that "*preparatory meetings were held with sell-side analysts on its business plan and pilot fishing meetings with investors*"[17] as well as *investor education* meetings and *roadshows* with Company executives. ------------------------
[16] It is worth noting that, according to Plaintiffs, Coelba's administrative structure largely replicated Neoenergia's, with several Defendants accumulating functions in both companies. -----------------------------
[17] Doc. 1105757, p. 6.-------------------------------------
------------------------------------------------------------
23. On those occasions, information about Coelba (Neoenergia's relevant asset) would have been presented, which, according to Plaintiffs, "*directly contradicts the assumptions that are being presented at this moment*"[18]. At a meeting held in November 2017, for example, Neoenergia



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 133

executives (who also held positions in the Company) reportedly presented information that was at odds with that adopted as assumptions for the conclusions of the Technical Opinion. Plaintiffs even point out that, if requested by the Municipality, they could testify about the information that was provided at that meeting, as well as analyze its impact on the issues discussed in this PAS.
[18] Doc. 1105757, p. 6.------------------------------------
-----------------------------------------------------------
24. In view of this, they request (i) said *rating* reports be attached to the records of this PAS, "*proving the financial situation and indebtedness of the Company, at the time of the Capital Increases*"[19]; (ii) Neoenergia and the then coordinator of the offer be notified to provide the recording or transcript of the *NetRoadshow*(s) held in November 2017; and (iii) the personal deposition of "the *IPO coordinators' analysts to confirm whether the information provided by the Company's Managers and the Defendants, in the context of the IPO process, corresponds to the assumptions now being provided in the Defense*"[20] be granted. -------------------------------------------------
[19] Doc. 1105757, p. 6------------------------------------
[20] Doc. SEI 1105757, p. 7. Plaintiffs present the following questions that could be answered by the analysts "has Neoenergia presented a business plan containing estimates of items such as Revenue, Ebitda and RAB for the following years? On what date were these estimates presented by Neoenergia? The estimates presented contained estimates segregated by subsidiaries, in particular Coelba? In said business plan were growth estimates for Coelba's RAB,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

especially related to Coelba's fifth tariff revision cycle, presented? What was the trust of the administrators regarding the tariff revision and notes in the tariff revision of Coelba and Cosern? Did the Analysts make fair value estimates for Neoenergia and its subsidiaries, in particular Coelba? What is the cost of capital (KE and WACC) used in its valuation? What is the fair value found in your valuation of the Company and its subsidiaries, in particular Coelba? SEI 1105757, p. 7). -------------------- ----------------------------------------------------------

25. Finally, Plaintiffs claim that the Technical Report, used to support several arguments in the defense, especially regarding the adequacy of the criteria adopted to set the price of issue in the First Capital Increase and the methodology used in the Appraisal Report, presents "*serious technical and conceptual mistakes*"[21], which could be clarified by them. In this regard, they mention, for example: --------------------------------------------------

[21] Doc SEI 1105757, p. 8. ----------------------------------- ----------------------------------------------------------

"the serious and unsurpassable inconsistency between a) considering adequate the choice of methodology, as used by BNP, to estimate the Beta in the Appraisal Report; b) the variation of the Beta estimate generated by this same methodology on the dates of the respective capital increases; c) and what is expected of a consistent Beta estimate in light of the information provided, especially when it is stated in the argumentation that there would have been no relevant change in Coelba's and the distribution sector's risk between the Second and Third





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 135

Capital Increases, that would justify a change in relevant assumptions "[22]----------------------------------------
[22] Doc. SEI 105757, p. 8. Plaintiffs also (i) disagree with the Technical Report's argument that the factor model would naturally generate higher betas; (ii) argue that the use of a regional model would be a recommendation of MSCIBarra, disregarded by the Appraisal Report and the Technical Report; and (iii) assert that the Technical Report, in addressing the uncertainties related to the criteria for pricing the shares in the First Capital Increase, is based on certain uncertainties that would have little impact on the Company's valuation, but does not address the increase in its net asset base. -----------
-----------------------------------------------------------
26. Thus, understanding that they could help in the analysis related to the Appraisal Report and the alleged inconsistencies in the Technical Opinion, the funds managed by Argucia request that their clarifications on the subject be granted, "*in the form of a presentation to the Rapporteur and/or to the Collegiate Body, accompanied by a Power Point, or any other form that is considered adequate for this purpose, notably dealing with the inconsistencies summarized above and their impacts on the conclusions defended in the opinion*"[23].--------------------
[23] Doc. SEI 105757, p. 11. --------------------------------
-----------------------------------------------------------
**Pronouncement of the Defendants** ---------------------------
27. Given the request for production of evidence, the Defendants pronounced in the records of this PAS, alleging that Plaintiffs "*seek to intrude illegitimately into the*



