UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE ACOES – INVESTIMENTO NO EXTERIOR | Case No. 22-MC-00118-LAK |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS' MOTION TO VACATE THE COURT'S APRIL 26, 2022 *EX PARTE* ORDER AND TO QUASH THE <u>SUBPOENAS</u>**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 2

I. THE APPLICATION DOES NOT SATISFY THE STATUTORY FACTORS ................. 2

    A. SPS Seeks Evidence That Is Not "For Use" In The Foreign Proceeding ................. 2

        1. There Is No Proceeding "Within Reasonable Contemplation" .................... 2

        2. The Evidence is Not "For Use" in a Proceeding .......................................... 4

        3. SPS is on an Impermissible Fishing Expedition .......................................... 5

    B. SPS Is Not An Interested Person ................................................................................. 6

    C. Barclays USA Inc Is Not Found In This District ....................................................... 7

II. THE *INTEL* FACTORS WEIGH AGAINST DISCOVERY .............................................. 8

    A. *Intel* 1: Evidence Is Within The Jurisdiction Of The CVM ...................................... 8

    B. *Intel* 3: SPS Attempts To Circumvent Brazilian and US Laws and Policies ........... 9

    C. *Intel* 4: SPS's Requested Discovery Is Unduly Intrusive And Burdensome ........... 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*AKF, Inc. v. Creative Fiberglass, LLC*,
   2021 WL 7186067 (E.D.N.Y. Sept. 2, 2020) ............................................................................ 8

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015) .................................................................................................. 3, 5

*Cotton v. PrivateBank & Tr. Co.*,
   235 F. Supp. 2d 809 (N.D. Ill. 2002) ........................................................................................ 9

*Ex parte Abdalla*,
   2021 WL 168469 (S.D.N.Y. Jan. 19, 2021) ............................................................................ 10

*Fagan v. J.P. Morgan Chase Bank*,
   2019 WL 984281 (W.D. Tex. Feb. 28, 2019) ........................................................................ 2, 6

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
   33 F.4th 669 (2d Cir. 2022) ...................................................................................................... 7

*In re Credit Suisse Virtuoso SICAV-SIF*,
   2022 WL 1786050 (N.D. Cal. June 1, 2022) .......................................................................... 10

*In re del Valle Ruiz,*
   939 F.3d 520 (2d Cir. 2019) ...................................................................................................... 7

*In re Investbank PSC,*
   2020 WL 8512850 (S.D.N.Y. Dec. 30, 2020) ........................................................................... 8

*In re Martinez Sampedro*,
   2019 WL 3423568 (D. Conn. July 30, 2019) ............................................................................ 3

*In re Porsche Automobil Holding SE*,
   2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .............................................................................. 8

*In re Thai-Lao Lignite (Thailand) Co., Ltd.*,
   821 F. Supp. 2d 289 (D.D.C. 2011) .......................................................................................... 7

*In re Union Fenosa Gas, S.A.*,
   2020 WL 3446871 (S.D.N.Y. June 23, 2020) ........................................................................... 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ........................................................................................................ *passim*

*Sampedro v. Silver Point Capital, L.P.*,
   818 Fed. App'x 14 (2d Cir. 2020) ............................................................................................. 3

*Z&F Auto. US, Inc. v. Luxshare, Ltd.*,
    2022 WL 2111355 (U.S. June 13, 2022) ................................................................................ 9

Filed on the heels of a CVM decision dismissing its complaint against the Batistas in another CVM proceeding, SPS's Opposition (Dkt. 25) is nothing but smoke and mirrors.  SPS, a minority shareholder in JBS, has incurred no harm nor damages, as it initially acquired its shares nearly a year *after* JBS's first plea agreement.  Nonetheless, on the basis of information contained in undisclosed, unverified, and criminally leaked files,[1] SPS has employed scorched-earth litigation tactics to create an illusion of wrongdoing beyond what has already been disclosed *ad nauseam* in Intervenors' plea agreements with Brazilian and US authorities.  Those scorched-earth tactics are plainly evident here: after months of inaction with respect to another § 1782 application it filed in the District of Delaware and after being rebuffed by Brazilian courts (including the Brazilian Supreme Court)[2] and the CVM, SPS seeks evidence from JPM and a dissolved Barclays entity relating to alleged transactions involving four foreign entities (despite its purported complaint only focusing on Unifleisch) that it *hopes* the CVM will use to bring a proceeding against Intervenors.[3]  But such hope is no basis for § 1782 aid, let alone for broad discovery spanning over 20 years.  Accordingly, the Court should cut the net on SPS's fishing expedition and put an end to this latest international front to its litigation crusade.

