UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE EX PARTE APPLICATION OF SPS I
FUNDO DE INVESTIMENTO DE
ACOES – INVESTIMENTO NO                                    22-mc-00118 (LAK)
EXTERIOR

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-09-22

## MEMORANDUM OPINION

Appearances:

> Jeremiah Charles Hollembeak
> BAIRD HOLM LLP
> *Attorneys for Petitioner*

> Michael B. Carlinsky
> Gavin Frisch
> Lucas Bento
> QUINN EMANUEL URQUHART & SULLIVAN LLP
> *Attorneys for Intervenors*

LEWIS A. KAPLAN, *District Judge.*

SPS I Fundo de Investimento de Ações – Investimento no Exterior ("SPS" or the "Petitioner") – a minority shareholder in Brazilian corporation JBS S.A. ("JBS") – petitions this Court, pursuant to 28 U.S.C. § 1782, for discovery from J.P. Morgan Chase Bank, N.A. ("JPM") and from Barclays USA, Inc. ("Barclays USA" and, together with JPM, the "Respondents") for use in a contemplated Brazilian legal proceeding (the "Application"). Specifically, SPS seeks discovery regarding transactions by four companies through the intermediation of the services provided by Respondents, which SPS believes may evidence an alleged international corruption scheme led by the

2

controlling shareholders of JBS (the "Batista Family"). On April 26, 2022, we granted SPS's *ex parte* Application (the "April 26, 2022 Order"). On June 3, 2022, the Batista Family, along with their majority-owned companies JBS and J&F Investimentos S.A. ("J&F" and, together with JBS and the Batista Family, "Intervenors"), moved to quash the subpoenas served on Respondents (the "Motion").

### *Facts*

JBS is a Brazilian public corporation that is one of the world's largest meat suppliers and meat-processing companies. The Batista Family founded JBS decades ago, and the company remains majority-owned and controlled by the Batista Family through their holding company, J&F.

Over the last two decades, the Batista Family, by and through J&F, orchestrated a complex, international bribery scheme whereby nearly $150 million was paid to Brazilian government officials in order to extract benefits for JBS's controlling shareholders, allegedly at the expense of the company's minority shareholders. In June 2017, J&F pleaded guilty to corruption charges, as well as other criminal conduct, in Brazil. Then in October 2020, J&F pleaded guilty in the Eastern District of New York to conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"). Those guilty pleas resulted in total fines of over $3 billion imposed by Brazilian and U.S. authorities. Two members of the Batista Family also pleaded guilty to corruption charges, entering plea agreements with Brazil's Federal Prosecutor's Office and spending approximately six months in prison. As part of these various guilty pleas, Intervenors admitted to using several companies and financial institutions located outside of Brazil to funnel money through a complex web of corporate entities before it ultimately was paid to corrupt government officials in Brazil.

In September 2020, an international journalistic investigation called the "FinCEN

Files" leaked documents from the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN"), which reportedly show additional corrupt transactions by Intervenors that were not admitted in any of the Intervenors' guilty pleas and previously were unknown to the public. According to SPS, the FinCEN Files suggest that these additional transactions involved four non-Brazilian companies beneficially controlled by the Batista Family, as well as the Respondents who intermediated the transactions in their capacity as global financial institutions.

On April 4, 2022, SPS filed the *ex parte* Application, seeking discovery from Respondents that may evidence these additional transactions that purportedly defrauded JBS and its minority shareholders. SPS intends to use this discovery to bolster a draft complaint that it plans to file with Brazil's securities and exchange commission – *Comissão de Valores Mobiliários* ("CVM") – informing CVM of the new misconduct unveiled by the FinCEN Files and potentially triggering an indictment of Intervenors. On April 26, 2022, this Court granted SPS's *ex parte* Application, and SPS served its subpoenas on Respondents on May 4, 2022. On May 18, 2022, both Respondents sent letters to SPS setting forth responses and objections and offering to meet and confer to discuss production of the requested documents.[1] On June 3, 2022, Intervenors moved to vacate the April 26, 2022 Order and to quash the subpoenas served on Respondents, after which SPS met and conferred with counsel for both Respondents. At both meetings, SPS urged Respondents formally to join the

