**SUPPLEMENTAL HOLLEMBEAK DECLARATION
IN SUPPORT OF AMENDED APPLICATION OF SPS I FUNDO DE
INVESTIMENTO DE AÇÕES – INVESTIMENTO NO EXTERIOR
FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

# <u>EXHIBIT I</u>

Excerpts – Barclays PLC's Form 20-F for the fiscal year ended December 31, 2022
on file with the SEC

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, DC 20549
FORM 20-F

☐   REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934

☑   ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended 31 December 2022

☐   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

☐   SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of event requiring this shell company report _____

Commission file number                    Barclays PLC                    1-09246

BARCLAYS PLC
(Exact Name of Registrant as Specified in its Charter)

England
(Jurisdiction of Incorporation or Organization)

1 CHURCHILL PLACE, LONDON E14 5HP, England
(Address of Principal Executive Offices)

GARTH WRIGHT, +44 (0)20 7116 3170, GARTH.WRIGHT@BARCLAYS.COM
1 CHURCHILL PLACE, LONDON E14 5HP, England
(Name, Telephone, E-mail and/or Facsimile number and Address of Company Contact Person)

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

385

## Notes to the financial statements (continued)

*Accruals, provisions, contingent liabilities and legal proceedings*

### 26 Legal, competition and regulatory matters

The Group faces legal, competition and regulatory challenges, many of which are beyond our control. The extent of the impact of these matters cannot always be predicted but may materially impact our operations, financial results, condition and prospects. Matters arising from a set of similar circumstances can give rise to either a contingent liability or a provision, or both, depending on the relevant facts and circumstances.

The recognition of provisions in relation to such matters involves critical accounting estimates and judgments in accordance with the relevant accounting policies applicable to Note 24, Provisions. We have not disclosed an estimate of the potential financial impact or effect on the Group of contingent liabilities where it is not currently practicable to do so. Various matters detailed in this note seek damages of an unspecified amount. While certain matters specify the damages claimed, such claimed amounts do not necessarily reflect the Group's potential financial exposure in respect of those matters.

Matters are ordered under headings corresponding to the financial statements in which they are disclosed.

*Investigations into certain advisory services agreements*

#### 1. Barclays PLC and Barclays Bank PLC

*FCA proceedings*

In 2008, Barclays Bank PLC and Qatar Holdings LLC entered into two advisory service agreements (the Agreements). The Financial Conduct Authority (FCA) conducted an investigation into whether the Agreements may have related to Barclays PLC's capital raisings in June and November 2008 (the Capital Raisings) and therefore should have been disclosed in the announcements or public documents relating to the Capital Raisings. In 2013, the FCA issued warning notices (the Warning Notices) finding that Barclays PLC and Barclays Bank PLC acted recklessly and in breach of certain disclosure-related listing rules, and that Barclays PLC was also in breach of Listing Principle 3. The financial penalty provided in the Warning Notices was £50m. Barclays PLC and Barclays Bank PLC contested the findings. In September 2022, the FCA's Regulatory Decisions Committee (RDC) issued Decision Notices finding that Barclays PLC and Barclays Bank PLC breached certain disclosure-related listing rules. The RDC also found that in relation to the disclosures made in the Capital Raising of November 2008, Barclays PLC and Barclays Bank PLC acted recklessly, and that Barclays PLC breached Listing Principle 3. The RDC upheld the combined penalty of £50m on Barclays PLC and Barclays Bank PLC, the same penalty as in the Warning Notices. Barclays PLC and Barclays Bank PLC have referred the RDC's findings to the Upper Tribunal for reconsideration.

*Investigations into LIBOR and other benchmarks and related civil actions*

Regulators and law enforcement agencies, including certain competition authorities, from a number of governments have conducted investigations relating to Barclays Bank PLC's involvement in allegedly manipulating certain financial benchmarks, such as LIBOR. Various individuals and corporates in a range of jurisdictions have threatened or brought civil actions against the Group and other banks in relation to the alleged manipulation of LIBOR and/or other benchmarks.

*USD LIBOR civil actions*

The majority of the USD LIBOR cases, which have been filed in various US jurisdictions, have been consolidated for pre-trial purposes in the US District Court in the Southern District of New York (SDNY). The complaints are substantially similar and allege, among other things, that Barclays PLC, Barclays Bank PLC, Barclays Capital Inc. (BCI) and other financial institutions individually and collectively violated provisions of the US Sherman Antitrust Act (Antitrust Act), the US Commodity Exchange Act (CEA), the US Racketeer Influenced and Corrupt Organizations Act (RICO), the US Securities Exchange Act of 1934 and various state laws by manipulating USD LIBOR rates.

Putative class actions and individual actions seek unspecified damages with the exception of one lawsuit, in which the plaintiffs are seeking no less than $100m in actual damages and additional punitive damages against all defendants, including Barclays Bank PLC. Some of the lawsuits also seek trebling of damages under the Antitrust Act and RICO. Barclays Bank PLC has previously settled certain claims. In 2022, Barclays Bank PLC also settled one further matter. The financial impact of the settlement is not material to the Group's operating results, cash flows or financial position.

