IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE AÇÕES – INVESTIMENTO NO EXTERIOR FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:22-mc-00118-LAK |

**DECLARATION OF PABLO RENTERIA**

I, Pablo Renteria, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I submit this declaration in support of Joesley Batista, Wesley Batista, JBS S.A., and J&F Investimentos S.A.'s (collectively, "Intervenors") Memorandum of Law in Opposition to SPS I Fundo de Investimento de Ações – Investimento no Exterior's ("SPS" or "Petitioner") Amended Application for Order Pursuant to 28 U.S.C. § 1782, Dkt. 48, in the above-captioned matter.

2. All facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents and (c) information supplied to me by Intervenors or professionals retained by them.

3. All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies.

**I.    PROFESSIONAL BACKGROUND**

4. I have been admitted to the Bar Association of Brazil, Rio de Janeiro Section, since 2004. My professional activity is focused on private law, with an emphasis on corporate law, contract law and securities market regulation. Currently, I am a partner at the firm Renteria Advogados Associados, specializing in legal consulting on issues related to public companies and

the regulation of financial services and market operations. I also represent clients before CVM, and I act as arbitrator in arbitration proceedings.

5. From 2008 to 2018, I held different positions in the Brazilian Securities Commission (CVM). From 2008 to 2009, I held the position of Advisor for Regulatory Matters; from 2009 to 2011, Chairperson's Chief of Staff; from 2011 to 2013, Superintendent of Administrative Proceedings; and, from 2015 to 2018, Commissioner.

6. Since 2008, I have been a professor of private law at Pontifícia Universidade Católica do Rio Janeiro (PUC-Rio), where I regularly teach undergraduate classes. At the beginning of 2021, I became coordinator of the Legal Practice Center on Securities Regulation at Fundação Getúlio Vargas Law School (FGV). In addition, I am invited to teach private law and securities market regulation in post-graduate courses offered by the PUC-Rio, the State University of Rio de Janeiro (UERJ), the State Magistracy School of Rio de Janeiro (EMERJ), the São Paulo Lawyers Institute – IASP and the Brazilian Association of Publicly-Held Companies (ABRASCA).

7. I have a doctorate in private law from the UERJ, a master's in private law from the UERJ and a master's in international law from the Paris II University – *Panthéon-Assas*.

8. A copy of my resume is attached herein as **Exhibit E**.

II. **FURTHER DEVELOPMENTS IN BRAZILIAN PROCEEDINGS**

9. In the first statement I submitted in support of Intervenors, I drew attention to the fact that the SPS has continually sought to intervene in and influence a series of disputes involving the Company and its controlling shareholders. And as I describe below, SPS continues to follow this strategy, despite the multiple setbacks it suffered in the Brazilian judiciary, that has become increasingly critical of SPS's conduct.

10. In this regard, it is worth noting the further developments of the arbitration filed in 2018 by the Petitioner before the Market Arbitration Chamber – CAM in São Paulo (CAM Arbitration No. 110/18) to seek damages from JBS' controlling shareholders. Similarly to another arbitration proceeding that had already been initiated by other minority shareholders (CAM Arbitration Nº 93/17), SPS sought damages supposedly caused to JBS due to facts arising from the plea agreements executed by the Brazilian Public Prosecutor with JBS' executives and controlling shareholders in 2017.

11. Nonetheless, in October 2020, JBS's shareholders – without the participation of the controlling shareholders – decided that JBS should initiate another arbitral proceeding with the same objective and, accordingly, on January 2021, JBS started CAM Arbitration No. 186/21. The shareholders' meeting was initially scheduled for September 2017, way before SPS brought its own arbitration, but was stayed due to procedure challenges that questioned whether JBS's controlling shareholders would be entitled to vote on that meeting.

12. The question of which arbitral proceeding should prevail was brought to the Brazilian Superior Court of Justice (the "STJ") – which is the court that has the final word on non-constitutional matters in Brazil. Overall, the STJ found that the arbitration initiated by JBS met all necessary requirements under Brazilian Law and should prevail. In particular: (i) the shareholders' meeting was called by a shareholder with adequate representativity; (ii) the controlling shareholders were barred from voting; (iii) the shareholders decided on the scope of the claim; and (iv) JBS filed the arbitration within the appropriate timeframe. Furthermore, the STJ pointed that JBS was the primary holder of the right to bring such claim and, as such, it was entitled to be the plaintiff in the arbitration.

