# EXHIBIT A

*Superior Tribunal de Justiça*

**CONFLITO DE COMPETÊNCIA Nº 185.702 - DF (2022/0023291-6)**

| | | |
|---|---|---|
| **RELATOR** | : | **MINISTRO MARCO AURÉLIO BELLIZZE** |
| SUSCITANTE | : | J S |
| ADVOGADOS | : | CLÁUDIO BONATO FRUET  - DF006624 |
| | | CARLOS EDUARDO CAPUTO BASTOS  - DF002462 |
| | | HEITOR VITOR MENDONÇA FRALINO SICA  - SP182193 |
| | | AQUILES TADEU GUATEMOZIM  - SP121377 |
| | | RICARDO MESQUITA DE ABECI  - DF012709 |
| | | CELSO CALDAS MARTINS XAVIER  - SP172708 |
| | | ALEXANDRE MULLER BUARQUE VIVEIROS  - DF024080 |
| | | ANA CAROLINA ANDRADA ARRAIS CAPUTO BASTOS  - DF026891 |
| ADVOGADOS | : | JOANA D'ARC AMARAL BORTONE  - DF032535 |
| | | DANIEL KAUFMAN SCHAFFER  - SP310827 |
| | | JULIANA MASCARENHAS DE ARAÚJO  - SP392020 |
| | | JULIA TEIXEIRA RODRIGUES  - SP391079 |
| | | HENRIQUE ROMANÓ ROCHA  - DF062952 |
| | | ANGELA CIGNACHI BAETA NEVES E OUTRO(S) - DF018730 |
| SUSCITADO | : | CÂMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL DO PROCEDIMENTO ARBITRAL CAM 186/21 |
| SUSCITADO | : | CAMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL NOS PROCEDIMENTOS CAM 93/17 E 110/18 |
| INTERES. | : | B S - B B B |
| INTERES. | : | J A V DE S J E OUTRO |
| INTERES. | : | S I F DE I DE A - I N E |
| ADVOGADOS | : | ANNA MARIA DA TRINDADE DOS REIS  - DF006811 |
| | | MÔNICA GOES DE ANDRADE MENDES DE ALMEIDA  - RJ064037 |
| | | FABIANO DE CASTRO ROBALINHO CAVALCANTI  - RJ095237 |
| | | CAETANO FALCÃO DE BERENGUER CESAR  - RJ135124 |
| | | FERNANDO PESSOA NOVIS E OUTRO(S) - RJ172155 |
| | | CAIO HUMBERTO PÁSSARO DE LAET  - DF056081 |
| INTERES. | : | J M B E OUTRO |
| ADVOGADOS | : | GUSTAVO JOSÉ MENDES TEPEDINO  - RJ041245 |
| | | MILENA DONATO OLIVA  - RJ137546 |
| | | RENAN SOARES CORTAZIO  - RJ220226 |
| INTERES. | : | F C DE O E OUTRO |
| ADVOGADOS | : | MÁRCIO VIEIRA SOUTO COSTA FERREIRA  - RJ059384 |
| | | FERNANDO PESSOA NOVIS  - RJ172155 |
| | | GERSON ANTÔNIO FERNANDES  - PA004824 |
| INTERES. | : | J I S |

## EMENTA

CONFLITO DE COMPETÊNCIA. TRIBUNAIS ARBITRAIS QUE PROFEREM DECISÕES EXCLUDENTES ENTRE SI. **1.** COMPETÊNCIA DO SUPERIOR TRIBUNAL DE JUSTIÇA PARA CONHECER DO CONFLITO DE COMPETÊNCIA ENTRE TRIBUNAIS ARBITRAIS. QUESTÃO INÉDITA, SOBRETUDO APÓS *LEADING CASE* CC 111.230/DF. **2.** CONFLITO DE COMPETÊNCIA. CARACTERIZAÇÃO. **3.** PROCEDIMENTOS ARBITRAIS PROMOVIDOS POR ACIONISTAS MINORITÁRIOS, DESTINADO A RESPONSABILIZAÇÃO CIVIL DOS

*Superior Tribunal de Justiça*

CONTROLADORES, COM BASE NO ART. 246 DA LEI N. 6.404/1976, EM LEGITIMIDADE EXTRAORDINÁRIA (AÇÃO SOCIAL DE RESPONSABILIDADE DOS CONTROLADORES *UT SINGILI*), A DESPEITO DE A COMPANHIA TER, ANTERIORMENTE, CONVOCADO ASSEMBLEIA GERAL EXTRAORDINÁRIA PARA DELIBERAR SOBRE AS AÇÕES DE RESPONSABILIZAÇÃO CIVIL CONTRA CONTROLADORES E ADMINISTRADORES, COM ADOÇÃO DE MEDIDAS CAUTELARES PARA GARANTIR A HIGIDEZ DA VOTAÇÃO, SEM A PARTICIPAÇÃO DOS CONTROLADORES. AUSÊNCIA DE CONDIÇÃO PARA O LEGÍTIMO EXERCÍCIO DO DIREITO DE AGIR DOS ACIONISTAS MINORITÁRIOS. VERIFICAÇÃO. POSTERIOR PROCEDIMENTO ARBITRAL PROMOVIDO PELA PRÓPRIA COMPANHIA, EM LEGITIMIDADE ORDINÁRIA, NOS TERMOS DA AUTORIZAÇÃO ASSEMBLEAR (AÇÃO SOCIAL DE RESPONSABILIDADE DOS ADMINISTRADORES, EX-ADMINISTRADORES E CONTROLADORES - *UT UNIVERSI*). PROLAÇÃO DE DECISÕES INCONCILIÁVEIS ENTRE SI. VERIFICAÇÃO. **4.** CONFLITO DE COMPETÊNCIA CONHECIDO PARA DECLARAR COMPETENTE O TRIBUNAL ARBITRAL DO PROCEDIMENTO ARBITRAL INSTAURADO PELA COMPANHIA LESADA.

**1. Competência do STJ para dirimir conflito de competência entre Tribunais arbitrais.** Compete ao Superior Tribunal de Justiça, em atenção à função constitucional que lhe é atribuída no art. 105, I, d, da Carta Magna, conhecer e julgar o conflito de competência estabelecido entre Tribunais Arbitrais, que ostentam natureza jurisdicional, ainda que vinculados à mesma Câmara de Arbitragem, sobretudo se a solução interna para o impasse criado não é objeto de disciplina regulamentar.

**1.1** Estabelecida a natureza jurisdicional da arbitragem, tem-se que a Segunda Seção do Superior Tribunal de Justiça, a partir do *leading case* - CC 111.230/DF - passou a reconhecer que o Tribunal arbitral se insere, indiscutivelmente, na expressão "quaisquer tribunais", constante no art. 105, I, d, da Constituição Federal. Segundo a compreensão adotada pela Segunda Seção, a redação constitucional não pressupõe que o conflito de competência perante o STJ dê-se apenas entre órgãos judicantes pertencentes necessariamente ao Poder Judiciário, podendo ser integrado também por Tribunal arbitral.

**1.2** Não há como se admitir a subsistência de deliberações jurisdicionais exaradas por Tribunais arbitrais que se excluam mutuamente, como se houvesse um vácuo no ordenamento jurídico, negando-se às partes a definição do órgão (arbitral) efetivamente competente para resolver a causa posta em julgamento, conferindo-lhes instrumento processual eficaz a esse propósito, em manifesto agravamento da insegurança jurídica.

**2. Configuração do Conflito de Competência.**

**2.1** Na hipótese, tem-se, de um lado, procedimentos arbitrais (CAM 93-110) promovidos por acionistas minoritários (*ação social de responsabilidade de controladores ut singili*), em legitimação extraordinária, a despeito das providências anteriormente adotadas a efeito pela titular do direito lesado que é a companhia, em especial a convocação de assembleia geral para deliberar justamente sobre as medidas judiciais/arbitrais de responsabilização civil contra os controladores, administradores e ex-administradores, em conjunto, pelos fatos ilícitos reconhecidos nos acordos estabelecidos com o Ministério Público. De outro vértice, apresenta-se o procedimento arbitral instaurado pela própria companhia (ação social de responsabilidade de administradores e controladores *ut universi*) - CAM 186/2021 -, em legitimação ordinária, pelos mesmos fatos, promovido tempestivamente (dentro dos três meses da deliberação assemblear) e nos exatos termos em que se deu a deliberação (inclusive sem a participação dos controladores) com a escolha, em comum acordo com a parte adversa, dos árbitros integrantes do painel arbitral.

**2.2** O Tribunal Arbitral do Procedimento Arbitral CAM 186-21, de modo expresso, reconheceu a prevalência dos efeitos da coisa julgada da sentença arbitral que vier a ser ali proferida a respeito da responsabilidade civil dos controladores, administradores e ex-administradores, com esteio nos art. 159 e 246 da Lei n. 6.404/1976 pelos danos advindos dos ilícitos indicados nos acordos de delação premiada e de leniência estabelecidos com o Ministério

*Superior Tribunal de Justiça*

Público Federal, sobrepondo-se, inclusive, ao que vier a ser decidido, caso não venham a ser extintos, nos Procedimentos Arbitrais ns. 93-110, os quais, indiscutivelmente, cuidam da responsabilização pelos mesmos fatos (ilícitos confessados em tais acordos). Reconheceu o Tribunal Arbitral do Procedimento Arbitral CAM 186-21, inclusive, o esvaziamento da legitimidade extraordinária exercida pelos acionistas minoritários pelo ajuizamento da ação pela própria companhia, sobretudo porque não houve inércia da legitimada ordinária e porque seria indispensável a autorização assemblear, pressuposto não observado pelos acionistas minoritários.

**2.3**. Por sua vez, o Tribunal arbitral dos Procedimentos arbitrais CAM 93-110, contrariamente, decidiu que o feito ali em tramitação não deixaria de subsistir pelo ajuizamento posterior da ação de responsabilidade pela companhia, produzindo efeitos da coisa julgada às partes, inclusive à companhia, substituída processual. Compreendeu que a ação de responsabilidade dos controladores, com esteio no art. 246 da Lei n. 6.404/1976, promovida pelos acionistas minoritários, não pressupõe autorização assemblear, tampouco a constatação de inércia por parte da companhia, que é a titular do direito.

**2.4** Do cotejo das decisões proferidas pelos Tribunais arbitrais suscitados é de reconhecer, inequivocamente, a prolação de deliberações diametralmente opostas e inconciliáveis entre si, a caracterizar conflito de competência, a ser dirimido, como visto, no tópico antecedente, por esta Corte de Justiça.

**3. Solução do Conflito.**

**3.1** Em regra, a ação de reparação de danos causados ao patrimônio social por atos dos administradores, assim como dos controladores, deverá ser proposta, em princípio, pela companhia diretamente lesada, que é, naturalmente, a titular do direito material em questão. A chamada ação social de responsabilidade civil dos administradores e/ou dos controladores, deve ser promovida, prioritariamente, pela própria companhia lesada (ação social *ut universi*). Em caso de inércia da companhia (a ser bem especificada em cada caso), a lei confere, subsidiariamente, aos acionistas, na forma ali discriminada, legitimidade extraordinária para promover a ação social em comento (ação social de responsabilidade *ut singuli*).

**3.2** A deliberação da companhia para promover ação social de responsabilidade do administrador e/ou do controlador dá-se, indiscutivelmente, por meio da realização de assembleia geral. A caracterização da inércia da companhia depende, pois, da deliberação autorizativa e, passados os três meses subsequentes, a titular do direito não ter promovido a medida judicial/artibral cabível; ou, mesmo da deliberação negativa, termos a partir dos quais é possível cogitar na abertura da via da ação social *ut singuli*.

**3.3** Argumentação expendida pelos interessados que coloca em descrédito, sobretudo em razão da possível ingerência dos controladores no exercício do seu poder de voto, a iniciativa da companhia para convocar a assembleia para deliberar sobre a responsabilização destes, e, uma vez convocada, a própria deliberação autorizativa. A preocupação externada mostra-se meramente retórica, pois, no caso, por iniciativa de acionista minoritário detentor de mais de 5% do capital social, cuja representatividade é qualificada pela lei de regência, não apenas provocou a convocação da assembleia geral, como a votação foi favorável à responsabilização dos controladores e dos administradores por meio de ação a ser promovida pela companhia, o que se efetivou no prazo legal.

**3.3.1** A despeito da insubsistência do argumento, é certo que a Lei 6.404/1976 confere aos acionistas minoritários, na forma ali discriminada, entre outras garantias destinadas justamente a fiscalizar a gestão de negócios e o controle exercido, o direito de promover a convocação da assembleia geral, sobretudo para os casos que guardam manifesta gravidade, como o é o tratado nos presentes autos. Quanto ao suposto risco de os controladores interferirem na própria deliberação assembelar — no caso dos autos, absolutamente neutralizado pelas medidas levadas a efeito pelo acionista minoritário BNDES —, a lei põe à disposição dos acionistas minoritários, na forma da lei, a possibilidade de

*Superior Tribunal de Justiça*

ajuizar ação social (subsidiariamente).

**4.** Mostra-se imperiosa a adoção de interpretação consentânea com os arts. 159 e 246 da LSA, tal como já se posicionou esta Corte de Justiça (REsp 1.214.497/RJ e Resp 1.207.956/RJ), com um pequeno ajuste.

**4.1** Em sendo a deliberação autorizativa, caso a companhia não promova a ação social de responsabilidade de administradores e/ou de controladores nos três meses subsequentes, qualquer acionista poderá promover a ação social *ut singili* (*ut* § 3º do art. 159).

**4.2** Se a assembleia deliberar por não promover a ação social, seja de responsabilidade de administrador, seja de responsabilidade de controlador, acionistas que representem pelo menos 5% (cinco por cento) do capital social poderão promover a ação social *ut singili,* com fulcro no § 4º do art. 159 e no art. 246 da LSA.

**4.3** Tem-se, todavia, que, nessa última hipótese, no caso de a assembleia deliberar por não promover ação social, **em se tratando de responsabilidade do controlador**, seria dado também a qualquer acionista, com base no § 1º, *a*, do art. 246, promover a ação social *ut singili,* desde que preste caução pelas custas e honorários de advogado devidos no caso de vir a ação ser julgada improcedente.

**4.4** Em todo e qualquer caso, portanto, a ação social de responsabilidade de administrador e/ou de controlador promovida por acionista minoritário (*ut singili*) em legitimação extraordinária, **por ser subsidiária,** depende, necessariamente, da inércia da companhia, titular do direito lesado, que possui legitimidade ordinária e prioritária no ajuizamento de ação social.

**5.** Na hipótese dos autos, sem incorrer em nenhum comportamento inerte, é fato incontroverso que a Companhia, assim que obteve autorização assemblear (AGE/2020), promoveu, de imediato (dentro dos três meses da deliberação autorizativa) e nos exatos termos ali estabelecidos e em conformidade com o Comitê independente *ad hoc* formado, o procedimento arbitral destinado a apurar, pelos mesmos e específicos fatos, a responsabilidade não só dos controladores, como também dos administradores e ex-administradores. Ressai claro, portanto, que os acionistas minoritários, aqui interessados, ao promoverem os procedimentos arbitrais 93-110 (ação social *ut singili*) antes do exaurimento do prazo legal para que a companhia, titular do direito em questão, promovesse ação social de responsabilidade dos administradores e controladores, não ostentavam, para tanto, legitimidade.

**6.** A eficácia subjetiva da vindoura sentença arbitral legitima-se justamente na confiança depositada pelas partes, não apenas na Câmara de arbitragem eleita para dirimir seu litígio, mas, principalmente, nos específicos e determinados árbitros escolhidos em comum acordo para o julgamento da causa posta.

**7.** Conflito de competência conhecido para declarar a competência do Tribunal Arbitral do Procedimento Arbitral CAM 186/2021.

## ACÓRDÃO

Vistos e relatados estes autos em que são partes as acima indicadas, acordam os Ministros da Segunda Seção do Superior Tribunal de Justiça:

Preliminarmente, indeferir-se o pedido de intervenção da Associação de Investidores no Mercado de Capitais - AMEC - como *amicus curiae* no feito.

E, por unanimidade, conhecer do conflito entre os Tribunais arbitrais suscitados e declarar a competência do Tribunal arbitral do Procedimento Arbitral CAM 186/21 para conhecer e julgar a ação social de responsabilidade dos administradores, ex-administradores e controladores, a ensejar, por consequência, a extinção dos Procedimentos Arbitrais CAM 93-110, nos termos do voto do Sr. Ministro Relator, com declaração de voto da Sra. Ministra Nancy Andrighi.

Os Srs. Ministros Nancy Andrighi, Luis Felipe Salomão, Raul Araújo, Maria Isabel Gallotti, Ricardo Villas Bôas Cueva e Marco Buzzi votaram com o Sr. Ministro Relator.

*Superior Tribunal de Justiça*

Impedido o Sr. Ministro Paulo de Tarso Sanseverino.
Ausente, justificadamente, o Sr. Ministro Moura Ribeiro.
Presidiu o julgamento o Sr. Ministro Antonio Carlos Ferreira.
Brasília, 22 de junho de 2022 (data do julgamento).


MINISTRO MARCO AURÉLIO BELLIZZE, Relator

*Superior Tribunal de Justiça*

**CONFLITO DE COMPETÊNCIA Nº 185.702 - DF (2022/0023291-6)**

**RELATÓRIO**

**O SENHOR MINISTRO MARCO AURÉLIO BELLIZZE:**

Cuida-se de conflito positivo de competência suscitado por "J." S.A. , em que se aponta como suscitados o Tribunal Arbitral do Procedimento Arbitral n. 186/2021 e o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018, ambos em trâmite perante a Câmara de Arbitragem do Mercado (CAM).

Esclarece, de início, que o litígio ora posto está "relacionado à tentativa de responsabilização civil de acionistas controladores da "J." S.A. , por condutas ilícitas confessadas em acordo de colaboração premiada e de leniência celebrado com o Ministério Público Federal, que teriam causados prejuízos à Companhia" (e-STJ, fl. 7).

Anota que o "Procedimento Arbitral CAM nº. 93/17 ("Arbitragem 93") foi instituído buscando obter indenização pelos atos ilícitos mencionados acima, a pedido de J. A. V. de S. J. [...], titular de 0,000036% das ações ordinárias da "J." S.A [...], e de uma das suas associações de gaveta (A. dos I. M. – "AIDMIN"), em legitimação extraordinária, com fundamento no art. 246 da Lei nº. 6.404/76 ("Lei das S. A.")" - e-STJ, fl. 7.

Prossegue a suscitante em sua narrativa anotando que, "com idêntico objeto, causa de pedir e pedidos, o Procedimento Arbitral CAM nº. 110/18 foi iniciado por S. I F. de I. em A. — I. no E. ("SPS I") [...], à época acionista titular de 0,26% das ações ordinárias da "J." S.A., entre aquelas adquiridas e alugadas (e-STJ, fl. 7) - hoje, segundo alega, essa posição acionária é bem menor, algo em torno de 0,01%.

A suscitante atribui aos requerentes dos aludidos procedimentos arbitrais (CAM n. 93/17 e CAM n. 110/2018) a qualidade de "acionistas de ocasião", que exercem o chamado 'ativismo acionário', adquirindo lotes ínfimos de ações às vésperas de ações de responsabilidade de controladores, com vistas aos honorários de advogado de 20% e o prêmio de 5%, calculados sobre o valor da indenização a que se refere o art. 246 da Lei das S.A." (e-STJ, fl. 13).

Informa a suscitante que, "apesar de ser a única titular dos direitos

*Superior Tribunal de Justiça*

discutidos nas referidas ações, a quem a lei reserva, com exclusividade, o produto da pretendida reparação, a "J." S.A. foi incialmente incluída no polo passivo de ambas as demandas por J. A. V. de S. J e SPS I, então requerentes" (e-STJ, fl. 8), a evidenciar manifesta incongruência, na medida em que os requerentes atuam, nos aludidos procedimentos, na qualidade de substitutos processuais, supostamente na defesa dos interesses da "J." S.A. Ressalta que, posteriormente, passou a figurar como mera interveniente nos aludidos procedimentos arbitrais, não lhe sendo concedido nenhum direito, tampouco deveres, inerentes à condição de parte (autora) que ostenta substancialmente.

Registra a suscitante, ainda, que não pôde promover imediatamente o procedimento arbitral para a responsabilização civil dos controladores, bem como dos administradores, na medida em que a realização de assembleia geral extraordinária, designada para deliberar sobre a adoção de tal providência, estava obstada em razão de decisão judicial, exarada no bojo de Medida Cautelar (pré-arbitral) perante o Tribunal Regional Federal da 3ª Região, em que se controvertia, justamente, a respeito da participação dos acionistas controladores (bem como dos ex-administradores) na votação da aludida assembleia.

Anota a suscitante, nesses termos, que, diante da autorização da assembleia geral ocorrida apenas em 30/10/2020, promoveu o procedimento arbitral CAM n. 186/2020) na data de 27/1/2021, postulando direito próprio (ressarcimento à companhia pelos prejuízos sofridos decorrentes das condutas ilícitas confessadas em acordo de colaboração premiada e de leniência celebrado com o Ministério Público Federal), em que se objetiva responsabilizar os acionistas controladores, na forma do art. 246 Lei das S.A., bem como os ex-administradores, na forma do art. 159 do referido diploma legal.

