**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE *EX PARTE* APPLICATION OF
SPS I FUNDO DE INVESTIMENTO DE AÇÕES –
INVESTIMENTO NO EXTERIOR

                              *Petitioner,*

For an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for use in Contemplated Proceeding in the Federative Republic of Brazil.

Case No. 22-mc-00118-LAK

---

**SECOND SUPPLEMENTAL DECLARATION OF JEREMY C. HOLLEMBEAK IN SUPPORT OF PETITIONER SPS I FUNDO DE INVESTIMENTO DE ACÕES – INVESTIMENTO NO EXTERIOR'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AMENDED APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782**

JEREMY C. HOLLEMBEAK, pursuant to 28 U.S.C. § 1746, declares:

1. I am an attorney for the firm Baird Holm LLP, counsel to SPS I Fundo de Investimento de Ações – Investimento no Exterior ("**SPS**"), petitioner in the above-captioned case.

2. I am a member in good standing of the bar of the State of New York and have been duly admitted and qualified to practice as an attorney before the United States District Court for the Southern District of New York since 2007.  Prior to joining Baird Holm in 2019, I lived and practiced for thirteen years in the New York City offices of two international law firms, Milbank LLP (formerly known as Milbank Tweed Hadley & McCloy LLP) and global disputes and investigations firm Kobre & Kim LLP.  In 2016, I became a *Fellow* of INSOL International and continue to be an active member in that organization.  Over the course of my career, I have worked on numerous large, contentious cross-border disputes and insolvencies, including litigations in various US courts involving large Central or South American companies.

3. In this action, I act as US counsel for SPS.  I previously submitted (i) a declaration

1

(ECF No. 28, the "**Hollembeak Declaration**") in support of the Court's April 26, 2022 *Ex Parte* Order to conduct discovery pursuant to 28 U.S.C. § 1782 (ECF No. 8, the "**Order**") and SPS's memorandum of law in opposition to the motion (ECF No. 20, the "**Motion**") and supporting papers of Joesley Batista, Wesley Batista, JBS S.A. and J&F Investimentos (collectively, the "**Intervenors**") to vacate that Order and quash the subpoenas SPS served in accordance with the Order on J.P. Morgan Chase Bank, N.A. ("**JPM**") and Barclays USA, Inc. ("**Barclays USA**"), and (ii) a supplemental declaration (ECF No. 50, the "**First Supplemental Hollembeak Declaration**") in support of SPS's amended application (ECF No. 48, the "**Amended Application**") for an order pursuant to 28 U.S.C. § 1782 authorizing SPS to issue a subpoena to Barclays Bank PLC ("**Barclays NY**" or "**Respondent**").

4. As detailed in the Hollembeak Declaration, following entry of the Order, SPS served subpoenas on JPM and Barclays USA and engaged in preliminary communications with each respondent prior to Intervenors' Motion.

5. In a December 9, 2022 decision (ECF No. 34, the "**Memorandum Opinion**"), this Court denied the Intervenors' Motion vis-à-vis JPM and refused to quash the JPM subpoena, but granted the Motion vis-à-vis Barclays USA and quashed the Barclays USA subpoena on the basis that Barclays USA could not be found in the Southern District of New York as required by Section 1782. Intervenors' appealed the Order and Memorandum Opinion to the United States Court of Appeals for the Second Circuit (Appeal No. 22-3200), which appeal was dismissed by the Second Circuit for lack of appellate jurisdiction on May 9, 2023 (CA2 No. 116).

6. On April 26, 2023, SPS filed the Amended Application.

7. On May 19, 2023, Intervenors filed papers in opposition to the Amended Application (ECF Nos. 56-59).

8. Contemporaneously herewith, SPS is submitting a memorandum of law in reply to Intervenors' opposition papers and in further support of the application (the "**Reply**").

9. I hereby respectfully submit this declaration as a supplement to the Hollembeak Declaration and First Supplemental Hollembeak Declaration and in support of the Reply. All facts set forth in this declaration are based upon: (a) my personal knowledge; (b) documents and information supplied to me by SPS or professionals retained by it, and (c) my review of relevant documents and information otherwise available to me.

