UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF<br>SPS I FUNDO DE INVESTIMENTO DE AÇÕES –<br>INVESTIMENTO NO EXTERIOR<br><br>                                        *Petitioner,*<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for use in Contemplated Proceeding in the Federative Republic of Brazil. | Case No. 22-mc-00118-LAK |

**SUPPLEMENTAL DECLARATION OF FABIANO ROBALINHO CAVALCANTI
IN SUPPORT OF PETITIONER SPS I FUNDO DE INVESTIMENTO DE ACÕES –
INVESTIMENTO NO EXTERIOR'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF AMENDED APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782**

SERGIO BERMUDES
ADVOGADOS

**DECLARATION OF FABIANO ROBALINHO CAVALCANTI**

I, Fabiano Robalinho Cavalcanti, hereby declare as follows, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury established by the laws of the United States:

1.  I submit this Declaration in support of the request of SPS I Fundo de Investimento de Ações – Investimento no Exterior ("SPS") for entry of an order allowing it to take discovery for use in a contemplated proceeding in Brazil, pursuant to 28 U.S.C. § 1782 ("1782 Application").

2.  All facts set forth in this Declaration are, save whether otherwise stated, drawn from: (i) my personal knowledge; (ii) my review of the documents that SPS provided to me; and (iii) information otherwise obtained from SPS.

I.  PROFESSIONAL BACKGROUND

3.  I am an attorney admitted to practice in Brazil, since 1998, and in the State of New York, since 2001. My professional activity is focused on private law, with an emphasis on corporate law, contract law and arbitration. Since 1997, I am a partner at the firm Sergio Bermudes Advogados, specialized in dispute resolution. I am over the age of 21 and fluent in English and submit this Declaration in this language.

4.  In 1997, I graduated in Law from Pontifícia Universidade Católica of Rio de Janeiro. In 2000, I obtained my LLM degree from Harvard Law School.

5.  Since 2006, I have been a professor of arbitration and private international law at Fundação Getulio Vargas (FGV-Rio), where I regularly

teach undergraduate classes. I am also the author of several articles published in specialized books and magazines.

6.      Additionally, I am a member of the International Court of Arbitration of ICC (International Chamber of Commerce), the Latin-American Group of ICC, the board of the Brazilian Committee of Arbitration (CBAr) and Director of the Brazilian Committee of Arbitration (CBAr).

II.     CLARIFICATIONS

7.      SPS has asked me to clarify certain matters raised by Mr. Pablo Renteria in his Second Supplemental Declaration made to this Court on May 18, 2023. Certain points made by Mr. Renteria in said Declaration are or appear to be, with the greatest of respect, imprecise, incomplete or incorrect.

8.      Firstly, it is important to highlight that the "Brazilian proceedings" referred to by Mr. Renteria in his Second Supplemental Declaration are judicial proceedings related to (and result from) two arbitral proceedings initiated before the CAM (Market Arbitration Chamber) against the controlling shareholders of JBS. The first arbitration was commenced in 2017 (arbitration 93-110/17) by SPS and Mr. Jose Aurelio Valporto, and the second arbitration was commenced in 2021 by JBS (arbitration 186/21).

9.      As I stated in my first Declaration of June 2022, proceeding 93-110/17 does not involve the Unifleisch entities. None of the claims made in said arbitration are based on Unifleisch entities and said entities do not comprise the cause of action. The same applies, to the best of my knowledge, to proceeding 186/21 since, based on the documents provided to me, JBS has not filed any claim related to the Unifleisch entities in said arbitration.

10.     The judicial proceedings referred to by Mr. Pablo Renteria in his Second Supplemental Declaration are (i) set aside proceedings (and subsequent appeals); (ii) a jurisdictional plea filed before the Brazilian Superior Court of Justice; and (iii) a document production lawsuit (and subsequent appeals).

11.     All of these judicial proceedings arise from the arbitrations commenced by SPS and JBS (proceedings 93-110/17 and 186/21). As stated in my first Declaration, the arbitrations are unrelated to the Unifleisch entities. Therefore, judicial proceedings arising out of the arbitrations are similarly unrelated to the Unifleisch entities.

12.     Based on the Brazilian Procedural Code, a plaintiff may *amend the claim or the cause of action, whether or not the defendant consents, up to service of process* (article 329, I of the Brazilian Civil Procedure Code). Once the process has been served, the plaintiff is not permitted to include new claims without the consent of the defendants (article 329, II of the Brazilian Procedural Code). The same rules apply to arbitrations referred herein, in which the parties agreed that they cannot present new claims after the signing of the terms of reference.

