```
┌─────────────────────────────────┐
│ USDS SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____         │
│ DATE FILED: __3/4/24__          │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE EX PARTE APPLICATION OF SPS I
FUNDO DE INVESTIMENTO DE
ACOES – INVESTIMENTO NO                                    22-mc-00118 (LAK)
EXTERIOR

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Jeremy C. Hollembeak
        BAIRD HOLM LLP

        Gabriela M. Scanlon
        MB SCANLON PLLC

        *Attorneys for Petitioner*


        Michael B. Carlinsky
        Gavin Frisch
        Lucas Bento
        QUINN EMANUEL URQUHART & SULLIVAN LLP
        *Attorneys for Intervenors*


LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on the amended application of SPS I Fundo de
Investimento de Ações – Investimento no Exterior ("SPS" or "Petitioner") for discovery from The
New York Branch of Barclays Bank PLC ("Barclays NY" or "Respondent") pursuant to 28 U.S.C.
§ 1782 for use in a contemplated Brazilian legal proceeding.[1]  Specifically, SPS seeks discovery

---

[1]    Dkt 48.

regarding transactions by four companies through the intermediation of the services provided by Respondent, which SPS believes may evidence an alleged international corruption scheme led by the controlling shareholders of Brazilian corporation JBS S.A. ("JBS"). SPS, which owns a minority stake in JBS, intends to use this discovery in a draft complaint that it plans to file with Brazil's securities and exchange commission (the *Comissão de Valores Mobiliários* or "CVM"). The controlling shareholders of JBS, the Batista Family, along with their majority-owned companies JBS and J&F Investimentos ("J&F" and, together with JBS and the Batista Family, "Intervenors"), oppose the amended application.[2]

      The Court assumes familiarity with the facts and procedural history of this case, which are recounted in a prior opinion and the parties' memoranda.[3]

      Briefly, in April 2022, this Court granted SPS's *ex parte* application for Section 1782 discovery from respondent banks J.P. Morgan Chase Bank, N.A. and Barclays USA, Inc. In June of that year, Intervenors moved to vacate the Court's order and to quash the subpoenas served on the respondents. The Court denied Intervenors' motion as to J.P. Morgan Chase Bank, N.A. and granted it without prejudice to an amended application as to Barclays USA, Inc. on the ground that the Court lacked personal jurisdiction over the Barclays entity.[4] Petitioner then filed the amended application for Section 1782 discovery from Barclays NY that now is before the Court.

---

[2]       Dkt 56.

[3]       Dkts 34, 48, 56, 63.

[4]       Dkt 34 at 7.

### *Discussion*

This Court explained previously[5]:

> "Section 1782 authorizes federal district courts to order discovery in aid of proceedings before a foreign tribunal. This authorization from Congress has two primary goals: promoting respect for foreign governments by assisting their tribunals and thereby encouraging reciprocal assistance.[6] To that end, the Supreme Court and the Court of Appeals have instructed district courts to take a 'hospitable view'[7] of Section 1782 discovery, the availability of which 'is quite broad and only has broadened through successive amendments over the years.'[8]

> To obtain discovery under Section 1782, a party must establish three statutory prerequisites: (1) the person or entity from whom discovery is sought 'resides' or is 'found' in the district where the application is made; (2) the requested material is 'for use' in a proceeding before a foreign tribunal; and (3) 'the application is made by a foreign or international tribunal or any interested person.'[9] Once these requirements are met, district courts may grant discovery after taking into consideration the

---

[5]

The original footnote citations have been cleaned up.

[6]

*ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022).

[7]

*In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

[8]

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017).

[9]

*IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 675 (2d Cir. 2022) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)).

discretionary factors set forth in *Intel v. Advanced Micro Devices, Inc.*[10][:]

. . . .

> (1) Whether the 'person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent' because a foreign tribunal presumably has authority to order discovery on its own;
>
> (2) '[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance';
>
> (3) Whether the discovery request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and
>
> (4) Whether the requests are unduly intrusive or burdensome.[11]

Courts exercising their discretion must consider also 'the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'[12],[13]

---

[10]

542 U.S. 241 (2004).

[11]

*Id*. at 264–65.

[12]

*Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted).

[13]

Dkt 34 at 4–5, 16.

Here, Intervenors contend that SPS has failed to meet all three statutory factors as to Barclays NY.  They argue further that all four of the discretionary *Intel* factors weigh against the requested discovery.  For the reasons explained below, the Court rejects Intervenors' contentions and grants SPS's amended application.

## I.    *Statutory Factors*

### A.    *Barclays NY Is Found in This District*

To be subject to Section 1782 discovery, a person must "reside[]" or be "found" in the district in which discovery is sought.[14]  "[Section] 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."[15]  Due process permits courts to exercise either general or specific personal jurisdiction over a person depending on the nature of her contacts with the forum.[16]  Petitioner contends that Barclays NY is subject to both this Court's general and specific personal jurisdiction.