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

*process, bringing information that has either already been presented, or is absolutely irrelevant to the outcome of the merits, or refers to aspects that were not even considered in the Indictment"*[24]. Thus, they claim that the funds managed by Argucia do not have procedural capacity to seek evidentiary dilation in this PAS, since they are not parties to the process and were not accepted as *amicus curiae* (considering, for example, the absence of neutrality). ----------------------------------------------
[24] Doc. SEI 1116095, p. 2. ---------------------------------
------------------------------------------------------------
28. Additionally, the Defendants argue that the request for deferment of production of evidence is based on inadequate grounds and deals with matters already addressed by the Plaintiffs on other occasions, such as the discussions regarding the adhesion to the First Capital Increase and the testimony of those who participated in the *NetRoadshow* presentation of Neoenergia's public offering in November 2017. ------------
29. With regard to the criticism of the Technical Opinion, the Defendants defend that the procedures adopted for its preparation are in line with the academic literature on the subject and repeat the conclusions set forth in the document[25]. ------------------------------------------------
[25] Cf. SEI 1116095, pp. 4-5. --------------------------------
------------------------------------------------------------
30. In light of this, the Defendants plead the denial of the production of evidence and the detachment of the request for production of evidence and its attachments from the PAS file. -----------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 137

This is the report. --------------------------------------

**Vote** ------------------------------------------------------

1. This is a request for production of evidence filed by funds managed by Argucia, Coelba's shareholders, in which they basically request the presentation of supplementary documentation, the testimony of people involved in the process of Neoenergia's public offering of shares and the provision of clarifications, by Plaintiffs, about technical aspects related to the Appraisal Report and the Technical Opinion. --------------------------------------

2. Although Plaintiffs are not a party to this PAS (nor are they acting as *amicus curiae*, as already decided by the Collegiate Body[26]), they do submit a request for production of evidence, based on Art. 42 of CVM Instruction 607, which provides that the rapporteur of the case may "*determine, at any time, the performance of diligences, in addition to those eventually requested by the defendant in its defense.* The Defendants, in turn, defend, in short, the impropriety of the request, the illegitimacy of the person presenting it, and the unnecessary nature of the evidence requested. -------------

[26] Cf. minutes of the Collegiate Body's meeting of 03.17.2020 (doc. SEI 0976366). ----------------------------

-----------------------------------------------------------

3. In addressing the inadmissibility of Claimants' participation as *amicus curiae*, I pointed out that the rapporteur of this PAS could request additional steps after a more detailed analysis of the case records, including as a result of Claimants' provocation[27]. Since such steps can be determined regardless of the intention





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of the parties, I see no reason to simply ignore the allegedly disputed points alleged by Plaintiffs, just because they have been presented by a third party that is not part of the proceedings. More than that: to rule out the need for further evidentiary study on this basis would mean nothing less than disregarding the decision of the Collegiate Body in this same case. -----------------------

27 In analyzing the request for reconsideration of the Collegiate Body's decision of March 17, 2020, I stated that "Plaintiffs may also, if they wish, petition the Rapporteur informing that they can contribute to the clarification of the issue at hand by submitting clarifications. Thus, it will be up to the rapporteur to assess the relevance of the request and decide, indicating which clarifications will be relevant, how they can be provided and other aspects he deems important, based on the particularities of the case" (doc. SEI 098623). The Collegiate Body unanimously followed this decision in a meeting held on 05.05.2020. -------------------------------
-----------------------------------------------------------

4. In my understanding, if the evidence requested is consistent with the subject matter of the case, is capable of resolving controversial points and the request is duly substantiated, the rapporteur may, in light of the arguments presented, decide to extend the evidence – provided, of course, that the adversarial system and the right to be heard are respected[28] - in view of the margin of discretion conferred by art. 42 of CVM Instruction 607/2019. -------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 139