---

[1]  An exhaustive search of the FinCEN Files repository yields no mentions of Barclays, Lunsville, Valdarco, or Unifleisch.  Bento Supp. Decl. at ¶¶2-7 & Exs. 1-5.  It is public knowledge that the individual who leaked the FinCEN Files has been criminally charged and sentenced in the United States.  *Id.* at Exs. 6-7.

[2]  On June 10, 2022, the Brazilian Superior Court of Justice terminated the arbitration (CAM Arbitration No. 93/17-110/18) SPS initiated because SPS lacked standing.  *See* Renteria Supp. Decl. ¶12 n.2.  This is also why JBS joins this motion, as it does not believe that SPS has standing to be asserting these allegations, which are incompatible with, and could indeed impair, the overall direction of the company's current proceedings against its controlling shareholders and former managers (including the pending arbitration), not to mention the unnecessary cost burden imposed on the company in response to SPS's actions.

[3]  SPS's § 1782 Application hinges on declarations by SPS's counsel in Brazil, including Mr. Cavalcanti, who notably omits from his declaration that he represents SPS in the arbitration.  SPS's declarations reference a Barclays report, allegedly contained in the FinCEN Files leak, that SPS has not filed in this action and yet serves as the basis for its Application.

**ARGUMENT**

I.   **THE APPLICATION DOES NOT SATISFY THE STATUTORY FACTORS**

    A.   **SPS Seeks Evidence That Is Not "For Use" In The Foreign Proceeding**

        1.   There Is No Proceeding "Within Reasonable Contemplation"

*The CVM's Preliminary Review of a Complaint is Not a "Proceeding."* SPS fails to satisfy § 1782's requirements because there is no "proceeding" underlying its Application. SPS asserts that the mere fact that the CVM will conduct a preliminary review in response to the submission of a complaint is sufficient on its own to satisfy § 1782's requirement that the requested evidence is "for use" in a "proceeding" before a foreign tribunal. Dkt. 25 at 6-9. SPS's position, however, stretches § 1782 beyond what Congress could reasonably have contemplated.

Beginning with the statute, SPS is correct that § 1782 expressly provides that "criminal investigations before formal accusation" are "proceedings." But SPS's hypothetical CVM complaint is neither criminal in nature, (Renteria Supp. Decl.¶¶19, 90), nor an investigation before "formal accusation." *Id.* ¶¶79-84. A "formal accusation" in a CVM proceeding is an indictment, which is a product of a fulsome investigation by the CVM Technical Area. *Id.* ¶¶81-83. That investigation occurs only *after* the CVM's superintendent for receiving complaints from the general public conducts a preliminary review of the complaint (to weed out frivolous filings) and, if proper, forwards it to the CVM's Technical Area. *See id.*; *see also* Dkt. 22 ¶¶34-35. The CVM's preliminary review hardly guarantees an actual investigation and thus is not a proceeding.[4]

---

[4] *See Fagan v. J.P. Morgan Chase Bank*, 2019 WL 984281, at *2 (W.D. Tex. Feb. 28, 2019) ("[Applicant]'s supplemental declaration still falls short of demonstrating that a foreign adjudicative proceeding is 'within reasonable contemplation,' establishing only that foreign investigatory authorities in South Africa are doing their due diligence to determine whether Fagan's complaint has any merit.").

SPS's reliance on *In re Martinez Sampedro*, 2019 WL 3423568, at *3 (D. Conn. July 30, 2019), *aff'd*, 818 Fed. App'x 14 (2d Cir. 2020) is misplaced.[5] The applicant in *Sampedro*, unlike SPS, actually had filed its complaint with the foreign regulator. *Id.* The Court held that a "proceeding" was "within reasonable contemplation" due to the fact that the foreign regulator was conducting a review of the complaint at the time the §1782 application was filed. *Id.*[6] Indeed, on appeal the Second Circuit framed "the [relevant] inquiry" as "whether the [foreign governmental body] ha[d] in fact initiated a *sanction* proceeding or has at least taken *sufficient steps* to put such a proceeding within reasonable contemplation." *Sampedro v. Silver Point Capital, L.P.*, 818 Fed. App'x 14, 19-20 (2d Cir. 2020) (emphasis added, internal quotations omitted). Under *Sampedro*, a foreign tribunal must take sufficient steps to put a complainant's proceeding within reasonable contemplation. *See id.* That is not the case here: SPS has not filed a complaint with the CVM nor has the CVM taken any steps (let alone any "sufficient steps") to initiate a sanction proceeding.[7]