---

[1] Counsel for SPS received a letter response from Ms. Magda Jimenez Train, "Americas Head of Civil Litigation at Barclays," purportedly writing "[o]n behalf of Barclays USA, Inc." and setting forth Barclays USA's responses and objections to SPS's subpoena. In her letter, Ms. Jimenez Train stated that Barclays USA, Inc. was dissolved, but nevertheless accepted service of the subpoena, responded to it, and offered to meet and confer with SPS to discuss the production of documents requested by the subpoena. Dkt 25, at 21–22 & n.13. On May 25, 2022, counsel for SPS met and conferred with counsel for "Barclays" purportedly on behalf of Barclays USA. *Id.*, at 22.

4

Intervenors' Motion if and to the extent they wanted the subpoenas quashed on any of the same grounds. To date, neither Respondent has appeared before this Court or taken a position on this motion.

### *Discussion*

Section 1782 authorizes federal district courts to order discovery in aid of proceedings before a foreign tribunal. This authorization from Congress has two primary goals: promoting respect for foreign governments by assisting their tribunals and thereby encouraging reciprocal assistance.[2] To that end, the Supreme Court and the Court of Appeals have instructed district courts to take a "hospitable view"[3] of Section 1782 discovery, the availability of which "is quite broad and only has broadened through successive amendments over the years."[4]

To obtain discovery under Section 1782, a party must establish three statutory prerequisites: (1) the person or entity from whom discovery is sought "resides" or is "found" in the district where the application is made; (2) the requested material is "for use" in a proceeding before a foreign tribunal; and (3) "the application is made by a foreign or international tribunal or any interested person."[5] Once these requirements are met, district courts may grant discovery after taking

---

[2] *ZF Auto. US, Inc. v. Luxshare, Ltd.*, No. 21-401, 2022 WL 2111355, at *7 (U.S. June 13, 2022).

[3] *In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

[4] *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017).

[5] *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 675 (2d Cir. 2022) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).

5

into consideration the discretionary factors set forth in *Intel v. Advanced Micro Devices, Inc.*[6]

Here, Intervenors argue that SPS has failed to meet three statutory factors as to Barclays USA and two of the factors as to JPM.[7]  Additionally, Intervenors argue that all four of the discretionary *Intel* factors weigh heavily against permitting the requested discovery.  As to JPM, we reject Intervenors' arguments on all counts and deny Intervenors' Motion.  With respect to Barclays USA, however, we hold that SPS has failed to satisfy Section 1782's first statutory requirement and therefore grant Intervenors' Motion without prejudice to an amended application by SPS.

*Statutory Requirements of Section 1782*

*Barclays USA, Inc. Is Not "Found" in This District*

To be eligible for Section 1782 relief, SPS must establish that the Respondents "reside" in or are "found" in this district.  Intervenors do not dispute that JPM, which is headquartered in Manhattan, resides in this district.  As to Barclays USA, however, Intervenors argue that "Barclays USA, Inc." is a dissolved entity and therefore neither "resides" in nor is "found" in this district.[8]  SPS makes a two-pronged counterargument:  (1) Intervenors do not have standing to contest this statutory requirement[9] and (2) Barclays USA resides or is found in this district because this Court has personal jurisdiction over Barclays USA.[10]

---

[6]  542 U.S. 241 (2004).

[7]  Intervenors do not dispute that JPM "resides" or is "found" in this district.

[8]  Dkt 29, at 7.

[9]  Dkt 25, at 17–18.

[10]  *See* Dkt 25, at 18–20 (citing *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019)).