*Sterling LIBOR civil actions*

In 2016, two putative class actions filed in the SDNY against Barclays Bank PLC, BCI and other Sterling LIBOR panel banks alleging, among other things, that the defendants manipulated the Sterling LIBOR rate in violation of the Antitrust Act, CEA and RICO, were consolidated. The defendants' motion to dismiss the claims was granted in 2018. The plaintiffs have appealed the dismissal.

*Japanese Yen LIBOR civil actions*

In 2012, a putative class action was filed in the SDNY against Barclays Bank PLC and other Japanese Yen LIBOR panel banks by a lead plaintiff involved in exchange-traded derivatives and members of the Japanese Bankers Association's Euroyen Tokyo Interbank Offered Rate (Euroyen TIBOR) panel. The complaint alleges, among other things, manipulation of the Euroyen TIBOR and Yen LIBOR rates and breaches of the CEA and the Antitrust Act. In 2014, the court dismissed the plaintiff's antitrust claims, and in 2020, the court dismissed the plaintiff's remaining CEA claims.

In 2015, a second putative class action, making similar allegations to the above class action, was filed in the SDNY against Barclays PLC, Barclays Bank PLC and BCI. Barclays and the plaintiffs have reached a settlement of $17.75m for both actions. A final court approval hearing has been scheduled for March 2023.

*SIBOR/SOR civil action*

In 2016, a putative class action was filed in the SDNY against Barclays PLC, Barclays Bank PLC, BCI and other defendants, alleging manipulation of the Singapore Interbank Offered Rate (SIBOR) and Singapore Swap Offer Rate (SOR). The plaintiffs and remaining defendants (which includes Barclays Bank PLC) reached a joint settlement to resolve this matter for $91m, which received final court

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |
|----------|---------------------------|-----------|-------------|------------------|---------------------|------------------------|------------|

386

Notes to the financial statements (continued)

Accruals, provisions, contingent liabilities and legal proceedings

approval in November 2022. This matter is now concluded. The financial impact of Barclays' share of the joint settlement is not material to the Group's operating results, cash flows or financial position.

*ICE LIBOR civil actions*

In 2019, several putative class actions were filed in the SDNY against a panel of banks, including Barclays PLC, Barclays Bank PLC, BCI, other financial institution defendants and Intercontinental Exchange Inc. and certain of its affiliates (ICE), asserting antitrust claims that the defendants manipulated USD LIBOR through the defendants' submissions to ICE. These actions have been consolidated. The defendants' motion to dismiss was granted in 2020 and the plaintiffs appealed. In February 2022, the dismissal was affirmed on appeal. The plaintiffs did not seek US Supreme Court review. This matter is now concluded.

In August 2020, an ICE LIBOR-related action was filed by a group of individual plaintiffs in the US District Court for the Northern District of California on behalf of individual borrowers and consumers of loans and credit cards with variable interest rates linked to USD ICE LIBOR. The plaintiffs' motion seeking, among other things, preliminary and permanent injunctions to enjoin the defendants from continuing to set LIBOR or enforce any financial instrument that relies in whole or in part on USD LIBOR was denied. The defendants' motion to dismiss the case was granted in September 2022. The plaintiffs have filed an amended complaint, which the defendants have moved to dismiss.

*Non-US benchmarks civil actions*

There remains one claim, issued in 2017, against Barclays Bank PLC and other banks in the UK in connection with alleged manipulation of LIBOR. Proceedings have also been brought in a number of other jurisdictions in Europe, Argentina and Israel relating to alleged manipulation of LIBOR and EURIBOR. Additional proceedings in other jurisdictions may be brought in the future.

*Credit Default Swap civil action*

A putative antitrust class action is pending in New Mexico federal court against Barclays Bank PLC, BCI and various other financial institutions. The plaintiffs, the New Mexico State Investment Council and certain New Mexico pension funds, allege that the defendants conspired to manipulate the benchmark price used to value Credit Default Swap (CDS) contracts at settlement (i.e. the CDS final auction price). The plaintiffs allege violations of US antitrust laws and the CEA, and unjust enrichment under state law. The defendants have moved to dismiss the case.

*Foreign Exchange investigations and related civil actions*

The Group has been the subject of investigations in various jurisdictions in relation to certain sales and trading practices in the Foreign Exchange market. Settlements were reached in various jurisdictions in connection with these investigations, including the EU and US. The financial impact of any remaining ongoing investigations is not expected to be material to the Group's operating results, cash flows or financial position. Various individuals and corporates in a range of jurisdictions have threatened or brought civil actions against the Group and other banks in relation to alleged manipulation of Foreign Exchange markets.

*US FX opt out civil action*

In 2018, Barclays Bank PLC and BCI settled a consolidated action filed in the SDNY, alleging manipulation of Foreign Exchange markets (Consolidated FX Action), for a total amount of $384m. Also in 2018, a group of plaintiffs, who opted out of the Consolidated FX Action, filed a complaint in the SDNY against Barclays PLC, Barclays Bank PLC, BCI and other defendants. Some of the plaintiffs' claims were dismissed in 2020. Barclays PLC, Barclays Bank PLC, and BCI have reached a settlement in principle of all claims against them in the matter. The financial impact of this settlement is not material to the Group's operating results, cash flows or financial position.