13. SPS's true motives in bringing an arbitration against JBS did not go unnoticed by the STJ. The STJ pointed that SPS only became a shareholder in JBS *after* the alleged unlawful acts and *after* the company had already started the procedure to seek compensation from the controlling shareholders. Therefore, SPS's actions indicate that rather than pursuing the best interests of JBS's shareholders, SPS seemed to be serving its own interests in collecting a windfall if JBS was found liable.[1]

14. Despite the STJ decision, SPS started another lawsuit to challenge the arbitral decision that excluded SPS from CAM Arbitration No. 186/20. In that proceeding, SPS unsuccessfully attempted to be readmitted in the arbitration. SPS's requests were denied in ***four*** occasions by Luis Felipe Ferrari Bedendi of the 1st Corporate and Arbitration Court of the State of Sao Paulo and by judge Marcelo Fortes Barbosa Filho of the 1st Court of Appeals of the State of Sao Paulo.

15. SPS then commenced a separate proceeding before a different judge (Judge Eduardo Palma Pellegrini) seeking access to the documents from the arbitration, to which SPS was denied admission. However, in its request for documents, SPS ***concealed from the judge*** that its request to be readmitted in CAM Arbitration No. 186/20 had been denied.

---

[1] Brazilian Superior Court of Justice, Conflito de Competência n. 185.702/DF, dated June 22, 2022: "[SPS] became a minority shareholder, not only after the unlawful acts . . . , but even after the company had already called a meeting to deliberate on the legal measures to be taken by the company to promote the accountability of managers and controllers . . . consequently, there is truth in the argument put forward by the claimant that the initiation of arbitration proceedings promoted by [SPS], on the pretext of defending the interests and rights of the company, . . . in fact, seeks the premium provided in art. 246 of Brazilian Corporate Law." A true and accurate excerpt of the STJ's decision is attached hereto as Exhibit A. A certified translation of Exhibit A is attached hereto as Exhibit B.

Under Brazilian Corporate law, if the company fails to timely bring a claim seeking damages from the controlling shareholders, a minority shareholder has standing to bring such claim. If the company is found liable, the shareholder that brought the claim is entitled to a premium of 5% of the damages awarded.

4

16. SPS also sought a preliminary measure to have access to the documents under the allegation that it had a deadline to file an annulment action against the award rendered in CAM Arbitration No. 186/20, although, after obtaining the documents, the lawsuit was not filed within the stated timeframe. The new judge granted SPS's access to documents from the arbitration, but this decision was quickly reversed by the Court of Appeals, which found that SPS concealed from the judge that this issue had already been decided by the judiciary and that SPS "violated a prior decision, using an improper procedure . . ."[2] In compliance with the order of the Court of Appeals, the judge barred SPS from using in any manner the documents it obtained and set a penalty of R$ 54,316,472.28[3] if SPS violated this order.[4]

### III.     THE CVM BOARD OF COMMISSIONERS' DECISIONS REVIEW

17. The Board of Commissioners is the CVM body responsible for deciding on the most important aspects surrounding the technical activities of the Brazilian securities market regulator. Among other attributions, the Board is responsible for judging all administrative enforcement proceedings, through which it may either apply penalties to perpetrators of illegal acts or acquit them (if the Board of Commissioners understands no illegal act has been practiced).

18. The Board of Commissioners' decisions in administrative enforcement proceedings may be appealed to the *Conselho de Recursos do Sistema Financeiro Nacional* – CRSFN (the National Financial System Appeals Council), which is a permanent collegiate body, part of the Ministry of Finance organizational structure. According to Decree No. 9,889/2019, Art. 2, the

---

[2] TJSP, Agravo de Instrumento n. 102677-93.2023.8.26.0100, dated March 16, 2023. A true and accurate copy of the Court of Appeals decision is attached hereto as Exhibit C.  A certified translation of Exhibit C is attached hereto as Exhibit D.