Especificamente sobre a caracterização do conflito de competência entre o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018 e o Tribunal Arbitral do Procedimento Arbitral n. 186/2021, a suscitante "J." S.A. afirma que, em suas alegações iniciais perante o Tribunal Arbitral 186/21, apresentadas em 27/7/2021, requereu, em caráter preliminar, o reconhecimento de sua titularidade sobre o direito postulado, e que as decisões a serem proferidas nesse procedimento arbitral faça coisa julgada sobre a pretensão de indenizar e vincularão indistintamente todos os acionistas da Companhia.

*Superior Tribunal de Justiça*

Aduz a suscitante, ainda, que, perante o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018, na qualidade de interveniente, de titular da ação do art. 246 da LSA e de efetiva beneficiária dos pleitos ali deduzidos, noticiou a existência do procedimento arbitral n. 186/21 e requereu, por conseguinte, a imediata extinção do procedimento, sem julgamento de mérito, ante a perda superveniente do interesse de agir.

Paralelamente, a suscitante narra que a SPI I e o Sr. J. A. V. de S. J., em 7/10/2021, apresentaram perante a Presidência da Câmara de Arbitragem de Mercado requerimento de anulação do Procedimento Arbitral n. 186/21, justamente em razão da existência dos Procedimentos Arbitrais ns. 93/2017 e 110/2018 que a ele são anteriores e, subsidiariamente, o ingresso no feito na qualidade de assistentes litisconsorciais. Salienta que, reconhecida a incompetência da Presidência a esse propósito, a matéria foi enfrentada pelo Tribunal Arbitral 186/21.

Anota, a esse propósito, que o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018 indeferiu o pedido efetuado pela "J." S.A. de extinção dos feitos, reconhecendo, pois, inexistir prevalência do Procedimento CAM n. 186/21 sobre aqueles; inexistir perda superveniente de legitimidade extraordinária ou do interesse de agir dos acionistas minoritários em virtude da instauração do Procedimento CAM n. 186/21; bem como estabelecer a sujeição da "J." S.A. aos efeitos da coisa julgada formada nas arbitragens 93-110 das quais não foi parte, devido à atuação dos seus substitutos processuais.

Segundo alega a suscitante, em sentido absolutamente inverso, manifestou-se o Tribunal Arbitral do Procedimento Arbitral n. 186/2021, o qual, por sua vez, reconheceu a prevalência deste procedimento sobre os Procedimentos Arbitrais ns. 93/2017 e 110/2018, sobretudo ante o exercício da legitimidade ordinária da companhia que somente pôde atuar após a deliberação assemblear, não havendo se falar em inércia de sua parte, sendo certo que a vindoura sentença arbitral produzirá os efeitos da coisa julgada, sobretudo quanto à pretensão indenizatória, vinculando a Companhia, seus acionistas, ex-administradores e a sociedade controladora, devendo ser respeitada quanto aos seus limites subjetivos e objetivos.

Entende, nesses termos, configurado o conflito de competência ora suscitado.

*Superior Tribunal de Justiça*

A esse propósito, a suscitante sustenta a competência do Superior Tribunal de Justiça para processar e julgar o presente conflito de competência, nos termos do art. 105, I, d, da Constituição Federal, dando ênfase à expressão "quaisquer tribunais", contida no comando constitucional.

A suscitante defende, ainda, a inaplicabilidade à hipótese dos autos da compreensão adotada no CC n. 146.939/PA, em que a discussão referia-se à interpretação da cláusula compromissória arbitral, a fim de identificar a Câmara ali designada para a gestão dos procedimentos arbitrais decorrentes do contrato firmado entre as partes.

Por fim, diante da caracterização do conflito, com a prolação de sentenças arbitrais parciais inconciliáveis entre si, a suscitante defende o reconhecimento da competência exclusiva do Tribunal Arbitral 186/2021, para decidir acerca da responsabilização dos acionistas controladores e dos ex-administradores da "J." S.A.

No ponto, a suscitante sustenta o descabimento de subsistir um procedimento arbitral promovido pelo substituto processual, na defesa de direito titularizado única e exclusivamente pela "J." S.A. , sobretudo em hipótese em que a companhia, sem incorrer em omissão, após a deliberação assemblear autorizativa, promove o procedimento arbitral que abarca a responsabilização dos controladores da "J." S.A. pelos atos referidos nas delações e colaboração premiadas indicadas. Anota, no ponto, que a possibilidade descrita no art. 246 da LSA de os acionistas minoritários promoverem a ação de responsabilidade contra os controladores (no exercício de legitimidade extraordinária) pressupõe, naturalmente, comportamento inerte da companhia, o que, na hipótese dos autos, não se verificou. Registra que, na condição de interveniente, a "J." S.A. , titular do direito em discussão, não foi dado o direito de escolher o painel de árbitros nos procedimentos arbitrais 93-110, o que viola relevante princípio do sistema arbitral.

Por fim, a suscitante "J." S.A. teceu os seguintes pedidos:

a. O regular processamento do presente Conflito Positivo de Competência, sendo determinada a sua tramitação sob segredo de justiça à luz do disposto no artigo 189, I, III e IV, do CPC;

b. Liminarmente, e diante das ordens inconciliáveis emitidas pelos juízos arbitrais Suscitados, a suspensão in totum da Arbitragem 93-110, com a determinação de prosseguimento da Arbitragem 186;

*Superior Tribunal de Justiça*

i. Ainda liminarmente, a adoção pelo e. Relator das providências do art. 955, caput, do CPC – incluindo a designação do Tribunal Arbitral 186 para "resolver, em caráter provisório, as medidas urgentes", de modo que o Tribunal Arbitral 93-110 se abstenha de tomar qualquer medida até o julgamento do mérito do presente conflito de competência;

c. Seja assinalado prazo para que o Tribunal Arbitral 93-110 e o Tribunal Arbitral 186, enquanto Suscitados, prestem informações, nos termos do art. 954, parágrafo único, do CPC, ouvindo-se também o MPF, nos termos do art. 956 do CPC, bem como os demais Interessados (i. e. as demais partes nas Arbitragens).

Ao final, diante das decisões inconciliáveis proferidas pelos Suscitados, requer-se, ainda, (i) seja reconhecido o conflito de competência positivo; e (ii) em face das especificidades da Lei de Arbitragem e do Regulamento da CAM, seja declarada a competência exclusiva do Tribunal Arbitral 186 para processar e julgar a Arbitragem 186, por ser a ação mais ampla (em fundamento, objeto e sujeitos63) e que abrange as causas de pedir e os pedidos formulados nas anteriores, e igualmente, o único competente a julgar as matérias compreendidas na Arbitragem 186.

Após o recebimento em audiência da suscitante, assim como da parte interessada, com apresentação de teses e argumentos diametralmente divergentes, este relator, em atenção ao ineditismo da matéria posta no presente conflito de competência e ao pedido feito nos autos (e-STJ, fls. 2.777-2.780), reputou necessário, antes de deliberar sobre o pedido liminar postulado - cuja urgência, na oportunidade, não foi objeto de nenhum juízo de valor -, determinar, em obséquio ao contraditório, a intimação da parte interessada para, no prazo de dez (dez) dias, apresentar manifestação e juntar documentos que reputar conveniente (e-STJ, fls. 2.781-2.782).

**Às fls. 2.785-2.378 (e-STJ), os interessados S. - F. de I. de A. - I. E. e J. A. V. de S. J. apresentaram manifestação.**

De início, os interessados tecem considerações a respeito do caráter fraudulento do procedimento arbitral n. 186/2021, promovido pela companhia (quatro anos depois da iniciativa levada a efeito pelos sócios minoritários), que é conduzido, na verdade, pelos interesses dos controladores (que são os próprios demandados), fazendo conjecturas de que, uma vez extinto o procedimento iniciado pelos minoritários, seria franqueada a possibilidade da realização de um acordo em que "a companhia acaba[ria]

*Superior Tribunal de Justiça*

por reconhecer que pouca ou nenhuma indenização lhe é devida, dando quitação ampla e geral aos controladores" (e-STJ, fl. 2.788).

Anotam que a prevalência do procedimento arbitral n. 186/2021 sobre o iniciado pelos sócios minoritários tornaria letra morta o disposto no art. 246 da LSA, que constitui importante instrumento de fiscalização dos sócios minoritários, conferindo-lhes legitimidade extraordinária para promover ação de responsabilidade contra os controladores, partindo a lei da premissa de que "a companhia, seja em assembleia geral, seja representada pelos administradores, eleitos pelo controlador, não teria a isenção necessária para propor ação contra este último pelos abusos por ele praticados" (e-STJ, fl. 2.792). Logo, para o seu exercício dessa ação, prosseguem os interessados, não há necessidade de deliberação assemblear.

Para efeito de delimitação das matérias que são objeto dos procedimentos arbitrais em cotejo, argumentam que, ao contrário do que alega a "J." S.A., os procedimentos arbitrais 93-110 tem maior amplitude do que o procedimento arbitral n. 186/2021, contendo "pedido indenizatório bilionário pelos prejuízos sofridos pela companhia "J." em razão da fraude na incorporação da Bertin, realizada por seus acionistas controladores". No ponto, afirma que, embora mencionado em suas alegações iniciais, não formulou qualquer pedido com relação a esse ponto, afirmando, aliás, que não havia identificado prejuízos, em claro favorecimento dos controladores.

Alegam, ainda, que o Tribunal arbitral, por meio da sentença arbitral parcial proferida em 7 de julho de 2020, reconheceu, em definitivo, a legitimidade dos acionistas minoritários para requerer a instauração dos Procedimentos arbitrais n. 93-110, não sendo possível, por isso, revisitar o assunto, ante os efeitos da coisa julgada, já que não foi intentada pela companhia "J." ação anulatória. Anota, ainda, ser irrelevante o momento em que adquiriu as ações, sobretudo porque a lei exige, como requisito único, a condição de acionista minoritário para ajuizamento da ação de responsabilidade dos controladores. Afirmam os interessados que, juntos, sua participação acionária supera o valor de cinquenta milhões de reais, sendo indiscutível seu interesse na apuração dos prejuízos, bem como no prêmio previsto no art. 246 das LSA, não se podendo lhes atribuir a qualidade de strike suit.

Indicam, segundo entendem, uma série "de evidências de conluio e submissão da vontade da "J." S.A. aos controladores", como "o fato de que o escritório de

*Superior Tribunal de Justiça*

advocacia escolhido pelos controladores para representar os interesses da companhia no procedimento 93-110 advoga para os controladores em diversas outras disputas", entre outros (e-STJ, fls. 2.807-2.812).

Defendem também o próprio não cabimento do conflito de competência.

Primeiro, porque o Tribunal arbitral do procedimento n. 186/21 não se encontra devidamente constituído, pois o "coárbitro indicado pelos requeridos no procedimento n. 186/21, Gilberto Berconvici, constatando não ser possível julgar a lide de forma imparcial e independente, renunciou ao seu encargo. Anotam que, de igual modo, no Tribunal arbitral dos procedimentos ns. 93-110, o Dr. Hermes Marcelo Huck, em 16.2.2022, renunciou ao seu encargo, a ensejar a conclusão de que, "não há, atualmente, tribunal arbitral constituído apto a exercer jurisdição em nenhum dos procedimentos" (e-STJ, fl. 2.813).

Segundo, alegam os interessados, porque a matéria posta é de competência exclusiva da Primeira Instância do Poder Judiciário. Invocam, para tanto, o entendimento adotado no CC 113.260/SP. Anotam que, "a delimitação da competência entre dois tribunais arbitrais distintos pressupõe discutir e interpretar dispositivos contratuais - atividade, inclusive, vedada pelo Enunciado n. 5 da Súmula do STJ" (e-STJ, fl. 2.815).

No mérito, caso conhecido o conflito, pugnam pelo reconhecimento da competência do Tribunal arbitral dos procedimentos n. 93-110.

Argumentam que a legitimidade extraordinária dos acionistas minoritários para o exercício da ação de responsabilidade prevista no art. 246 da LSA não possui caráter precário ou subsidiário ao exercício da legitimação ordinária pela Companhia; é, pois, concorrente e de idêntica hierarquia.

Aduzem que, em tal circunstância, o art. 18, parágrafo único, do Código de Processo Civil preceitua que o substituído poderá intervir no feito como assistente litisconsorcial, devendo, pois, subsistir o procedimento arbitral intentado precedentemente, sendo de todo descabido sua extinção.

Ressaltam, também, a inércia da companhia, por mais de 3 (três) anos para promover o procedimento arbitral destinado à responsabilização dos controladores, devendo-se considerar, a essa conclusão, que o Procedimento arbitral 94/17, instaurado pelo BNDES apenas impediu liminarmente a realização de assembleia, nada obstando a

*Superior Tribunal de Justiça*

proposição de ação com base no art. 246 da LSA.

Asseveram que, em sendo a Arbitragem 93-110, no tocante à responsabilização civil dos controladores, até mais ampla do que a Arbitragem 186/2021, já que busca a reparação pelos prejuízos relativos à fraude perpetrada por ocasião da incorporação da Bertin, a regra de litispendência resolve a controvérsia: "prevalecendo a arbitragem antecedente, deve ser extinta a arbitragem posterior em tudo aquilo que coincidir com a primeira, i.e., na ação contra os controladores" (e-STJ, fl. 2.822).

Por fim, entendem ser dispensável, no momento, o deferimento de liminar, pois, como assentado, os Tribunais arbitrais em cotejo não se encontram devidamente constituídos; o Procedimento 93-110 está em estágio processual mais avançado e, sendo anterior, é  correta a extinção do Procedimento n. 186/2021 naquilo que for idêntico".

Às fls. 3.380-3.418 (e-STJ), este subscritor deferiu o pedido liminar para sobrestar os Procedimentos Arbitrais n. 93-110 até julgamento final do presente incidente.

Contra esse *decisum,* S. I F. I. de A. - I. no E. e J. A. V. de S. J. Interpuseram agravo interno (e-STJ, fls. 3.444.3.608).

Às fls. 4.547-4.642 (e-STJ), a suscitante apresentou contrarrazões.

O Tribunal Arbitral do Procedimento Arbitral CAM n. 186/2021, às fls. 3.430-3.442 (e-STJ), e o Tribunal Arbitral dos Procedimentos Arbitrais CAM n. 93/2017 e 110/2018, às fls. 3.830-3.862 (e-STJ), apresentaram as informações solicitadas.

O Ministério Público Federal ofertou parecer pelo conhecimento do conflito, para declarar a competência do Juízo arbitral CAM n. 93/17 e 110/18, cujo procedimento arbitral foi intentado pelos acionistas minoritários anteriormente ao iniciado pela companhia, sintetizado pela seguinte ementa (e-STJ, fls. 4.645-4.661):

> EMENTA: 1. CONFLITO POSITIVO DE COMPETÊNCIA. POSSIBILIDADE DE CONHECIMENTO E DEFINIÇÃO POR ESSA CORTE SUPERIOR. ART. 105, INCISO I, ALÍNEA " D " DA CONSTITUIÇÃO FEDERAL.
> 2. APLICAÇÃO SUBSIDIÁRIA DAS NORMAS DO CÓDIGO DE PROCESSO CIVIL. O juízo arbitral é um subsistema que pertence ao sistema nacional de Justiça, sem prejuízo de perda de sua autonomia para regular os princípios e regras que devem disciplinar este modo alternativo de solução de litígios.
> 3. EXISTÊNCIA DE LITISPENDÊNCIA E CONEXIDADE ENTRE AS DEMANDAS. APLICAÇÃO DO PRINCÍPIO DA PREVENÇÃO. ART 58 DO CPC.

*Superior Tribunal de Justiça*

4. ACIONISTA MINORITÁRIO. Substituto processual. Legitimidade extraordinária. Legitimidade concorrente e de idêntica hierarquia à legitimidade da companhia para mover o pleito tipificado no art. 246 da Lei 6.404/76.

5. DIREITO DE FISCALIZAÇÃO. ARTIGO 109, INCISO, III DA LEI DE S.A.

6. PARECER PELO CONHECIMENTO DO PRESENTE CONFLITO, para se declarar competente o Juízo Arbitral CAM nº. 93/17 e 110-18 (Arbitragem 93") proposta pelos interessados SPS I Fundo de Investimento de Ações e J. A. V. de S. J iniciado com anterioridade quanto aos demais.

É o relatório.

*Superior Tribunal de Justiça*

**CONFLITO DE COMPETÊNCIA Nº 185.702 - DF (2022/0023291-6)**

**VOTO**

**O SENHOR MINISTRO MARCO AURÉLIO BELLIZZE(RELATOR):**

**1. Preliminar. Competência do Superior Tribunal de Justiça para conhecer e julgar conflito de de competência entre Tribunais arbitrais. Reconhecimento.**

Antes, propriamente, de adentrar na questão meritória - em juízo de cognição sumária -, consistente na caracterização do conflito de competência positivo ora suscitado, mostra-se necessário tangenciar a competência do Superior Tribunal de Justiça para conhecer e julgar o presente incidente.

Nos termos relatados, cuida-se de conflito positivo de competência suscitado por "J." S.A., em que se aponta como suscitados o Tribunal Arbitral do Procedimento Arbitral n. 186/2021 e o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018, ambos em trâmite perante a Câmara de Arbitragem do Mercado (CAM).

Trata-se, como se constata, de conflito de competência entre Tribunais arbitrais vinculados à mesma Câmara de arbitragem, na específica hipótese em que o correlato Regulamento é absolutamente omisso em disciplinar a solução para o impasse criado entre os Tribunais arbitrais que proferiram, em tese, decisões inconciliáveis entre si, em procedimentos arbitrais que possuem pedidos e causa de pedir parcialmente idênticos (controvertendo-se as partes sobre a amplitude de cada qual, se haveria litispendência - parcial - entre os feitos ou mesmo relação de continência), tendo a Presidência da Câmara reconhecido, inclusive, não ter atribuição para dirimi-lo, segundo as disposições do Regulamento.

A questão posta guarda contornos absolutamente inéditos na jurisprudência do Superior Tribunal de Justiça (sobretudo após o leading case CC 111.230/DF, julgado em 8.5.2013), cabendo ao relator do presente incidente, que atua em delegação do colegiado da Segunda Seção, a quem compete dar a palavra final sobre o conhecimento e,

*Superior Tribunal de Justiça*

em sendo o caso, o julgamento do conflito de competência, permitir o processamento do feito e, por meio da adoção de medidas acautelatórias, salvaguardar tal deliberação.

Tem-se, em princípio, competir ao Superior Tribunal de Justiça, em atenção à função constitucional que lhe é atribuída no art. 105, I, d, da Carta Magna, conhecer e julgar o conflito de competência estabelecido entre Tribunais Arbitrais.

Dispõe o dispositivo constitucional referido:

Art. 105. Compete ao Superior Tribunal de Justiça:

I - processar e julgar, originariamente:

[...]

**d) os conflitos de competência entre quaisquer tribunais,** ressalvado o disposto no art. 102, I, "o", bem como entre tribunal e juízes a ele não vinculados e entre juízes vinculados a tribunais diversos;

Em delimitação a esta atribuição constitucional do Superior Tribunal de Justiça, a jurisprudência da Segunda Seção, **tomando como premissa a compreensão de que a atividade desenvolvida no âmbito da arbitragem possui natureza jurisdicional,** reconhece a competência desta Corte de Justiça para dirimir conflito de competência em que figura, seja como suscitante, seja como suscitado, o Tribunal arbitral.

É de suma importância registrar que, não obstante a aceitação prevalecente no cenário jurídico nacional do caráter jurisdicional da arbitragem, sobretudo após a declaração de constitucionalidade da Lei 9.307/1996 pelo Supremo Tribunal Federal por ocasião do julgamento da SE 5.206 *(STF. SE 5206 AgR, Relator MInistro Sepúlveda Pertence, Tribunal Pleno, **julgado em 12/12/2001**, DJ 30-04-2004 PP-00059 EMENT VOL-02149-06 PP-00958)*, dúvidas remanesciam, sobretudo no âmbito desta Corte de Justiça, se a equiparação do árbitro ao "juiz de fato e de direito" (Lei 9.307/96, art. 18) o colocaria na condição de órgão passível de protagonizar conflito de competência nos moldes definidos no art. 66 do CPC e 105, I, d, da CF, dispositivo este inserido no capítulo da Constituição estruturante do Poder Judiciário.

A partir do julgamento do leading case, o Conflito de Competência n. 111.230/DF (Rel. Ministra Nancy Andrighi, julgado em 08/05/2013, DJe 03/04/2014), é possível afirmar que a Segunda Seção do STJ estabeleceu o caráter jurisdicional da

*Superior Tribunal de Justiça*

arbitragem, reconhecendo ser possível a existência de conflito de competência entre juízo estatal e câmara arbitral, a ser dirimido por esta Corte de Justiça.

**Esta conclusão decorre do reconhecimento de que o Tribunal arbitral, a despeito de não compor organicamente o Poder Judiciário, deve ser compreendido na expressão "quaisquer tribunais" a que a norma constitucional em questão (art. 105, I, d, CF) se refere, sobretudo, porque, tal como o Judiciário, resolve o conflito de interesses em definitivo, com aplicação da ordem jurídica.**

Este julgado representou verdadeiro divisor de águas na jurisprudência desta Corte de Justiça, passando-se a admitir, doravante, o processamento, no âmbito desta instância especial, dos conflitos de competência protagonizados por Tribunal arbitral em confronto, naquele caso, com órgãos integrantes organicamente do Poder Judiciário.