A. **No Opposition To Amended Application By Barclays NY**

10. After the Amended Application, supporting declarations (including exhibits) and proposed order (including a proposed subpoena) were filed on April 26, 2023 (ECF Nos. 48-51), I directed a paralegal at my firm to arrange for filed-stamped copies of each of these documents to be served on Barclays NY, at its office and Americas headquarters located in Times Square at 745 7th Avenue, New York, NY 10019. A process server effectuated service on May 1, 2023, as set forth in the Affidavit of Service filed at ECF No. 53.

11. On May 4, 2023, I was contacted by Magda Jimenez Train, an attorney in Barclays NY's legal department whose job title as listed on her LinkedIn profile is "Americas Head of Civil Litigation at Barclays." In her correspondence, Ms. Jimenez Train confirmed receipt of service and requested I provide electronic copies of my supporting declaration, Exhibit K thereto, and the proposed order and subpoena. That same day I sent her file-stamped copies of these documents by electronic mail, for which she confirmed receipt. Since that correspondence through and including the date hereof, I have not been contacted by Ms. Jimenez Train or any other person from or representing Barclays NY.

12. As explicitly set forth in the Amended Application (pp. 24), pursuant S.D.N.Y. Civ.

R. 6.1(b), and in accordance with this Court's individual practices, any opposing affidavits and answering memoranda were due within fourteen days after service of the Amended Application and supporting papers is effectuated. This means the deadline for Barclays NY to timely oppose the Amended Petition was May 15, 2023.

13. Barclays NY has never formally appeared in this action and has never filed papers (timely or otherwise) in opposition to the Amended Application.

14. No one from or representing Barclays NY has ever communicated to me that Barclays NY intends to take the position that (i) the Amended Application should be denied, (ii) any of the relief requested in the Amended Application is objectionable, or (iii) there is any inaccuracy or omission in the details, descriptions, arguments, etc., set forth in the Amended Application or my supporting declaration relating to Barclays NY's contacts with and in the Southern District of New York and/or this Court's ability to exercise jurisdiction over Barclays NY in this action.

**B.     Additional Information Concerning Exhibit K**

15. In Paragraph 21 of the First Supplemental Hollembeak Declaration, I described a 2017 suspicious activity report submitted by Barclays NY to the United States Financial Crimes Enforcement Network ("**FinCEN**") that had raised red flags to FinCEN regarding the financial activity of the Target Companies, and that had later been unveiled in September 2020 through an international journalistic investigation named "**FinCEN Files**" (the "**Barclays SAR**").

16. I also attached as Exhibit K to that declaration what I believed at that time to be a true and correct copy of the beginning of the Barclays SAR. I obtained Exhibit K from an article originally published September 25, 2020 by Poder360. The article was published in Portuguese and is available at https://www.poder360.com.br/fincen-files/tesouro-dos-eua-analisa-dados-

financeiros-suspeitos-sobre-a-jbs-desde-2014/ (last visited May 31, 2023) (the "**Poder360 Article**").

17. Attached hereto as **Exhibit L** is an unofficial English translation of the Poder360 Article. As shown on Exhibit L, the Poder360 Article states that:

> [FinCEN] received 1 Suspicious Activity Report (SARs) prepared by Barclays of New York at the request of the same bank in England. ***Here is what Barclays NY said in its SAR about Unifleisch***. [emphasis added]

Following this statement, the Poder360 Article quotes verbatim (albeit translated into Portuguese) several of the statements contained on Exhibit K. Following those quoted passages, the article displays the image I extracted and filed with my prior declaration as Exhibit K. That image begins with the statement:

> ***SAR Number 31000093847394***: HAMBLE CORPORATION SERVICES is identified as a subject of ***the following SAR***, filed by a depository institution, involving suspicious designation of beneficiaries, assignees or joint owners, suspicious use of multiple accounts, and transaction with no apparent economic business, or lawful purpose. [emphasis added]

Following this statement, about a third of the way down, the image further states:

> ***Barclays NY is filing <u>this</u> Suspicious Activity Report ("SAR")*** on Unifleisch, its owners, and it counterparties because: [emphasis added]

Following this statement, the image contains an extended list of red flags and other concerning information about the financial activity of Unifleisch and its links to the Intervenors.