13.     Given that the 'further developments in Brazilian proceedings' are therefore unrelated to the Unifleisch entities, they are unlikely to be relevant to these 1782 proceedings. I have nevertheless been asked to address the content of Mr. Pablo Renteria's Second Supplemental Declaration, which I shall now proceed to do, in order to respectfully clarify certain misinterpretations contained therein.

III.    OVERVIEW OF THE BRAZILIAN PROCEEDINGS

14.     In 2017, SPS commenced an arbitration on behalf of JBS against the controlling shareholders of JBS before the Market Arbitration Chamber (CAM) in São Paulo, based on the Brazilian Corporation Law (Federal Law no. 6.404/1976). SPS is seeking redress due to harm caused to JBS by its

controlling shareholders. The arbitration was commenced against these shareholders. Contrary to what Mr. Renteria seems to suggest in his Second Supplemental Declaration, SPS did not initiate arbitration "against JBS", nor was it hoping to collect "a windfall if JBS was found liable" (paragraph 13). Arbitration 93-110/17 is a derivative suit filed for the benefit of JBS. There is obviously no intent to cause any harm or loss to said company. On the contrary, if SPS succeeds in its arbitration, JBS will receive very substantial damages. The stipulated amount in issue in the arbitration proceedings is approximately 9 billion Brazilian reais (USD 1.8 billion).

15. This arbitration was commenced as a response to acts of corruption and other criminal acts perpetrated by the controlling shareholders against JBS. SPS is also seeking redress for JBS for losses caused by the fraudulent takeover of Bertin by JBS which unduly benefitted the controlling shareholders to the detriment of the JBS company.

16. The arbitration panel issued a partial award in July, 2020, recognizing SPS's standing to sue (legitimacy as plaintiff) in a derivative suit on behalf of JBS. The arbitral tribunal held that the only pre-requisite under Brazilian law for the commencement of an arbitration by a minority shareholder on behalf of the company was proof of ownership of 5% of the shares at the time of the filing of arbitration, or any amount of shares as long as the shareholder posts a bond determined to cover the respondent party's costs, in the event of the lawsuit being dismissed[1].

17. As the arbitral tribunal pointed out in its partial award, the broad requirement is deliberate, considering that the legislator fully

---

[1] "Article 246. A controlling corporation shall be obliged to compensate any damage it may cause to a controlled corporation by any acts infringing the provisions of articles 116 and 117. Paragraph 1. Proceedings for compensation may be brought by: (a) shareholders representing five per cent or more of the capital; (b) any shareholder, provided he guarantees payment of the legal costs in the event of the action being dismissed. Paragraph 2. If the controlling corporation is held responsible, in addition to paying compensation and costs, it shall pay an indemnity in respect of lawyers' fees of twenty per cent of the compensation awarded and a further premium of five per cent to the plaintiff." (Brazilian Law of Corporations)

intended, in Law 6.404/76, to encourage minority shareholders to file derivative suits against controlling shareholders, even going as far as rewarding them with a premium in case they succeed. That was considered to be essential to the development of the Brazilian securities market. This is also the prevailing view of authoritative legal commentators in Brazil.

18. The arbitrators, in the partial award, held that the requirement of "contemporaneous ownership" — similar to Rule 23.1 (1) of the U.S. Federal Rules of Civil Procedure — did not apply to the case before them, or indeed under Brazilian Law in general.

19. Based on the Brazilian Arbitration Law, the parties may challenge an arbitral award only in very specific circumstances (article 32, Brazilian Arbitration Law). Any such challenge must be filed within 90 days of the date upon which the challenging party became aware of the terms of the award. In the case at hand, neither the controlling shareholders who were the respondents to the arbitration, nor JBS itself, challenged the arbitrators' recognition of SPS's standing to sue for arbitration on behalf of JBS.

20. In the absence of such challenge, the award became final and binding (<u>res judicata</u>) under Brazilian law 90 days after it was made available to the parties (i.e., on the 5th of October, 2020).

21. Four years after SPS commenced proceeding 93-110/17, and a few months after the partial award had become final and binding, JBS filed its own arbitration proceedings before the Market Chamber - CAM dealing with virtually the same issues raised in the SPS arbitration.