"[A] court's general jurisdiction . . . is based on the defendant's general business contacts with the forum . . . and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."[17]  A corporation is subject to general jurisdiction only in a state in which it is incorporated or has its principal place of business.[18]  Barclays NY is incorporated

---

14

28 U.S.C. § 1782(a).

15

*In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).

16

*See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673–74 (2d Cir. 2013).

17

*Id*. at 674 (internal quotation marks omitted) (second alteration in original).

18

*See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)); *see also Daimler AG*, 571 U.S. at 139 n.19 ("We do not

in the United Kingdom.[19]  And, according to Intervenors' uncontradicted account, Barclays NY's

principal place of business is not in New York.[20]  As a result, Barclays NY is not subject to this

Court's general personal jurisdiction.

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or

connected with, the very controversy that establishes jurisdiction."[21]  The exercise of specific personal

jurisdiction is consistent with due process where a person has "sufficient 'minimum contacts' with the

forum and [exercising] jurisdiction [does] 'not offend traditional notions of fair play and  substantial

justice.'"[22] The minimum contacts analysis focuses on whether the party over whom jurisdiction is

sought (1) "has purposefully directed his activities at . . . the forum" and (2) "the litigation . . . arise[s]

out of or relate to those activities."[23]  In the context of Section 1782, "the discovery material sought

[must have] proximately resulted from the respondent's forum contacts."[24]

---

foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." (citation omitted)).

[19]

Dkt 57-1.

[20]

Dkt 56 at 8.

[21]

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

[22]

*Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 644–45 (2d Cir. 2023) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

[23]

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).

[24]

*In re del Valle Ruiz*, 939 F.3d at 530 ("[T]he respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all.  On the other hand, where the respondent's contacts are broader and more significant,

Intervenors focus on the second, or "nexus," prong of the minimum contacts requirement. They contend that a suspicious activity report ("SAR") "purportedly prepared by Barclays NY," which is "the only connection SPS can point to between Barclays NY and the discovery sought," is insufficient because it is not genuine.[25] This argument is irrelevant. As Petitioner explains, its burden is to "show that Barclays NY's forum contacts have a causal relationship with the documents SPS wants Barclays NY to produce, *not* with the documents [*i.e.*, the SAR] that prompted SPS to request that production in the first place."[26]

Petitioner argues persuasively that Barclays NY's extensive contacts in the State of New York gave rise to the discovery materials it seeks in its amended application.[27] It explains, "Barclays NY's actions in this district as correspondent or intermediary bank responsible for completing US dollar denominated wire transfers passing to and from Barclays UK Wealth and reporting . . . when those transfers evidenced suspicious activity are the but for and proximate cause of the discovery SPS seeks."[28] The Court therefore holds that it has specific personal jurisdiction over Barclays NY because the documents sought by the amended application resulted from the correspondent banking services Barclays NY provides from New York.

---

a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.").

[25]  Dkt 56 at 11.

[26]  Dkt 63 at 3.

[27]  Dkt 48 at 10.

[28]  Dkt 48 at 23.

### B.    *Remaining Statutory Factors*

Intervenors are collaterally estopped from contesting the remaining statutory factors by this Court's prior order finding that both factors are satisfied.[29]  "[T]he identical issue was raised in a previous proceeding" before this Court, the issue was litigated and the Court decided it, Intervenors "had a full and fair opportunity to litigate the issue," and "the resolution of the issue was necessary to support a valid and final judgment on the merits."[30]  Even if the collateral estoppel requirements were not satisfied, the Court would reject Intervenors' arguments as to the latter two statutory requirements substantially for the reasons explained in its previous order and Petitioner's memoranda.[31]

### II.    Intel *Factors*

The first *Intel* factor weighs in favor of SPS's amended application because Barclays NY is not a participant in the foreign proceeding.[32]

---

[29]

Dkt 34 at 7–16.

[30]

*Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks omitted); *see United States v. Hooker Chem. & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985) (applying collateral estoppel against intervenors who had "participated fully" in previous litigation).

Intervenors contend that Petitioner failed to raise properly a collateral estoppel defense. Assuming *arguendo* that this is correct, this Court nonetheless may base its holding on this ground. *See Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).  The failure of a party to raise collateral estoppel does not deprive a court of the power to dismiss a claim on that ground particularly where, as here, the estopped party had "an opportunity to respond." *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003); *see* Dkt 56 at 13–14.

[31]

Dkts 34, 48, 63.

[32]

Dkt 56 at 23 (Intervenors acknowledging that "Barclays NY would not be a party or participant in SPS's contemplated proceeding").