²⁸ In this regard, it is worth highlighting articles 45 and 46 of CVM Instruction No. 607/2019. -----------------------
-----------------------------------------------------------
5. Having made this initial clarification, I now move on to the analysis of the merits of the request. -------------
6. Plaintiffs' first request is to subpoena the Company to provide a list of shareholders who did not subscribe to the First Capital Increase, indicating the number of shares to which they would be entitled to subscribe in the transaction, in order to rule out the Defendants' argument that 99.84% of Coelba's capital stock adhered to the capitalization and, therefore, there would be no unjustified dilution. ------------------------------------
7. The accusation related to the First Capital Increase deals with the justification provided by the Company's managers for choosing the criteria to fix the price of issue of the shares in this transaction. Therefore, the analysis to be undertaken by the Collegiate Body is restricted to the documentation presented by Coelba at the moment it resolved on the capital increase, in order to verify if the economic aspects that determined the choice of said parameter were justified in detail, as required by §7 of art. 170 of the law of shares. ----------------------
8. For this reason, it does not seem relevant to the outcome of the case, especially with regard to the First Capital Increase, to verify the degree of adhesion of shareholders to the transaction. -------------------------
9. Even if the indictment combines the charge of violation of Art. 170, §7, of Act nº 6.404/1976 with the alleged violation of art. 153 and, as the case may be, also with





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 140

art. 166, §2, I do not see how the verification of the duty of care of the managers and audit committee members would, in this case and given this legal framework, have to undergo an examination of the number of shareholders who subscribed their shares in the First Capital Increase.

10. With regard to the *rating* reports mentioned by Plaintiffs, I consider it appropriate to include them in the case file of this PAS, so that the Defendants have the opportunity to comment specifically on their contents and clarify whether the documents actually impact their arguments related to the Company's financial situation, especially with regard to the First Capital Increase and the justification presented, on that occasion, for the choice of criteria for setting the price of issue of the shares. ---------------------------------------------------

11. Likewise, I understand that the attachment of the recording or transcript of the *NetRoadshow*(s) held in November 2017 (or, further, any records and documents related to the meetings held at that time) may also corroborate the Collegiate Body's conviction on the controversy raised by Plaintiffs, especially with regard to the arguments presented in the defense, in order to justify the choice of the criteria adopted for the First Capital Increase. ----------------------------------------

12. In addition, Plaintiffs allege that the Technical Opinion adopts as a premise Coelba's financial information provided by the Defendants, which would be dissonant from that submitted in November 2017. As the Defendants' defenses make several references to the Technical Report when dealing with the Second Capital Increase, especially





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 141

to justify the methodology adopted by the Appraisal Report, I believe that any documentation related to the meeting mentioned by Plaintiffs may be useful to clarify whether the assumptions adopted by the rapporteur are consistent with the management's view at the time of the facts questioned in this PAS. ----------------------------
13. On the other hand, it does not seem to me that the depositions of the offer coordinators' analysts are necessary "*to confirm whether the information provided by Coelba's Managers and presently Defendants* herein, *in the scope of the IPO process, corresponds to the assumptions that are now being provided in the Defense*"[29], in view of the granting of the request to present the recording or transcript of the *NetRoadshow*(s). After all, with the documentation indicated in this decision, it seems reasonable to assume that there will be sufficient elements in the records to allow a conclusion as to the Company's financial situation at the time of the facts and, consequently, as to the verisimilitude of the arguments presented by the Defendants about Coelba's economic premises[30]. --------------------------------------
[29] Doc. SEI 1105757, p. 7. ---------------------------------
[30] To this effect, the then Officer Henrique Machado, when analyzing the request for production of evidence in the scope of CVM PAS No. RJ2014/6517, j. on 03.14.2017, stated that "the rapporteur should grant the production of evidence whenever such measure proves to be necessary for the formation of his conviction, without, however, imposing excessive or unnecessary burden on the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 142

defendants, the witnesses and the public administration itself. --------------------------------------------------- ----------------------------------------------------------

14. For these reasons, neither does it seem relevant to me to hear Claimants in order to ascertain the information that was provided in the November 2017 submission. --------

15. Finally, I believe that Plaintiffs' request for clarification regarding the Appraisal Report and the alleged inconsistencies in the Technical Report should not prevail. --------------------------------------------------

16. As I have highlighted elsewhere, Plaintiffs are not in a position of neutrality as to the outcome of this PAS: --- "there is no doubt about Argucia's motivation: it believes that, if admitted as *amicus curiae*, it will have greater conditions to assert its understanding on the issues discussed in the lawsuit and, therefore, it will increase the possibility of success of the prosecution's thesis, which, in turn, may indirectly benefit the funds under its management, which are shareholders of the Company, in eventual confrontations it may maintain against the defendants or Coelba. ------------------------------------

Therefore, Plaintiffs, contrary to what they claim, are not in a position of neutrality. In fact, they were the ones responsible for initiating the Original Proceedings that ultimately resulted in these Proceedings. In addition, they have pronounced regarding the proposed terms of commitment presented by the defendants, in which they go into considerations about the merits of the case that go beyond what is up to the Collegiate Body when