<u>There Is No Dispositive Ruling Reviewable By A Court</u>. The CVM's preliminary review of SPS's supposed complaint is also not a proceeding under § 1782 because it will not result in a "dispositive ruling." As *Intel* explains, a dispositive ruling is a "final administrative action both

---

[5] SPS repeatedly mischaracterizes the Supreme Court's *Intel* decision to assert that its hypothetical CVM complaint is akin to the "quasi-judicial" investigation at issue in *Intel*. *See* Dkt. 25 at 6, 9-10, 13 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)). But *Intel*, unlike here, involved a pending investigation by the foreign tribunal such that a dispositive ruling was "within reasonable contemplation." *See* 542 U.S. at 259 (holding an ongoing investigation by the European Commission qualified as a "proceeding" under § 1782 because a dispositive ruling by the Commission was "within reasonable contemplation").

[6] The court explained that the applicant "presented enough facts . . . to establish *that a formal complaint remains pending and under review*." *Id.* at *3 fn.3.

[7] This distinction holds even if SPS submits its hypothetical complaint to the CVM before this Court rules on Intervenors' Motion because whether a proceeding is within reasonable contemplation is determined at the time the § 1782 application is filed. *See KPMG*, 798 F.3d at 124 (holding foreign proceeding was not within reasonable contemplation at the time the application was filed despite the fact that the foreign proceeding was subsequently initiated).

3

responsive to the complaint and reviewable *in court*." 542 U.S. at 255 (emphasis added); *id.* (noting that the European Commission's decision was appealable to the Court of First Instance and then to the European Court of Justice). That standard is not met here because a (likely) determination by the CVM to dismiss SPS's complaint following a preliminary review would not be reviewable by a court and only be subject to review in narrow circumstances by the CVM's Board of Commissioners (which is not a court and does not exercise any powers of judicial review). *See* Dkt. 22 ¶73; Renteria Supp. Decl. ¶¶45-57. Because the CVM's decision following a preliminary review of a complaint is not a dispositive ruling, SPS has not shown that a "proceeding" is within reasonable contemplation.

      2.   <u>The Evidence is Not "For Use" in a Proceeding.</u>

SPS's argument that its discovery is "for use" in a foreign proceeding because it "will" file its complaint directly with the CVM is unavailing. As SPS concedes, Dkt. 25 at 8, the CVM employs an accusatorial model of decision-making which draws clear lines between its investigative and decision-making functions. As Mr. Renteria explains, different branches of the CVM fulfill distinct roles such that the CVM's adjudicative arm does not interfere with its investigative arm (and vice versa). Dkt. 22 ¶26. Indeed, if SPS files its complaint, an entirely different branch of the CVM—the SOI, which has no adjudicatory powers—would conduct the preliminary review. *Id.* ¶¶32-34. That branch can reject the complaint or forward it to the CVM's Technical Area (which also has no adjudicatory powers) for investigation. *Id.* ¶34; Renteria Supp. Decl. ¶82-83. An "administrative proceeding" ("*processo administrativo*") is only commenced if and when the CVM's Technical Area decides to charge the accused. Dkt. 22 ¶¶37-38; Renteria Supp. Decl. ¶84. Because the CVM employs the accusatorial system, SPS's purported submission of evidence to the CVM is two-steps removed from any proceeding, and is more akin to "a witness approaching a prosecutor's office claiming to have knowledge of a crime. Such information might

4

be relevant or interesting to the recipient, but it is not "for use" in any proceeding in which the recipient is a party unless the recipient takes some further, independent action to introduce it." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 121 (2d Cir. 2015); Renteria Decl. ¶72 (SPS is a "mere informant").

Further, SPS seeks evidence related to four entities yet now only claims that only two of those entities ("entities under the name 'Unifleisch'") are relevant to its hypothetical CVM complaint. *Compare* Dkt. 7 at Exs. 1-2, *with* Dkt. 26 ¶47 (explaining that draft complaint pertains to Unifleisch entities). Based on SPS's own filings here, the other two entities, Lunsville and Valdarco, are not mentioned in SPS's draft CVM complaint. *See* Dkt. 26 ¶47 (complaint relates to "illicit conducts" involving "entities under the name Unifleisch"). Discovery related to Lunsville and Valdarco is therefore irrelevant to, and therefore not "for use" in that complaint. *KPMG*, 798 F.3d at 120 n.7 ("[I]t is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding.").