SPS's standing argument lacks merit. The Court of Appeals has held that the ultimate targets of a Section 1782 discovery order have "standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute."[11]  Congress defined the scope of authorized judicial assistance by U.S. federal courts, and "a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of . . . § 1782."[12]  Accordingly, Intervenors have standing to challenge whether Barclays USA "resides" or is "found" in this district because that is a prerequisite for this Court's grant of discovery under the statute.

SPS argues next that it has satisfied the first statutory requirement because this Court has personal jurisdiction over Barclays USA.  In *In re del Valle Ruiz*,[13] the Court of Appeals held that the "resides or is found" language in 28 U.S.C. § 1782 extends to the limits of personal jurisdiction consistent with due process.[14]  That doubtless is so.  But Barclays USA, Inc., we are told, no longer exists, and the Court cannot have personal jurisdiction over a corporate ghost.

SPS argues that this Court has personal jurisdiction over some unidentified Barclays-affiliated entity, but it ignores distinctions among Barclays entities, referring to them all

---

[11]

    *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (quoting *In re Letter Rogatory from Justice Court, Montreal*, 523 F.2d 562, 564 (6th Cir. 1975)); *see also In re Letter of Request from Crown Prosecution Serv. of United Kingdom*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("[O]ne against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused.").

[12]

    *Application of Sarrio*, 119 F.3d at 148.

[13]

    939 F.3d 520 (2d Cir. 2019).

[14]

    *Id.*, at 527–28.

as "Barclays."[15] For example, SPS claims that "[a] quick review of publicly available information about Barclays indicates its contacts in this District are broad and significant."[16] Yet the contacts cited by SPS do not belong to the now non-existent Barclays USA, Inc. but to other unidentified Barclays-affiliated entities.

SPS points also to the fact that Ms. Jimenez Train, "Americas Head of Civil Litigation at Barclays," purportedly has accepted service of the subpoena "[o]n behalf of Barclays USA, Inc.," the now dissolved corporation.[17] But she is no more able to accept service on behalf of a no longer extant corporate entity than the Court is to exercise jurisdiction over it. In all the circumstances, we cannot exercise personal jurisdiction over Barclays USA if it in fact has been dissolved. Nor can we treat the April 26, 2022 Order as authorizing service of a subpoena on any other entity that has "Barclays" in its name and may be served in this district. Intervenors' Motion is granted as to Barclays USA without prejudice to an amended application by SPS naming one or more specific entities as to which it seeks subpoenas.

### *Requested Discovery Is "For Use" in a Proceeding Before a Foreign Tribunal*

To grant Section 1782 discovery, the information sought must be "for use in a proceeding in a foreign or international tribunal."[18] Intervenors argue that SPS does not satisfy this

---

[15]    *See* Dkt 25, at 19.

[16]    Dkt 25, at 19 n.9 ("New York is home to Barclays' US headquarters, and the Americas hub for [its] Corporate and Investment Bank.") (citation omitted).

[17]    Dkt 25, at 21–22 & n.13.

[18]    *IJK Palm LLC*, 33 F.4th at 672.

8

requirement for two reasons:  (1) the contemplated proceeding is "speculative" and not "within reasonable contemplation"[19] and (2) only an enforcement proceeding by CVM, as opposed to the initial investigative proceeding triggered by a complaint, would constitute a "foreign proceeding" within the meaning of Section 1782.[20]  Each of Intervenors' arguments is unavailing, and SPS satisfies Section 1782's second statutory requirement.

First, in order to satisfy Section 1782's "for use" requirement, the foreign proceeding at issue need not be "pending" or "imminent," although it must be "within reasonable contemplation."[21]  As the Court of Appeals recently held:

> "This requires a petitioner to show 'reliable indications of the likelihood that proceedings will be instituted within a reasonable time.' *Certain Funds*, 798 F.3d at 123 (citation omitted).  While we have not delineated 'what precisely an applicant must show to establish such indications . . . [a]t a minimum, a Section 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.' *Id.* at 123–24.  And 'a Section 1782 applicant must establish that [it] has the *practical ability* to inject the requested information into [the] foreign proceeding' that it contemplates.  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (emphasis added)."[22]

---

19

Dkt 21, at 2.