*US retail basis civil action*

In 2015, a putative class action was filed against several international banks, including Barclays PLC and BCI, on behalf of a proposed class of individuals who exchanged currencies on a retail basis at bank branches (Retail Basis Claims). The SDNY has ruled that the Retail Basis Claims are not covered by the settlement agreement in the Consolidated FX Action. The Court subsequently dismissed all Retail Basis Claims against the Group and all other defendants. The plaintiffs have filed an amended complaint.

*Non-US FX civil actions*

Legal proceedings have been brought or are threatened against Barclays PLC, Barclays Bank PLC, BCI and Barclays Execution Services Limited (BX) in connection with alleged manipulation of Foreign Exchange in the UK, a number of other jurisdictions in Europe, Israel, Brazil and Australia. Additional proceedings may be brought in the future.

The above-mentioned proceedings include two purported class actions filed against Barclays PLC, Barclays Bank PLC, BX, BCI and other financial institutions in the UK Competition Appeal Tribunal (CAT) in 2019. The CAT refused to certify these claims in the first quarter of 2022 although the claimants have obtained permission to appeal and judicially review the CAT's decisions. Also in 2019, a separate claim was filed in the UK in the High Court of Justice (High Court), and subsequently transferred to the CAT, by various banks and asset management firms against Barclays Bank PLC and other financial institutions alleging breaches of European and UK competition laws related to FX trading. This claim has been settled as part of the settlement in principle referred to under the US FX opt out civil action above.

*Metals-related civil actions*

A number of US civil complaints, each on behalf of a proposed class of plaintiffs, have been consolidated and transferred to the SDNY. The complaints allege that Barclays Bank PLC and other members of The London Gold Market Fixing Ltd. manipulated the prices of gold and gold derivative contracts in violation of the Antitrust Act and other federal laws. The parties reached a joint settlement to resolve this matter for $50m. The settlement received final court approval in August 2022. This matter is now concluded. A separate US civil complaint by a proposed class of plaintiffs against a number of banks, including Barclays Bank PLC, BCI and BX, alleging

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |
|---|---|---|---|---|---|---|---|

Notes to the financial statements (continued)
Accruals, provisions, contingent liabilities and legal proceedings

manipulation of the price of silver in violation of the CEA, the Antitrust Act and state antitrust and consumer protection laws, has been dismissed as against the Barclays entities. The plaintiffs have the option to seek the court's permission to appeal.

Civil actions have also been filed in Canadian courts against Barclays PLC, Barclays Bank PLC, Barclays Capital Canada Inc. and BCI on behalf of proposed classes of plaintiffs alleging manipulation of gold and silver prices.

US residential mortgage related civil actions

There are two pending US Residential Mortgage-Backed Securities (RMBS) related civil actions arising from unresolved repurchase requests submitted by Trustees for certain RMBS, alleging breaches of various loan-level representations and warranties (R&Ws) made by Barclays Bank PLC and/or a subsidiary acquired in 2007. In one action, the Barclays defendants' motion for summary judgment was granted in June 2022 and the plaintiffs' R&W breach claim was dismissed. The plaintiffs are appealing the decision. The other repurchase action is pending. Barclays Bank PLC reached settlements to resolve two other repurchase actions, which have received final court approval. Payment of the settlement amounts was completed in July 2022. These matters are now concluded. The financial impact of the settlements is not material to the Group's operating results, cash flows or financial position.

In 2020, a civil litigation claim was filed in the New Mexico First Judicial District Court by the State of New Mexico against six banks, including BCI, on behalf of two New Mexico state pension funds and the New Mexico State Investment Council relating to legacy RMBS purchases. As to BCI, the complaint alleges that the funds purchased approximately $22m in RMBS underwritten by BCI. The parties have reached a joint settlement to resolve this matter for $32.5m. The settlement was paid in April 2022. The financial impact of BCI's share of the joint settlement is not material to the Group's operating results, cash flows or financial position.

Government and agency securities civil actions

Consolidated putative class action complaints filed in US federal court against Barclays Bank PLC, BCI and other financial institutions under the Antitrust Act and state common law allege that the defendants (i) conspired to manipulate the US Treasury securities market and/or (ii) conspired to prevent the creation of certain platforms by boycotting or threatening to boycott such trading platforms. The court dismissed the consolidated action in March 2021. The plaintiffs filed an amended complaint. The defendants' motion to dismiss the amended complaint was granted in March 2022. The plaintiffs are appealing this decision.

In addition, certain plaintiffs have filed a related, direct action against BCI and certain other financial institutions, alleging that defendants conspired to fix and manipulate the US Treasury securities market in violation of the Antitrust Act, the CEA and state common law.

*Supranational, Sovereign and Agency bonds civil actions*

Civil antitrust actions have been filed in the SDNY and Federal Court of Canada in Toronto against Barclays Bank PLC, BCI, BX, Barclays Capital Securities Limited and, with respect to the civil action filed in Canada only, Barclays Capital Canada, Inc. and other financial institutions alleging that the defendants conspired to fix prices and restrain competition in the market for US dollar-denominated Supranational, Sovereign and Agency bonds.