[3] Approximately USD 10,800,000.00.

[4] 1ª Vara Empresarial e Conflitos de Arbitragem, Case n. 1026777-93.2023.8.26.01000, dated March 21, 2023.

CRSFN's purpose is to judge, as the last administrative instance, appeals against decisions rendered by certain Public Administration bodies of the Brazilian financial system, such as the Central Bank of Brazil, the Financial Activities Control Council – COAF and the CVM itself.

19.     Nevertheless, the CVM Board of Commissioners' decisions may be appealed to the CRSFN only in a specific situation, according to Law No. 6,385/1976, Art. 11, § 4:[5] when it orders administrative penalties against the defendants, who, then, are the only ones entitled to decide whether or not to appeal. Since the enactment of Decree No. 8,652/2016, Brazilian legal system no longer allows the filling of appeals against the Board of Commissioners' decisions that acquit the defendants. Such decisions, therefore, become final.[6]

20.     Likewise, all other decisions within the Board of Commissioners' responsibilities cannot be appealed, such as those relating to (i) the execution of consent decrees in administrative proceedings or investigative procedures (CVM Resolution No. 45/2021, Art. 86); (ii) appeals against rapporteur's decisions on any procedural issues that may arise during the course of the administrative proceeding, such as the rejection of a request for submission of new evidence or the rejection of a third party's request to participate in administrative proceedings (CVM Resolution No. 45/2021, Art. 39); and (iii) specific appeals filed against CVM Superintendents' decisions not to prosecute individuals after the completion of investigations, as will be explained below (CVM Resolution No. 45/2021, Art. 4, § 4).

---

[5] "Art. 11. (...) § 4. Penalties will only be imposed in compliance with the procedure provided for in § 2 of Art. 9 of this Law, subject to appeal to the CRSFN."

[6] Decree No. 8,652/2016 revoked Decree No. 1,935/1996, which provided, in its Art. 3, that it is CRSFN competence "to appreciate ex officio appeals, against decisions to close administrative proceedings regarding the matters related in item I and in subitems 'a' to 'c' of item II of art. 2."

21. On the other hand, although it is possible to file a lawsuit against decisions taken by the CVM Board of Commissioners, Brazilian courts are not able to review the merits of such decisions. The review made by courts is restricted to the legality of the decision and the regularity of the proceeding, due to the principle of separation and autonomy of powers and the regulatory agencies' autonomy, especially to what concerns their technical decisions (which judges are not technically capable to reassess).

22. This is the understanding of the Supremo Tribunal Federal – STF, the highest Brazilian court:

> "Therefore, the Judiciary must be careful when pronouncing on aspects related to the normative powers of regulatory agencies, on the technical acts edited by them or even on the administrative proceedings conducted by them. (…) Considering these two main theoretical premises – (i) the guarantee of autonomy of regulatory agencies; and (ii) the recognition of the limitation of the institutional capacity of the Judiciary – it is evident that judicial action on issues of high technical complexity must be deferential to the separation of powers and the distribution of competences among the various democratic bodies, according to their institutional capabilities. In the end, the principle of separation and autonomy of the powers is thus valued".[7]

23. The Superior Tribunal de Justiça – STJ, the highest Brazilian court to non-constitutional matters, has decided accordingly:

> "in the jurisdictional control of the administrative proceeding, the role of the Judiciary is limited to the regularity of the proceeding, as well as the legality of the administrative act, and no incursion into the administrative merit in order to assess the degree of convenience and opportunity is possible. Thus, it is unfeasible to analyze the evidence contained in the disciplinary proceeding in order to adopt a different conclusion from that reached by the competent administrative authority."[8]

---

[7] STF, j. 12.18.2017, RE No. 867960/SE, Rapporteur Min. Luiz Fux, *DJe* on 2.1.2018. See also STF, j. 9.26.2017, RE No. 993585/DF, Rapporteur Min. Luiz Fux, *DJe* on 9.28.2017.

[8] STJ, j. 9.13.2017, MS No. 22.828/DF, Rapporteur Min. Gurgel Faria, *DJe* on 9.21.2017.