O julgado recebeu a seguinte ementa:

> PROCESSO CIVIL. ARBITRAGEM. NATUREZA JURISDICIONAL. CONFLITO DE COMPETÊNCIA FRENTE A JUÍZO ESTATAL. POSSIBILIDADE. MEDIDA CAUTELAR DE ARROLAMENTO. COMPETÊNCIA. JUÍZO ARBITRAL.
> **1. A atividade desenvolvida no âmbito da arbitragem tem natureza jurisdicional, sendo possível a existência de conflito de competência entre juízo estatal e câmara arbitral.**
> 2. O direito processual deve, na máxima medida possível, estar a serviço do direito material, como um instrumento para a realização daquele. Não se pode, assim, interpretar uma regra processual de modo a gerar uma situação de impasse, subtraindo da parte meios de se insurgir contra uma situação que repute injusta.
> 3. A medida cautelar de arrolamento possui, entre os seus requisitos, a demonstração do direito aos bens e dos fatos em que se funda o receio de extravio ou de dissipação destes, os quais não demandam cognição apenas sobre o risco de redução patrimonial do devedor, mas também um juízo de valor ligado ao mérito da controvérsia principal, circunstância que, aliada ao fortalecimento da arbitragem que vem sendo levado a efeito desde a promulgação da Lei nº 9.307/96, exige que se preserve a autoridade do árbitro como juiz de fato e de direito, evitando-se, ainda, a prolação de decisões conflitantes.
> 4. Conflito conhecido para declarar a competência do Tribuna Arbitral.
> (CC 111.230/DF, Rel. Ministra NANCY ANDRIGHI, SEGUNDA SEÇÃO, julgado em 08/05/2013, DJe 03/04/2014)

A questão que se coloca na hipótese dos autos é saber se seria possível a existência de conflito de competência a ser dirimido pelo Superior Tribunal de Justiça não

*Superior Tribunal de Justiça*

entre Tribunal arbitral e um órgão jurisdicional estatal, mas sim entre dois Tribunais arbitrais.

A esse propósito, controvertem as partes suscitante e interessados quanto à aplicação à hipótese dos autos do entendimento adotado no CC 113.260/SP, julgado em 8.9.2010 (anterior, portanto, ao leading case CC 111.230/DF), em que a Segunda Seção, por maioria de votos, havia adotado a compreensão de que "em se tratando da interpretação de cláusula de compromisso arbitral constante de contrato de compra e venda, o conflito de competência supostamente ocorrido entre câmaras de arbitragem deve ser dirimido no Juízo de primeiro grau, por envolver incidente que não se insere na competência do Superior Tribunal de Justiça, conforme os pressupostos e alcance do art. 105, I, alínea "d", da Constituição Federal".

**Sem olvidar que o *leading case* tinha como objeto o conflito de competência instaurado entre Tribunal arbitral e órgão integrante da jurisdição estatal**, pode-se afirmar com segurança, segundo penso, seja pela conclusão adotada, seja pelas questões enfrentadas nos votos vencedor e vencido, os quais  trataram em sua fundamentação do aludido CC 113.260/SP, que o entendimento ali adotado afigurou-se efetivamente superado pela Segunda Seção do STJ por ocasião do julgamento do CC 111.230/DF.

Como registrado, a partir do julgamento do Conflito de Competência n. CC 111.230/DF, a Segunda Seção do STJ passou a reconhecer o caráter jurisdicional da arbitragem, razão pela qual se pode afirmar que o Tribunal arbitral está compreendido, sim, na expressão "quaisquer tribunais", contida no art. 105, I, d, da Constituição Federal.

Para bem evidenciar esta assertiva, veja-se que **o voto vencido**, proferido pela eminente Ministra Maria Isabel Gallotti, ao se referir ao CC   113.260/SP, adotou o entendimento de que, ainda que fosse atribuído ao Tribunal arbitral a natureza de jurisdição por equiparação, não seria possível conhecer do conflito pelo Superior Tribunal de Justiça, pois o Tribunal arbitral não compõe a organização do Poder Judiciário, afirmando, a esse propósito: "tanto faz a divergência de entendimento dar-se entre dois árbitros ou entre árbitro e juiz estatal; em ambas as hipóteses não haverá conflito entre dois órgãos do Poder Judiciário".

Extrai-se do voto proferido por S. Exa, **o qual restou vencido**, os seguintes

*Superior Tribunal de Justiça*

fundamentos:

Os fundamentos teóricos que justificam a distribuição prévia (anterior à infinidade de potenciais litígios passíveis de ocorrência em determinada ordem jurídica) da jurisdição, segundo regras de competência, entre órgãos judiciais, não encontram correspondência com as necessidades e características da arbitragem convencional.

Tenho, portanto, que embora o uso flexível do termo "competência" seja útil para a delimitação entre a função do árbitro e a do juiz estatal, em casos concretos em que pactuada a cláusula arbitral (antes e durante o procedimento arbitral), não é conceito que se preste a alterar os critérios de atribuição de competências dos Tribunais Superiores.

[...]

**Ora, se não é possível o conflito negativo de competência entre o juízo estatal e o árbitro, a admissão do conflito positivo ensejaria quebra do sistema, mais ainda se considerado que também não é admissível o conflito entre árbitros, nos termos do que decidido no CC 113260/SP. Neste, a Segunda Seção pronunciou-se quanto à inexistência de conflito de competência entre árbitros, já que a questão demandaria a interpretação do contrato entre as partes, o que deve ficar a cargo do primeiro grau de jurisdição, sob pena de fazer deste Superior Tribunal de Justiça primeira instância na interpretação das cláusulas de convenção de arbitragem.**

**[...]**

**Acresça-se que, se não há conflito de competência entre árbitros, por não se inserir na competência constitucional do STJ e por demandar interpretação de cláusulas contratuais, igualmente, pelos mesmos fundamentos, não há conflito de competência, no sentido técnico do instituto processual, entre juiz estatal e árbitro. Com efeito, tanto faz a divergência de entendimento dar-se entre dois árbitros ou entre árbitro e juiz estatal; em ambas as hipóteses não haverá conflito entre dois órgãos do Poder Judiciário.**

**No sistema constitucional de distribuição de competência entre os órgãos do Poder Judiciário, cabe ao Tribunal ao qual estão vinculados os juízes em conflito (o Tribunal revisor de suas decisões) dirimir a controvérsia. Caberá ao STJ processar e julgar o conflito entre tribunal e juízes a ele não vinculados e entre juízes vinculados a tribunais diversos. No caso de conflito entre árbitro e juiz, não se trata de conflito de competência entre juízes vinculados a tribunais diversos, seja porque árbitro não é juiz, mas apenas equiparado a juiz pela Lei 9.307/96 nos limites de sua atuação em determinada arbitragem, seja porque não está vinculado, em sua função materialmente jurisdicional, a tribunal algum, sequer ao STJ e ao STF, que não lhe podem rever o mérito das decisões, mesmo que conflitantes com a lei, salvo no caso de ocorrência de nulidades formais, descritas no art. 32 da Lei 9.307/96, caso lhe cheguem ao conhecimento após exaurida a instância ordinária.**

*Superior Tribunal de Justiça*

O voto vencedor, proferido pela eminente Ministra Nancy Andrighi, também fez menção ao CC 113.260/SP, reiterando a compreensão de S. Exa., antes vencida, a respeito do caráter jurisdicional da arbitragem, a ensejar a compreensão de que o conhecimento de conflito de competência em que figura o Tribunal arbitral não ensejaria a ampliação indevida do rol constitucional de atribuições do STJ.

Do voto condutor, extrai-se os seguintes fundamentos adotados por S.Exa.:

> **A primeira questão a ser enfrentada para a decisão deste processo diz respeito a saber se é possível reconhecer, mesmo em tese, a existência de conflito de competência entre uma câmara arbitral e um órgão jurisdicional do Estado. A matéria não vem sendo enfrentada com frequência por esta Corte mas é preciso que se registre que há, notadamente em decisões unipessoais,** manifestações positivas quanto ao cabimento deste remédio jurídico processual em tais hipóteses. Nesse sentido, além da decisão liminar proferida pelo i. Min. Aldir Passarinho Junior neste processo, também pode ser citada a decisão unipessoal proferida por esse mesmo i. Min. no CC 106.121/AL, em que S.Exa. expressamente mencionou ser possível suscitar o conflito (conquanto não tenha dele conhecido por fundamentos autônomos), pelos seguintes motivos:
>
> > **De acordo com o art. 105, I, "d" da Constituição Federal, cabe ao STJ processar e julgar originariamente: "os conflitos de competência entre quaisquer tribunais, ressalvado o disposto no art. 102, I, 'o', bem como entre tribunal e juízes a ele não vinculados e entre juízes vinculados a tribunais diversos." Não se pode pretender que tal redação pressuponha que os órgãos judicantes referidos no Texto Magno pertençam necessariamente ao Poder Judiciário, seja porque lides como a exposta permaneceriam no vácuo ou sujeitas a jurisdição dupla e eventualmente conflitante, como supostamente aqui ocorre, seja porque o escopo da Lei de Arbitragem restaria esvaziado se os contratantes que aderissem a tal modalidade na solução das controvérsias resolvessem se utilizar do processo judicial.** Também não pode estender o conceito de conflito de atribuições inserido na letra "g" do mencionado dispositivo constitucional para considerar que a expressão "autoridades administrativas" compreenda entes não judiciários. Acresça-se que eventual declaração de incompetência por este Tribunal negaria às partes a definição do órgão responsável pelo julgamento, sem oferecer o instrumento para a pacificação do embate de interesses.
> >
> > [...]
> > **Para a decisão da matéria contudo, é fundamental citar o recente julgamento do CC n° 113.260 (de minha relatoria, Relator para acórdão i. Min. João Otávio de Noronha, DJ de**

*Superior Tribunal de Justiça*

**7/4/2011). Nessa oportunidade, enfrentando matéria substancialmente diferente da que aqui se julga, mas que com ela apresenta significativos pontos de contato, o STJ entendeu não ser possível reconhecer a existência de conflito de competência entre dois tribunais arbitrais, porquanto não seria possível reputá-los órgãos jurisdicionais. Eis a ementa do julgado:**
**[...]**
**O cerne da questão, no referido precedente, estaria na possibilidade de se reputar jurisdicional a atividade desenvolvida pelos árbitros no julgamento de questões a eles submetidas por contrato. Se fosse essa a natureza de tal atuação, seria possível conhecer do conflito; caso contrário, não seria. Entendendo que é jurisdicional tal atividade teci, no voto vencido que proferi naquela ocasião, as seguintes considerações:**

> A crítica mais pungente, no entanto, é a de Luiz Guilherme Marinoni (Teoria Geral do Processo . São Paulo: RT, 2006, p. 147 e seguintes), para quem arbitragem e jurisdição não se confundem pelos seguintes motivos, em linhas gerais: (i) a escolha, pelas partes, da solução do conflito por arbitragem implica renúncia à jurisdição ; (ii) o exercício da jurisdição pressupõe investidura por concurso público; (iii) a arbitragem não observa o princípio do juiz natural; (iv) o árbitro não tem aptidão para executar suas decisões. Todas essas críticas, contudo, foram adequadamente respondidas por Fredie Didier (Curso de Direito Processual Civil, Salvador: Ed. Jus Podivm, 11ª edição, 2009, p. 82 a 85). Em resumo, argumenta o professor baiano: (i) ao escolher a arbitragem o jurisdicionado não renuncia à jurisdição, mas à jurisdição prestada pelo Estado; (ii) a jurisdição, mesmo Estatal, não é exercida apenas por pessoas aprovadas em concurso público, do que seriam exemplos as vagas destinadas aos advogados pelos arts. 94, 104, 107, I, 111-A, I, 115, 118, II, 119, II, 120, §1º, III, e 123, parágrafo único, I, da CF; (iii) o princípio do juiz natural tem como principal elemento a garantia de julgamento por um órgão cuja competência tenha sido pré-estabelecida, de modo a assegurar a imparcialidade do julgador. Os dois aspectos estão contemplados na arbitragem. A imparcialidade é prevista de maneira expressa pelo art. 21, § 2º da LArb. A prévia competência é fixada no momento em que firmada a convenção de arbitragem. Assim, os argumentos da doutrina favoráveis à jurisdicionalidade do procedimento arbitral revestem-se de coerência e racionalidade. Não há motivos para que se afaste o caráter jurisdicional dessa atividade.

**Os votos vencedores, contudo, optaram por um outro caminho. Para os ii. Min. que participaram do referido julgamento, conquanto não se possa negar o caráter jurisdicional da atividade das cortes arbitrais, trazer à apreciação do STJ um conflito entre duas delas implicaria ampliar indevidamente o rol**

*Superior Tribunal de Justiça*

**constitucional de atribuições desse Tribunal.**
Vê-se, portanto, que o referido julgamento não impede que, na hipótese presente, seja adotada uma solução diversa, ou seja, que se reconheça, aqui, numa situação de conflito, notadamente porque não se trata de confrontar duas câmaras arbitrais, mas um Tribunal, por um lado, e uma Câmara arbitral, por outro, ambos afirmando-se competentes para decretar a mesma medida. E se ambos, afirmando-se competentes, avocam a mesma causa exercendo atividade jurisdicional, é possível, sob esta ótica ao menos, conhecer do conflito.

Da leitura do voto condutor — cuja diretriz passou a nortear os julgamentos dos conflitos de competência nesta Corte de Justiça que se seguiram —, ainda que a Relatora tenha afirmado, no final de seu voto, que o entendimento adotado no CC 113.260/SP não impediria fosse reconhecido o conflito entre o Juízo arbitral e o Juízo estatal, **ante o caráter jurisdicional do primeiro, o que, portanto, não alargaria indevidamente o rol de competências do STJ definido no art. 105, I, d, CF**, parece-me, em verdade, que houve verdadeira superação do entendimento adotado no CC 113.260/SP, sobretudo porque, como demonstrado, os fundamentos dos votos prevalecentes nos julgados em cotejo são inconciliáveis entre si.

O voto vencido exarado pela Ministra Maria Isabel Gallotti, segundo penso, não deixa dúvidas a esse respeito.

**Nesses termos, estabelecida a natureza jurisdicional da arbitragem, tem-se que a Segunda Seção do Superior Tribunal de Justiça passou a reconhecer que o Tribunal arbitral se insere, indiscutivelmente, na expressão "quaisquer tribunais", constante no art. 105, I, d, da Constituição Federal.**

É dizer, segundo a compreensão adotada pela Segunda Seção, a redação constitucional não pressupõe que o conflito de competência perante o STJ dê-se apenas entre órgãos judicantes pertencentes necessariamente ao Poder Judiciário, podendo ser integrado também por Tribunal arbitral.

Nesse último caso, é possível vislumbrar a possibilidade de configuração de conflito de competência não apenas entre Tribunal arbitral e órgão jurisdicional estatal, como se reconheceu nos muitos casos que se seguiram ao referido leading case (ut CC 159.162/AM, Rel. Ministra Maria Isabel Gallotti, Segunda Seção, julgado em 09/12/2020, DJe 18/12/2020; CC 150.830/PA, desta relatoria, Segunda Seção, julgado em 10/10/2018,

*Superior Tribunal de Justiça*

DJe 16/10/2018; (CC 157.099/RJ, Rel. Ministro Marco Buzzi, Rel. p/ Acórdão Ministra Nancy Andrighi, Segunda Seção, julgado em 10/10/2018, DJe 30/10/2018;), mas também entre Tribunais arbitrais, com se dá na hipótese dos autos, a ser dirimido, em ambas as situações, pelo Superior Tribunal de Justiça.

Não há, nessa medida, como se admitir a subsistência de deliberações jurisdicionais exaradas por Tribunais arbitrais que se excluam mutuamente, como se houvesse um vácuo no ordenamento jurídico, negando-se às partes a definição do órgão (arbitral) efetivamente competente para resolver a causa posta em julgamento, conferindo-lhes instrumento processual eficaz a esse propósito, em manifesto agravamento da insegurança jurídica.

**Desse modo, compete ao Superior Tribunal de Justiça conhecer e julgar originariamente os conflitos de competência entre quaisquer tribunais [leia-se, Tribunais de Justiça dos Estados e do Distrito Federal, Tribunais Regionais Federais e Tribunais arbitrais], ressalvado o disposto no art. 102, I, 'o' [conflito entre Tribunais Superiores a ser julgado pelo STF], bem como entre tribunal [os mesmos antes referidos] e juízes a ele não vinculados e entre juízes vinculados a tribunais diversos."**

Afasta-se, assim, qualquer possibilidade de um conflito de competência estabelecido entre Tribunais arbitrais ser dirimido por um juiz de primeira instância, independentemente da necessidade ou não de interpretação da cláusula compromissória arbitral - situação, aliás, absolutamente inexistente no caso dos autos - o qual, além de não possuir atribuição legal ou constitucional a esse propósito, não teria, ainda que se valha de algum paralelismo entre a jurisdição estatal e a arbitral, relação de hierarquia e/ou de vinculação perante os Tribunais arbitrais.

Veja-se que a competência para julgar uma ação anulatória, absolutamente restrita às hipóteses dos art. 32 da Lei n. 9.307/1996, ou mesmo de executar a sentença arbitral, não altera o fato indiscutível que o juiz singular não poder rever o mérito das decisões arbitrais, não tendo o Tribunal arbitral nenhuma subordinação ou vinculação perante o juiz de primeira instância.

O mesmo se diga em relação aos Tribunais de segunda Instância. Pela norma constitucional acima referida, os Tribunais de Justiça dos Estados e do Distrito

*Superior Tribunal de Justiça*

Federal e Tribunais Regionais Federais, residualmente, têm competência para dirimir conflito de competência entre juízos a eles diretamente vinculados. Diversamente, os Tribunais arbitrais, em situação de conflito competência, ainda que se encontrem situados na mesma unidade da Federação ou na mesma Região, não são vinculados a nenhum Tribunal de Justiça ou Tribunal Regional Federal, ainda que se utilize mais uma vez do dito paralelismo entre as jurisdições arbitral e estatal.

Importa reconhecer, na verdade, que, se a redação constitucional não pressupõe que o conflito de competência perante o STJ dê-se apenas entre órgãos judicantes pertencentes necessariamente ao Poder Judiciário, de todo descabido estabelecer qualquer vinculação do Tribunal arbitral, que não compõe a organização do Poder Judiciário, a  qualquer órgão de primeira ou de segunda instância deste Poder estatal.

É de se estabelecer, nesses termos, segundo penso, a competência do Superior Tribunal de Justiça, em atenção à função constitucional que lhe é atribuída no art. 105, I, d, da Carta Magna, para conhecer e julgar o conflito de competência estabelecido entre Tribunais Arbitrais.

O caso dos autos guarda, ainda, uma particularidade.

Os Tribunais arbitrais suscitados, na hipótese dos autos, são vinculados à mesma Câmara de Arbitragem (Câmara de Arbitragem do Mercado -  órgão arbitral destinado à solução de conflitos envolvendo Participantes dos mercados regulados pela BM&FBOVESPA S.A. - Bolsa de Valores, Mercadorias e Futuros - decorrentes de relações societárias ou contratuais disciplinadas pela Lei das S.A, pelos estatutos sociais da companhias ou pelas normas aplicáveis ao funcionamento do mercado de capitais em geral).

Poder-se-ia supor, de modo açodado, que a competência para dirimir o conflito de competência seria da própria Câmara de arbitragem.

**Todavia, no procedimento arbitral, quem ostenta o poder jurisdicional é o tribunal arbitral devidamente constituído, segundo a indicação das partes na formação do painel arbitral; a Câmara de arbitragem apenas administra o procedimento arbitral, sem, portanto, deter nenhum poder jurisdicional para dirimir eventual impasse criado entre os Tribunais arbitrais a ela vinculado que profiram**

*Superior Tribunal de Justiça*

**decisões inconciliáveis entre si.**

Idealmente, a solução para o conflito de competência entre Tribunais arbitrais <u>vinculados à mesma Câmara de arbitragem</u> haveria de ser disciplinado e solucionado pelo Regulamento da Câmara de Arbitragem do Mercado, o qual, ao ser eleito pelas partes para dirimir seu conflito de interesses, atenderia, naturalmente, ao princípio da autonomia de vontades, norteador de toda e qualquer arbitragem.

Todavia, na específica hipótese dos autos, o Regulamento da Câmara de Arbitragem do Mercado é absolutamente omisso em disciplinar a solução para o impasse criado entre os Tribunais arbitrais que teriam proferido, em tese, decisões inconciliáveis entre si, em procedimentos arbitrais que possuem pedidos e causa de pedir parcialmente idênticos, tendo a Presidência da Câmara reconhecido, justamente, não ter atribuição para dirimi-lo, segundo as disposições do Regulamento.

Registre-se, a esse propósito, que o Regulamento em comento cinge-se a regular a possibilidade de reunir os feitos, em caso de conexão, desde que seja feito em momento anterior à constituição do segundo Tribunal arbitral e que haja concordância entre as partes a respeito da composição do Tribunal arbitral constituído anteriormente, circunstâncias, na hipótese, indiscutivelmente não verificadas. Não há, como dito, nenhuma disciplina regulamentar para solucionar eventual conflito de competência entre Tribunais arbitrais vinculados à Câmara de Arbitragem do Mercado (CAM) que, no âmbito de cada procedimento, venham a proferir deliberações excludentes entre si.

Assim como se dá com a lei, o regulamento de arbitragem nem sempre é capaz de antever todas as situações práticas que mereçam um regramento específico a fim de prevenir e, principalmente, solucionar eventual impasse daí advindo, sobretudo em casos como o retratado nos presentes autos, de todo particular.

Nesse contexto - e em conclusão da preliminar -, tem-se competir ao Superior Tribunal de Justiça, em atenção à função constitucional que lhe é atribuída no art. 105, I, d, da Carta Magna, conhecer e julgar o conflito de competência estabelecido entre Tribunais Arbitrais, que ostentam natureza jurisdicional, ainda que vinculados à mesma Câmara de Arbitragem, sobretudo se a solução interna para o impasse criado não é objeto de disciplina regulamentar.