18. Based on the above statements, it was SPS's understanding, as I represented in my prior declaration, that the image from the Poder360 Article I extracted and filed with my prior declaration as Exhibit K was, in fact, a true and correct copy of the first page of the actual Suspicious Activity Report referred to in the article as having been prepared by Barclays NY and submitted to FinCEN (*i.e.* the Barclays SAR).

19. I have reviewed the Declaration of David Caruso dated May 18, 2023 (ECF No. 59,

the "**Caruso Declaration**") which was filed by Intervenors in support of their opposition to the Amended Application, including Mr. Caruso's analysis of Exhibit K and conclusion that "Exhibit K is not a copy of a FinCEN database record."  (Caruso Decl. ¶¶ 36-43)

20. Upon consideration of the Caruso Declaration, the FinCEN resources cited therein, and further review of the Poder360 Article, it appears Exhibit K is not a copy of a page from the actual Barclays SAR.  At the same time, these same considerations make it all the more clear that (i) the Barclays SAR exists and (ii) Exhibit K contains information taken directly from that SAR.

21. In his declaration, Mr. Caruso cites to and discusses "The BSA/AML Examination Manual and Procedures" and its appendices, which are published and periodically updated by the FFIEC on its website.  *See* Caruso Declaration ¶¶ 19-20.  Attached hereto as **Exhibit M** is a true and correct copy of that manual's Appendix F: Money Laundering and Terrorist Financing "Red Flags," which is also available at https://bsaaml.ffiec.gov/docs/manual/10_Appendices/07.pdf (last visited June 1, 2023).  The red flags described in Exhibit K map onto the "Red Flags" identified by FFIEC in Exhibit M with significant overlap, at times even using the same words or phrases:

| **Red Flags Identified in Exhibit K**<br>(emphasis added) | **Red Flags Identified By FFIEC**<br>(page number of Exhibit M, except as noted) |
|---|---|
| "Unifleisch was not conclusively identified through Internet research" | "A bank is unable to obtain sufficient information or information is unavailable to positively identify originators or beneficiaries of accounts or other banking activity (using Internet, commercial database searches, or direct inquiries to a respondent bank)" (F-6) |

| **Red Flags Identified in Exhibit K** (emphasis added) | **Red Flags Identified By FFIEC** (page number of Exhibit M, except as noted) |
|---|---|
| "Unifleisch is transacting with unverifiable parties located in *high risk jurisdiction* known for money laundering, specifically Panama and Switzerland" | "Funds transfer activity occurs to or from a financial secrecy haven, or to or from a higher-risk geographic location without an apparent business reason or when the activity is inconsistent with the customer's business or history" (F-2) |
| "The relationships between these parties was unclear" | "Funds transfers contain limited content and lack related party information" (F-3) |
| "There was no apparent economic, business, or lawful purpose for the transactions" | "Payments to or from the company have no stated purpose, do not reference goods or services, or identify only a contract or invoice number" (F-6) <br><br> "Payments or receipts with no apparent links to legitimate contracts, goods, or services are received" (F-3) |
| "The payment instruction fields of two (2) relatively large USD wire transfers referenced "Loan agreement," <br> • The terms and purposes for any loan agreements related to Unifleisch and its counterparties are unknown, and <br> • The source of funds for the wire activity is unknown | "Loans are made for, or are paid on behalf of, a third party with no reasonable explanation" (F-4) <br><br> "Large, incoming funds transfers are received on behalf of a foreign client, with little or no explicit reason" (F-2) |
| "Moreover, these wire transfers appeared to be *layered* in a circular scheme as to attempt to disguise or hide the true source of funds and/or its origin" | "The second stage of the money laundering process is layering, which involves moving funds around the financial system, often in a complex series of transactions to create confusion and complicate the paper trail"[1] <br><br> "Suspicious movements of funds occur from one bank to another, and then funds are moved back to the first bank" (F-8) <br><br> "Funds transfer activity is unexplained, repetitive, or shows unusual patterns" (F-2) |

---

[1] Introduction to The BSA/AML Examination Manual and Procedures, available at https://bsaaml.ffiec.gov/manual/Introduction/01 (last visited June 1, 2023).