22. The new arbitration was filed in secrecy and SPS was not notified of its commencement. The failure to notify SPS was in fact a violation of Market Chamber's Rules, which require that in the event of a new request for arbitration, with "*issues of fact or law in common*" with a previous arbitral proceeding, the parties to the earlier proceeding

must be given notice and an opportunity to be heard with regard to the new request.[2]

23. Given that such requirement was not complied with, SPS was unable to participate in the arbitration from the outset, and was thus prevented from appointing arbitrators, contributing to the terms of reference and making specific requests to the arbitrators at the outset of the arbitration.

24. Months after arbitration 186/21 was commenced and only after said arbitral tribunal had been fully constituted, JBS filed a request to the arbitral tribunal of proceedings 93-110/17 asking that said arbitration be struck out on the grounds of lis pendens. JBS argued that the arbitration should prevail over the arbitration filed by SPS four years previously on the grounds that JBS was the "true owner of the right in question".

25. It was only as a result of this application by JBS to strike out the existing arbitration that SPS first became aware of proceeding 186/21. SPS immediately filed an application to be joined to the arbitration. SPS requested that the arbitral tribunal strike out the proceedings on the grounds that (i) the arbitration had been commenced without notice being given to SPS, as was required under CAM rules; (ii) the existence of lis pendens with proceedings 93-110/17, which dealt with materially the same issue, having been commenced by SPS four years previously.

---

[2] "6.2 Consolidation of proceedings. When Requests for Arbitration involve issues of fact or law in common with arbitration proceedings that are already under way and are governed by these Rules, the President of the Arbitration Chamber may direct that the proceedings be consolidated after hearing the parties and taking into consideration the circumstances and progress already achieved in the proceedings in question."
(…) "6.2.3 If an Arbitration Tribunal has been set up in any of the proceedings to be consolidated, it shall be competent to judge all the consolidated proceedings. Because the parties to other arbitration proceedings relinquish the right to appoint arbitrators if they recognize the consolidation, the Secretary-General shall send them copies of the Terms of Reference signed by the arbitrators in the Arbitration Tribunal that has been set up. Consolidation shall be possible only if the parties to more recent proceedings agree to the composition of this Arbitration Tribunal."

26.     SPS was joined as a party to proceeding 186/21 in January 2022. The arbitral tribunal then issued a partial award declining to dismiss the proceeding.

27.     Having joined the proceeding 186/21, SPS soon identified several procedural defects including violation of <u>res judicata</u> and <u>lis pendens</u> and the existing lack of impartiality of one of the arbitrators. The arbitrator in question, who had rendered the partial award refusing to strike out the arbitration, resigned shortly after SPS raised these issues.

28.     SPS then filed an application to Court on the 14th of April of 2022 to set aside the partial award, in accordance with provisions of the Brazilian Arbitration Law. The case has been listed before Judge Luis Felipe Ferrari Bedendi, of the 1st Corporate and Arbitration Court (1ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM) of the State of São Paulo.

29.     Furthermore, given that both arbitral tribunals (n. 93-110/17 and 186/21) had asserted jurisdiction to rule on the same claims, JBS and J&F filed a jurisdictional claim before the Brazilian Superior Court of Justice ("STJ"), in February 2022, in order to resolve the conflict.

30.     In a ruling issued on the 22nd of June of 2022, the STJ held that the proceeding 186/21 should prevail. This ruling is not final and binding and is being challenged on constitutional grounds before the Brazilian Supreme Court (STF).

31.     SPS' appeal to the Supreme Court was based on the grounds that the STJ ruling contravened the constitutional limits on jurisdiction and also breached <u>res judicata</u> and <u>lis pendens</u>. The constitutional issues are pending a ruling by the Supreme Court.

32.     Even before such appeal, SPS submitted a consultation to the CVM, a federal entity in charge of overseeing the Brazilian securities

market. The entity expressed its understanding that the filing of a new lawsuit by the company does not strike out the previous shareholder derivative suit. Thus, CVM's opinion was that the general rule is that the shareholder's previous derivative suit should prevail over the company's lawsuit.

33.     It is important to note that the STJ did not limit SPS' role in the 186/21 proceeding. It merely ruled on which arbitral tribunal should be deemed competent to rule on the matters in dispute.