With regard to the second *Intel* factor, Intervenors argue that the CVM would not be receptive to the documents obtained via Section 1782 discovery because of the Brazilian equivalent of the fruit-of-the-poisonous-tree doctrine.  Intervenors have not, however, presented the requisite "authoritative proof" that CVM "would reject evidence obtained with the aid of section 1782."[33] Intevenors provide only a declaration from a Brazilian legal expert that "it is very likely that the CVM will not conduct an investigation that results from" the SAR.[34]  But mindful of the Court of Appeals's admonition that it is "unwise . . . for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law," this Court declines to embark upon a "speculative foray[] into legal territories unfamiliar to [it]."[35]  And, as Intervenors acknowledged previously, CVM is "receptive to U.S. federal court judicial assistance."[36]  Accordingly, the second *Intel* factor tips in Petitioner's favor.

With regard to the third *Intel* factor, Intervenors argue that granting discovery here would undermine the U.S. policy that SARs are confidential.[37]  But, as Petitioner explains, "[t]here is no reason to believe that once the subpoena is issued, Barclays will produce any documents it is

---

[33]

    *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *see Porsche Automobil*, 2016 WL 702327, at *8 (noting that courts have found that foreign tribunals or courts would not be receptive to their assistance where those bodies have "written to the district court hearing the application and expressly stated that [they] did not want the American court's help").

[34]

    Dkt 22 ¶ 50.

[35]

    *Euromepa S.A.*, 51 F.3d at 1099–1100.

[36]

    Dkt 21 at 18.

[37]

    Dkt 56 at 25.

prohibited by law from disclosing."[38]   Intervenors argue also that granting discovery would "circumvent Brazil's fruit-of-the-poisonous-tree" doctrine.[39]  Although it is conceivable that discovery here could amount to "circumvent[ing]" Brazilian "proof-gathering limits" if the discovery materials actually are fruit-of-the-poisonous tree — a conclusion the Court has not reached — any harm caused thereby could be remedied readily in Brazil by excluding the resulting evidence.[40]  The third *Intel* factor does not weigh against the amended application.

Fourth, the proposed subpoena is not unduly intrusive or burdensome, as evidenced by the fact that Barclays NY has not opposed SPS's amended application.[41]

---

[38]
    Dkt 63 at 9–10.

[39]
    Dkt 56 at 25.

[40]
    *See Euromepa S.A.*, 51 F.3d at 1101 ("Because the French court can . . . simply refuse to consider any evidence that [petitioners] gather[] by what might be — under French procedures — an unacceptable practice, we do not think that the district court's concern for trespassing upon the prerogatives of French sovereignty should have weighed so heavily in its decision.").

[41]
    *See In re Aso*, No. 19-MC-190 (JGK) (JLC), 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) ("It appears disingenuous for [intervenor] to protest the burden of the requests addressed to the subpoena targets when none of them have intervened . . . ."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *7 (S.D.N.Y. July 12, 2018) ("The [respondent banks] have not objected to this [Section 1782] application on the grounds that the requests are overly broad and/or intrusive, which is strong support for a finding in favor of the petitioners on [the fourth *Intel*] factor.").

Intervenors contend also that the proposed subpoena violates Rule of Civil Procedure 45(c)(2)(A) because it demands production more than 100 miles from where Respondent regularly transacts business. Dkt 56 at 27.  The 100 mile rule does not preclude discovery here.  First, Section 1782 commands that discovery ordered pursuant to the section be made "in accordance with the Federal Rules of Civil Procedure" only "[t]o the extent that the order does not prescribe otherwise." 28 U.S.C. § 1782.  In addition, Respondent is free to seek an order pursuant to Rule 26(c)(1)(B) to change the situs of production in the unlikely event that the (electronic) production to Petitioner in Omaha, Nebraska proves onerous.  It is unlikely that such an order will be necessary, moreover, because Petitioner stated that, "[a]t the request of the Court or Barclays NY, SPS will provide an address for production

11

In addition to holding that the *Intel* factors favor Petitioner, the Court holds that the twin aims of Section 1782 would be served by granting the amended application.  An appropriately tailored subpoena directed at Barclays NY is an efficient means of assisting SPS in its contemplated CVM proceeding, and providing such assistance encourages foreign countries to provide similar assistance to U.S. courts.

### Conclusion

For the forgoing reasons, Petitioner's amended application is granted.  Barclays NY shall comply with the subpoena and produce the discovery requested to SPS.  The parties shall confer with respect to whether any protective or confidentiality order is warranted and, if so, submit a proposed order to the Court.

SO ORDERED.

Dated:        March 4, 2024

_____
                    Lewis A. Kaplan
                    United States District Judge

_____

in New York and/or submit a revised proposed order and subpoena in full compliance with Federal Rule of Civil Procedure 45(c)(2)(A)."  Dkt 63 at 2 n.4.