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 143

analyzing the convenience and opportunity of the Indictment. ----------------------------------------------
Nor does it seem to me that Argucia's interest in the case has a broader character or is linked to a market issue that goes beyond its individual interest and allows it, even if in theory, to secure some level of neutrality and militate in favor of its admission to the case. This is because Plaintiffs, managed by Argucia, are shareholders of the Company and claim to have been damaged by the acts found in this Case. Although an eventual condemnatory decision by CVM will not result in the compensation of the alleged damage suffered, there is no doubt that its outcome may impact (even if indirectly, but, in my view, enough to generate a personal interest in the cause) Plaintiffs' legal sphere"[31] --------------------------------
[31] Doc. SEI 0971113. --------------------------------------
 ----------------------------------------------------------
17. That is, in providing the requested clarification, it does not appear to me that Plaintiffs will do so from a disinterested position. On the contrary, by analyzing the records, it is clear that they disagree with the decisions made by Coelba's managers and understand that they should be convicted. Nor can the possibility be ruled out at this point that Plaintiffs have an interest, albeit indirect, in the conviction of the Defendants. ---------------------
18. If the request were granted, Plaintiffs would act as a kind of assistant to the prosecution, a figure not provided for in the rules that govern the administrative sanctioning process within the scope of CVM, nor even in those that deal with administrative proceedings in the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 144

broad sense. Even if they have contributed to the formulation of the accusation – after all, it was the Claim that gave rise to the PAS – the sanctioning activity of this Agency must be exercised and conducted by the technical area responsible for supervising the Defendants[32]. ----------------------------------------------
[32] Except, of course, in the case of an administrative investigation, which must be conducted by the Superintendence of Sanctioning Processes (art. 9 of CVM Instruction 607/2019). -----------------------------------
 -----------------------------------------------------------
19. In addition, although I mentioned in the decision regarding the *amicus curiae* procedural incident that, after an in-depth analysis of the case records, nothing would prevent the rapporteur from requesting a "*statement on specific points that may be clarified by third parties, which will certainly be evaluated with the due degree of care, since it will not enjoy the impartiality typical of the* amicus curiae "[33], it does not seem to me that it is the case of a pronouncement in these terms and, even if it was, I understand that, for the reasons pointed out above, Argucia would not be the most indicated to provide eventual clarifications on the Appraisal Report and the Technical Opinion. ---------------------------------------
[33] Doc. SEI 0971113. ---------------------------------------
 -----------------------------------------------------------
20. In view of this, I consider it unreasonable and unnecessary for Plaintiffs to provide clarification. ------
21. For all the above reasons and based on art. 42 of CVM Instruction No. 607/2019, I propose to maintain docs. SEI



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 145

1105756, 1105757, 1105758 and 1105759 in the records of this PAS and its forwarding to the Division of Control of Administrative Proceedings - CCP, so that it may summon the Defendants to pronounce on the *rating* reports submitted by Plaintiffs [34] within 15 days, pursuant to Art. 46 of CVM Instruction 607/2019. --------------------------
[34] Docs. SEI 1105758 and 1105759. --------------------------
 -----------------------------------------------------------
22. Finally, I order the Superintendence of Company Relations to take the appropriate measures to ensure that Neoenergia and the offer coordinator, BB Banco do Brasil Investimento S.A., provide the recording or transcript of the *NetRoadshow*(s) held in November 2017, or, further, any records and documents in their custody related to the event(s). After its attachment to the records of this PAS, the CCP should summon the Defendants to comment on the evidence to be produced, as provided in the applicable regulations. --------------------------------------------
This is my vote. --------------------------------------------
Rio de Janeiro, March 9, 2021 ----------------------------
*Document electronically signed by* ------------------------
**Marcelo Barbosa** ---------------------------------------
President Rapporteur -------------------------------------
 -----------------------------------------------------------
CVM Sanctioning Administrative Proceedings No. 19957.005983/2019-18 ------------------------------------
Vote PTE (1217050) ----------------------------------------
SEI 19957.005983/2019-18 ----------------------------------
 -----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 146

```
HAVING NOTHING FURTHER TO TRANSLATE FROM THIS DOCUMENT, I
SIGN IT BY SETTING MY RIGHT HAND AND AFFIXING MY GOLDEN
SEAL AND OFFICIAL STAMP. ---------------------------------
PAULO FERNANDO SANTOS DE LACERDA, Ph.D -------------------
SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT
#243-----------------------------------------------------
January 24, 2022. --------------------------------------
```