      3.  <u>SPS is on an Impermissible Fishing Expedition</u>

Whether considered in connection with the "for use" statutory factor or the discretionary *Intel* factors, courts have repeatedly denied § 1782 applications where there is reason to believe that the applicant is fishing for evidence. *See* Dkt. 21 at 9 (collecting cases). This is precisely the case here.

*First*, SPS's fishing expedition is highlighted by the fact that its CVM "proceeding" is entirely speculative. As Mr. Renteria has explained, the CVM's likely awareness of the FinCEN Files (which do not appear to reference any of the transactions alleged by SPS), the fact that they were criminally leaked, and the history of dismissing complaints significantly more robust than the one described by SPS make it "highly unlikely" that the CVM will elect to investigate SPS's allegations. Dkt. 22 ¶¶49-53; Renteria Supp. Decl. ¶¶6-16, 86-90. This would not be unlike the

***CVM's dismissal, just 2 weeks ago, of a complaint SPS filed with the CVM against the Batistas***, on the ground that "it did not identify any of the alleged illegalities."  Renteria Supp. Decl. ¶12.

*Second*, SPS admits that it could have already filed its complaint with the CVM but has elected not to do so in favor of resorting to § 1782.  Dkt. 25 at 6-7.  This approach screams fishing expedition when viewed in light of the overbroad and irrelevant document requests and speculative nature of its complaint: SPS knows that it either needs more evidence to substantiate its baseless complaint or that it lacks significant participation rights in the CVM's proceeding because the only mechanism it has to actually introduce evidence is concurrently with its complaint.  *See* Renteria Supp. Decl. ¶¶23-44; *Fagan v. J.P. Morgan Chase Bank*, 2019 WL 984281, at *2 (W.D. Tex. Feb. 28, 2019) ("This Court should not permit a self-declared victim of a fraudulent scheme to utilize Section 1782 in hopes that it might possibly aid an investigation by the South African Police at some point in the future. To do so would be to countenance the very kind of 'fishing expedition' district courts are counseled to guard against.").  *Third*, that SPS is still unable to identify any relevant Barclays entity in this District, and is now seeking to reserve its rights to harass other Barclays entities, (Dkt. 25 at 21 fn.13), is further proof that this is a textbook fishing expedition.

### B. SPS Is Not An Interested Person

Even if the CVM initiated the proceeding against Intervenors, SPS will not have "significant participation rights" in that proceeding.  *Intel*, 542 U.S. at 242.  In *Intel*, the Supreme Court placed heavy emphasis on the complainant's right to introduce evidence to the foreign tribunal and to seek judicial review of the foreign tribunal's decision(s) (1) not to investigate following a review of the complaint, and (2) to issue a dispositive ruling following investigation.  542 U.S. at 255.  SPS claims to possess similar rights to the *Intel* complainant on both fronts, *see* Dkt. 25 at 10, but the record shows that is simply incorrect.  *First*, SPS's ability to introduce evidence to the CVM is generally limited to evidence submitted concurrently with the filing of a

6

complaint – the CVM alone decides whether to require the production of evidence as part of an actual proceeding (if it ultimately elects to pursue the complaint).  *See* Renteria Supp. Decl. ¶¶28, 32, 41.  In any event, SPS's "ability to pass on information" cannot confer interested person status "with respect to the suit that *it hopes* [the CVM] will decide to bring."  *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 678 (2d Cir. 2022) (emphasis added).  *Second*, SPS has no recourse to judicial review of any CVM decision on its preliminary investigation of the complaint.  *Supra*, pg. 4; Dkt. 22 ¶73.  The only review that is available is non-judicial in nature.  *See* Renteria Supp. Decl. ¶¶45-57 (further explaining that any review would not examine the merits of the decision).  Thus, SPS is not an "interested person" under § 1782.