20

*See* Dkt 21, at 7–9.

21

*Intel*, 542 U.S. at 259.

22

*IJK Palm LLC*, 33 F.4th at 677.

Intervenors argue that the CVM proceeding is not within reasonable contemplation because SPS has not offered any reliable indications that the contemplated proceeding will be instituted within a reasonable time, nor does SPS have the practical ability to inject the requested information into the proceeding.[23]  These arguments are without merit.

SPS has offered several reliable indications sufficient to determine that the contemplated proceeding is "more than just a twinkle in counsel's eye."[24]  SPS has a 115-paragraph draft complaint with 15 different exhibits that SPS represents is ready to file with CVM "as is" and that SPS will file with CVM regardless of whether it obtains discovery here.[25]  Moreover, SPS has provided a sworn statement from its Brazilian lawyer attesting to SPS's intent to initiate the contemplated proceeding and outlining its legal theories therein.[26]  As the Court of Appeals and other courts in this district have held in similar circumstances, these indicia are sufficiently reliable to place the CVM proceeding within reasonable contemplation.[27]

SPS likewise has demonstrated its practical ability to inject the requested information into the contemplated foreign proceeding.  Indeed, Intervenors do not dispute that SPS has the right

---

[23]

Dkt 21, at 7–9.

[24]

*Certain Funds*, 798 F.3d at 123–24.

[25]

Dkt 25, at 6.

[26]

Dkt 25, at 6–7 (citing Suppl. Gonzalez Decl. ¶¶ 42–50).

[27]

See *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018) (summary order) ("reasonably contemplated" proceeding found where petitioner who was already engaged in related litigation "represented that it intended to initiate further litigation once it obtained additional information"); *see also In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *4–5 (S.D.N.Y. Jan. 16, 2020) ("reasonably contemplated" proceeding found, where petitioner submitted a sworn statement from its Swiss lawyer attesting to its intent to litigate in Switzerland and providing the legal theories on which it intends to rely).

to file its complaint with CVM, attaching the Section 1782 discovery as exhibits.[28]  This alone is sufficient to satisfy the "practical ability" component of the "for use" requirement because SPS would initiate the "foreign proceeding" by filing its complaint, thereby injecting the requested discovery into the proceeding.[29]  Accordingly, we need not reach the other procedural rights said to be held by SPS as described in the sworn statement of SPS's Brazilian counsel, and we conclude that SPS has satisfied the "for use" component of the second statutory requirement.[30]

Second, Intervenors argue that CVM's "preliminary review of a complaint is not a 'proceeding'" within the meaning of Section 1782 and, therefore, that there is no "proceeding" underlying SPS's Application.[31]  This is so, Intervenors claim, because the filing of SPS's complaint would not constitute a "proceeding" within Section 1782's statutory language, nor would it result in a "dispositive ruling . . . reviewable in court" as purportedly required by the Supreme Court in *Intel*.[32]  Intervenors misconstrue both the statutory language and the *Intel* ruling, as SPS's contemplated proceeding constitutes a "proceeding" within the meaning of Section 1782.

CVM has adopted an accusatorial system that proceeds in two stages.  First, once a complaint is filed, CVM commences an administrative proceeding during which CVM reviews the complaint, investigates the relevant facts, and determines whether to bring charges.  If CVM's

---

28

    Dkt 21, at 8.

29

    *See In re Accent Delight*, 869 F.3d at 132 ("[T]he term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'").

30

    *See* Dkt 25, at 13–14.

31

    Dkt 29, at 2.

32

    Dkt 29, at 3–4.