In one of the actions filed in the SDNY, the court granted the defendants' motion to dismiss the plaintiffs' complaint. The dismissal was affirmed on appeal; however, the district court subsequently informed the parties of a potential conflict. The matter was assigned to a new district court judge and the plaintiffs moved to vacate the dismissal order, which was denied. The plaintiffs' time to appeal has expired and this matter is now concluded. The plaintiffs have voluntarily dismissed the other SDNY action. In the Federal Court of Canada action, the parties have reached a settlement in principle, which will require court approval. The financial impact of the settlement is not expected to be material to the Group's operating results, cash flows or financial position.

*Variable Rate Demand Obligations civil actions*

Civil actions have been filed against Barclays Bank PLC and BCI and other financial institutions alleging the defendants conspired or colluded to artificially inflate interest rates set for Variable Rate Demand Obligations (VRDOs). VRDOs are municipal bonds with interest rates that reset on a periodic basis, most commonly weekly. Two actions in state court have been filed by private plaintiffs on behalf of the states of Illinois and California. Three putative class action complaints have been consolidated in the SDNY. In the consolidated SDNY class action, certain of the plaintiffs' claims were dismissed in November 2020 and June 2022. In the California action, the plaintiffs' claims were dismissed in June 2021. The plaintiffs have appealed the dismissal. In the Illinois action, trial has been scheduled for August 2023.

Odd-lot corporate bonds antitrust class action

In 2020, BCI, together with other financial institutions, were named as defendants in a putative class action. The complaint alleges a conspiracy to boycott developing electronic trading platforms for odd-lots and price fixing. The plaintiffs demand unspecified money damages.

Interest rate swap and credit default swap US civil actions

Barclays PLC, Barclays Bank PLC and BCI, together with other financial institutions that act as market makers for interest rate swaps (IRS), are named as defendants in several antitrust class actions which were consolidated in the SDNY in 2016. The complaints allege the defendants conspired to prevent the development of exchanges for IRS and demand unspecified money damages.

In 2018, trueEX LLC filed an antitrust class action in the SDNY against a number of financial institutions including Barclays PLC, Barclays Bank PLC and BCI based on similar allegations with respect to trueEX LLC's development of an IRS platform. In 2017, Tera Group Inc. filed a separate civil antitrust action in the SDNY claiming that certain conduct alleged in the IRS cases also caused the plaintiff to suffer harm with respect to the Credit Default Swaps market. In 2018 and 2019, respectively, the court dismissed certain claims in both cases for unjust enrichment and tortious interference but denied motions to dismiss the federal and state antitrust claims, which remain pending.

Case 1:22-mc-00118-LAK   Document 50-9   Filed 04/26/23   Page 6 of 9

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |

388

## Notes to the financial statements (continued)

Accruals, provisions, contingent liabilities and legal proceedings

**BDC Finance L.L.C.**

In 2008, BDC Finance L.L.C. (BDC) filed a complaint in the Supreme Court of the State of New York (NY Supreme Court), demanding damages of $298m, alleging that Barclays Bank PLC had breached a contract in connection with a portfolio of total return swaps governed by an ISDA Master Agreement (the Master Agreement). Following a trial, the court ruled in 2018 that Barclays Bank PLC was not a defaulting party, which was affirmed on appeal. In April 2021, the trial court entered judgement in favour of Barclays Bank PLC for $3.3m and as yet to be determined legal fees and costs. BDC appealed. In January 2022, the appellate court reversed the trial court's summary judgment decision in favour of Barclays Bank PLC and remanded the case to the lower court for further proceedings. The parties have filed cross-motions on the scope of trial. The trial has been determined pending a decision on the motions and any subsequent appeal.

In 2011, BDC's investment advisor, BDCM Fund Adviser, LLC and its parent company, Black Diamond Capital Holdings, LLC, also sued Barclays Bank PLC and BCI in Connecticut State Court for unspecified damages allegedly resulting from Barclays Bank PLC's conduct relating to the Master Agreement, asserting claims for violation of the Connecticut Unfair Trade Practices Act and tortious interference with business and prospective business relations. This case is currently stayed.

**Civil actions in respect of the US Anti-Terrorism Act**

There are a number of civil actions, on behalf of more than 4,000 plaintiffs, filed in US courts in the US District Court in the Eastern District of New York (EDNY) and SDNY against Barclays Bank PLC and a number of other banks. The complaints generally allege that Barclays Bank PLC and those banks engaged in a conspiracy to facilitate US dollar-denominated transactions for the Iranian Government and various Iranian banks, which in turn funded acts of terrorism that injured or killed the plaintiffs or the plaintiffs' family members. The plaintiffs seek to recover damages for pain, suffering and mental anguish under the provisions of the US Anti-Terrorism Act, which allow for the trebling of any proven damages.

The court granted the defendants' motions to dismiss three out of the six actions in the EDNY. The plaintiffs appealed in one action and the dismissal was affirmed in January 2023. The remaining EDNY actions are stayed. Out of the two actions in the SDNY, the court granted the defendants' motion to dismiss the first action. That action is stayed, and the second SDNY action is stayed pending any appeal on the dismissal of the first.