7

24.     As a result, according to the pacific STJ jurisprudence, "the Judiciary control with regard to administrative disciplinary proceedings is restricted to the examination of effective respect for the principles of the adversarial system, full defense and due process of law, being it forbidden to reassess the administrative merit."[9]

## IV.    THE CVM SUPERINTENDENCIES' DECISIONS REVIEW

25.     As I explained in the declarations I previously submitted in support of Intervenors, according to CVM Resolution No. 45/2021, CVM Superintendencies are in charge of investigating irregularities and instructing investigative procedures (Art. 3). After the conclusion of the investigative procedure, and considering the information then obtained, the Superintendencies may (i) prosecute those investigated, if they conclude illegal acts have been practiced; (ii) not prosecute those investigated, in case they conclude (a) that no illegal acts were practiced, (b) that those investigated are not punishable anymore or (c) that the investigated conduct does not justify the establishment of an administrative enforcement proceeding; or (iii) propose an administrative inquiry aimed at deepening the collection of additional evidence (Art. 4).

26.     As a rule, the decisions rendered by the CVM Superintendencies to prosecute or not to prosecute cannot be appealed to the Board of Commissioners. There are only two specific and very narrow exceptions, concerning the decision not to prosecute. As I was able to point out in the additional declaration I presented in this action on June 30, 2022, Art. 4, § 4, of CVM Resolution No. 45/2021 provides for the possibility of appealing the Superintendencies' decision

---

[9] STJ, AgInt in RMS No. 32730/PE, Rapporteur Min. Assusete Magalhães, *DJe* on 6.30.2017. See also STJ, j. 4.26.2022, RMS No. 60070/DF, Rapporteur Min. Herman Benjamin, *DJe* on 6.24.2022; STJ, j. 8.10.2022, *Embargos de Divergência nos Embargos de Divergência* in Resp No. 1797663/CE, Rapporteur Min. Sérgio Kukina, *DJe* on 10.5.2022; SRJ, j. 12.2.2019, Ag. in REsp No. 1378501, Rapporteur Min. Sérgio Kukina, *DJe* on 12.4.2019; STJ, j. 6.14.2017, MS No. 21682/DF, Rapporteur Min. Benedito Gonçalves, *DJe* on 6.21.2017.

not to prosecute in only two exhaustive and circumscribed cases: (i) if the decision of the technical area is groundless or (ii) if it is in disagreement with the prevailing position of the Board of Commissioners. Apart from these possibilities, the appeal is not even considered, since the Board of Commissioners cannot intervene in investigations and prosecution activities. Consequently, as long as such possibilities are very restricted, the Board of Commissioners is not entitled to review the merits of a Superintendent's decision not to prosecute.

27. Furthermore, as the former CVM Chairman clarified in the judgment of Process n. 19957.010563/2018-72, j. on March 3, 2020, the appeal in question "is not an instrument for reviewing any and all aspects of the accusatory judgment rendered by the technical area, as it is limited to the possibilities strictly provided for in the rules" and "does not allow the appellant the possibility of re-discussing the merits of the decision of the technical area."

28. In this sense, what the Board of Commissioners is able to do is to order the technical area to proceed with its investigation, but in no case can it issue a judgment on the merits of the complaint or the appropriateness of bringing an accusation. According to CVM Resolution No. 45/2021, Art. 4, § 6, "[t]he decision of the Board of Commissioners . . . will not determine the initiation of a sanctioning administrative proceeding, being the superintendence in charge of complementing the reasoning or reviewing the factual circumstances in accordance with the prevailing position in the Board of Commissioners".

29. Neither the Superintendent's decision whether or not to prosecute those investigated, nor the Board of Commissioners' decision regarding the appeal against the Superintendent's decision not to prosecute, can be appealed to the CRSFN, since, as explained, the CRSFN shall only judge appeals against the Board of Commissioners' decision that impose penalties on the accused.

30. Finally, for the same reasons explained above regarding the Board of Commissioners' decisions, the decisions rendered by the CVM Superintendencies shall not be reviewed on their merits by the Brazilian courts. Considering the principle of separation of powers, the Brazilian courts may only analyze the legality of the procedure ant the legality of the decision.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 18, 2023

Rio de Janeiro, Brazil

_____

Pablo Renteria