Cabível, portanto, o presente incidente.

*Superior Tribunal de Justiça*

**2. Caracterização de conflito de competência entre os Tribunais arbitrais suscitados. Demonstração.**

Como é de sabença, o conflito positivo de competência afigura-se caracterizado, não apenas quando dois ou mais Juízos, de esferas diversas, declaram-se simultaneamente competentes para julgar a mesma causa, mas também quando, **sobre o mesmo objeto, dois ou mais órgãos jurisdicionais tecem deliberações excludentes entre si.**

A hipótese dos autos retrata, a toda evidência, a configuração de conflito positivo de competência, nessa última vertente.

Passa-se, a fim de bem evidenciá-lo, a delimitar, cronologicamente, os fatos que antecederam os procedimentos arbitrais, seus objetos e as decisões que, em tese, seriam inconciliáveis entre si.

Extrai-se dos autos que, em 2017, o Ministério Publico Federal celebrou acordos de colaboração premiada com administradores e executivos da "J." S.A. da época, dentre os quais, W. M. B. e J. M. B., controladores indiretos da (controladora) J.; e acordo de leniência com a (controladora) J.

**Em virtude dos ilícitos confessados nos acordos acima referidos, cuja celebração foi divulgada em Comunicados ao Mercado e Fatos Relevantes publicados pela "J." S.A., a BNDES Participações S.A. - BNDESPAR (<u>acionista detentora de participação superior a 5% do capital social da companhia - e-STJ, fl. 1.687</u>)**, com fundamento no art. 123, parágrafo único, c, da Lei n. 6.404/1976, requereu, em julho de 2017, a convocação de assembleia geral extraordinária para a deliberação das medidas a serem tomadas pela companhia contra os administradores, ex-administradores e controladores envolvidos em tais ilícitos, em especial a adoção das medidas insertas nos arts. 159 e 246 da Lei das S.A. (e-STJ, fls. 1.686-1.691).

**A assembleia geral extraordinária (AGE) foi convocada para o dia 1º/9/2017** (e-STJ, fls. 1.693-1.694), a fim de deliberar, no que importa à controvérsia, sobre (e-STJ, fls. 1.687-1.688):

> **(i) promoção, pela Companhia, em até 90 (noventa) dias da realização da AGE, de ação de responsabilidade civil contra o administrador da Companhia Wesley Mendonça Batista e contra**

*Superior Tribunal de Justiça*

**os ex-administradores da Companhia Joesley Mendonça Batista, Florisvaldo Caetano de Oliveira e Francisco de Assis e Silva, pelos prejuízos causados ao seu patrimônio em razão dos atos ilícitos confessados no âmbito do Acordo de Colaboração Premiada e do Acordo de Leniência celebrados junto ao Ministério Público Federal, nos termos do artigo 159 da Lei n° 6.404/76**, com o consequente impedimento das referidas pessoas e substituição do administrador com mandato ainda em vigor, nos termos do § 2º deste mesmo artigo;

**(ii) promoção, pela Companhia, em até 90 (noventa) dias da realização da AGE, de ação de responsabilidade civil contra os seus acionistas controladores,** nos termos do artigo 246 Lei n° 6.404/76, pelos prejuízos causados ao seu patrimônio em razão dos atos ilícitos confessados no âmbito do Acordo de Colaboração Premiada e do Acordo de Leniência celebrados junto ao Ministério Público Federal; e

Registre-se que, **poucos dias antes da data prevista para a realização da AGE (1/9/2017)**, em 19/7/2017, o Sr. J. A. V. J. adquiriu o lote de 1000 ações, no valor de R$ 8.000,00 (oito mil reais), conferindo-se-lhe, assim, a condição de acionista minoritário (e-STJ, fls. 220-221 e 547).

**BNDES Participações S.A. - BNDESPAR, antevendo a existência de conflito de interesses**, requereu medida cautelar (pré-arbitral) perante a Justiça Federal — após não obter êxito perante a Comissão de Valores Mobiliários (CVM) — para interromper o prazo para a convocação da AGE a fim de que, com base no art. 115, § 1º da LSA, fosse obstado o exercício do direito de voto da FB, sucedida posteriormente pela controladora J., bem como dos Bancos (Banco Original S.A e Banco Original do Agronegócio S.A.), para deliberar sobre as medidas de responsabilização acima referidas.

No âmbito da Justiça Federal, concluiu-se pela suspensão da Assembleia Geral Extraordinária até que o conflito fosse analisado, em definitivo, no âmbito da arbitragem ajustada.

Interessante notar que a sentença arbitral proferida **no Procedimento arbitral n. 94/17 (destinado a dirimir a possibilidade ou não de os controladores da "J." S.A. de exercer o direito de voto na AGE)** fez constar, em seu relatório, que, na ocasião, o acionista minoritário, o Sr. J. A. V. J., também requereu tutela de urgência, com o mesmo fim, o de impedir a votação dos controlares na AGE. Segundo ali noticiado, o pedido foi indeferido e o Sr. J. A. V. J. "desistiu do recurso de apelação diante da

*Superior Tribunal de Justiça*

instauração do presente procedimento [arbitral], o que foi homologado em decisão monocrática" (item 24 da nota de rodapé - e-STJ, fl. 1.807).

Não obstante, pelo que se extrai dos autos, antes mesmo da instauração do Procedimento arbitral n. 94/17 (cujo requerimento deu-se em 11/9/2017 - e-STJ, fl. 1.791), o Sr. J. A. V. J. e a Associação de investidores Minoritários, **em 16/8/2017**, requereram a instauração do procedimento arbitral (93/17), tendo por propósito, **com base no art. 246 da LSA,** obter a "reparação de todos os danos causados à "J." S.A. por abuso de poder de controle, em razão dos supostos ilícitos confessados por controladores em acordos de delação premiada" (e-STJ, fl. 357).

Este procedimento, registre-se, foi promovido contra J & F Participações S.A., J & F Investimentos S.A., Banco Original S.A. Banco Original do Agronegócio S.A., Pinheiro Fundos de Investimento em Participações, ZMF Participações Ltda., J. M. B. e W. M. B. e a própria "J." S.A. Em relação à "J." S.A. , em atenção ao fato de que o demandante promoveu ação em legitimidade extraordinária, no caso, na defesa dos direitos da própria "J." S.A., reconheceu-se a impossibilidade de esta vir a integrar o pólo passivo da ação (ilegitimidade passiva *ad causam*), passando esta a compor o feito na qualidade de interveniente.

Contra as mesmas partes demandadas e com idêntico objeto, causa de pedir e pedidos, foi requerida a instauração de procedimento Arbitral (CAM nº. 110/18), em 15.6.2018, por S. I F. de I. de A. — I. no E. — **fundo cujo início das atividades deu-se em 11.6.2018 (e-STJ, fls. 1681 e 367-386)** —, também na qualidade de acionista minoritário (e-STJ, fl. 360). A título de esclarecimento, SPS I Fundo de Investimento em Ações — Investimento no Exterior ("SPS I") adquiriu a participação acionária da "J. S.A" **em 14.6.2018** (e-STJ, fl. 1.684).

É dos autos que, **em 27 de setembro de 2018**, o Presidente da CAM, por força da competência que lhe é atribuída pelo Regulamento, decidiu reunir os dois procedimentos (93/2017 e 110/2018) para julgamento conjunto pelo Tribunal Arbitral por primeiro constituído, o que contou com o assentimento das partes (e-STJ, fl. 484).

O Tribunal Arbitral dos Procedimentos Arbitrais "CAM 93/17 e CAM110/18, em 7/7/2020, proferiu sentença parcial arbitral, definindo os seguintes pontos preliminares, então controvertidos:

*Superior Tribunal de Justiça*

**a) Declara que os Requerentes J. A. V. de S. J. e S. I F. de I. de A. – I. no E. são partes legítimas nos presentes procedimentos arbitrais;**

b) Declara que a Requerente Associação de Investidores Minoritários (AIDMIN) não possui legitimidade ativa para atuar nos presentes procedimentos e deve, portanto, ser excluída do polo ativo dessas arbitragens;

c) Determina que os Requerentes devem prestar caução no valor de R$ 3.000.000,00 (três milhões de reais), de acordo com os termos fixados no Termo de Arbitragem;

d) Declara que há arbitrabilidade subjetiva em relação a todos os Requeridos, com exceção dos Requeridos mencionados no item "e" abaixo;

e) Declara que não há arbitrabilidade subjetiva em relação aos Requeridos JJMB Participações Ltda. e WWMB Participações Ltda., que devem ser excluídos do polo passivo destes procedimentos arbitrais;

**f) Declara que a pretensão indenizatória aduzida pelos Requerentes em relação à incorporação da companhia Bertin S. A. está dentro dos limites da demanda conforme estabelecidos no Termo de Arbitragem.**

Registre-se que, em relação ao primeiro ponto em destaque (item a, em que se reconhece a legitimidade ativa dos requerentes dos Procedimentos Arbitrais 93-110), a parte interessada argumenta que em razão do não ajuizamento de qualquer ação anulatória por parte da "J." S.A., no prazo de noventa dias, esta sentença arbitral, que reconhece a sua legitimidade ativa, teria feito coisa julgada.

Sem embargo desta afirmação, é preciso registrar que o presente conflito de competência não se refere, como sugerem os interessados, a esta sentença parcial arbitral a qual reconheceu a sua legitimidade extraordinária para promover a ação de responsabilidade, com base no art. 246 da LSA contra os controladores da companhia "J".

As deliberações arbitrais excludentes entre si, e que são objeto do presente conflito de competência, referem-se, conforme será demonstrado, às decisões posteriores a esta, relativas à prevalência dos efeitos da coisa julgada da decisão a ser proferida no procedimento arbitral intentado pela "J. SA" em legitimidade ordinária, após a autorização assemblear obtida (CAM 186./21) e a subsistência do interesse de agir do procedimentos arbitrais anteriores (CAM 93-110).

Pois bem. Retomando a cronologia dos fatos, **somente em 21 de fevereiro de 2020**, o Tribunal Arbitral do Procedimento Arbitral n. 94/17 definiu que a controladora J. está impedida de exercer seu direito de voto na  assembleia geral extraordinária, a ser

*Superior Tribunal de Justiça*

redesignada, para o fim deliberar sobre as medidas a serem tomadas pela companhia contra os administradores, ex-administradores e controladores envolvidos em tais ilícitos descritos nos acordos entabulados com o MPF, em especial a adoção das medidas insertas nos arts. 159 e 246 da Lei das S.A., não poderá contar com a participação da controladora J (e-STJ, fl. 1.781-1.915).

Em **30/10/2020**, a Assembleia Geral Extraordinária da "J." S.A aprovou, segundo o quórum legal, "o ingresso de ação de responsabilidade em face de W. M. B. e J. M. B., ex-administradores da Companhia, e do controlador direto e/ou indireto da Companhia, na forma dos artigos 159 e 246 da Lei nº 6.404/7"; bem como "o ingresso de ação de responsabilidade em face de F. C. de O. e F. de A. e S., ex-administradores da Companhia, na forma do artigo 159 da Lei n. 6.404/76", **ficando rechaçado, a esse propósito, a participação da companhia** "J." S.A. **nos Procedimentos arbitrais em curso (CAM 93-110) - e-STJ, fl. 1.947- 1.950.**

Em **27/1/2021 (e-STJ, fl. 2.488)**, a "J." S.A. promoveu requerimento de instauração de Procedimento arbitral, (Procedimento Arbitral CAM 186/21), nos exatos termos da autorização assemblear acima referida.

Após a constituição do Tribunal arbitral do Procedimento Arbitral CAM 186/21 (9/6/2021), a "J." S.A., em 28/7/2021 requereu, no bojo dos Procedimentos Arbitrais CAM 93-110, em que atua como interveniente, a extinção de tais feitos, sob a alegação de cessação da legitimidade extraordinária e do interesse de agir dos requerentes, em virtude da instauração de procedimento arbitral requerido pela própria "J." S.A., em legitimidade ordinária para a ação prevista no art. 246 da LSA, com idênticos pedidos e causa de pedir.

O Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018, 16/11/2021, por maioria de votos, indeferiu o pedido efetuado pela "J." S.A. de extinção dos feitos, reconhecendo, pois, inexistir prevalência do Procedimento CAM n. 186/21 sobre aqueles; inexistir perda superveniente de legitimidade extraordinária ou do interesse de agir dos acionistas minoritários em virtude da instauração do Procedimento CAM n. 186/21; bem como a sujeição da "J." S.A. aos efeitos da coisa julgada formada nas arbitragens 93-110 das quais não foi parte, devido à atuação dos seus substitutos processuais.

Pela relevância, reproduz-se parte da fundamentação adotada (e-STJ, fls. 120-176):

*Superior Tribunal de Justiça*

102. A maioria do Tribunal examinará os argumentos trazidos pelas Partes e pela Interveniente a seguir. Preliminarmente, entretanto, a maioria do Tribunal entende ser necessário abordar a questão da possibilidade de "J." S.A. apresentar pedido de extinção destes procedimentos. Em que pese nenhuma das Partes haver trazido argumentos acerca de tal questão, a maioria do Tribunal não está convencido da possibilidade de terceiro – que não é parte determinada arbitragem – apresentar pedido de extinção do procedimento arbitral. Nem o Regulamento nem o ordenamento brasileiro parecem autorizar a apresentação de pedido de extinção de procedimento neste contexto. Contudo, a maioria do Tribunal não irá se alongar na análise deste ponto. Ademais, ainda que "J." S.A. pudesse, em sua assumida posição de Interveniente, apresentar tal pedido, ele seria igualmente rejeitado pelas razões enunciadas a seguir.

### a) A alegada prevalência do Procedimento CAM No. 186/21 é fundada em interpretação contra legem da Lei das S. A.

103. A maioria do Tribunal nota que boa parte dos argumentos que sustentam a alegada prevalência do Procedimento CAM No. 186/21 derivam da aplicação contra legem do dispositivo legal referente às ações de responsabilidade contra o administrador, previstas no artigo 159 da Lei das S. A., e às ações de responsabilidade contra o controlador, previstas no artigo 246 da mesma lei.
[...]
104. A lei estabelece que, primeiramente, compete à própria companhia ajuizar ação contra o administrador para responsabilizá-lo por "prejuízos causados ao seu patrimônio" (artigo 159, caput). Essa ação depende de deliberação da assembleia geral de acionistas (artigo 159, § 1º). Caso a assembleia decida favoravelmente ao ajuizamento da ação (oupela instauração de uma arbitragem), a companhia terá 3 meses para propô-la. Restando a companhia inerte após esses 3 meses, qualquer acionista poderá ajuizar a ação de responsabilidade contra o administrador, como legitimado extraordinário (artigo 159, § 3º).
[...]
106. Esse regime, entretanto, não se confunde com o regime da ação de responsabilidade contra o controlador, prevista no artigo 246 da Lei das S. A. e que serve de fundamento legal para atuação dos Requerentes nas presentes arbitragens. O artigo 246 dispõe:
[...]

107. Nesse caso, a lei não condiciona a legitimidade extraordinária dos acionistas à realização de deliberação, posto que o controlador provavelmente tem o controle da vontade manifestada na assembleia geral. Esse ponto foi reconhecido pelos Requeridos do Grupo II. Pelo mesmo motivo (potencial captura da vontade manifesta da companhia pelos controladores que atuam em detrimento dela), a lei não estabelece que a ação de responsabilidade contra o controlador caberia à própria companhia. Ao contrário, o § 1º do artigo 246

*Superior Tribunal de Justiça*

determina claramente que o ajuizamento desta ação cabe aos acionistas – e a qualquer acionista, desde que preste caução (sendo esta dispensada caso o acionista ou acionistas representem 5% ou mais do capital social), assim legitimados originariamente.

108. A distinção entre as duas ações de responsabilidade decorre, primeiramente, da letra da lei, pois os artigos 159 e 246 estabelecem claramente a disciplina legal de cada uma delas.

Não há nenhuma indicação na lei que autorize a aplicação dos requisitos do artigo 159 à ação do artigo 246. Além disso, os referidos dispositivos encontram-se em capítulos distintos da Lei das S. A. e versam sobre ações de responsabilidade voltadas a sujeitos absolutamente distintos entre si (o administrador e o controlador, respectivamente).

**109. Assim, a ideia de que a ação de responsabilidade do controlador caberia a "J." S.A. e que, portanto, prevaleceria sobre as presentes arbitragens é contra legem, pois a lei determina, em seu artigo 246, que essa ação cabe aos acionistas. Em que pese o direito pleiteado na ação de responsabilidade do artigo 246 ser de titularidade da Companhia, o texto da lei refere-se apenas à legitimidade dos acionistas, sem qualquer menção à possibilidade de propositura da ação pela Companhia.**

**[...]**

**c) A alegada prevalência do Procedimento CAM No. 186/21 vai contra os objetivos da ação de responsabilidade do artigo 246 da Lei das S. A.**

**114. Além de ser contra legem, o entendimento de que a ação proposta pela companhia prevalece sobre a ação proposta pelo acionista minoritário vai contra a finalidade da ação de responsabilidade contra o controlador conforme estabelecida na Lei das S. A.; pois este entendimento tornaria inúteis os incentivos criados pelo legislador para que os acionistas minoritários de fato buscassem a responsabilização dos controladores, a saber, o prêmio de 5% e os honorários do advogado de 20%, calculados sobre o valor da condenação (artigo 246, § 2º).** Caso a companhia pudesse, a qualquer momento, ajuizar ação idêntica à já proposta pelos acionistas, provocando sua extinção sem julgamento de mérito, os acionistas arcariam com os custos da propositura e perderiam os incentivos legais. Ademais, todo o procedimento – judicial ou arbitral – teria sido em vão.

Portanto, as interpretações sustentadas pela "J." S.A. e pelos Requeridos não só vão contra o texto da Lei das S. A., como também são desprovidas de sentido por inutilizarem o instituto criado pelo artigo 246 da lei.

*Superior Tribunal de Justiça*

**d) Não há perda superveniente de legitimidade extraordinária ou interesse de agir.**

[...]

118. A alegação dos Requeridos do Grupo II confunde aspectos do direito material discutido nessas arbitragens (no caso, os poderes atrelados à titularidade do direito material disponível) com a aplicação das regras processuais que autorizam a propositura da ação pleiteando a tutela desse mesmo direito material pelos substitutos. Justamente por isso, n**ão há qualquer previsão legal de prevalência da ação movida pelo substituído em relação à ação iniciada pelos substitutos em razão dos poderes da Companhia para transigir.**

125. Na verdade, analisando o requerimento de instauração e o termo de arbitragem do Procedimento CAM Nº. 186/21 e as alegações das Partes, a maioria do Tribunal entende que há aparente litispendência parcial entre o mencionado procedimento e estas arbitragens em relação à ação de responsabilidade dos controladores fundada no artigo 246 da Lei das S. A.. **Tal ação de responsabilidade, no Procedimento CAM No. 186/21, parece versar sobre os mesmos fatos e atos de abuso do poder de controle discutidos nestas arbitragens, e o pedido apresentado aparenta ser o mesmo.**

126. A verificação da existência de litispendência exige a extinção da ação proposta mais recentemente. As consequências da potencial litispendência entre os procedimentos arbitrais, porém, deve ser solucionada pelo tribunal do Procedimento CAM No. 186/21, já que este procedimento arbitral foi iniciado anos após a instauração destas arbitragens.

[...]

**f) Consequências do exercício, por parte dos substitutos, da legitimidade extraordinária que lhes é outorgada por lei: a não participação na constituição do tribunal arbitral e os efeitos da coisa julgada**

**[...]**

122. **Também é consequência lógica da substituição processual que não só o substituto, mas também o substituído está sujeito à coisa julgada em ações de responsabilidade do artigo 246 da Lei das S. A.. Trata-se de mera consequência da legitimidade extraordinária estabelecida em lei. "J." S.A. está submetida ao regime jurídico estabelecido pela Lei das S. A., seja perante o Judiciário ou perante tribunais arbitrais, e os ditames legais trarão consequências para os procedimentos arbitrais em que a Companhia for parte.**
**Assim, em virtude do determinado pela Lei das S. A., "J." S.A. está sujeita aos efeitos da coisa julgada formada em arbitragens das quais não foi parte, devido à atuação dos seus substitutos processuais. Qualquer entendimento distinto**

*Superior Tribunal de Justiça*

**impossibilitaria a aplicação do artigo 246 da Lei das S. A.**

**123. A maioria do Tribunal ressalta, ainda, que a lei não estabelece nenhum regime diferenciado para a coisa julgada formada em ações iniciadas por substitutos processuais. A segurança jurídica fornecida pelo trânsito em julgado das ações iniciadas por substitutos, portanto, em nada difere das ações movidas pelos titulares do direito material.**

**g) Litispendência e amplitude do Procedimento CAM No. 186/21 em relação a estes procedimentos arbitrais.**

124. "J." S.A. e os Requeridos dos Grupos II e III (assim como os professores que apresentaram pareceres pela extinção destes procedimentos) alegam que o Procedimento CAM No. 186/21 seria mais amplo que estas arbitragens por também incluir ação de responsabilidade contra antigos administradores da Companhia (os srs. Francisco de Assis e Silva e Florisvaldo Caetano de Oliveira, que não são parte nestes procedimentos), fundada no artigo 159 da Lei das S. A.. **A maioria do Tribunal entende que a comparação entre os procedimentos deve se dar exclusivamente em relação à ação do artigo 246, visto que os Requerentes não teriam legitimidade para propor a ação do artigo 159. Nesse sentido, estes procedimentos são mais amplos que o Procedimento CAM No. 186/21, por também versar sobre alegadas irregularidades na incorporação da Bertin.**

**125. Na verdade, analisando o requerimento de instauração e o termo de arbitragem do Procedimento CAM No. 186/21 e as alegações das Partes, a maioria do Tribunal entende que há aparente litispendência parcial entre o mencionado procedimento e estas arbitragens em relação à ação de responsabilidade dos controladores fundada no artigo 246 da Lei das S. A.**
Tal ação de responsabilidade, no Procedimento CAM No. 186/21, parece versar sobre os mesmos fatos e atos de abuso do poder de controle discutidos nestas arbitragens, e o pedido apresentado aparenta ser o mesmo.