22. In his declaration, Mr. Caruso notes that one of the persons responsible for the leak of the FinCEN Files, Natalie Mayflower Sours Edwards ("**EDWARDS**"), pled guilty and was sentenced to federal prison. *See* Caruso Declaration ¶ 33; *id*. n.11 (citing DOJ press release "Former Senior Fincen Employee Pleads Guilty To Conspiring To Unlawfully Disclose Suspicious Activity Reports" dated January 13, 2020, a true and correct copy of which is attached hereto as **Exhibit N**). As indicated several times throughout Exhibit N, EDWARDS unlawfully disclosed not only Suspicious Activity Reports themselves, but other confidential FinCEN documents that included information from Suspicious Activity Reports:

- EDWARDS "abused her position of trust by agreeing to repeatedly disclose highly sensitive information ***contained in*** Suspicious Activity Reports." (emphasis added)

- "EDWARDS had access to each of the pertinent SARs and saved them – ***along with thousands of other files containing sensitive government information*** – to a flash drive provided to her by FinCEN." (emphasis added)

- "In addition to disseminating SARs to Reporter-1, EDWARDS sent or described to Reporter-1 internal FinCEN emails or correspondence ***appearing to relate to SARs*** or other information protected by the BSA […]." (emphasis added)

- "At the time of EDWARDS's arrest, she was in possession of […] a cellphone containing numerous communications over an encrypted application in which she transmitted SARs ***and other sensitive government information*** to Reporter-1" (emphasis added)

23. Exhibit N further indicates that "[EDWARDS] transmitted the SARs to Reporter-1 by means that included ***taking photographs or images of them and texting the photographs or images to Reporter-1*** over an encrypted application." (emphasis added) This corroborates Exhibit K's inclusion within the FinCEN Files. As I made clear in my prior declaration, Exhibit K is not a complete document. *See* First Supplemental Hollembeak Declaration ¶ 21 (describing Exhibit K as "the beginning of the Barclays SAR"). In fact, it appears to be a screenshot of a

single page of a larger document being viewed on word-processing software on a computer (*e.g.* Microsoft Word).

24. Exhibit N also indicates that FinCEN, in the normal course of its operations, creates and/or maintains "nonpublic memoranda, including Investigative Memos and Intelligence Assessments published by the FinCEN Intelligence Division" containing confidential information, and that such records were leaked by EDWARDS as part of the FinCEN Files. This corroborates Exhibit K's inclusion within the FinCEN Files. There is a caption in Portuguese at the bottom of Exhibit K by which the authors of the Poder360 Article describe the screenshot, translated to English, as "***Excerpt from FinCen alert*** about suspicious activities by Unifleisch, which deposited money from JBS to Lunsville and Valdarco, in Panama." *See* Exhibit L (emphasis added). Moreover, at the very end of the Poder360 Article is a paragraph indicating that a few hours after it was originally published, certain corrections were made to the descriptions of Unifleisch financial operations considered suspicious so that the all such data in the article "reflect[s] exactly what is in ***the reports of [FinCEN]***." *See* Exhibit L (emphasis added). The emphasized language in these statements appears to be consistent with the document partially captured by Exhibit K having been (i) created by someone with access to the actual Barclays SAR and thereafter (ii) maintained by FinCEN among its nonpublic records until being leaked by EDWARDS.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 1, 2023
Omaha, Nebraska

By: _____
Jeremy C. Hollembeak

**BAIRD HOLM LLP**
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402.636.8317
Email: jhollembeak@bairdholm.com

*Attorneys for Petitioner SPS I Fundo De Investimento De Ações – Investimento No Exterior*

10