34.     However, a few weeks after the publication of the STJ decision, the arbitral tribunal of the proceeding 186/21 excluded SPS from the arbitration, on the purported grounds that as a direct consequence of the STJ ruling, minority shareholders could not be party to the arbitration. SPS was not granted the opportunity to be heard by the arbitral tribunal. SPS then filed an application to set aside this partial award. The application was allocated to the 1st Corporate and Arbitration Court of the State of São Paulo ("1ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM").

35.     In these proceedings before the São Paulo State Court, SPS argues that JBS only filed the proceeding 186/21 in order to hinder the advance of the earlier arbitration commenced by the minority shareholders, thereby avoiding accountability for the losses caused to the company.

36.     The proceedings filed to set aside the partial award in the proceeding 186/21 are pending trial.

37.     Paragraph 14 of Mr. Pablo's Renteria Second Supplemental Declaration, is therefore misleading. Mr. Renteria states that "*SPS requests were denied on four occasions by Luis Felipe Ferrari Bedendi… and by judge Marcelo Fortes Barbosa Filho*". The truth of the matter is that the merits of the case have yet to be ruled upon by both Judge Luis Felipe Bedendi and Judge Fortes Barbosa held that that SPS's claim should not be granted as preliminary/interim relief, but called for further analysis.

38.     On the 22nd of December of 2022, at a time when SPS remained excluded as a party to the proceeding 186/21 and the other proceedings referred to above were already underway, JBS published a material fact disclosed to the market. JBS stated that the company and its controlling shareholders had entered into a settlement agreement to definitively end the dispute between them. JBS declared to the market that it would receive 543,164,722.88 Brazilian reais (approximately USD 108,229,489.92) under the settlement. This figure is only a fraction of the amount in issue between the parties and does not amount to even 10% of SPS's claims on behalf of JBS.

39.     Since this announcement to the market was made and given that JBS had apparently put an end to the dispute that gave rise to proceeding 186/21, SPS requested a copy of the settlement and the relevant documents pertaining to the purported agreement between JBS and its controlling shareholders. However, JBS, J&F and the Batista brothers have repeatedly refused to disclose this information, even before the CVM and the Brazilian Courts.

40.     SPS considers that this refusal to disclose highly relevant documents pertaining to the reported material fact is illegal. It has a direct impact on SPS's rights and interests. On that basis, SPS filed an application for an order for production of documents ("produção antecipada de provas") under article 381 of the Brazilian Code of Civil Procedure. This application has been listed before Judge Eduardo Palma Pellegrinelli, of the 1st Corporate and Arbitration Court of the State of São Paulo ("1ª VARA EMPRESARIAL E CONFLITOS DE ARBITRAGEM").

41.     In said proceeding, SPS requested an order requiring that JBS and its controlling shareholders to exhibit (disclose) the relevant documents pertaining to the settlement agreement they signed in the proceeding 186/21, as well as the copies of the case records post SPS's

exclusion from the proceeding, including the arbitral award that ratified the settlement agreement and closed the case.

42. On 10th of March of 2023, the judge granted SPS's request, determining the exhibition of the documents, under penalty of a fine of 543,164,722.88 Brazilian reais.

43. The Arbitral Chamber produced the documents in compliance with the Court order. JBS, then, on 13th of March of 2023, filed an interlocutory appeal before the State Court of Appeal of São Paulo requesting a stay of the effects of the Court order pending final ruling on the appeal. An order for a stay of effects was granted, suspending the penalty until the final judgment on the merits of the interlocutory appeal.

44. To date, the merits of the interlocutory appeal have not been tried. Contrary to what was stated by Mr. Renteria in his Second Supplemental Declaration, the decision that determined the production of the documents has not been reversed. Its effects have been temporarily suspended pending final ruling on the appeal. Furthermore, the assertion made by Mr. Renteria that SPS is subject to the imposition of a financial penalty for sharing the documents produced in the judicial proceedings before the São Paulo Court is inaccurate.

45. In view of the stay granted by Judge Fortes Barbosa the request of JBS, Judge Eduardo Palma Pellegrinelli directed SPS to refrain from using the documents under penalty of a fine of 54,316,472.88 Brazilian reais. However, in view of the clarifications presented by SPS, Judge Pellegrinelli reconsidered said decision. Thus, there is no current decision imposing any fine on SPS.

\* \* \*

46.     In conclusion, I reaffirm the fact that the proceedings referred to above are not relevant to the lawsuit that is before this court, because they do not concern the Unifleisch entities.

47.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

Fabiano Robalinho Cavalcanti

Executed on June 01, 2023