### C. Barclays USA Inc Is Not Found In This District

As an initial matter,[8] SPS concedes that Barclays USA Inc. is dissolved.  Dkt. 25 at 21 fn.13.  Accordingly, it does not "reside" in and is not "found" in New York.  *See In re Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 293-94 (D.D.C. 2011) (dismissing § 1782 petition with respect to nonexistent entity).  In the face of such conclusive evidence, SPS argues that Barclays USA, Inc. is nonetheless found in this District because other Barclays entities have offices in New York.  But such an attenuated contact with this District is insufficient to satisfy Second Circuit authority. Indeed, in *In re del Valle Ruiz*, the Second Circuit held that a Spanish bank with a New York branch and US affiliates did not reside in this District because the petitioner did not show that the bank's contacts in New York was the proximate reason the evidence sought was available.  939 F.3d 520, 531 (2d Cir. 2019).  The circumstances here are materially similar:

---

[8]  Despite SPS's protestations, Intervenors have standing to oppose SPS's subpoenas.  *See, e.g.*, *In re Union Fenosa Gas, S.A.*, 2020 WL 3446871, at *4 (S.D.N.Y. June 23, 2020) (holding that party "against whom the requested information will be used" had standing to "properly challenge the subpoenas, even though they are addressed to [respondent] and any claimed undue burden would fall upon [the respondent]"); *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997).

while SPS has alleged that Barclays PLC is a foreign bank with locations and affiliates in New York, it has not explained which Barclays entity in this District, if any, has the requisite in-forum contact and information responsive to its Subpoenas. The Court should reject SPS's attempt to sidestep its burden by referring generally to "Barclays,"[9] as SPS has not established that Barclays USA Inc., the actual Respondent here, resides or is found in this District.[10]

## II.     THE *INTEL* FACTORS WEIGH AGAINST DISCOVERY

### A.     *Intel* 1: Evidence Is Within The Jurisdiction Of The CVM

The first *Intel* factor weighs against SPS because its requested discovery is within the jurisdictional reach of the CVM. Dkt. 21 at 14-16. Through the declarations of Mr. Renteria, Intervenors have offered evidence that the CVM can either directly subpoena Respondents or work with other agencies to obtain further evidence. Dkt. 22 ¶¶54-68; Renteria Supp. Decl. ¶¶58-78. Moreover, SPS ignores that at least one of the Respondents here has already produced information in a separate CVM proceeding, thus underscoring the CVM's ability to obtain discovery from Respondents. Dkt. 6, Ex. C at 126-27. Thus, the first *Intel* factor weighs against discovery.[11]

---

[9] Relatedly, SPS's reliance on *In re Investbank PSC* is misplaced. There, in response to a subpoena issued pursuant to an unopposed application, the applicant implied that Barclays Bank PLC purportedly produced evidence, without any explanation. 2020 WL 8512850, at *1-2 (S.D.N.Y. Dec. 30, 2020). What Barclays PLC may or may not have done in that case is not dispositive (and indeed not even instructive) of what responsive information Barclays USA Inc. may or may not have here, particularly given its dissolved status.

[10] SPS has not effectuated proper service because it has served a non-existent entity. *See AKF, Inc. v. Creative Fiberglass, LLC*, 2021 WL 7186067, at *2(E.D.N.Y. Sept. 2, 2020) (noting Court held service not properly effectuated on entity that "was dissolved before the start of th[e] lawsuit.").

[11] SPS's reliance on *In re Porsche Automobil Holding SE*, a case which notably confirms that "the relevant inquiry [for *Intel* factor 1] is whether the foreign tribunal has the ability to control the evidence sought and order production," is also misplaced. 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016). There the Court found there was "little question" that the foreign court "cannot and…would not order the type (and scope) of evidentiary production" sought by the §1782 applicant. *Id.* at *8. Here, in contrast, the CVM can order such an evidentiary production. *See* Dkt. 22 ¶¶54-57; Renteria Supp. Decl. ¶¶63-71.