11

investigative unit decides to bring charges, this commences an enforcement proceeding by CVM that could result in sanctions against the Intervenors. On the other hand, if CVM's investigative unit does not bring charges, the complainant can appeal this decision to CVM's Board of Commissioners.[33]

Intervenors argue that SPS's contemplated proceeding does not constitute a "proceeding" within the statutory language because Section 1782 provides for discovery in aid of "*criminal* investigations *before* formal accusation," but not civil or administrative investigations.[34] But the Supreme Court has interpreted Section 1782's language broadly, noting that the statute contemplates judicial assistance for investigations of a "criminal, civil, administrative, or other nature."[35] The Court has noted also that there is no evidence that the statutory language regarding criminal investigations "was an endeavor to rein in, rather than to confirm, by way of example, the broad range of discovery authorized."[36] In other words, this statutory language does not narrow the scope of relief authorized by Section 1782 as argued by Intervenors. Accordingly, there is no basis to exclude SPS's contemplated proceeding under the statutory language of Section 1782.[37]

---

[33]

See Dkt 25, at 8–9; Dkt 29, at 2–4.

[34]

Dkt 29, at 2 (emphasis added).

[35]

*Intel*, 542 U.S. at 259 (quoting S.Rep. No. 1580, at 9, U.S.Code Cong. & Admin.News 1964, pp. 3782, 3789).

[36]

*Intel*, 542 U.S. at 259.

[37]

Intervenors also make the confounding argument that the contemplated proceeding would not constitute an investigation "before formal accusation" while simultaneously conceding that an indictment by CVM would constitute such a formal accusation. *See* Dkt 29, at 2. As such, CVM's investigation of the allegations in SPS's complaint would necessarily be an investigation "before formal accusation."

Turning to the *Intel* ruling, Intervenors gloss over the many factual similarities between that case and this one[38] in order to seize upon one difference that they claim is fatal to SPS's Application. They argue that CVM's preliminary review of SPS's complaint would not result in a "dispositive ruling" that is "reviewable *in court*," which – they argue – is required by *Intel*.[39] Intervenors are mistaken.

First, *Intel* does not require that a contemplated complaint result in a dispositive ruling that is reviewable "in court."[40] In *Intel*, the Supreme Court held that the factual circumstances present in that case – *e.g.*, that the decision made by the European Commission was reviewable by European courts – was sufficient to satisfy Section 1782, but the Court did not thereby establish Section 1782's minimum requirements.[45] Indeed, the Court of Appeals has interpreted *Intel* to allow for the dispositive ruling to be reviewable "in courts *or other institutions*," which is consistent with the Supreme Court's broad interpretation of Section 1782 and includes CVM's Board of Commissioners.[46] What is more, the Court of Appeals has found that SPS's complaint would commence a "foreign proceeding" within the meaning of Section 1782 so long as it triggered an

---

[38]

   *See* Dkt 25, at 9–10.

[39]

   *See* Dkt 29, at 3–4 (quoting *Intel*, 542 U.S. at 255) (emphasis in original).

[40]

   Dkt 29, at 3–4.

[45]

   *See Certain Funds*, 798 F.3d at 118 ("The Court appeared to regard the [*Intel* case] as an easy one, in effect finding that the facts before it were sufficient to satisfy the requirements of the statute, and not suggesting that facts identical to those in *Intel* were necessary to meet those requirements.").

[46]

   *See id.*, at 118–19.

investigation by CVM and a recommendation whether or not to indict.[47] Hence, SPS will commence a "proceeding" by filing its complaint with CVM, and SPS has thereby satisfied this statutory requirement.

*SPS Is an "Interested Person"*

Finally, to be eligible for discovery under Section 1782, SPS must establish that it is an "interested person" in the contemplated proceeding.[48] Here, the analysis turns on whether SPS has sufficient "participation rights" in the proceeding to "possess[] a reasonable interest in obtaining [judicial] assistance" from this Court.[49] Although neither the Supreme Court nor the Court of Appeals has delineated the minimum "participation rights" required under Section 1782,[50] it is clear by reference to rulings in similar cases that SPS qualifies as an "interested person" in the contemplated proceeding.