**Shareholder derivative action**

In November 2020, a purported Barclays shareholder filed a putative derivative action in New York state court against BCI and a number of current and former members of the Board of Directors of Barclays PLC and senior executives or employees of the Group. The shareholder filed the claim on behalf of nominal defendant Barclays PLC, alleging that the individual defendants harmed the company through breaches of their duties, including under the Companies Act 2006. The plaintiff seeks damages on behalf of Barclays PLC for the losses that Barclays PLC allegedly suffered as a result of these alleged breaches. An amended complaint was filed in April 2021, which BCI and certain other defendants moved to dismiss. The motion to dismiss was granted in April 2022. The plaintiff is appealing the decision.

**Derivative transactions civil action**

In 2021, Vestia, a Dutch housing association, brought a claim against Barclays Bank PLC in the UK in the High Court in relation to a series of derivative transactions entered into with Barclays Bank PLC between 2008 and 2011, seeking damages of £329m. Barclays Bank PLC is defending the claim and has made a counterclaim.

**Timeshare loans, skilled person review, and associated matters**

In August 2020, the FCA granted an application by Clydesdale Financial Services Limited (CFS), which trades as Barclays Partner Finance and houses Barclays' point-of-sale finance business, for a validation order with respect to certain loans to customers brokered between April 2014 and April 2016 by Azure Services Limited (ASL), a timeshare operator, which did not, at the point of sale, hold the necessary broker licence. As a condition to the validation order, the FCA required CFS to undertake a skilled person review of the assessment of affordability practices for the loans brokered by ASL (ASL Loans) as well as CFS' policies and procedures for assessing affordability and oversight of brokers more generally, and dictated a remediation methodology in the event that ASL Loans did not pass the affordability test. The skilled person made a number of observations, some of which were adverse, about both current and historic affordability practices as well as current oversight practices. CFS is not required to conduct a full back book review but, following a review of certain cohorts of loans to determine historic affordability and/or broker oversight practices that may have caused customer harm, where harm is identified, CFS' intention is to remediate. To date, CFS has identified a number of areas for remediation, but the scoping exercise is ongoing and remediation will only begin once the scoping exercise is complete. As at 31 December 2022, CFS booked a provision in respect of the expected remediation for these matters of £10.4m.

Separately, and notwithstanding this, CFS decided in March 2022 to extend the proactive remediation of ASL Loans beyond those brokered between April 2014 and April 2016 to include the full portfolio of ASL Loans originated outside the April 2014 to April 2016 period. As at 31 December 2022, the provision recognised in relation to this matter by CFS is £183m. Remediation of the full portfolio of ASL Loans started in October 2022 and is expected to be completed in 2023.

In addition, CFS completed a review of all other legacy timeshare retailers during 2022. No concerns were identified in relation to the majority of those retailers, but where concerns were identified, CFS' intention is to remediate. As at 31 December 2022, the provision recognised in relation to this matter by CFS is £96m.

**Over-issuance of Securities in the US**

Barclays Bank PLC maintains a US shelf registration statement with the US Securities and Exchange Commission (SEC) in order to issue securities to US investors. In May 2017, Barclays Bank PLC lost its status as a "well-known seasoned issuer" (or WKSI) as a result of an SEC settlement order involving BCI. Due to its loss of WKSI status, Barclays Bank PLC was required to register a specified amount of

## Notes to the financial statements (continued)

Accruals, provisions, contingent liabilities and legal proceedings

securities to be issued under certain US shelf registration statements filed with the SEC. In March 2022, executive management became aware that Barclays Bank PLC had issued securities materially in excess of the set amount under its 2019 US shelf registration statement and subsequently became aware that securities had also been issued in excess of the set amount under the predecessor US shelf registration statement. The securities that were over-issued included structured notes and exchange traded notes (ETNs). Securities issued in excess of the amount registered were considered to be "unregistered securities" for the purposes of US securities laws, with certain purchasers of those securities having a right to recover, upon the tender of such security to Barclays Bank PLC, the consideration paid for such security with interest, less the amount of any income received, or to recover damages from Barclays Bank PLC if the purchaser sold the security at a loss (the Rescission Price). Barclays Bank PLC commenced its rescission offer on 1 August 2022, by which Barclays Bank PLC offered to repurchase the relevant affected securities for the Rescission Price (the Rescission Offer). The Rescission Offer expired on 12 September 2022.

In September 2022, the SEC announced the resolution of its investigation of Barclays PLC and Barclays Bank PLC relating to the over-issuance of securities by Barclays Bank PLC under certain of its US shelf registration statements. Pursuant to the terms of the resolution, Barclays PLC and Barclays Bank PLC paid in the fourth quarter of 2022 a combined penalty of $200m (£165m[1]), without admitting or denying the SEC's findings. The SEC found that the independent Rescission Offer made by Barclays Bank PLC to holders of the relevant over-issued securities satisfied its requirements for disgorgement and related prejudgment interest.

The Group is engaged with, and responding to inquiries and requests for information from, various other regulators who may seek to impose fines, penalties and/or other sanctions as a result of this matter. Furthermore, Barclays Bank PLC and/or its affiliates may incur costs and liabilities in relation to private civil claims which have been filed and may face other potential private civil claims, class actions or other enforcement actions in relation to this matter. By way of example, in September 2022, a purported class action claim was filed in the US District Court in Manhattan seeking to hold Barclays PLC and former and current executives responsible for declines in the prices of its American depositary receipts, which the plaintiffs claim occurred as a result of alleged misstatements and omissions in its public disclosures; and in February 2023, a claim was brought in a New York federal court by holders of a series of ETNs alleging that Barclays' failure to disclose that these ETNs were unregistered securities misled investors and that, as a result, Barclays is liable for the holders' alleged losses following the suspension of further sales and issuances of such series of ETNs.