**126. A verificação da existência de litispendência exige a extinção da ação proposta mais recentemente.**
As consequências da potencial litispendência entre os procedimentos arbitrais, porém, deve ser solucionada pelo tribunal do Procedimento CAM No. 186/21, já que este procedimento arbitral foi iniciado anos após a instauração destas arbitragens.

[...]

3. DISPOSITIVO

137. Por todo o acima exposto, a maioria do Tribunal Arbitral:

*Superior Tribunal de Justiça*

a) rejeita o pedido de extinção destas arbitragens; e
b) reserva sua decisão acerca dos custos deste incidente processual para um momento posterior destes procedimentos arbitrais.

138. A maioria do Tribunal determina o prosseguimento das presentes arbitragens e, em posse das manifestações das Partes acerca do calendário processual a ser seguido e da prova pericial a ser produzida, decidirá acerca dos próximos passos em sua próxima Ordem Procedimental.

Em paralelo,  em 7/10/2021, J. A. V. J. e S. I F. de I. de A. — I. no E. ("SPS I"), na qualidade ainda de terceiros, requereram a anulação do Procedimento Arbitral CAM 186/21, em razão da existência dos Procedimentos Arbitrais ns. 93/2017 e 110/2018 que a ele são anteriores, e subsidiariamente, Habilitação e Suspensão do Procedimento n. 186/21 perante o Presidente da CAM.

A Presidência da Câmara de Arbitragem de Mercado, após admitir o ingresso dos terceiros no feito, ad referendum do Tribunal Arbitral CAM 186/21, reconheceu ser "incompetente para proferir decisão a respeito da nulidade de atos processuais e suspensão da arbitragem, tendo em vista (i) a ausência de previsão regulamentar e, em especial, (ii) o caráter jurisdicional das deliberações (e-STJ, fl. 2.494).

Em 14/1/2022, o Tribunal Procedimento Arbitral CAM 186/21, por sua vez, reconheceu a prevalência deste procedimento sobre os Procedimentos Arbitrais ns. 93/2017 e 110/2018, sobretudo ante o exercício da legitimidade ordinária da companhia que somente pôde atuar após a deliberação assemblear, não havendo se falar em inércia de sua parte, sendo certo que a vindoura sentença arbitral produzirá os efeitos da coisa julgada, sobretudo quanto à pretensão indenizatória, vinculando a Companhia, seus acionistas, ex-administradores e a sociedade controladora, devendo ser respeitada quanto aos seus limites subjetivos e objetivos.

Pela relevância, transcreve-se o seguinte excerto da decisão proferida pela Tribunal Arbitral do Procedimento Arbitral n. 186/2021 (e-STJ, fls. 178-202):

Por força do art. 18 da Lei nº 9.307/1996 (Lei da Arbitragem), o árbitro, i. e.o Tribunal Arbitral, é juiz de fato e de direito, de modo que as incumbências da tarefa jurisdicional previstas aos juízes do Poder Judiciário deverão ser desempenhadas, igualmente, pelos Árbitros do Tribunal.
E, por conseguinte, sendo competência do juiz a apreciação de alegações de litispendência e conexão, cabe igualmente ao Tribunal Arbitral decidir sobre estes aspectos correlatos.

*Superior Tribunal de Justiça*

**Para que se reconheça a litispendência suficiente a obstar o ajuizamento de uma segunda ação, urge que esta seja idêntica, e não meramente parecida, àquela já ajuizada.**

Neste âmbito, a identidade que deve ser averiguada é aquela descrita pelo art. 337, § 2º, do Código de Processo Civil em vigor (Lei n. 13.105/2015),o qual estabelece que "uma ação é idêntica a outra quando possui as mesmas partes, a mesma causa de pedir e o mesmo pedido".

**Se, no entanto, não se verificar a total identidade das ações com relação aos referidos elementos (partes, causa de pedir e pedido), ausente estará a litispendência. Contudo, poderá ser o caso de conexão, quando as ações possuam pedido e/ou causa de pedir iguais, nos termos do art. 55 do CPC, ou de continência, quando, nos termos do art. 56 do mesmo Diploma, "houver identidade quanto às partes e à causa de pedir, mas o pedido de uma, por ser mais amplo, abrange o das demais".**

**Para que se verifique a existência de litispendência, conexão ou continência entre o presente procedimento arbitral e os Procedimentos CAM n. 93/17 e n. 110/18, mister a discriminação dos elementos identificadores destes procedimentos.**

**Contudo, isto demandaria que o Tribunal pudesse conhecer todos os dados dos Procedimentos CAM n. 93/17 e n. 110/18, o que, em nenhum momento, foi trazido a conhecimento dos árbitros, por razões de sigilo dos procedimentos.**

Para o presente procedimento arbitral, a causa de pedir recai sobre a AGE de acionistas da Companhia ocorrida em 30.10.2020, na qual se deliberou pelo ingresso de ação de responsabilidade em face de Joesley e Wesley Batista, ex-administradores da Companhia, e do controlador direto J&F, com fundamento nos arts. 159 e 246, ambos da Lei nº 6.404/76 ("LSA"), em razão de atos praticados em abuso de poder de controle, incidindo nas hipóteses do art. 117, § 1º, "a", "c", "d", "e", "f" e"g", da LSA; e pelo ingresso de ação de responsabilidade, com fundamento no art. 159 da LSA, em face de Francisco de Assis e Silva, à época dos fatos, diretor estatutário e responsável jurídico da Companhia, e Florisvaldo Caetano de Oliveira, então membro do Conselho Fiscal, em razão de atos ilícitos praticados por ambos em prejuízo aos interesses da Companhia. Com relação ao pedido, a Requerente pleiteia, por meio desta arbitragem, (i) o reconhecimento de danos decorrentes das condutas dos Requeridos; (ii) o reconhecimento do dever de reparação dos Requeridos;(iii) a produção de provas para apuração do valor e extensão dos danos; (iv) a condenação solidária dos Requeridos ao pagamento de indenização em seu favor, acrescida de juros e correção monetária desde a data da prática dos ilícitos; (v) a condenação em pagamento de custas e honorários de sucumbência.

**Caso a presente Arbitragem abarque os pedidos e fundamentos formulados nos procedimentos movidos pelos acionistas, pode-se falar de continência, mas não de conexão, pois aparentemente há outras partes envolvidas. Como é sabido, se houver continência, os efeitos típicos deveriam ser a extinção da ação contida (pedido menos amplo), sem resolução de mérito, ou a reunião com a ação continente**

*Superior Tribunal de Justiça*

(pedido mais amplo).

**O critério determinante neste caso, consoante dispõe o art. 56 do Código de Processo Civil, é o cronológico. Porquanto a ação continente fora ajuizada primeiramente, a ação contida será extinta; porém, na hipótese inversa, as ações deverão ser reunidas.**

Não se trata de mera deliberação de vontade, mas resultado de previsão legal manifesta.

**Esta regra, entretanto, somente pode ser aplicável para os casos de legitimação ordinária. Assim, alguns aspectos merecem ser considerados. A começar pela legitimidade. A pessoa jurídica possui existência legal própria e distinta da figura de seus sócios ou acionistas(cf. art. 45 do Código Civil). Logo, a legitimidade ordinária serve para dispor e demandar em juízo acerca de seus direitos e obrigações. Sob a perspectiva societária, a LSA disciplina a ação de responsabilidade contra o administrador, por meio do art. 159,e a ação de responsabilidade contra a sociedade controladora, diante dos arts. 116 e 117,em virtude do art. 246 da LSA. Nas referidas ações de responsabilidade, a legitimidade ordinária é da Companhia, uma vez que é dela o patrimônio a ser recomposto por meio da medida judicial. Apenas em caráter excepcional, admite-se a legitimação extraordinária, desempenhada pelos acionistas. Portanto, a legitimidade ordinária é da "J." S.A., ora Requerente. De fato, o art. 159, § 3º, da LSA condiciona a propositura de ação de responsabilidade pelo acionista, em caráter excepcional, unicamente quando da inércia da companhia, dispondo da seguinte forma:**

[...]

**Dado que a legitimidades ordinária prefere a extraordinária, o critério cronológico deve ser afastado, ante a preferência exercida pelo regime da legitimidade. Com isso, a continência deve autorizar a arbitragem iniciada sob a condução válida, nos termos do art. 18 do CPC, a saber: "Art. 18. Ninguém poderá pleitear direito alheio em nome próprio, salvo quando autorizado pelo ordenamento jurídico." Com efeito, quando o legitimado ordinário desempenha o seu papel postulatório, a legitimidade dos acionistas permanece subordinada ao exercício do direito de ação pela Companhia.**

<u>**Como se percebe, o presente procedimento arbitral deve prevalecer sobre a arbitragem dos acionistas, dada a legitimidade ordinária atendida no presente caso. E isso porque, tão logo houve a deliberação assemblear, como se constata, foi instaurada a presente Arbitragem, no exercício autêntico da legitimidade ordinária conferida à Companhia, ora Requerente.**</u>

Por conseguinte, deve ser reconhecida a regularidade do presente procedimento arbitral, instaurado em observância à determinação assemblear de 30.10.2020. **Independente da decisão que venha a ser tomada pelo Tribunal Arbitral a respeito da extinção, ou não, dos Procedimentos CAM n. 93/17 e n. 110/18, registra-se, desde já, a impossibilidade de reunião daqueles feitos ao**

*Superior Tribunal de Justiça*

**presente, diante da prevalência da legitimidade ordinária exercida pela Companhia, aplicável unicamente no caso desta em curso, com cessação dos efeitos extraordinários da legitimidade dos acionistas.**
Consequentemente, não há que se falar em nulidade dos atos processuais praticados até o presente momento, que se afirmam com perfeita regularidade e adequação da presente Arbitragem.
[...]
O objeto da presente Arbitragem recai sobre a pretensão da Requerente de ser indenizada, pelos Requeridos, quanto aos danos ocasionados à Companhia pela prática dos supostos atos ilícios antijurídicos descritos nos acordos de colaboração premiada e de leniência firmados com a Procuradoria Geral da República. O Requerimento de Instauração de Arbitragem foi regularmente processado, com a concessão de contraditório aos Requeridos, oportunidade em que puderam se manifestar desfavoravelmente ao processamento, sob o argumento de inexistência do direito de indenização postulado pela Requerente.

Com relação aos aspectos formais que permeiam a instauração da presente Arbitragem, não se vislumbra qualquer vício que impeça o seu processamento. Atesta-se, por meio da presente, a regularidade, legitimidade e apropriação da Arbitragem em curso.
Primus. Em razão de encontrar embasamento legal nos arts. 159 e 246 da LSA e autorização por determinação assemblear.
Secundus. Por estar em atendidos os pressupostos processuais da arbitragem, com adequação do Requerimento de Instauração de Arbitragem, que fora devidamente instruído com as informações e documentos necessários ao processamento do presente, além das razões fáticas e jurídicas nas quais a Requerente embasa a pretensão material objetivada. Ouvidos os Requeridos e, após a indicação, concordância e aceitação dos encargos de árbitros, o Tribunal Arbitral foi regularmente constituído. Em 11.06.2021, foi lavrado o competente Termo de Arbitragem, com a anuência das Partes e sem quaisquer vícios que o invalidem. Logo, a presente Arbitragem encontra-se processada com pleno atendimento às exigências da Lei n. 9.307/96eda LSA.
[...]
Por todos estes motivos, à luz da legislação, bem como da determinação assemblear de 30.10.2020 e dos arts. 159 e 246 da LSA, este Tribunal defere os pedidos da Requerente constantes dos itens "i" e "ii" das Alegações Iniciais, para reconhecer a adequação e regularidade da presente Arbitragem.

### C.2) Da formação de coisa julgada e vinculação dos acionistas da Companhia
O pedido da Requerente deve ser atendido, pelo efeito de coisa julgada do que dispõe a decisão arbitral. É de se entender que quando o estatuto da Companhia não exigir quórum qualificado de maioria (nas hipóteses previstas no art. 136, Lei nº 6.404/1976), deve-se admitir que a cláusula compromissória terá eficácia vinculante contra todos os acionistas, majoritários ou minoritários.

*Superior Tribunal de Justiça*

> **Por conseguinte, esta Arbitragem será o procedimento apropriado para demarcar o âmbito material da responsabilidade, para a tutela do patrimônio da entidade. E, quanto ao aspecto subjetivo, no campo societário, todos os acionistas deverão ser alcançados pelos efeitos da decisão.**
> Deveras, como já decidiu o STJ, em diversas oportunidades, a sentença proferida na arbitragem terá efeitos de coisa julgada, como ficou assentado quando se admitiu a constitucionalidade da Lei de Arbitragem, pelo STF(Agravo Regimental em Sentença Estrangeira 5.206-7, de 2001).
> **Apresente Arbitragem funda-se na deliberação da AGE realizada em 30.10.2020, processada com fulcro nos arts. 159 e 246 da LSA, além da autorização do art. 49 do Estatuto Social da Companhia. Ao mais, é a Requerente a titular do direito postulado e, com isso, legitimada para o ajuizamento da arbitragem. Logo, as decisões proferidas no curso da presente Arbitragem, sobretudo a sentença arbitral a ser prolatada pelo Tribunal Arbitral, terão efeito de coisa julgada, mormente quanto à pretensão de indenizar da Requerente, e vinculam a Companhia, seus acionistas, ex-administradores e a sociedade controladora, devendo ser respeitada quanto aos seus limites subjetivos e objetivos.**
> [...]
> **Por todo o exposto, justifica-se o deferimento do pedido da Requerente formulado no item "iii" das Alegações Iniciais, a fim de reconhecer que as decisões proferidas na presente Arbitragem constituem coisa julgada para as suas Partes, bem como para todos os acionistas da Companhia, nos termos da deliberação assemblear de 30.10.2020 e do art.49 do Estatuto Social.**

A colidência entre as deliberações é manifesta.

Efetivamente, verifica-se, de seu teor, que **o Tribunal Arbitral do Procedimento Arbitral CAM 186-21, de modo expresso, reconheceu a prevalência dos efeitos da coisa julgada da sentença arbitral que vier a ser ali proferida** a respeito da responsabilidade civil dos controladores, administradores e ex-administradores, com esteio nos art. 159 e 246 da Lei n. 6.404/1976 pelos danos advindos dos ilícitos indicados nos acordos de delação premiada e de leniência estabelecidos com o Ministério Público Federal, **sobrepondo-se, inclusive, ao que vier a ser decidido, caso não venham a ser extintos, nos Procedimentos Arbitrais ns. 93-110, os quais, indiscutivelmente, cuidam da responsabilização pelos mesmos fatos (ilícitos confessados em tais acordos).**

Reconheceu o Tribunal Arbitral do Procedimento Arbitral CAM 186-21,

*Superior Tribunal de Justiça*

inclusive, o esvaziamento da legitimidade extraordinária exercida pelos acionistas minoritários pelo ajuizamento da ação pelo própria companhia, sobretudo porque não houve inércia da legitimada ordinária e porque seria indispensável a autorização assemblear, pressuposto não observado pelos acionistas minoritários.

Por sua vez, o Tribunal arbitral dos Procedimentos arbitrais CAM 93-110, **contrariamente**, decidiu que o feito ali em tramitação não deixaria de subsistir pelo ajuizamento posterior da ação de responsabilidade pela companhia, produzindo efeitos da coisa julgada às partes, inclusive à "J." S.A., substituída processual. Compreendeu que a ação de responsabilidade dos controladores, com esteio no art. 246 da Lei n. 6.404/1976, promovida pelos acionistas minoritários, não pressupõe autorização assemblear, tampouco a constatação de inércia por parte da companhia, que é a titular do direito.

Do cotejo das decisões proferidas pelos Tribunais arbitrais suscitados é de reconhecer, inequivocamente, a prolação de deliberações diametralmente opostas e inconciliáveis entre si, a caracterizar conflito de competência, a ser dirimido, como visto, no tópico antecedente, por esta Corte de Justiça.

**3. Mérito. Deslinde do conflito de competência posto. Exame do tratamento ofertado pela Lei 6.404/1976 quanto à legitimidade para ação social de responsabilidade do administrador e do controlador, com atenção às particularidades próprias da arbitragem. Necessidade.**

A questão controvertida no presente conflito de competência apresenta-se absolutamente complexa, não se podendo valer, simplesmente, por exemplo, das regras de litispendência, conexão ou continência estabelecidas no Código de Processo Civil, sobretudo porque o árbitro não se encontra, necessariamente, adstrito ao procedimento estabelecido na Lei adjetiva civil, inexistindo regramento legal algum que determine, genericamente, sua aplicação, nem sequer subsidiária, à arbitragem. Aliás, a Lei de Arbitragem, nos específicos casos em que preceitua a aplicação do diploma processual, assim o faz de maneira expressa.

O procedimento arbitral é, pois, regido, nessa ordem, **pelas convenções estabelecidas entre as partes litigantes – o que se dá tanto por ocasião do compromisso arbitral ou da assinatura do termo de arbitragem, como no curso do processo arbitral –**, pelo regulamento do Tribunal arbitral eleito e pelas determinações

*Superior Tribunal de Justiça*

exaradas pelo árbitro.

Não bastasse tal constatação, não se pode olvidar, principalmente, que, as regras de conexão ou de continência estabelecidas no Código de Processo Civil afiguram-se inaplicáveis à hipótese dos autos, por representar a própria frustração de preceito basilar da arbitragem, **segundo a qual a escolha do painel de árbitros é feito pelas partes litigantes.**

Pode-se antever, de modo muito claro, que a reunião entre os feitos — cogitada pelo *Parquet* Federal e refutada, porém, por ambas as partes litigantes, que postulam, cada qual, sob fundamentação diversa, a extinção de um dos procedimentos em comento — ensejaria a descabida imposição de submeter uma das partes ao julgamento de um Tribunal arbitral cuja composição não foi por ela escolhido, em clara afronta aos arts. 13 e 19 da Lei n. 9.307/1996.

Como anotado, é fato indiscutível que os procedimentos arbitrais em exame, sejam aqueles promovidos pelos acionistas minoritários, em legitimação extraordinária (na defesa dos interesses da "J." S.A.), seja aquele intentado pela Companhia "J." S.A., em legitimação ordinária, têm por propósito apurar a responsabilidade civil dos controladores, com base no art. 246 da LSA, pelos danos advindos dos ilícitos indicados nos acordos de delação premiada e de leniência estabelecidos com o Ministério Público Federal.

É fato incontroverso também que o procedimento intentado pela Companhia mostra-se mais amplo, no que alude à responsabilidade civil dos administradores e ex-administradores, com base no art. 159 da LSA, pelos mesmos fatos ali indicados.

**Especificamente sobre a responsabilidade civil dos controladores, com base no art. 246 da Lei n. 6.404/1976 — no que reside a controvérsia propriamente quanto à extensão dos feitos —,** os interessados J. A. V. J. e S. I F. de I. de A . – I. no E. ("SPS I") aduzem que seus procedimentos arbitrais (CAM 93-110) seriam mais amplos do que Procedimento arbitral n. 186/21, posteriormente promovido pela "J." S.A., na medida em que este não cuidaria da incorporação da Bertin S.A, um dos fatos contidos nos acordos de delação premiada.

Esta assertiva, contudo, não encontra respaldo nos autos, pois, de acordo com as alegações iniciais apresentadas pela "J." S.A. no Procedimento n. 186/21, embora não identificado, num primeiro momento, prejuízos daí advindos, a companhia

*Superior Tribunal de Justiça*

expressamente fez constar que **os fatos relativos à incorporação da Bertin S.A. constam dos Acordos de Colaboração e seus Anexos, razão pela qual "J." S.A. se reserva no direito de, ao longo da instrução processual, e, principalmente, por ocasião da especificação de provas, detalhar pedido de indenização na hipótese de serem constatados eventuais danos à "J." S.A.**.