### B.     *Intel* 3: SPS Attempts To Circumvent Brazilian and US Laws and Policies[12]

SPS alleges that the evidence it seeks does not circumvent any privileges or prohibitions. Opp. at 26. And yet it is undisputed that SPS is asking this Court to permit discovery that is based on and seeks information that was criminally leaked in violation of U.S. criminal law. *See* Bento Supp. Decl. Exs. 6-7 (noting that the FinCEN Files were leaked in violation of U.S. criminal laws); Renteria Supp. Decl. ¶86 (noting that the CVM is unlikely to investigate SPS's allegations as they stem from documents that were criminally leaked under U.S. law). Further, discovery should be denied because it admittedly seeks confidential information contained in the Barclays suspicious activity report, which is not discoverable and statutorily protected. Dkt. 1 at 2; Dkt. 7 at Exs. 1-2; *Cotton v. PrivateBank & Tr. Co.*, 235 F. Supp. 2d 809, 813 (N.D. Ill. 2002) (person subpoenaed to disclose information contained in a SAR "shall decline to produce" the information). Allowing Petitioner to use criminally leaked and statutorily protected information as the basis to obtain discovery here not only circumvents Brazilian and US laws and policies (which could explain why SPS has not yet filed its complaint in the hope that § 1782 will sanitize the evidence), it does nothing to further "the animating purpose of § 1782," comity. *Z&F Auto. US, Inc. v. Luxshare, Ltd.,* 2022 WL 2111355, at *7 (U.S. June 13, 2022); Renteria Supp. Decl. ¶¶86-90 (CVM unlikely to investigate SPS's allegations due to criminal nature of leak underlying the §1782 Application).

### C.     *Intel* 4: SPS's Requested Discovery Is Unduly Intrusive And Burdensome

The fourth *Intel* factor weighs heavily against SPS's unduly intrusive and burdensome requested discovery. *Intel*, 542 U.S. at 265. SPS has now revealed, in conclusory fashion, that its

---

[12] SPS does not advance any specific arguments in response to Intervenors' arguments that the second *Intel* factor weighs against discovery. *See* Dkt. 25 at 25-26. As noted in the Declarations of Mr. Renteria (which Mr. Gonzalez has not disputed), the CVM is unlikely to accept any evidence that is the product of a criminal leak as a basis to conduct an investigation. Dkt. 22 ¶50(ii); Renteria Supp. Decl. ¶¶85-90. Accordingly, the second *Intel* factor weighs against discovery.

hypothetical CVM complaint only pertains to the Unifleisch entities, and has made no effort to explain Lunsville and Valdarco's relevance to its complaint.  Dkt. 26 at ¶47; Renteria Supp. Decl., ¶9.  Thus, the Court should deny SPS's requests with respect to those entities on that ground alone. *See supra*, pg. 5.  Additionally, all of SPS's discovery requests are temporally overbroad as they seek information spanning a period of more than two decades, which is overly burdensome and only further illustrates that SPS is fishing for evidence.  *See, e.g.*, *Ex parte Abdalla*, 2021 WL 168469, at *6 (S.D.N.Y. Jan. 19, 2021) (holding subpoena seeking information over 23-year time period "besp[oke] of a fishing expedition").  Moreover, the burden imposed on Respondents is disproportionate to the need for discovery as SPS would require them to gather, review, and produce documents purportedly for use in a complaint that SPS asserts can be filed without such documents, Dkt. 25 at 6-7, and that in any event is unlikely to materialize into a proceeding.[13] *Supra*, pg. 2-4; *In re Credit Suisse Virtuoso SICAV-SIF*, 2022 WL 1786050, at *12 (N.D. Cal. June 1, 2022) (holding that "it would be an undue burden to require [1782 respondent] to engage in the costly effort of gathering, reviewing, and producing documents for litigation that might well be nipped in the bud by the foreign court before any defendant is served.").

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court vacate the April 26, 2022 Order, quash the Subpoenas served on Respondents by SPS, and deny SPS's § 1782 Application.

---

[13]  Similarly, SPS's suggestion that Respondents' failure to object to its requested discovery weighs in favor of discovery is misleading.  Indeed, as SPS acknowledges, Respondents have served responses and *objections* to the Subpoenas. Dkt. 28 at ¶¶8-9.  Tellingly, SPS does not state that Respondents have agreed to provide any documents in response to the Subpoenas.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: New York, New York<br>June 30, 2022 | QUINN EMANUEL URQUHART<br>& SULLIVAN, LLP |
|  | By: /s/ *Michael B. Carlinsky*<br>Michael Carlinsky<br>Lucas Bento |
|  | 51 Madison Avenue, 22nd Floor<br>New York, New York  10010<br>(212) 849-7000<br>michaelcarlinsky@quinnemanuel.com<br>lucasbento@quinnemanuel.com |
|  | -and- |
|  | Gavin Frisch<br>111 Huntington Avenue, Suite 520<br>Boston, Massachussetts 02199<br>(617) 712-7100<br>gavinfrisch@quinnemanuel.com |
|  | *Attorneys for Intervenors Joesley Batista, Wesley Batista, JBS S.A., and J&F Investimentos* |