In *Intel*, for example, the Court determined that the applicant was an "interested person" despite the fact that the *Intel* applicant, like SPS, "was not a party to the foreign proceeding, it there pressed no claim for relief on its own behalf, and it stood no chance of obtaining a damages

---

[47]

    *See IJK Palm LLC*, 33 F.4th at 678 (citing *Intel*, 542 U.S. at 255) ("In *Intel*, the movant's complaint to the DG-Competition triggered an investigation and recommendation to the European Commission.  [*Intel*] at 255.  The Supreme Court held that that process itself comprised a 'foreign proceeding' within the meaning of § 1782.").

[48]

    *See id.,* at 675 (quoting *Brandi-Dohrn*, 673 F.3d at 80).

[49]

    *See Intel*, 542 U.S. at 256.

[50]

    *See Certain Funds*, 798 F.3d at 118.

14

award."[51]  Rather, the "participation rights" on which the *Intel* Court relied in holding that the applicant was an "interested person," "prominently included the applicant's ability to use the evidence it sought in the U.S. courts before the foreign administrative tribunal and courts by submitting the evidence to the investigating agency in the foreign proceedings."[52]  Similarly, in *In re Furstenberg Fin. SAS*, the Court held that the applicant was an "interested person" based upon participation rights that included the right to (1) file a complaint that would trigger the legal proceeding (2) participate in the proceeding by presenting evidence to the investigating judge and (3) appeal a decision by the investigating judge not to proceed with an investigation.[53]  Here, it is undisputed that SPS has the right to file its complaint, attach the Section 1782 discovery, and appeal a decision by CVM against indictment to CVM's Board of Commissioners.  SPS therefore is an "interested person" within the scope of Section 1782.

Intervenors rely upon inapposite case law and a parade of horribles to argue that SPS lacks sufficient participation rights in the contemplated proceeding.[54]  They contend that SPS is like

---

[51]

       *See In re Accent Delight*, 869 F.3d at 129 ("*Intel* thus supports the view that Section 1782 does not impose such requirements.").

[52]

       *Certain Funds*, 798 F.3d at 118.

[53]

       No. 18-MC-44 (JGK), 2018 WL 3392882, at *5 (S.D.N.Y. July 12, 2018).

[54]

       Intervenors also cite to a recent decision by Magistrate Judge Hall in the District of Delaware (the "Delaware Decision") denying SPS's application for Section 1782 discovery for use in a pending CVM proceeding against Intervenors.  *See In re SPS I Fundo de Investimento de Acoes-Investimento no Exterior*, Case No. 21-mc00532-RGA-JLH at Dkt 25 (D. Del. Nov. 1, 2016) (finding that SPS was not an "interested person" in the pending CVM proceeding).  The Delaware Decision is unpersuasive given that it concerns a different foreign proceeding, in which SPS's participation rights differ significantly, in part because the proceeding already was pending at the time of application and was not commenced by SPS.

the unsuccessful applicants in *KPMG* and *IJK* because it merely has the ability to "pass on information" to CVM, which CVM "may elect" to act upon.[55]  Both cases are inapposite.  In *KPMG* and *IJK*, the applicant was unable to commence the contemplated proceeding on its own, and instead had to provide the Section 1782 discovery to third parties in the hope that they, in turn, would submit it to the foreign tribunal.  Here, however, it is undisputed that SPS has the ability to submit its complaint and the requested discovery directly to the foreign tribunal: CVM.  Intervenors warn that if this Court holds that SPS is an "interested person," it will flood the federal courts with foreign discovery requests, potentially from all 215 million Brazilian citizens.  The Court of Appeals rejected essentially the same argument in *In re Accent Delight*:

> "Finally, we respond to [Intervenor-Appellant's] contention that our holding today 'would permit virtually anyone to obtain discovery under Section 1782.' Appellants' Reply Br. 5.  We think his professed fears are unwarranted for three reasons.  First, it is unlikely that any member of the public with no apparent connection to a dispute in the foreign tribunal would have procedural opportunities to 'use' discovery there as we have defined that term.  Second, Section 1782's distinct requirement that applicants be 'interested persons' serves as an adequate roadblock to applicants with connections too attenuated to justify granting discovery in this country.  Third, even if the statutory requirements are met, a grant of discovery under Section 1782 remains within the discretion of the district court and therefore its misuse can be avoided through the prudent exercise of that court's discretion."[56]

---

[55]

Dkt 21, at 11.