Following completion of the rescission offer on 12 September 2022, Barclays utilised a provision of £1,008m in settlement of valid structured note claims and paid a monetary penalty of $200m (£165m[1]) to the SEC. A contingent liability exists in relation to civil claims or any further enforcement actions taken against Barclays PLC and/or its affiliates, but Barclays Bank PLC is unable to assess the likelihood of liabilities that may arise out of such claims or actions.

Any liabilities, claims or actions in connection with the over-issuance of securities under Barclays Bank PLC's US shelf registration statements could have an adverse effect on the Group's business, financial condition, results of operations and reputation as a frequent issuer in the securities markets.

Note
[1] Exchange rate USD/GBP 1.22 as at 30 June 2022.

Investigation into the use of unapproved communications platforms

In September 2022, the SEC and the Commodity Futures Trading Commission (CFTC) announced settlements with a number of financial institutions, including Barclays PLC and BCI, of financial industry-wide investigations regarding compliance with record-keeping obligations in connection with business-related communications sent over unapproved electronic messaging platforms. The SEC and the CFTC found that Barclays Bank PLC and BCI failed to comply with their respective record-keeping rules, where such communications were sent or received by employees over electronic messaging platforms that had not been approved by the bank for business use by employees. As part of the settlement, in the third quarter of 2022, Barclays Bank PLC and BCI paid a combined $125m civil monetary penalty to the SEC and a $75m civil monetary penalty to the CFTC. There are also non-financial components to the settlements, including the retention of an independent compliance consultant and certain ongoing undertakings. This matter is now concluded.

## 2. Barclays PLC, Barclays Bank PLC and Barclays Bank UK PLC

HM Revenue & Customs (HMRC) assessments concerning UK Value Added Tax

In 2018, HMRC issued notices that have the effect of removing certain overseas subsidiaries that have operations in the UK from Barclays' UK VAT group, in which group supplies between members are generally free from VAT. The notices have retrospective effect and correspond to assessments of £181m (inclusive of interest), of which Barclays would expect to attribute an amount of approximately £128m to Barclays Bank UK PLC and £53m to Barclays Bank PLC. HMRC's decision has been appealed to the First Tier Tribunal (Tax Chamber).

Local authority civil actions concerning LIBOR

Following settlement by Barclays Bank PLC of various governmental investigations concerning certain benchmark interest rate submissions referred to above in 'Investigations into LIBOR and other benchmarks and related civil actions', in the UK, certain local authorities brought claims in 2018 against Barclays Bank PLC and Barclays Bank UK PLC asserting that they entered into loans between 2006 and 2008 in reliance on misrepresentations made by Barclays Bank PLC in respect of its conduct in relation to LIBOR. Barclays Bank PLC and Barclays Bank UK PLC were successful in their applications to strike out the claims. The claims have been settled on terms such that the parties have agreed not to pursue these claims further and to bear their own costs. The financial impact of the settlements is not material to the Group's operating results, cash flows or financial position.

FCA investigation into transaction monitoring

The FCA has been investigating Barclays' compliance with UK money laundering regulations and the FCA's rules and Principles for Businesses in an investigation which is focussed on aspects of Barclays' transaction monitoring in relation to certain business lines now in Barclays Bank UK PLC. Barclays has been co-operating with the investigation and responding to information requests.

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |
|---|---|---|---|---|---|---|---|

## Additional information (continued)

### Disclosure controls and procedures

The Chief Executive, C.S. Venkatakrishnan, and the Group Finance Director, Anna Cross, conducted with Group Management an evaluation of the effectiveness of the design and operation of the Group's disclosure controls and procedures as at 31 December 2022, which are defined as those controls and procedures designed to ensure that information required to be disclosed in reports filed or submitted under the US Securities Exchange Act of 1934 is recorded, processed, summarised and reported within the time periods specified in the US Securities and Exchange Commission's rules and forms. As of the date of the evaluation, the Chief Executive and Group Finance Director concluded that the design and operation of these disclosure controls and procedures were effective.

### Board of Directors

See the Directors' report for biographies.

#### Group Executive Committee

| Officers of the Group | | Date of Appointment as Officer |
|---|---|---|
| Anna Cross | Group Finance Director | 2022 |
| C S Venkatakrishnan | Group Chief Executive | 2021 |
| Paul Compton | Global Head of the Corporate & Investment Bank and President of Barclays Bank PLC (BBPLC) | 2016 |
| Alistair Currie* | Group Chief Operating Officer, Chief Executive Officer, BX | 2019 |
| Matthew Fitzwater | Interim Group Chief Compliance Officer | 2022 |
| Matt Hammerstein | CEO, Barclays UK | 2019 |
| Vim Maru[b] | Global Head of Consumer Banking and Payments | 2023 |
| Tristram Roberts | Group HR Director | 2015 |
| Taalib Shaah | Group Chief Risk Officer | 2020 |
| Stephen Shapiro | Group General Counsel and Company Secretary | 2017 |
| Sasha Wiggins | Group Head of Public Policy and Corporate Responsibility | 2020 |

Notes
a   On 1 February 2023, Mark-Ashton Rigby stepped down from his role as Group Chief Operating Officer and Chief Executive of BX and as a member of the Group Executive Committee. At the same time Alistair Currie, formerly Global Head of Banking and Payments, took over the role of Group Chief Operating Officer and Chief Executive of BX.
b   On 1 February 2023, Vim Maru joined Barclays as Global Head of Consumer Banking and Payments and as a member of the Group Executive Committee.