Pela relevância, transcreve-se o seguinte excerto das alegações iniciais apresentadas pela "J." S.A. no Procedimento n. 186/21 (e-STJ, fls. 2.211-2.212):

> FATO 50 - CONSTITUIÇÃO BLESSED – AQUISIÇÃO DA BERTIN - AC 31 - JB
> **Com relação à incorporação da Bertin S. A. ("Bertin"), a Requerente não apurou até o momento nenhum dano, tendo verificado que jamais celebrou qualquer instrumento particular com os controladores da referida empresa, mas tão somente com a Bertin S. A., quando da incorporação das ações.**
> Isto porque, toda a legislação e regulamentação aplicável ao caso foi observada e todas as aprovações corporativas, do mercado e de órgãos reguladores foram obtidas. Esclarecendo, a operação foi realizada em 2 etapas:
> (i) Em 29.12.2009 foi aprovada em assembleia a incorporação da integralidade das ações de emissão da Bertin ao patrimônio da Companhia, com consequente aumento do capital social da "J." S.A. e a conversão da Bertin em subsidiária integral. Em atendimento ao disposto no artigo 226 e no § 1º do artigo 252, ambos da Lei das S. A., empresa especializada (Apsis) avaliou as ações de emissão da Bertin, a serem incorporadas ao patrimônio da "J." S.A., pelo critério de valor econômico. A Lei das S. A. permite utilização de diferentes metodologias de cálculo para apuração do valor dos ativos na realização de operações societárias.
> (ii) Nos termos do respectivo laudo de avaliação, elaborado pela metodologia do fluxo de caixa líquido projetado para 10 anos, o valor econômico das ações de emissão da Bertin era de R$ 13.562.329.000,00 o que suportava (com folga) o aumento de capital realizado de aproximadamente R$ 11,681 bilhões.
> Em 31.12.2009, foi deliberada e aprovada a incorporação da Bertin pela Companhia, e de todo o seu patrimônio, avaliado pelo seu valor contábil, com a consequente extinção da entidade. Tendo em vista que, na data de incorporação a Bertin já era subsidiária integral da "J." S.A. , não foi realizado aumento de capital. Passados mais de 10 anos da realização da operação, a "J." S.A. jamais tomou conhecimento de avaliação paralela, realizada pelas mesmas metodologias aplicadas pela Apsis à época e que pusessem em dúvida a credibilidade dos números utilizados nas incorporações.
> **Todavia, e por excesso de cautela, uma vez que os fatos narrados constam dos Acordos de Colaboração e seus Anexos, a Requerente se reserva no direito de, ao longo da instrução processual, e, principalmente, por ocasião da especificação de provas, detalhar pedido de indenização na hipótese de serem**

*Superior Tribunal de Justiça*

**constatados eventuais danos à "J." S.A..**

Resta evidenciado, portanto, que o fato atinente à incorporação da Bertin S.A, mencionado nos ilícitos confessados pelos controladores por ocasião do acordo de delação premiada e de leniência com o MPF, é também objeto de apuração e de eventual responsabilização civil no procedimento arbitral requerido pela companhia. Salienta-se, uma vez mais, não ser apropriado valer-se dos requisitos formais estabelecidos no Código de Processo Civil para uma petição inicial (com capitulação própria dos pedidos), aplicando-os às alegações iniciais apresentadas no âmbito da arbitragem, na qual não se exigem tais formalidades.

O argumento expendido pelos interessados, portanto, não se mostra idôneo para subsidiar a tese de que os Procedimentos arbitrais n. 93-110, quanto à responsabilização dos controladores com base no art. 246 da LSA, seria mais amplo e, em sendo anterior, deveria prevalecer sobre o Procedimento n. 186/21.

Diversamente, sobressai demonstrada a identidade de causa dos procedimentos arbitrais em exame, **no tocante à responsabilização dos controladores**, sobretudo em se considerando que eles têm em comum o propósito de defender os mesmos interesses e direitos da companhia, sendo os primeiros (CAM 93-110) promovidos em legitimação extraordinária; e o segundo (CAM 186/21), em legitimação ordinária.

No mais, é certo que o Procedimento CAM 186/21 mostra-se mais amplo que os Procedimentos arbitrais CAM 93-110, na medida em que fundado, como visto, também no art. 159 da Lei 6.404/1976, objetivando-se, pelos mesmos fatos, a responsabilização, não só dos controladores, mas também dos administradores e ex-administradores (F. de A. e S. e F. C. de O.).

Em se tratando, pois, de ações que **(no ponto em comum)** buscam a responsabilidade civil dos controladores, com base no art. 246 da Lei n. 6.404/1976, em razão dos mesmos e específicos fatos ilícitos (indicados e confessados nos acordos de delação premiada e de leniência estabelecidos com o Ministério Público Federal), apresenta-se de todo descabido supor que dois ou mais órgãos jurisdicionais diversos poderiam ter competências simultâneas para delas conhecer e julgar, a ensejar, como se dá na hipótese dos autos, a prolação de deliberações excludentes entre si.

*Superior Tribunal de Justiça*

Este impasse, no âmbito da jurisdição estatal, não teria maiores repercussões, já que o juízo competente seria o mesmo em qualquer circunstância. Caso a legitimidade extraordinária fosse exercida adequadamente (**o que, conforme se demonstrará, não se deu na hipótese dos autos**), o substituído processual atuaria, caso assim pretendesse, como assistente litisconsorcial, submetendo-se ao juízo pré-determinado pelas regras legais e constitucionais de competência.

Esta lógica, contudo, não se aplica à arbitragem.

Consubstancia preceito basilar da arbitragem a prerrogativa das partes litigantes de escolher os árbitros que julgarão seu conflito de interesses, como manifestação da autonomia privada e da confiança das partes contratantes. **Na arbitragem, é o Tribunal arbitral, cuja composição foi livremente escolhida pelas partes, que se conecta à causa posta em julgamento.**

A eficácia subjetiva da vindoura sentença arbitral legitima-se justamente na confiança depositada pelas partes, não apenas na Câmara de arbitragem eleita para dirimir seu litígio, mas, principalmente, nos específicos e determinados árbitros escolhidos em comum acordo para o julgamento da causa posta.

Desse modo, como já antecipado, mostra-se inviável, no âmbito da arbitragem, promover simplesmente a reunião entre os feitos, impondo-se, indevidamente, a uma das partes o julgamento por um Tribunal arbitral, cuja composição não foi por ela eleita, tampouco consentida.

O deslinde da questão posta – objeto, inclusive, das deliberações contrárias entre si, expendidas pelos Tribunais arbitrais suscitados – perpassa pelo detido exame do tratamento ofertado pela Lei n. 6.404/1976 (microssistema regente da matéria posta), no tocante à legitimidade ordinária da companhia e à legitimidade extraordinária dos acionistas minoritários para promoverem ação de responsabilidade dos controladores, **em cotejo com o substrato fático dos presentes autos.**

A esse propósito, registra-se, também, que a matéria afeta à legitimidade, **tal como concebida pela Lei n. 6.404/1976**, ao ser transportada à arbitragem – de modo algum cogitada pelo legislador à época de sua edição –, deve ser analisada com maior cautela, adaptando-se às suas particularidades, no que reside, entre outras, a

*Superior Tribunal de Justiça*

indispensável necessidade de as partes, sobre as quais recairão os efeitos da coisa julgada arbitral, elegerem ou aquiescerem com a escolha dos árbitros.

Na hipótese em exame, tem-se, de um lado, procedimentos arbitrais promovidos por acionistas minoritários – cuja condição de sócio foi adquirida somente após os próprios fatos que deram origem à pretensão reparatória da companhia –, em legitimação extraordinária, **a despeito das providências anteriormente levadas a efeito pela titular do direito, que é a companhia, em especial a convocação de assembleia geral, com eficiente neutralização dos riscos de interferência dos controladores, destinadas justamente a deliberar sobre a responsabilização**, não só dos controladores, como também dos ex- administradores e administradores.

Consigna-se, inclusive, que, **por deliberação assemblear (sem a participação dos controladores)**, a companhia, titular do direito em discussão e, portanto, sobre quem recairá os efeitos da coisa julgada, não assentiu com a arbitragem em andamento, tampouco com os árbitros ali escolhidos.

De outro vértice, apresenta-se o procedimento arbitral instaurado pela própria companhia, em legitimação ordinária, promovido **tempestivamente (dentro dos três meses da deliberação assemblear) e nos exatos termos em que se deu a deliberação, sem a participação dos controladores,** com escolha, em comum acordo com a parte adversa, dos árbitros integrantes do painel arbitral.

**Pois bem. Em regra, a ação de reparação de danos causados ao patrimônio social por atos dos administradores, assim como dos controladores, deverá ser proposta, em princípio, pela companhia diretamente lesada, que é, naturalmente, a titular do direito material em questão.**

Efetivamente, a chamada ação social de responsabilidade civil dos administradores e/ou dos controladores, deve ser promovida, **prioritariamente**, pela própria companhia lesada (ação social *ut universi*). **Em caso de inércia da companhia** (a ser bem especificada em cada caso), a lei confere, **subsidiariamente**, aos acionistas, na forma da lei, legitimidade extraordinária para promover a ação em comento (ação social *ut singuli*).

A Lei n. 6.404/1976 tratou de forma pormenorizada a respeito da

*Superior Tribunal de Justiça*

responsabilização dos administradores, em seu art. 159, o qual, de acordo com autorizada doutrina e com esteio em julgados desta Corte de Justiça, **comporta aplicação extensiva à responsabilização dos controladores (prevista no art. 246),** ainda que se possa estabelecer algum temperamento, considerada as suas particularidades e finalidades.

Registra-se, desde já, que a inércia da companhia constitui, a toda evidência, o substrato da atuação dos acionistas minoritários em legitimação extraordinária.

Ao tratar da ação social de responsabilidade civil dos administradores, o art. 159 da Lei preceituou competir à companhia, **mediante prévia deliberação assemblear**, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio. O § 3º do art. 159 autoriza **qualquer acionista** a promover a ação, se, **após a autorização da AGE**, a medida judicial não for proposta no prazo de 3 (três) meses contados da deliberação assemblear.  Por sua vez, o § 4º do art. 159 dispõe que, ainda que a assembleia-geral delibere pela não propositura da ação, a ação poderá ser manejada por acionistas que representem 5% (cinco por cento), pelo menos, do capital social.

É o que se extrai do dispositivo legal em comento:

> **Art. 159. Compete à companhia, mediante prévia deliberação da assembléia-geral, a ação de responsabilidade civil contra o administrador, pelos prejuízos causados ao seu patrimônio.**
> § 1º A deliberação poderá ser tomada em assembléia-geral ordinária e, se prevista na ordem do dia, ou for conseqüência direta de assunto nela incluído, em assembléia-geral extraordinária.
> § 2º O administrador ou administradores contra os quais deva ser proposta ação ficarão impedidos e deverão ser substituídos na mesma assembléia.
> **§ 3º Qualquer acionista poderá promover a ação, se não for proposta no prazo de 3 (três) meses da deliberação da assembléia-geral.**
> **§ 4º Se a assembléia deliberar não promover a ação, poderá ela ser proposta por acionistas que representem 5% (cinco por cento), pelo menos, do capital social.**
> § 5° Os resultados da ação promovida por acionista deferem-se à companhia, mas esta deverá indenizá-lo, até o limite daqueles resultados, de todas as despesas em que tiver incorrido, inclusive correção monetária e juros dos dispêndios realizados.
> § 6° O juiz poderá reconhecer a exclusão da responsabilidade do administrador, se convencido de que este agiu de boa-fé e visando ao interesse da companhia.
> § 7º A ação prevista neste artigo não exclui a que couber ao acionista ou terceiro diretamente prejudicado por ato de administrador [*chamada ação individual pelos prejuízos diretos sofridos pelo*

*Superior Tribunal de Justiça*

*acionista, sem qualquer aplicação à hipótese dos autos*]

Como adiantado, **autorizada doutrina reputa aplicável extensivamente o art. 159 à** *ação social de responsabilidade civil dos controladores,* que, de igual modo, objetiva a recomposição do patrimônio social da companhia (titular do direito lesado), considerada a concisão da redação adotada no art. 246 da Lei n. 6.404/1976, o qual se limitou a estabelecer a obrigação da controladora de reparar os danos à companhia — do que ressai inequívoca a legitimidade ordinária da companhia lesada — e a legitimidade (extraordinária, por evidente) dos acionistas que representem 5% do capital social ou de qualquer outro acionista, desde que preste caução pelas custas e honorários em caso de improcedência da ação; e estabelecer a previsão de prêmio de 5% em favor do autor, em caso de procedência.

Com essa compreensão, destaca-se o escólio de Modesto Carvalhosa, ao comentar o art. 159 da Lei n. 6.404/76:

> "O controlador responderá solidariamente com os administradores, se tiver concorrido para a prática dos atos ilícitos (art. 158). **Pode, portanto, o controlador ser sujeito passivo da ação. Essa legitimidade passiva aplica-se tanto a pessoas físicas como jurídicas. Aplica-se notadamente às companhias controladoras, nas hipóteses previstas no art. 245 da lei.**
> Esse litisconsórcio passivo é diverso da responsabilidade direta e pessoal do controlador-administrador, prevista no art. 117 da lei. **Convém enfatizar que cabe ação de responsabilidade contra o controlador, a qual pode ser intentada pela própria companhia, diretamente ou por substituição processual, sem embargo da que cabe diretamente por acionista individual.**
> **Muito embora a norma comentada não se refira ao acionista controlador como sujeito passivo da relação processual, o ar. 117 explicitamente declara que ele responde pelos danos causados, nos casos que especifica. Consequentemente, os procedimentos previstos no artigo ora comentado aplicam-se inteiramente aos controladores, pessoas físicas ou jurídicas, também por atos ilícitos próprios, independentemente daqueles praticados pelos administradores** (Comentários à Lei de Sociedades Anônimas, 3º vol., Saraiva, 2009, p. 396)

Na mesma linha de compreensão, cita-se:

> **Apesar de controladores e administradores exercerem diferentes funções e níveis de poder na condução dos negócios sociais das companhias, têm em comum a circunstância de serem gestores da atividade empresarial. Estão, portanto, sujeitos aos mesmos princípios da ordem econômica constitucional, que oferece os parâmetros para a**

*Superior Tribunal de Justiça*

delimitação dos fins e objetivos da atividade empresarial, bem como para a redefinição do interesse social das companhias. Daí a possibilidade do tratamento conjunto da responsabilidade civil de controladores e administradores, conclusão que é reforçada pelos pressupostos funcionais e pragmáticos já examinados, os quais mostram que o regime de responsabilidade civil dos gestores é arquitetado para assegurar uma boa gestão, em obediência aos interesses constitucional e legalmente protegidos, tanto ao nível do controle, quanto ao nível da administração strictu sensu.

Também no que se refere aos pressupostos legais, já se viu que a disciplina da matéria na Lei das S/A mostra o paralelismo entre a situação dos controladores e administradores, submetendo-los a regras e cláusulas gerais semelhantes. Não se questiona que a Lei das S/A é bem mais pormenorizada em relação aos administradores do que em relação aos controladores, o que decorre até mesmo da maior experiência existente em relação aos primeiros, tendo em vista que a própria figura do controlador só começou a ser objeto de reflexões próprias na metade do século XX. Acresce que o principal conflito (*agency conflict*) existente no direito norte-americano, que até hoje é uma das principais fontes das discussões sobre o assunto, diz respeito às relações entre os acionistas e administradores, de forma que o enfoque na conduta destes últimos é bem maior. Tais distinções não impedem, entretanto, a aproximação entre os regimes de responsabilidade, o que já vem acontecendo na prática brasileira. (Frazão, Ana. Função Social da Empresa - Repercussões Sobre a Responsabilidade civil de Controladores e Administradores de S/A., Renovar, 2011, p. 248/249).

Destaque-se, a esse propósito, que esta Corte de Justiça, em duas ocasiões, adotou, como uma das razões de decidir, a aplicação extensiva dos §§ 3º e 4º do art. 159 para o adequado atendimento da legitimidade do acionista para promover a ação social de responsabilidade do controlador.

Para que fique bem delimitada a matéria decidida naqueles casos, ali discutiu-se a legitimidade do sócio minoritário que, **descrevendo em sua inicial prejuízos ao patrimônio social por atos praticados pelos controladores**, deduziu *ação individual* prevista no § 7º do art. 159 da Lei n. 6.404/1976, postulando a reparação de danos indiretos a si.

Reconheceu-se, como dito, nas palavras do relator originário, Ministro João Otávio de Noronha, após menção à doutrina acima indicada, que: *"não sofrendo prejuízo direto, [o acionista] não tem legitimidade para a ação individual [§ 7º do art. 159]; **não***

*Superior Tribunal de Justiça*

*preenchendo os requisitos dos parágrafos 3º e 4º do art. 159 da Lei n. 6.404/76, [o acionista] não tem legitimidade para a ação social.*

Por oportuno, destacam-se os fundamentos adotados pelo Ministro Raul Araujo (redator para o acórdão) que, acompanhando S. Exa, também acentuou a aplicação extensiva do art. 159 para a ação social de responsabilidade dos controladores, nos seguintes termos:

> **Cumpre assinalar, em primeiro lugar, inexistir discussão quanto à possibilidade de se intentar ação de responsabilidade em face de controlador de companhia, pessoa física ou jurídica, apesar de a Lei das Sociedades Anônimas ser silente a respeito do tema.**
> **Com apoio em abalizada doutrina e mediante interpretação extensiva do art. 159 da Lei 6.404/76, entende-se que a ação de responsabilidade civil contra o administrador, tratada explicitamente no texto legal, também pode ser estendida ao controlador.**
> O mencionado dispositivo legal tem a seguinte redação:
> [...]
> Como se observa na redação da norma, há duas espécies de ação de responsabilidade civil contra o administrador ou o controlador, bem como diferentes legitimados ativos e substitutos processuais.
> A primeira espécie de ação é a chamada ação social, também denominada *"ut universi"* , que tem como legitimada ativa a própria companhia, previamente autorizada pela assembleia geral.
> Passados três meses da assembleia que deliberou pela propositura da ação, caso esta não tenha sido efetivamente ajuizada, passam a ser legitimados extraordinários concorrentes os acionistas, na qualidade de substitutos processuais, para buscar ressarcimento dos danos causados à companhia e à coletividade de acionistas, continuando como titular da pretensão a sociedade. Como se percebe, a ação social tem como finalidade última a recomposição do patrimônio da própria sociedade, restaurando-se a integridade das relações societárias. Nesse caso, o dano experimentado pelo conjunto de acionistas é indireto
> [...]
> Há também uma segunda ação social, esta "ut singuli" , estribada no mesmo fundamento da ação "ut universi" , isto é, o dano causado diretamente ao patrimônio da sociedade, tendo lugar quando a assembleia geral é contrária à proposta de ação contra os administradores ou se recusa a deliberar acerca dessa proposta, cabendo, então, à minoria ajuizar a demanda, como representantes da companhia (art. 159, § 4º, da LSA), desde que reúna, ao menos, 5% do capital social. É mais comum nas sociedades de capital disperso, nas quais inexiste controlador.
> Por fim, há a ação individual prevista no § 7º do art. 159 da Lei 6.404/76, acima transcrito. Esta tem como finalidade reparar o dano experimentado não pela companhia, mas pelo próprio acionista, isto é, o dano direto causado ao titular de ações por ato do administrador ou

*Superior Tribunal de Justiça*

do controlador. Não depende de deliberação da assembleia geral para ser proposta, tendo como legitimado qualquer acionista, ou mesmo terceiro prejudicado por ato daqueles.

**No caso dos autos, o cerne da questão está justamente em definir se a presente ação tem natureza social ou individual, de modo a se verificar a legitimidade do autor para sua propositura, distinção nem sempre fácil, como adverte Modesto Carvalhosa:** "A linha divisória ou distintiva entre o objeto da ação social e o da individual é extremamente tênue." (in: Comentários à Lei de Sociedades Anônimas, 3º volume: artigos 138 a 205. 5ª ed. São Paulo: Saraiva, 2011).

[...]

**Como se vê, o dano experimentado pela sociedade é direto, enquanto o dano sofrido pelo autor é indireto. Essa situação não legitima o acionista a ingressar com ação individual.** O caso seria de ação social. Como ensinava Vivante , citado por Alfredo Lamy Filho e José Luiz Bulhões Pereira , na ação social, o acionista "é lesado apenas mediatamente, através da sociedade que é lesada diretamente" (in: A Lei das S.A., 2ª ed. Rio de Janeiro: Renovar, 1996, p. 409).

[...]

No caso dos autos, como visto, os atos apontados, tidos como abusivos, não foram dirigidos discriminadamente contra o autor ou determinado acionista, mas contra a sociedade, atingindo somente indiretamente os acionistas.

**Nesse contexto, inexistindo dano direto a acionista, o autor não é parte legítima para propositura de ação individual, não preenchendo, também, os requisitos necessários, constantes dos §§ 3º e 4º do art. 159 da Lei das S/A, para o ajuizamento da ação social, o que impõe a extinção do feito.**

**Com essas considerações, pedindo vênia à divergência, acompanho o bem lançado voto do ilustre Relator, dando provimento ao especial.**

O julgado recebeu a seguinte ementa:

RECURSO ESPECIAL. PROCESSUAL CIVIL E EMPRESARIAL. JULGAMENTO ANTECIPADO DA LIDE. CERCEAMENTO DE DEFESA (CPC, ART. 130). NÃO OCORRÊNCIA. SOCIEDADE ANÔNIMA. **AÇÃO DE RESPONSABILIDADE CIVIL CONTRA ADMINISTRADOR (LEI 6.404/76, ART. 159) OU ACIONISTAS CONTROLADORES (APLICAÇÃO ANALÓGICA)**: AÇÃO SOCIAL *UT UNIVERSI* E AÇÃO SOCIAL *UT SINGULI* (LEI 6.404/76, ART. 159, § 4º). DANOS CAUSADOS DIRETAMENTE À SOCIEDADE. AÇÃO INDIVIDUAL (LEI 6.404/76, ART. 159, § 7º). ILEGITIMIDADE ATIVA DE ACIONISTA. RECURSO PROVIDO.
1. O art. 130 do CPC trata de faculdade atribuída ao juiz da causa de poder determinar as provas necessárias à instrução do processo. O julgamento antecipado da lide, no entanto, por entender o magistrado encontrar-se maduro o processo, não configura cerceamento de defesa.
2. Não viola os arts. 459 e 460 do CPC a decisão que condena o réu

*Superior Tribunal de Justiça*

ao pagamento de valor determinado, não obstante constar do pedido inicial a apuração do valor da condenação na execução da sentença.