[56]

869 F.3d at 133.

We concur and likewise are unpersuaded by Intervenors' grim forecast.

*Intel's Discretionary Factors Weigh in Favor of Granting Discovery*

Given that SPS has satisfied the statutory requirements as to JPM, this Court has broad discretion to grant the requested discovery, taking into consideration the four factors identified in *Intel*:

> (1) Whether the "person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent" because a foreign tribunal presumably has authority to order discovery on its own;
>
> (2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) Whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) Whether the requests are unduly intrusive or burdensome.[57]

Courts exercising their discretion must consider also "the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."[58]

---

[57]     *Intel*, 542 U.S. at 264–65.

[58]     *Certain Funds*, 798 F.3d at 117 (internal quotation marks omitted).

The twin aims of Section 1782 and all four *Intel* factors weigh in favor of SPS's Application.  First, JPM will not be a party or "participant" in SPS's contemplated proceeding. Second, there is no evidence that CVM would be unreceptive to the documentary evidence sought through this proceeding.[59]  To the contrary, Intervenors concede that CVM is receptive to judicial assistance from U.S. federal courts.[60]  Third, there is no evidence that SPS is attempting to circumvent any proof-gathering restrictions imposed by Brazilian law or otherwise seeking the discovery in bad faith.  This factor concerns whether the foreign forum has "rules akin to privileges that *prohibit* the acquisition or use of certain materials," not whether it has "rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."[61]  Finally, the subpoena proposed by SPS is not unduly intrusive or burdensome, as evidenced by the fact that JPM has met and conferred with SPS regarding production of the requested documents and has not opposed the Application.[62]  In any event, nothing in this opinion precludes JPM from filing objections to the subpoena, which would permit tailoring

---

[59]   *See Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (holding second *Intel* factor favors an application absent "proof that [the] tribunal would reject evidence obtained with the aid of § 1782."); *Porsche Automobil Holding*, 2016 WL 702327, at *8 ("District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance.").

[60]   Dkt 21, at 18.

[61]   *See Mees*, 793 F.3d at 303 n.20 (emphasis in original).

[62]   Dkt 25, at 29–30; *In re Aso*, No. 19MC190JGKJLC, 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) ("It appears disingenuous for [intervenor] to protest the burden of the requests addressed to the subpoena targets when none of them have intervened (though they have all been served with the Application."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *7 (S.D.N.Y. July 12, 2018) ("[The subpoena targets] have not objected to this application on the grounds that the requests are overly broad and/or intrusive, which is strong support for a finding in favor of the petitioners on [the fourth *Intel*] factor.").

on a per-request basis. Considering the statute's twin aims of efficiency and reciprocity, we are unmoved by the circuitous path through which Intervenors claim that CVM could seek this discovery on its own. Additionally, it is unclear that CVM would be able to seek discovery of the same scope without judicial assistance from this Court. Accordingly, the Court finds that SPS has satisfied Section 1782's statutory requirements, and it will serve the aims of the statute to grant the requested discovery to SPS.

### *Conclusion*

For the foregoing reasons, Intervenors motion to vacate the April 26, 2022 Order and quash the subpoenas [Dkt 20] is GRANTED as to Respondent Barclays USA without prejudice to an amended application and DENIED as to Respondent JPM. JPM shall comply with the subpoena and produce the discovery requested to SPS. The parties shall confer with respect to whether any protective or confidentiality order is warranted and, if so, submit a proposed order to the Court.

SO ORDERED.

Dated:          December 9, 2022

Lewis A. Kaplan
United States District Judge