C.S. Venkatakrishnan, Group Chief Executive, Executive Director
See the Directors' report for biography.

Anna Cross, Group Finance Director, Executive Director
See the Directors' report for biography.

Vim Maru, Global Head of Consumer Banking and Payments
Vim Maru is Global Head of Consumer Banking and Payments, leading the transformation and growth agenda for a business portfolio which includes Consumer Cards and Payments (US Consumer Bank, Barclaycard Payments, Global Private Bank and Consumer Bank Europe) and UK Corporate Banking and Transaction Banking. Vim joined Barclays on 1 February 2023 and has worked in financial services for over 20 years. Prior to joining Barclays, he spent 11 years at Lloyds Banking Group, latterly as the Group Director for Retail and 12 years at Santander UK in a range of roles. Vim is a Chartered Accountant, and has previously served on the FCA's Practitioner Panel, HM Treasury's Financial Inclusion Policy Forum and the Money and Pensions Service Advisory Group.

Matthew Fitzwater, Interim Group Chief Compliance Officer
Matt is currently the interim Group Chief Compliance Officer for Barclays and has worked at the bank since 2014. Matt, until November 2022, held the position of General Counsel for Conduct and Customer and Client Affairs overseeing all litigation, employment, competition and financial crime legal matters for the bank globally across all business lines. Prior to that time, he was the Global Head of Litigation and Investigations for Barclays. Before joining Barclays, Matt was Special Counsel at Sullivan & Cromwell in New York where he represented large financial institutions in criminal and regulatory matters.

Paul Compton, Global Head of the Corporate & Investment Bank and President of Barclays Bank PLC.
Paul Compton is Global Head of Corporate & Investment Bank, and President of Barclays Bank PLC (BBPLC), and a member of the Group Executive Committee of Barclays, based in New York. Paul leads the provision of funding, financing, strategic and risk management for money managers, financial institutions, governments, supranational organisations and corporate clients, and is responsible for overseeing the Corporate and Investment Bank, which comprises our global Banking, Markets and Corporate Banking businesses. Prior to his appointment as Global Head of Corporate and Investment Bank & President of Barclays Bank PLC in November 2021, Paul served as Global Head of Investment Banking and Co-President of BBPLC and previously as Barclays Group Chief Operating Officer, and as Chief Executive Officer of Barclays Execution Services (BX), delivering operations and technology services to Barclays businesses globally. Before joining Barclays in 2016, Paul served for nearly two decades in a variety of senior roles at JPMorgan Chase, including Group Chief Administrative Officer, and Chief Financial Officer and Chief Administrative Officer of the Investment Bank.

Prior to JPMorgan, Paul spent 10 years as a Principal at Ernst & Young in the Brisbane, Australia and New York offices.

Alistair Currie, Global Head of Consumer Banking and Payments
With effect from 1 February 2023, Alistair became Group Chief Operating Officer and Chief Executive of Barclays Execution Services (BX). As Group Chief Operating Officer, Alistair will be responsible for leading an organisation of 60,000 colleagues in delivering excellent

Case 1:22-mc-00118-LAK   Document 50-9   Filed 04/26/23   Page 9 of 9

| Strategy | Climate and sustainability | Governance | Risk review | Financial review | Financial statements | Shareholder information | Barclays PLC 2022 Annual Report on Form 20-F |

439

Additional information (continued)

customer outcomes by providing world-class operations and technology services. Prior to this, Alistair was Global Head of Consumer Banking and Payments (appointed in November 2021). He was responsible for leading the ongoing transformation of the consumer banking and payments business as they become more digitally focussed, efficient and returns driven, whilst delivering excellent customer service. Alistair joined Barclays in August 2017 as Chief Operating Officer & Head of Product for Corporate Banking. In October 2017 he became Co-Head of Corporate Banking and in September 2018 was appointed Head of Corporate Banking. Prior to joining Barclays, Alistair was at the ANZ Banking Group in Australia where he most recently held the role of Group Chief Operating Officer, responsible for technology, shared services, operations and property, and played a key role in the ANZ's digital transformation. Before taking up this role in 2011, he had previously joined ANZ in 2008 as Managing Director, Transaction Banking. Before ANZ, Alistair spent 18 years at HSBC in a variety of international banking roles in the UK, Middle East and Asia including President and CEO of HSBC, Taiwan, between 2007 and 2008. As Regional Head of Trade Services, HSBC Asia Office in Hong Kong from 2004 to 2007, Alistair further developed HSBC's market-leading trade finance position in the region and from 2001 to 2004, he was COO, Wells Fargo HSBC Trade Bank NA, San Francisco. With more than 30 years as a banking professional, Alistair has a wealth of experience in institutional, large corporate, mid-corporate and consumer client segments as well as transaction banking, trade finance, cash management and technology, and a track record in delivering business transformation and high quality customer outcomes.