**3. Aplica-se, por analogia, a norma do art. 159 da Lei n. 6.404/76 (Lei das Sociedades Anônimas) à ação de responsabilidade civil contra os acionistas controladores da companhia por danos decorrentes de abuso de poder.**

**4. Sendo os danos causados diretamente à companhia, são cabíveis as ações sociais ut universi e ut singuli, esta obedecidos os requisitos exigidos pelos §§ 3º e 4º do mencionado dispositivo legal da Lei das S/A.**

5. Por sua vez, a ação individual, prevista no § 7º do art. 159 da Lei 6.404/76, tem como finalidade reparar o dano experimentado não pela companhia, mas pelo próprio acionista ou terceiro prejudicado, isto é, o dano direto causado ao titular de ações societárias ou a terceiro por ato do administrador ou dos controladores. Não depende a ação individual de deliberação da assembleia geral para ser proposta.

6. É parte ilegítima para ajuizar a ação individual o acionista que sofre prejuízos apenas indiretos por atos praticados pelo administrador ou pelos acionistas controladores da sociedade anônima.

7. Recurso especial provido.

(REsp n. 1.214.497/RJ, relator Ministro João Otávio de Noronha, relator para acórdão Ministro Raul Araújo, Quarta Turma, julgado em 23/9/2014, DJe de 6/11/2014.)

No mesma ocasião, com o mesmo desfecho, foi julgado o REsp n. 1.207.956/RJ (Relator Ministro João Otávio de Noronha, relator para acórdão Ministro Raul Araújo, Quarta Turma, julgado em 23/9/2014, DJe de 6/11/2014).

Os interessados argumentam, no ponto, que a ação de responsabilidade do art. 246 da Lei n. 6.404/1976, poderia ser promovida pelos acionistas minoritários, independentemente de autorização assemblear, justamente para evitar que os controladores, com claros interesses em conflito, pudessem interferir na votação e impedir a promoção de medidas destinadas a sua responsabilização.

O fundamento do argumento — possibilidade de conflito de interesses, a interferir na deliberação assemblear —, no caso dos autos, por si, mostra-se absolutamente insubsistente, pois, como visto, o BNDEs (acionista minoritário detentor de mais de 5% do capital social **e com a correspondente representatividade que a lei lhe confere**) já havia exercido o direito de convocar a assembleia geral extraordinária para deliberar sobre as medidas judiciais a serem tomadas contra os administradores e contraladores, valendo-se, inclusive, de medidas judiciais e arbitrais, para obstar a participação dos controladores, o que efetivamente ocorreu.

Não bastasse tal conclusão, suficiente, em si, para rechaçar a alegação,

*Superior Tribunal de Justiça*

deve-se consignar que a ação social do acionista minoritário, ainda que passível de ser exercida individualmente (nas condições estabelecidas na lei), somente poderá se dar após a configuração da omissão da companhia em promover a ação social de responsabilidade do controlador, no exercício de legitimidade extraordinária **subsidiária.**

A deliberação da companhia para promover ação social de responsabilidade do administrador e/ou do controlador dá-se, indiscutivelmente, por meio da realização de assembleia geral. A caracterização da inércia da companhia depende, pois, da deliberação autorizativa e, passados os três meses, a titular do direito lesado não ter promovido a medida judicial/arbitral cabível; ou, mesmo da deliberação negativa, do que, só então, é possível cogitar na abertura da via da ação social *ut singuli.*

Retoricamente, os interessados põem em descrédito, **sobretudo em razão da possível ingerência dos controladores no exercício do seu poder de voto**, a iniciativa da companhia para convocar a assembleia para deliberar sobre a responsabilização destes, e, uma vez convocada, a própria deliberação autorizativa.

Tal preocupação, de fato, mostra-se meramente retórica, pois, no caso, por iniciativa de acionista minoritário detentor de mais de 5% do capital social, cuja representatividade é qualificada pela lei de regência, não apenas provocou a convocação da assembleia geral, como a votação foi favorável à responsabilização dos controladores e dos administradores por meio de ação a ser promovida pela companhia, o que se efetivou no prazo legal.

A despeito da insubsistência do argumento, **a Lei 6.404/1976 não deixa ao alvedrio do poder de controle, como sugerem os interessados, a convocação da assembleia geral, como se tal providência pudesse ficar alheia à iniciativa dos acionistas minoritários.**

Os acionistas minoritários, na forma da lei, têm a sua disposição, entre outras garantias destinadas justamente a fiscalizar a gestão de negócios e o controle exercido,  o direito de promover a convocação da assembleia geral, sobretudo para os casos que guardam manifesta gravidade, como o é o tratado nos presentes autos.

Dispõe, a esse propósito, o art. 123 da LSA, *in verbis:*

> **Art. 123. Compete ao conselho de administração, se houver, ou aos diretores, observado o disposto no estatuto, convocar a**

*Superior Tribunal de Justiça*

**assembléia-geral.**

**Parágrafo único. A assembléia-geral pode também ser convocada:**

a) pelo conselho fiscal, nos casos previstos no número V, do artigo 163

> [Art. 163. Compete ao conselho fiscal:
> V - convocar a assembléia-geral ordinária, se os órgãos da administração retardarem por mais de 1 (um) mês essa convocação, **e a extraordinária, sempre que ocorrerem motivos graves ou urgentes, incluindo na agenda das assembléias as matérias que considerarem necessárias**]

> **b) por qualquer acionista, quando os administradores retardarem, por mais de 60 (sessenta) dias, a convocação nos casos previstos em lei ou no estatuto;**
> **c) por acionistas que representem 5% (cinco por cento), no mínimo, do capital votante, quando os administradores não atenderem, no prazo de 8 (oito) dias, a pedido de convocação que apresentarem, devidamente fundamentado, com indicação das matérias a serem tratadas.**
> **c) por acionistas que representem cinco por cento, no mínimo, do capital social, quando os administradores não atenderem, no prazo de oito dias, a pedido de convocação que apresentarem, devidamente fundamentado, com indicação das matérias a serem tratadas;**
> **d) por acionistas que representem cinco por cento, no mínimo, do capital votante, ou cinco por cento, no mínimo, dos acionistas sem direito a voto, quando os administradores não atenderem, no prazo de oito dias, a pedido de convocação de assembléia para instalação do conselho fiscal.**

É indiscutível, assim, que a lei também põe à disposição dos acionistas minoritários a possibilidade de provocar a convocação de assembleia geral extraordinária para deliberar sobre a responsabilização dos administradores e dos controladores, para que a companhia exerça, prioritariamente — como titular do direito lesado — seu direito de ação (ação social de responsabilidade - *ut universi*).

De suma relevância considerar, ainda, que, em relação ao aventado risco de os controladores interferirem na própria deliberação assemblear **— no caso dos autos, absolutamente neutralizado pelas medidas levadas a efeito pelo acionista minoritário BNDES —** a lei põe à disposição dos acionistas minoritários, na forma ali discriminada, a possibilidade de ajuizar ação social.

Aqui, segundo penso, é preciso fazer uma interpretação consentânea com

*Superior Tribunal de Justiça*

os arts. 159 e 246 da LSA, tal como já se posicionou esta Corte de Justiça no julgado acima referido, com um pequeno ajuste.

Em sendo a deliberação autorizativa, caso a companhia não promova a ação social de responsabilidade de administradores e/ou de controladores nos três meses subsequentes, **qualquer acionista** poderá promover a ação social *ut singili* (*ut* § 3º do art. 159).

Se a assembleia deliberar por não promover a ação social, seja de responsabilidade de administrador, seja de responsabilidade de controlador, acionistas que representem 5% (cinco por cento), pelo menos, do capital social poderão promover a ação social *ut singili,* com fulcro no § 4º do art. 159 e no art. 246 da LSA.

Tem-se, todavia, que, nessa última hipótese, no caso de a assembleia deliberar por não promover ação social, **em se tratando de responsabilidade do controlado**r, seria dado também a qualquer acionista, com base no § 1º, *a,* do art. 246, promover a ação social *ut singili,* desde que preste caução pelas custas e honorários de advogado devidos no caso de vir a ação ser julgada improcedente.

Em todo e qualquer caso, portanto, a ação social de responsabilidade de administrador e/ou de controlador promovida por acionista minoritário (*ut singili*) em legitimação extraordinária, **por ser subsidiária,** depende, necessariamente, da inércia da companhia, titular do direito lesado, que possui legitimidade ordinária e prioritária no ajuizamento de ação social.

O Professor José Carlos Barbosa Moreira, em seu insuperável *apontamentos para um estudo sistemático da legitimação extraordinária,* valendo-se justamente da *ação de responsabilidade social,* então regida pelo Decreto-Lei n. 2.627, de 1940, teceu valiosas e sempre atuais considerações a respeito, *in verbis:*

> De outras vezes, mais numerosas, a legitimação extraordinária não cancela a legitimação ordinária do titular da situação jurídica litigiosa, nem lhe produz o rebaixamento de nível que se explicou no parágrafo anterior. Tão somente concorre com ela, tornando indiferente, para a verificação da regularidade do contraditório, que no processo figure apenas o legitimado extraordinário, apenas o ordinário, ou ambos.
> Dir-se-á, então que a legitimação extraordinária é autônoma e concorrente.
> Vejamos dois exemplos.
> A declaração de nulidade de casamento contraído perante autoridade incompetente pode ser requerida em juízo dentro do prazo de dois

*Superior Tribunal de Justiça*

anos, não só por qualquer dos próprios cônjuges, mas também por outros interessados e pelo Ministério Público, salvo se já houver falecido algum dos cônjuges (Código Civil, art. 208 e parágrafo único). Os outros interessados e o Ministério Público são legitimados extraordinários: não têm a titularidade da situação jurídica deduzida; mas cada um pode agir por si só, e a demanda que qualquer deles ajuizar é idônea.

[...]

**A ação de responsabilidade civil contra os diretores da sociedade por ações, pelos prejuízos causados ao seu patrimônio, compete à própria sociedade, mas, se esta não a propuser dentro de seis meses, a contar da primeira assembleia geral ordinária, qualquer acionista ficará habilitado a promovê-la (Decreto-lei n. 2.627, de 26-9-1940). A legitimação do acionista é igualmente extraordinária, pois titular do crédito, se existe, é apenas a sociedade; pode aquele, no entanto, agir por si, sem que esta figure no processo.**

O confronto entre as duas hipóteses revela, em todo caso, a existência de uma diferença.

Na primeira, qualquer dos legitimados extraordinários tem qualidade para *desde logo* instaurar autonomamente o processo, sem que se lhes imponha esperar, durante certo tempo, pela iniciativa do legitimado ordinário.

Na segunda, ao contrário, **enquanto não esgotado *in albis* o prazo da lei, não se lhes faculta o acesso à via judicial; a rigor, eles somente se legitimam após o termo *ad quem*, se a legitimação ordinária permanecer omissa, e caso, antes disso, algum proponha a demanda, o contraditório não será regular. Se se quiser assinalar terminologicamente a distinção, poderá dizer-se que, ali, a legitimação extraordinária é autônoma e concorrente e primária; aqui, é concorrente e subsidiária** (Moreira, José Carlos Barbosa. *Apontamentos para um Estudo Sistemático da Legitimação Extraordinária. In:* Revista de Direito do Ministério Público do Estado da Guanabara, Rio de Janeiro, n. 09, p. 41-55, set./dez.1969).

Ressai claro que, enquanto não superado o prazo legal para que a companhia promova a ação de responsabilidade social de administradores e de controladores (três meses contados da deliberação autorizativa), os acionistas minoritários ainda não ostentam legitimidade para promover a ação social *ut singili*. A ação promovida antes desse termo, como adverte o insigne processualista, carece de regularidade por fulminar, *in totum,* o contraditório, segundo a relação jurídica posta.

Evidente, portanto, a ilegitimidade de parte, diante da incoincidência entre o suposto titular da relação jurídica de direito material e o suposto titular da relação jurídica de direito processual.

*Superior Tribunal de Justiça*

Na hipótese dos autos, como detalhadamente demonstrado, a companhia, antes mesmo do requerimento de instauração da arbitragem pelos acionistas minoritários, aqui interessados (J. A. V. J. e S. I F. de I de A – I. no E.), já havia publicado edital de convocação para **deliberar justamente sobre as medidas judiciais/arbitrais de responsabilização civil contra os controladores, administradores e ex-administradores, em conjunto, pelos fatos ilícitos reconhecidos nos acordos estabelecidos com o Ministério Público.**

É preciso registrar que tal providência – publicação de edital de convocação para deliberar sobre as medidas de responsabilização – decorreu, **tal como estabelece a lei de regência, da iniciativa levada a efeito pelo BNDES Participações S.A., acionista detentor de participação acionária superior a 5% do capital social da companhia (e-STJ, f. 1.687), com indiscutível representatividade dos interesses dos sócios minoritários.**

A assembleia não se realizou de modo imediato em razão de medida cautelar pré-arbitral e, posteriormente, de instauração de arbitragem, intentadas pelo BNDES Participações S.A e destinadas justamente a preservar a higidez da votação, afastando-se o conflito de interesses que se daria pelo exercício do direito de voto pela controladora J.

A par da atuação do BNDES Participações S.A., com indiscutível representatividade dos interesses dos sócios minoritários, obtendo êxito na convocação de assembleia geral extraordinária para deliberar a respeito das providências a serem tomadas para o fim de responsabilizar os administradores, ex-administradores e controladores da companhia, sem que estes últimos dela participassem, os ora interessados (J. A. V. J. e S. I F. de I. de A. – I. no E.), nesse interregno, adquiriram reduzida participação acionária e, nessa qualidade, promoveram procedimento arbitral, arvorando-se na defesa dos interesses e dos direitos da companhia, em substituição processual.

Veja-se que a própria condição de acionista minoritário dos ora interessados (J. A. V. J. e S. I F. de I. de A. – I. no E.) deu-se, não só em momento posterior aos próprios atos ilícitos confessados nos acordos de Colaboração Premiada com o MPF e outros acordos cuja celebração foi divulgada *em Comunicados ao Mercado e Fatos Relevantes*

*Superior Tribunal de Justiça*

*publicados pela Companhia*, mas, inclusive, quando já publicado o edital, pela companhia, para convocação de assembleia destinada a deliberar sobre as providências legais a serem tomadas pela companhia para promover a responsabilização dos administradores e controladores.

Nesse contexto, guarda verossimilhança a argumentação expendida pela suscitante de que a instauração dos procedimentos arbitrais promovidos pelos ora interessados (J. A. V. J. e S. I F. de I em A – I. no E.), a pretexto de defender os interesses e direitos da companhia, no exercício da legitimidade extraordinária, tem por propósito imediato, na verdade, o recebimento do prêmio estabelecido no art. 246 da Lei das S/As.

Não há, aqui, nenhuma censura quanto ao ajuizamento da ação do art. 246 pelo acionista minoritário com a finalidade, indireta, de recebimento de tal prêmio, até porque é a lei que assim estabelece. Todavia, a promoção dos direitos e interesses da companhia há de ser o móvel imediato da ação social de responsabilidade dos controladores promovida individualmente pelo acionista, **condicionada, como visto, à inércia da companhia, o que, na hipótese dos autos, não se verificou.**

A questão, como demonstrado, reside na impossibilidade de a companhia exercer diretamente seu direito de ação, a despeito de adotar todas as providências necessárias a esse propósito, especialmente no âmbito da arbitragem, em que a escolha dos árbitros é direito fundamental daqueles que se submeterão aos efeitos da coisa julgada que será ali formada.

Sem incorrer em nenhum comportamento que possa caracterizar inércia, é fato incontroverso nos autos, que a Companhia, assim que obteve autorização assemblear (AGE/2020), promoveu, de imediato (dentro dos três meses da deliberação autorizativa) e nos exatos termos ali estabelecidos e em conformidade com Comitê independente *ad hoc* formado, o procedimento arbitral destinado a apurar, pelos mesmos e específicos fatos, a responsabilidade não só dos controladores, como também dos administradores e ex-administradores.

Indiscutível, portanto, que os acionistas minoritários (J. A. V. J. e S. I F. de I em A – I. no E.), ao promoverem os procedimentos arbitrais 93-110 (ação social *ut singili*) antes do exaurimento do prazo legal para que a companhia, titular do direito em questão, promovesse ação social de responsabilidade dos administradores e controladores, não

*Superior Tribunal de Justiça*

ostentavam, para tanto, a indispensável legitimidade.

Não se pode conceber, assim, que a companhia, titular do direito lesado, fique tolhida de prosseguir com ação social de responsabilidade dos administradores e dos controladores, promovida tempestivamente e em conformidade com autorização assemblear (nos moldes prescritos na lei de regência, mediante atuação determinante de acionista detentor de mais de 5% do capital social) **simplesmente porque determinados acionistas minoritários, em antecipação a tal deliberação e, por isso, sem legitimidade para tanto,** precipitaram-se em promover a ação social de responsabilidade de controladores, possivelmente objetivando receber o prêmio de cinco por cento, calculado sobre o valor da indenização, a pretexto de defender os interesses da companhia, em legitimidade extraordinária.

Registra-se, por fim, que a eficácia subjetiva da vindoura sentença arbitral legitima-se justamente na confiança depositada pelas partes, não apenas na Câmara de arbitragem eleita para dirimir seu litígio, mas, principalmente, nos específicos e determinados árbitros escolhidos em comum acordo para o julgamento da causa posta.

Também sob esse aspecto, os procedimentos arbitrais 93-110 não poderiam subsistir, tampouco atrair a reunião dos feitos.

No caso dos autos, a Assembleia Geral Extraordinária deliberou expressamente não ser o caso de ingressar nas arbitragens anteriormente instauradas a requerimento de acionistas minoritários, ora interessados.

Conforme demonstrado, a companhia foi inicialmente indicada como ré em tais procedimentos, o que se mostrou manifestamente inadequado, já que é a titular do direito lesado ali em discussão. A companhia foi integrada na aludida arbitragem na *sui generis* condição de interveniente. Ainda que tenha obtido conhecimento dos atos até então praticados, a companhia não exerceria os direitos próprios de parte, no que se insere, principalmente, a possibilidade de participar da escolha dos árbitros.

Tanto assim que o próprio pedido de extinção do feito, em princípio, não seria conhecido pelo Tribunal Arbitral dos Procedimentos Arbitrais n. 93-110 pelo fato de a companhia não ostentar, segundo o juízo arbitral, a condição de parte. A despeito de tal consideração, o pedido foi efetivamente enfrentado pelo Tribunal arbitral, que deixou consignado a impertinência de a questão ser suscitada pela companhia que ocupa a *sui*

*Superior Tribunal de Justiça*

*generis* posição de interveniente, conforme se verifica do seguinte excerto, mais uma vez reproduzido (e-STJ, fl. 120):

> 102. A maioria do Tribunal examinará os argumentos trazidos pelas Partes e pela Interveniente a seguir. Preliminarmente, entretanto, a maioria do Tribunal entende ser necessário abordar a questão da possibilidade de "J." S.A. apresentar pedido de extinção destes procedimentos. Em que pese nenhuma das Partes haver trazido argumentos acerca de tal questão, a maioria do Tribunal não está convencido da possibilidade de terceiro – que não é parte determinada arbitragem – apresentar pedido de extinção do procedimento arbitral. Nem o Regulamento nem o ordenamento brasileiro parecem autorizar a apresentação de pedido de extinção de procedimento neste contexto. Contudo, a maioria do Tribunal não irá se alongar na análise deste ponto. Ademais, ainda que "J." S.A. pudesse, em sua assumida posição de Interveniente, apresentar tal pedido, ele seria igualmente rejeitado pelas razões enunciadas a seguir.

Tampouco a condição de assistente litisconsorcial, nos procedimentos arbitrais intentados pelos acionistas minoritários, ora interessados, rejeitada pela companhia (de acordo com a deliberação assemblear, ressalta-se), daria-lhe a possibilidade de participar da escolha da arbitragem, o que se mostra, como assentado, basilar e inerente a toda e qualquer arbitragem.

Como obtempera, com maestria, o Professor José Barbosa Moreira: *em princípio, a posição que compete a alguém no processo não deve depender do momento em que começa a participação dele, mas das relações entre a situação subjetiva e a situação jurídica objeto do juízo"* (*op. cit.*, p.47).

Por tudo que se expôs, tem-se que o Procedimento arbitral CAM 186/21, além de atender a preceito basilar da arbitragem (autonomia da vontade e da confiança, em toda a sua extensão), foi manejado, tempestivamente e de acordo com a autorização assemblear, pela companhia titular do direito lesado em discussão, em legitimidade ordinária, devendo, pois, prevalecer sobre os Procedimentos Arbitrais CAM 93-110, intentados por parte ilegítima, nos termos da presente fundamentação, **os quais deverão ser extintos.**

### 4. Conclusão

Em conclusão, caracterizado o conflito entre os Tribunais arbitrais suscitados, declaro a competência do Tribunal arbitral do Procedimento arbitral CAM

*Superior Tribunal de Justiça*

186/21 para conhecer e julgar a ação social de responsabilidade dos administradores, ex-administradores e controladores, a ensejar, por consequência, a extinção dos Procedimentos Procedimentos Arbitrais CAM 93-110.

Prejudicado o agravo interno interposto contra a decisão liminar.

É o voto.