**Matt Hammerstein, CEO, Barclays UK**
Matt Hammerstein is the CEO for Barclays Bank UK, covering Retail Banking, Investments and Wealth UK, Business Banking and Barclaycard UK. Prior to becoming CEO, Matt was Head of Retail Lending covering both the secured and unsecured lending businesses. Matt joined Barclays in 2004 as Director of Group Strategy, later progressing to become the Group Chief of Staff; a key strategic role in which he provided vital support to the Group CEO during the financial crisis. Matt went on to manage Barclays Group Corporate Strategy and Corporate Relations, Barclays Customer and Client Experience in Retail and Business Banking and Barclays UK Retail Products and Segments. Before joining Barclays, Matt was a Senior Management Consultant at Marakon Associates where he worked for 12 years in the financial services, consumer products and energy sectors within the Americas and Europe. Matt is a member of the BBUK Board, UK Finance Board, Charities Aid Foundation America Board and sits on the Money and Pensions Service Adult Advisory Group. Matt is also a Member of the FCA Practitioner Panel and active ambassador in Barclays for inclusion, wellbeing and anything that makes the workplace more fun.

**Tristram Roberts, Group HR Director**
Tristram is the Group Human Resources Director and a member of the Group Executive Committee. Tristram joined Barclays in July 2013 as HR Director for the Investment Bank. His remit was expanded in May 2014 to include HR responsibilities for Barclays Non-Core, and he became the Group HR Director in December 2015. Prior to Barclays, Tristram was Head of Human Resources for Global Functions and Operations & Technology at HSBC, as well as Group Head of Performance and Reward. Previously, he was Group Reward and Policy Director for Vodafone Group plc. Tristram began his career in consulting. He became a partner with Arthur Andersen in 2001 and was subsequently a partner with both Deloitte and KPMG.

**Taalib Shaah, Group Chief Risk Officer**
Taalib Shaah is Group Chief Risk Officer for Barclays, based in London. He is responsible for helping to define, set and manage the risk profile of the bank and leads the risk management organisation across the group. He is a member of the Group Executive Committee. Taalib joined Barclays in late 2014 as Chief Risk Officer for the Investment Bank and in 2017 assumed the role of Chief Risk Officer for Barclays International (BBPLC), responsible for the Corporate and Investment Bank, the Private Bank and the Cards & Payments business. He assumed his current role in October 2020. Prior to Barclays, Taalib spent four years at Citigroup where he was most recently Chief Risk Officer for Market Risk, Real Estate Credit, Treasury, Private Equity and Head of Model Validation. Previously, Taalib spent 17 years at Credit Suisse, working in various areas, including risk and the front office. He began his career at Ernst and Young.

**Stephen Shapiro, Group General Counsel and Company Secretary**
Stephen is an experienced lawyer and company secretary with a deep understanding of legal, corporate governance and regulatory matters. Holding the combined role of Group General Counsel and Group Company Secretary, he oversees Barclays' global Legal and Corporate Secretariat functions. Stephen is also a member of the Group Executive Committee (ExCo). Stephen previously served as the Group Company Secretary and Deputy General Counsel of SABMiller plc. Prior to this, he practised law as a partner in a law firm in South Africa, and subsequently in corporate law and M&A at Hogan Lovells in the UK. He was appointed as Group Company Secretary of Barclays in November 2017 and was subsequently appointed Group General Counsel in August 2020, in addition to his role as Company Secretary. Stephen is an active industry contributor and serves as a member of the GC100 Executive Committee, the association of General Counsel and Company Secretaries working in FTSE 100 companies, having previously served as Vice Chair until January 2022. Stephen also previously served as Chairman of the ICC UK's Committee on Anti-Corruption.

**Sasha Wiggins, Group Head of Public Policy and Corporate Responsibility**
Sasha Wiggins is the Group Head of Public Policy and Corporate Responsibility, and Group Chief of Staff at Barclays, based in London. She is a member of the Group Executive Committee. Sasha leads a multi-disciplined team who support the delivery of the bank's strategy and are focused on helping Barclays act responsibly for the common good and the long term. This includes responsibility for the Public Policy agenda, working closely with governments, regulators, the media and key policymakers to deliver for Barclays customers, clients and stakeholders. Sasha is also accountable for the overall Sustainability agenda, including the bank's commitment to aligning all its financing to the goals of the Paris Agreement, on the way to achieving the ambition to be a net zero bank by 2050. Sasha joined Barclays in 2002, progressing through a number of roles in the Private Bank. In 2015 she was appointed CEO of Barclays Bank Ireland and subsequently became Head of East and South East for UK Corporate Banking in 2017. Sasha was appointed Group Chief of Staff in 2018 and, assumed her current role in May 2020. Sasha is a Fellow of the Chartered Institute of Securities & Investment. She is passionate about diversity with a particular focus on gender as well as all other forms of diversity.