*Superior Tribunal de Justiça*

**CONFLITO DE COMPETÊNCIA Nº 185.702 - DF (2022/0023291-6)**

**QUESTÃO DE ORDEM**

**O SENHOR MINISTRO MARCO AURÉLIO BELLIZZE:**

Em questão de Ordem, reputo conveniente analisar, em conjunto com o Colegiado da Segunda Seção, o pedido de ingresso e de habilitação, na qualidade de *amicus curiae*, da Associação de Investidores no Mercado de Capitais - AMEC -, que, para tanto, aduz (e-STJ, fls. 4.665-4.702):

> **1.** A AMEC é uma associação sem fins econômicos que congrega em seus quadros, gestores de recursos nacionais e estrangeiros, que possuem patrimônio sob gestão de aproximadamente R$ 500 bilhões em ações de empresas brasileiras.
> **2.** A atuação da AMEC, nos termos do artigo 3º do seu estatuto social, compreende, dentre outras iniciativas, a de "...estimular as boas práticas de governança corporativa, de defender os direitos e interesses de investidores no mercado brasileiro de capitais, em especial de investidores detentores de ações não integrantes do bloco de controle de companhias abertas...", consoante se vê do artigo abaixo transcrito:
> [...]
> **9.** A relevância da matéria é inequívoca: trata-se aqui de conflito de competência em que se pretende definir o juízo competente para processar e julgar demanda proposta com fundamento no artigo 246 da Lei n° 6.404/1976 (LSA), portanto, matéria com repercussão direta e imediata sobre o funcionamento de todo o mercado de capitais nacional, e, sobretudo, para o exercício de direitos sociais por acionistas minoritários de companhias abertas.
> **10.** A decisão do presente recurso tem potencial para exercer fundamental influência sobre tais questões, afetas ao mercado de capitais como um todo, na medida em que definirá, em essência, se a demanda proposta pela companhia prevalece com relação àquela proposta por acionista minoritário, ambas com base no artigo 246 da LSA.
> **11.** Tal decisão, evidentemente, constituirá importantíssimo precedente, porque o entendimento a ser firmado nestes autos poderá se estender a todas as demais sociedades listadas em bolsa.
> **12.** Da mesma forma, a especificidade do objeto da demanda também é evidente, por se tratar de tema técnico e específico do setor de mercado de capitais, envolvendo especificamente ação que visa a recomposição dos danos causados às companhias abertas por seus acionistas controladores. A repercussão social da controvérsia é igualmente manifesta, na medida em que a decisão a ser aqui proferida, especialmente por se tratar desse Eg. Superior Tribunal de Justiça, pode impactar nos direitos de sócio de milhares de acionistas minoritários de outras sociedades anônimas.

*Superior Tribunal de Justiça*

**13.** A categoria de investidores minoritários representada pela AMEC possui, portanto, inegável interesse na questão objeto do presente Conflito de Competência.

Brevemente relatado, decido.

O presente pedido de ingresso, como relatado, é feito por entidade nacional, representativa de investidores no mercado brasileiro de capitais, em especial de investidores detentores de ações não integrantes do bloco de controle de companhias abertas, sob o argumento de se tratar de questão que repercute direta e imediatamente sobre o funcionamento de todo o mercado de capitais nacional, e, sobretudo, sobre o exercício de direitos sociais por acionistas minoritários de companhias abertas.

A pretensão, todavia, não possui respaldo jurídico.

Isso porque a discussão jurídica posta no presente incidente destina-se a definir o juízo arbitral competente para processar e julgar ação social de responsabilidade contra os controladores, controvertendo-se se deve prevalecer o procedimento arbitral intentado pela própria companhia, titular do direito lesado, ou por determinados acionistas minoritários, em legitimidade extraordinária.

A discussão em tela, segundo penso, não se relaciona, ao menos diretamente, aos legítimos propósitos perseguidos pela associação requerente.

É que a definição do juízo arbitral competente não repercute, segundo penso, nos direitos ou interesses de acionistas minoritários, compreendidos como uma categoria específica, cujos interesses a requerente representa, mas, sim, nos direitos de específicos e determinados acionistas da companhia suscitante (dois especificamente).

Afinal, conforme se demonstrará no julgamento de mérito do presente conflito de competência, a atuação da companhia, no bojo do procedimento arbitral (CAM 186/21 e no exercício de sua legitimidade ordinária, **foi impulsionado justamente pela atuação de acionista minoritário (com a representatividade que a lei lhe confere)**. Nos Procedimentos arbitrais (CAM 93-1110), determinados e específicos acionistas minoritários, defendem sua legitimidade extraordinária para tutelar os mesmos direitos da companhia.

Assim, independentemente do desfecho do presente conflito, portanto, os

*Superior Tribunal de Justiça*

interesses dos acionistas minoritários (se tomados como uma categoria específica) são protegidos pelo exercício da ação social de responsabilidade, seja aquela promovida pela companhia, seja aquela promovida (*ut singili*) por determinados acionistas minoritários, o que, portanto, não autoriza o ingresso da requerente no feito, como *amicus curiae*.

Veja-se, inclusive, que entendimento contrário ensejaria, pela mesma razão, a admissão de inúmeras outras associoções representantivas de tantos outros agentes que atuam no mercado de capitais no Brasil, o que, além de juridicamente impróprio, teria o condão, apenas, de gerar tumulto processual.

Nesse sentido, destaco:

> PROCESSUAL CIVIL. RECURSO ESPECIAL. AGRAVO INTERNO DOS ESCRITÓRIOS DE ADVOCACIA. NÃO CONHECIMENTO. JULGADO RECORRIDO. OMISSÃO. INEXISTÊNCIA. RESCISÓRIA. VIOLAÇÃO DO ART. 485 DO CPC/1973. EXAME LIMITADO. PRAZO DECADENCIAL. SÚMULA 401 DO STJ. APLICAÇÃO. VERBA HONORÁRIA. ART. 20, §§ 3º E 4º, DO CPC/1973. OFENSA.
> [...]
> 10. Indeferimento do pleito formulado pela Associação Nacional dos Funcionários do Banco do Brasil para ser admitida como amicus curiae, considerando que a ABRAPP já representa todas as entidades fechadas de previdência complementar, sendo, portanto, desnecessário tal ingresso, de modo a evitar tumulto processual.
>
> 11. Agravo interno de FIGUEIREDO E SILVA ADVOGADOS ASSOCIADOS e OUTROS não conhecido. Agravos internos da ABRAPP e da UNIÃO desprovidos. (AgInt no REsp 1541310/RJ, Rel. Ministro GURGEL DE FARIA, PRIMEIRA TURMA, julgado em 22/03/2018, DJe 25/04/2018)

Saliente-se, ainda, que a Segunda Seção do STJ, em Questão de Ordem no REsp 1023053/RS (Relatora Ministra Maria Isabel Gallotti, julgado em 23/11/2011, DJe 16/12/2011), perfilhou o posicionamento de que "a participação do *amicus curiae* é prevista no ordenamento jurídico para os processos e julgamentos de ações de natureza objetiva, admitindo-se essa espécie de intervenção, excepcionalmente, no processo subjetivo quando a multiplicidade de demandas similares demonstra a generalização da decisão a ser proferida", o que, conforme assentado, não se identifica, na hipótese, sob o prisma apresentado pela ora requerente.

Nesse contexto, a pretensão de intervenção em análise não encontra respaldo no art. 138 do CPC/2015, *in verbis*:

*Superior Tribunal de Justiça*

Art. 138. O juiz ou o relator, considerando a relevância da matéria, a especificidade do tema objeto da demanda ou a repercussão social da controvérsia, poderá, por decisão irrecorrível, de ofício ou a requerimento das partes ou de quem pretenda manifestar-se, solicitar ou admitir a participação de pessoa natural ou jurídica, órgão ou entidade especializada, com representatividade adequada, no prazo de 15 (quinze) dias de sua intimação.

§ 1º A intervenção de que trata o caput não implica alteração de competência nem autoriza a interposição de recursos, ressalvadas a oposição de embargos de declaração e a hipótese do § 3º.

§ 2º Caberá ao juiz ou ao relator, na decisão que solicitar ou admitir a intervenção, definir os poderes do *amicus curiae*.

§ 3º O amicus curiae pode recorrer da decisão que julgar o incidente de resolução de demandas repetitivas.

Em arremate, propõe-se o indeferimento do pedido de intervenção da Associação de Investidores no Mercado de Capitais - AMEC - como *amicus curiae* no feito.

*Superior Tribunal de Justiça*

**CONFLITO DE COMPETÊNCIA Nº 185.702 - DF (2022/0023291-6)**

| | | |
|---|---|---|
| RELATOR | : | MINISTRO MARCO AURÉLIO BELLIZZE |
| SUSCITANTE | : | J S |
| ADVOGADOS | : | CLÁUDIO BONATO FRUET  - DF006624 |
| | | CARLOS EDUARDO CAPUTO BASTOS  - DF002462 |
| | | HEITOR VITOR MENDONÇA FRALINO SICA  - SP182193 |
| | | AQUILES TADEU GUATEMOZIM  - SP121377 |
| | | RICARDO MESQUITA DE ABECI  - DF012709 |
| | | CELSO CALDAS MARTINS XAVIER  - SP172708 |
| | | ALEXANDRE MULLER BUARQUE VIVEIROS  - DF024080 |
| | | ANA CAROLINA ANDRADA ARRAIS CAPUTO BASTOS  - DF026891 |
| ADVOGADOS | : | JOANA D'ARC AMARAL BORTONE  - DF032535 |
| | | DANIEL KAUFMAN SCHAFFER  - SP310827 |
| | | JULIANA MASCARENHAS DE ARAÚJO  - SP392020 |
| | | JULIA TEIXEIRA RODRIGUES  - SP391079 |
| | | HENRIQUE ROMANÓ ROCHA  - DF062952 |
| | | ANGELA CIGNACHI BAETA NEVES E OUTRO(S) - DF018730 |
| SUSCITADO | : | CÂMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL DO PROCEDIMENTO ARBITAL CAM 186/21 |
| SUSCITADO | : | CAMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL NOS PROCEDIMENTOS CAM 93/17 E 110/18 |
| INTERES. | : | B S - B B B |
| INTERES. | : | J A V DE S J E OUTRO |
| INTERES. | : | S I F DE I DE A - I N E |
| ADVOGADOS | : | ANNA MARIA DA TRINDADE DOS REIS  - DF006811 |
| | | MÔNICA GOES DE ANDRADE MENDES DE ALMEIDA  - RJ064037 |
| | | FABIANO DE CASTRO ROBALINHO CAVALCANTI  - RJ095237 |
| | | CAETANO FALCÃO DE BERENGUER CESAR  - RJ135124 |
| | | FERNANDO PESSOA NOVIS E OUTRO(S) - RJ172155 |
| | | CAIO HUMBERTO PÁSSARO DE LAET  - DF056081 |
| INTERES. | : | J M B E OUTRO |
| ADVOGADOS | : | GUSTAVO JOSÉ MENDES TEPEDINO  - RJ041245 |
| | | MILENA DONATO OLIVA  - RJ137546 |
| | | RENAN SOARES CORTAZIO  - RJ220226 |
| INTERES. | : | F C DE O E OUTRO |
| ADVOGADOS | : | MÁRCIO VIEIRA SOUTO COSTA FERREIRA  - RJ059384 |
| | | FERNANDO PESSOA NOVIS  - RJ172155 |
| | | GERSON ANTÔNIO FERNANDES  - PA004824 |
| INTERES. | : | J I S |

## DECLARAÇÃO DE VOTO

**A SENHORA MINISTRA NANCY ANDRIGHI:**

*Superior Tribunal de Justiça*

1. Excelentíssimo senhor Presidente, cuida-se de conflito positivo de competência suscitado por J. F. I. S.A., no qual se aponta como suscitados o Tribunal Arbitral do Procedimento Arbitral n. 186/2021 e o Tribunal Arbitral dos Procedimentos Arbitrais ns. 93/2017 e 110/2018, ambos em trâmite perante a Câmara de Arbitragem do Mercado (CAM).

2. A par do judicioso e minudente voto do e. Relator, Min. Marco Aurélio Bellizze, ao qual adiro na íntegra, penso ser oportuno, com os olhos voltados ao futuro, tecer algumas considerações acerca da própria competência do Superior Tribunal de Justiça para apreciar o presente conflito de competência entre dois juízos arbitrais.

3. A competência, como é de conhecimento ordinário, é pressuposto processual de desenvolvimento válido do processo e, como tal, seu exame deve, em regra, preceder ao das condições da ação, entre elas a legitimidade. Nesse sentido, por todos: THEODORO JUNIOR, Humberto. *Curso de Direito Processual Civil*. v. 1. 63. ed. Rio de Janeiro: Forense, 2022.

4. Nesse contexto, não se olvida que desde o julgamento do CC 111.230/DF, de minha relatoria, é assente o entendimento de que esta Corte Superior é competente para dirimir conflito de competência entre juízo estatal e câmara arbitral, notadamente em virtude da natureza jurisdicional da arbitragem. (Cf. CC 111.230/DF, Rel. Ministra NANCY ANDRIGHI, SEGUNDA SEÇÃO, julgado em 08/05/2013, DJe 03/04/2014). No mesmo sentido: CC n. 159.162/AM, Segunda Seção, julgado em 9/12/2020, DJe de 18/12/2020; CC n. 150.830/PA, Segunda Seção, julgado em 10/10/2018, DJe de 16/10/2018; CC n. 157.099/RJ, Segunda Seção, julgado em 10/10/2018, DJe de 30/10/2018.

5. No entanto, há que se examinar *cum grano salis* a hipótese de conflito de competência entre tribunais arbitrais vinculados a uma mesma Câmara

*Superior Tribunal de Justiça*

de Arbitragem, não apenas em razão da previsão constitucional da competência desta Corte Superior, mas também tendo em vista questões de política judiciária.

6. De fato, nessas hipóteses, é de todo conveniente que haja previsão, no próprio Regulamento da Câmara de Arbitragem, de regras aptas a solucionar o **conflito de competência *interna corporis*** instaurado, em prestígio da autonomia da vontade, que é a pedra de toque de todo e qualquer procedimento arbitral.

7. Nesse contexto, ao eleger determinado tribunal arbitral para solucionar o conflito de interesses estabelecido, as próprias partes, no exercício de sua autonomia, estariam a aderir às regras estabelecidas pela Câmara Arbitral para dirimir eventual e futuro **conflito de competência *interna corporis***.

8. Inexistindo, no entanto, como na hipótese dos autos, qualquer previsão nesse sentido no referido Regulamento, competiria, *data máxima venia*, ao ordenador administrativo responsável pela Câmara de Arbitragem ou a órgão equivalente, aplicar, de forma subsidiária e excepcional, as normas do Código de Processo Civil para fixar o juízo arbitral competente uma vez não instituídas regras próprias para esse mister.

9. A aplicação subsidiária das normas do CPC à arbitragem, aliás, já é prevista, expressamente no art. 14 da Lei n. 9307/1996 (Lei da Arbitragem), no que diz respeito às hipóteses de impedimento e suspeição dos árbitros, nada impedindo que, no silêncio do Regulamento das Câmaras Arbitrais, se faça uso do Diploma Processual para dirimir outras questões procedimentais.

10. Desse modo, na hipótese dos autos, tendo em vista as peculiaridades da demanda, acompanho integralmente, com a presente declaração de voto, o e. Relator, sem, no entanto, olvidar a necessidade de futuro aprofundamento das questões relativas à competência desta Corte Superior para

*Superior Tribunal de Justiça*

conhecer de conflito de competência entre **tribunais arbitrais vinculados a uma mesma Câmara de Arbitragem** e à aplicação subsidiária do Código de Processo Civil para a fixação do juízo arbitral competente, na hipótese de omissão do regulamento.

Forte nessas razões, rogando as mais respeitosas vênias, com a presente declaração de voto, acompanho o e. Relator para declarar a competência do Tribunal arbitral do Procedimento arbitral CAM 186/21 e deixo registrada minha respeitosa reflexão para o futuro, na esperança de que as Câmaras de Arbitragem adaptem seus Regulamentos a partir deste julgamento.

*Superior Tribunal de Justiça*

**CERTIDÃO DE JULGAMENTO**
**SEGUNDA SEÇÃO**

Número Registro: 2022/0023291-6     **PROCESSO ELETRÔNICO**     **CC 185.702 / DF**

Números Origem: 11018  18621  9317

PAUTA: 22/06/2022                                        JULGADO: 22/06/2022
                                                                 SEGREDO DE JUSTIÇA

**Relator**
Exmo. Sr. Ministro **MARCO AURÉLIO BELLIZZE**

**Ministro Impedido**
Exmo. Sr. Ministro  :     **PAULO DE TARSO SANSEVERINO**

Presidente da Sessão
Exmo. Sr. Ministro ANTONIO CARLOS FERREIRA

Subprocurador-Geral da República
Exmo. Sr. Dr. JOSÉ BONIFÁCIO BORGES DE ANDRADA

Secretária
Bela. ANA ELISA DE ALMEIDA KIRJNER

**AUTUAÇÃO**

| | | |
|---|---|---|
| SUSCITANTE | : | J S |
| ADVOGADOS | : | CLÁUDIO BONATO FRUET - DF006624 |
| | | CARLOS EDUARDO CAPUTO BASTOS  - DF002462 |
| | | HEITOR VITOR MENDONÇA FRALINO SICA  - SP182193 |
| | | AQUILES TADEU GUATEMOZIM  - SP121377 |
| | | RICARDO MESQUITA DE ABECI  - DF012709 |
| | | CELSO CALDAS MARTINS XAVIER  - SP172708 |
| | | ALEXANDRE MULLER BUARQUE VIVEIROS  - DF024080 |
| | | ANA CAROLINA ANDRADA ARRAIS CAPUTO BASTOS  - DF026891 |
| ADVOGADOS | : | JOANA D'ARC AMARAL BORTONE - DF032535 |
| | | DANIEL KAUFMAN SCHAFFER  - SP310827 |
| | | JULIANA MASCARENHAS DE ARAÚJO  - SP392020 |
| | | JULIA TEIXEIRA RODRIGUES  - SP391079 |
| | | HENRIQUE ROMANÓ ROCHA  - DF062952 |
| | | ANGELA CIGNACHI BAETA NEVES E OUTRO(S) - DF018730 |
| SUSCITADO | : | CÂMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL DO PROCEDIMENTO ARBITRAL CAM 186/21 |
| SUSCITADO | : | CAMARA DE ARBITRAGEM DO MERCADO - TRIBUNAL ARBITRAL NOS PROCEDIMENTOS CAM 93/17 E 110/18 |
| INTERES. | : | B S - B B B |
| INTERES. | : | J A V DE S J E OUTRO |
| INTERES. | : | S I F DE I DE A - I N E |
| ADVOGADOS | : | ANNA MARIA DA TRINDADE DOS REIS - DF006811 |
| | | MÔNICA GOES DE ANDRADE MENDES DE ALMEIDA - RJ064037 |
| | | FABIANO DE CASTRO ROBALINHO CAVALCANTI  - RJ095237 |

*Superior Tribunal de Justiça*

CAETANO FALCÃO DE BERENGUER CESAR  - RJ135124
FERNANDO PESSOA NOVIS E OUTRO(S) - RJ172155
CAIO HUMBERTO PÁSSARO DE LAET  - DF056081

INTERES.            :  J M B E OUTRO
ADVOGADOS      :  GUSTAVO JOSÉ MENDES TEPEDINO  - RJ041245
MILENA DONATO OLIVA  - RJ137546
RENAN SOARES CORTAZIO  - RJ220226

INTERES.            :  F C DE O E OUTRO
ADVOGADOS      :  MÁRCIO VIEIRA SOUTO COSTA FERREIRA  - RJ059384
FERNANDO PESSOA NOVIS  - RJ172155
GERSON ANTÔNIO FERNANDES  - PA004824

INTERES.            :  J I S

ASSUNTO: DIREITO CIVIL - Obrigações - Espécies de Contratos

## SUSTENTAÇÃO ORAL

Sustentaram oralmente:
1 - pelo Suscitante JS, o Dr. CARLOS EDUARDO CAPUTO BASTOS;
2 - pelos Interessados JMB e Outro, o Dr. GUSTAVO JOSÉ MENDES TEPEDINO;
3 - pelos Interessados JAV e Outro, o Dr. FABIANO DE CASTRO ROBALINHO.

## CERTIDÃO

Certifico que a egrégia SEGUNDA SEÇÃO, ao apreciar o processo em epígrafe na sessão realizada nesta data, proferiu a seguinte decisão:

Preliminarmente, indeferiu-se o pedido de intervenção da Associação de Investidores no Mercado de Capitais - AMEC - como amicus curiae no feito.

A Segunda Seção, por unanimidade, conheceu do conflito entre os Tribunais arbitrais suscitados e declarou a competência do Tribunal arbitral do Procedimento arbitral CAM 186/21 para conhecer e julgar a ação social de responsabilidade dos administradores, ex-administradores e controladores, a ensejar, por consequência, a extinção dos Procedimentos Arbitrais CAM 93-110, nos termos do voto do Sr. Ministro Relator, com declaração de voto da Sra. Ministra Nancy Andrighi.

Os Srs. Ministros Nancy Andrighi, Luis Felipe Salomão, Raul Araújo, Maria Isabel Gallotti, Ricardo Villas Bôas Cueva e Marco Buzzi votaram com o Sr. Ministro Relator.

Impedido o Sr. Ministro Paulo de Tarso Sanseverino.

Ausente, justificadamente, o Sr. Ministro Moura Ribeiro.

Presidiu o julgamento o Sr. Ministro Antonio Carlos Ferreira.