**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE EX PARTE APPLICATION OF SPS I FUNDO DE INVESTIMENTO DE AÇÕES – INVESTIMENTO NO EXTERIOR |

Case No. 22-MC-00118-LAK

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS'**
**<u>MOTION TO STAY DISCOVERY PENDING APPEAL</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY........................................................................................... 2

ARGUMENT ................................................................................................................ 3

I.     INTERVENORS ARE LIKELY TO SUCCEED ON APPEAL ........................................ 3

     A.     Petitioner Did Not Show That Barclays NY Is "Found" In This District................ 4

     B.     Petitioner Did Not Satisfy The "For Use" Or "Interested Person" Factors ............ 5

          1.     The SOI's Preliminary Review Does Not Satisfy The "For Use" Factor ....................................................................................... 5

          2.     The Technical Branch's Hypothetical Investigation Does Not Satisfy The "For Use" Or "Interested Person" Factors................................. 8

          3.     The CVM Board's Hypothetical Enforcement Proceeding Also Does Not Satisfy The "For Use" or "Interested Person" Factors .............10

     C.     The Order Granting Discovery Constitutes Error Under The Discretionary Analysis.............................................................................................................11

II.     INTERVENORS WILL SUFFER IRREPARABLE HARM IF DISCOVERY IS NOT STAYED PENDING APPEAL ...............................................................................14

III.     PETITIONER WILL SUFFER NO INJURY IF IT RECEIVES DOCUMENTS FROM BARCLAYS NY FOLLOWING APPEAL .........................................................16

IV.     THE PUBLIC HAS NO INTEREST IN BARCLAYS NY PRODUCING DOCUMENTS PRIOR TO THE COMPLETION OF APPELLATE PROCEEDINGS ...................................................................................................16

CONCLUSION............................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Accent Delight Int'l Ltd.*,
2018 WL 7473109 (S.D.N.Y. June 27, 2018) ........................................................................14

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)...............................................................................................9, 14

*Boguslavsky v. Kaplan*,
159 F.3d 715 (2d Cir. 1998)......................................................................................................5

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015)..................................................................................................7, 9

*Dayton Bd. of Educ. v. Brinkman*,
439 U.S. 1358 (1978)..............................................................................................................16

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)......................................................................................................3

*Euromepa, S.A. v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998).............................................................................................6, 7, 16

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ................................................................................................12

*Fonseca v. Blumenthal*,
620 F.2d 322 (2d Cir. 1980)......................................................................................................7

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
33 F.4th 669 (2d Cir. 2022) .......................................................................................7, 8, 9, 10

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings* ("*Berlamont*"),
773 F.3d 456 (2d Cir. 2014).................................................................................................6, 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).........................................................................................5, 6, 8, 11, 13

*Jock v. Sterling Jewelers, Inc.*,
738 F. Supp. 2d 445 (S.D.N.Y. 2010)......................................................................................3

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)...............................................................................10, 11, 12, 14

*In re Klein*,
    2022 WL 1567584 (S.D.N.Y. May 18, 2022) ........................................................4

*Learning Annex Holdings, LLC v. Rich Glob., LLC*,
    2012 WL 13133586 (S.D.N.Y. Aug. 1, 2012) ...................................................3

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
    385 F.2d 1017 (2d Cir. 1967)...............................................................6, 7, 8

*Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*,
    884 F. Supp. 2d 108 (S.D.N.Y. 2012)..................................................3

*Nat'l Immigr. Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*,
    842 F. Supp. 2d 720 (S.D.N.Y. 2012)..................................................3

*Nken v. Holder*,
    556 U.S. 418 (2009)...............................................................15

*In re Noguer*,
    2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) .......................................15

*Paroni v. Gen. Elec. UK Holdings Ltd.*,
    2021 WL 3501234 (S.D.N.Y. Aug. 9, 2021) ...................................................4

*In re Saul Klein*,
    2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023) .......................................13

*In re SPS I Fundo de Investimento de Acoes - Investimento No Exterior*,
    2022 WL 16571326 (D. Del. Nov. 1, 2022) .......................................9

*Sutherland v. Ernst & Young LLP*,
    856 F. Supp. 2d 638 (S.D.N.Y. 2012)..................................................17

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*,
    477 F. Supp. 3d 241 (S.D.N.Y. 2020)..................................................4

*Wells Fargo Bank, N.A. v. ESM Fund I, LP*,
    2012 WL 3023997 (S.D.N.Y. Apr. 3, 2012)..................................................16

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007)...............................................................3

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
    596 U.S. 619 (2022)...............................................................5, 7

## **Statutes**

28 U.S.C. § 1782(a) ............................................................... *passim*

## <u>Other Authorities</u>

12 C.F.R. § 21.11(a)............................................................................................................11

12 C.F.R. § 21.11(k) ..........................................................................................................11

Federal Rule of Civil Procedure 2(b)(2) .............................................................................4

## PRELIMINARY STATEMENT

Intervenors Joesley Batista, Wesley Batista, JBS S.A., and J&F Investimentos S.A. respectfully seek a stay pending appeal of the Court's March 4, 2024 order (the "Order") granting Petitioner's amended application under 28 U.S.C. § 1782 seeking discovery from the New York Branch of Barclays Bank PLC ("Barclays NY").[1]   A stay is warranted because Intervenors are likely to prevail on the merits of their appeal regarding all the Section 1782 statutory factors, including the "found" factor (since the amended application was based solely on unauthenticated evidence)—all of which are reviewed *de novo*.  They are also likely to prevail in showing that the Order erred in granting the amended application even if the statutory factors are met because it (1) does not account for the fact that the amended application stems exclusively from a criminally leaked SAR, and (2) rests on a misapplication of two of the four *Intel* factors.  Intervenors' current appeal thus will raise issues beyond those presented in their prior appeal in this case, which focused just on the "for use" and "interested person" factors.  Additionally, the equitable factors—irreparable injury, harm to Petitioner, and the public interest—also favor granting a stay.

Intervenors will pursue their appeal on any expedited briefing schedule agreeable to Petitioner and acceptable to the Second Circuit, and are willing to expedite briefing on the instant motion to stay.  Such expedition would minimize, if not outright eliminate, any harm that Petitioner might suffer from a short stay pending appeal.

Thus, for these reasons and as further explained below, the Court should grant Intervenors' motion to stay and thereby halt discovery while their appeal is pending.

---

[1]    Intervenors conferred with Petitioner about this motion, and Petitioner stated that it "intends to oppose any motion to stay discovery."

## PROCEDURAL HISTORY

In April 2022, Petitioner filed an application for discovery under Section 1782 ("Original Application"), which the Court granted on an ex parte basis. Dkt. 8. After successfully intervening in this matter, Dkt. 17, Intervenors moved to vacate the Court's order and to quash the subpoenas issued to J.P. Morgan Chase Bank, N.A. ("JPM") and Barclays USA, Inc., Dkt. 20. The Court granted Intervenors' motion to vacate the order and quash the subpoenas as to Barclays USA, Inc., but denied the motion as to JPM. Dkt. 34. Intervenors appealed the Court's orders with respect to JPM, Dkt. 36, and immediately moved for an administrative stay, Dkt. 39, which was granted in part, Dkt. 40, and a stay pending appeal, Dkts. 37-38, which was later denied, Dkt. 46. After granting an interim stay, the Second Circuit ultimately denied Intervenors' motion for a stay pending appeal but granted their motion to expedite. 2d Cir. No. 22-3200, Dkt. 72.

While the appeal was pending, Petitioner filed an amended application seeking Section 1782 discovery from Barclays NY ("Amended Application"). Dkt. 48. The Amended Application caused the Second Circuit to seek supplemental jurisdictional briefs from the parties, 2d Cir. No. 22-3200, Dkts. 102-04, and later to dismiss the appeal for lack of appellate jurisdiction, 2d Cir. No. 22-3200, Dkt. 111; *see* Dkt. 66.

Nine months after the dismissal, the Court granted Petitioner's Amended Application. Dkt. 75. Intervenors filed a notice of appeal on March 25, 2024, challenging both the order granting the Original Application as to JPM and the order granting the Amended Application as to Barclays NY. Dkt. 76. This motion to stay concerns only the order granting the Amended Application.

## **ARGUMENT**

In considering a motion for a stay pending appeal, a court weighs four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quotation omitted).  Here, all four factors favor of a stay.

### I.    **INTERVENORS ARE LIKELY TO SUCCEED ON APPEAL**

The first factor favors a stay because Intervenors can make a "strong showing that [they are] likely to succeed on the merits."  *World Trade Ctr.*, 503 F.3d at 170.  The Court "need not confess error and predict a reversal by the Second Circuit" to find this factor satisfied.  *Learning Annex Holdings, LLC v. Rich Glob., LLC*, 2012 WL 13133586, *1 (S.D.N.Y. Aug. 1, 2012) (quotation omitted).  Rather, it is sufficient to "demonstrate a substantial case on the merits."  *Id.* (quotation omitted).  This is especially true when a "serious legal question" is involved.  *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012) (quotation omitted).  Similarly, when the appeal presents an issue of first impression on which the Second Circuit may disagree with the district court, "that reason alone" is sufficient to satisfy the first factor.  *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010); *see Nat'l Immigr. Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 732-33 (S.D.N.Y. 2012).

Here, Intervenors' appeal will raise three legal issues, all of which concern serious legal questions and the last two of which raise questions of first impression.

**A.     Petitioner Did Not Show That Barclays NY Is "Found" In This District**

To obtain discovery under Section 1782, a petitioner must establish that the target of the discovery "resides or is found" in the District.  28 U.S.C. § 1782(a).  "[T]he statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process."  *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).

Under that standard, the Order concluded that Barclays NY is found in the District based on specific personal jurisdiction.  Dkt. 75 at 7.  That determination accepted Petitioner's assertion that "Barclays NY's extensive contacts in the State of New York gave rise to the discovery materials it seeks in its Amended Application."  *Id.*  But the only proof provided by Petitioner that *Barclays* engaged in banking services giving rise to the documents sought is the purported Barclay's SAR—Exhibit K to Petitioner's Amended Application, Dkt. 50-11.  That is fatal to specific jurisdiction.

As Intervenors explained, Exhibit K is unauthenticated, contains numerous irregularities, and is plainly not a SAR from Barclays.  Dkt. 56 at 10-13; *see* Dkt. 59.  Just as importantly, Petitioner admitted as much after being confronted with Intervenors' evidence.  *See* Dkt. 64 ¶ 20 ("[I]t appears Exhibit K is not a copy of a page from the actual Barclays SAR.").  Thus, there was no admissible evidence establishing that Barclays NY actually provided banking services that gave rise to the discovery sought.  *See Paroni v. Gen. Elec. UK Holdings Ltd.*, 2021 WL 3501234, *5 n.4 (S.D.N.Y. Aug. 9, 2021) (collecting cases holding that "[c]ourts commonly decline to rely on inadmissible evidence in the context of Rule 12(b)(2) motions made after jurisdictional discovery"); *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 260 (S.D.N.Y. 2020) (disregarding "the Settlement Instructions, the Customer Information Sheet, and the International Payment page, as unauthenticated and inadmissible" when considering a specific-jurisdiction argument).  And for that reason, Petitioner did not

establish specific jurisdiction over Barclays NY. *In re Klein*, 2022 WL 1567584, *5 (S.D.N.Y. May 18, 2022) (finding no specific jurisdiction where petitioner failed to demonstrate how "contents [of respondents' in-forum contacts] relate to this [Section 1782] application").

### B.    Petitioner Did Not Satisfy The "For Use" Or "Interested Person" Factors

The Order next determined that the discovery requested from Barclays NY is "for use in a proceeding in a foreign or international tribunal" and that Petitioner is an "interested person" in that proceeding. 28 U.S.C. § 1782(a); Dkt. 75 at 8. Intervenors are likely to show on appeal that these rulings are erroneous.

As an initial matter, the Order wrongly concluded that Intervenors were collaterally estopped from raising their arguments on the "for use" and "interested person" factors in response to Petitioner's Amended Application directed to Barclays NY. As the Order noted, collateral estoppel requires a "valid and final judgment on the merits." Dkt. 75 at 8 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). Here, the Second Circuit dismissed Intervenors' first appeal over the Original Application against JPM precisely because the Court's prior order addressing that application was not a "final judgment"—that is, it did not adjudicate all claims against all parties in this proceeding. Dkt. 66. Thus, collateral estoppel was not a proper basis to reject Intervenors' "for use" and "interested person" arguments, and it will not provide a ground for affirmance on appeal.

#### 1.    The SOI's Preliminary Review Does Not Satisfy The "For Use" Factor

Respondents are likely to prevail on appeal as to the "for use" factor because the Brazilian CVM's Superintendent Office for Investor Protection and Guidance ("SOI") does not qualify as a "tribunal," and its preliminary review is not a "proceeding."

***Tribunal.*** To be a "tribunal" the body must have adjudicative power, *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 628 (2022), and, separately, must have its decisions reviewable

in court, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47, 255 (2004).  The SOI meets neither requirement.

The Second Circuit has identified several necessary—and common sense—features of an adjudicative body.  *First*, the body must adjudicate the rights and obligations of the parties. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998).  *Second*, the body must be "impartial," with its aim "to ensure that justice is done."  *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 461 n.8 (2d Cir. 2014) ("*Berlamont*") (quotation omitted).  *Finally*, and as a corollary, a body is not a "tribunal" when its role is "more akin to a prosecutorial decision to bring a case than to that of a neutral arbitrator."  *Euromepa*, 154 F.3d at 27 (citing *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1020-21 (2d Cir. 1967) (Friendly, J.)).

Under these standards, the SOI is not a "tribunal."  The SOI has no adjudicative power; rather it only has authority to conduct a preliminary review of submitted complaints to weed out frivolous and speculative allegations and determine if an actual investigation is warranted.  Dkt. 22 ¶¶ 32-33; Dkt. 30 ¶¶ 80-82.  This power of preliminary review does not resolve anyone's rights.  *See Euromepa*, 154 F.3d at 28.  The SOI is also not an impartial dispenser of justice, *Berlamont*, 773 F.3d at 461 n.8; *India*, 385 F.2d at 1021, but essentially makes a prosecutorial decision on whether a different branch should have the opportunity to choose to open an investigation, *Euromepa*, 154 F.3d at 27.

Not only does the SOI lack adjudicative power, its decision to reject a complaint is unreviewable in court.  Dkt. 30 ¶ 46.  This absence of judicial review stands in stark contrast to the tribunal in *Intel*, which acted as a "first-instance decisionmaker" by issuing "a final

administrative action both responsive to [a] complaint and reviewable in court."  542 U.S. at 246-47, 255.

Although the Court has concluded otherwise, Dkt. 46 at 3-4, the relevant body for the "tribunal" analysis should not be the CVM as a whole.  The Second Circuit has previously looked at branches within a foreign agency and the branches within an analogous U.S. agency to determine whether a foreign body is a "tribunal" under Section 1782.  For example, in *India*— the "seminal case" on the "tribunal" issue, *Euromepa*, 154 F.3d at 27—the Second Circuit looked to whether an individual Indian tax assessor was a "tribunal," not the India tax enforcement agency as a whole, including future proceedings before the "Appellate Assistant Commissioner and the Commissioner."  *India*, 385 F.2d at 1021.  Likewise, in *ZF Automotive*, the Supreme Court analyzed in detail the particular arbitration panel of an arbitration organization, and did not treat the arbitral organization as a whole as the relevant "tribunal."  596 U.S. at 633-34.  As such, the Second Circuit will likely consider whether the SOI, not the CVM, is a foreign "tribunal."[2]

*Proceeding.*  Independently, Respondents are also likely to show that Petitioner did not satisfy Section 1782's "for use" requirement because the SOI's preliminary review is not a "proceeding" under Section 1782, but rather merely a procedure to determine if an investigation is warranted by a separate branch of the CVM.  Dkt. 22 ¶¶ 32-33; Dkt. 30 ¶¶ 80-82.  There is no Section 1782 "proceeding" where a party, with knowledge of potential criminal activity, merely submits information to a prosecutor's office in the "hope" that doing so would lead to an

---

[2]    Even if the Second Circuit were to consider the CVM as a whole to be the relevant body, Intervenors are still likely to prevail because the concentration of executive and judicial power that an indivisible CVM would wield defeats the impartiality required for "tribunal" status.  *See India*, 385 F.3d at 1020-21; *Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980) (per curiam).

investigation. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 121 (2d Cir. 2015); *see IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 678 (2d Cir. 2022) (discovery sought for investor's planned derivative suit was not "for use in a foreign proceeding" because investor could not initiate the suit on their own and had to use the discovery to "persuade a third party to initiate that proceeding"). Yet that is exactly what Petitioner seeks to do here by providing evidence to the SOI in the hope that the SOI will forward its complaint to another branch of the CVM that may (but is not required to) open an investigation.

> **2.  The Technical Branch's Hypothetical Investigation Does Not Satisfy The "For Use" Or "Interested Person" Factors**

The Second Circuit is also likely to hold that the technical branch's future hypothetical investigation fails to satisfy the "for use" and "interested person" factors. This is so for at least four reasons.

*First*, the technical branch is not a "tribunal. Like the SOI, its decisions are not impartial. It has a clear "institutional interest in a particular result." *India*, 385 F.2d at 1020; *see* Dkt. 56 at 18-20 (expanding on impartiality argument). Additionally, just like with the SOI's decision not to send a complaint to the relevant technical branch, the technical branch's decision not to charge is unreviewable in court. Dkt. 30 ¶¶ 45-46.

*Second*, even assuming that the technical branch is a "tribunal," any such hypothetical investigation in this case is not within "reasonable contemplation." *Intel*, 542 U.S. at 247. When a "proceeding depends on some intervening event or decision," the applicant "must provide an objective basis on which to conclude that the event will occur or the requisite decision will be favorable." *IJK Palm*, 33 F.4th at 680; *see id.* at 677 (applicant must show "reliable indications of the likelihood that proceedings will be instituted within a reasonable time" ) (quotation omitted). Here, SPS has not done so. Whether and when an investigation will be initiated

depends entirely on whether the SOI decides to forward Petitioner's supposedly forthcoming complaint to a technical branch of the CVM for a potential investigation and then whether that technical branch opts to pursue an investigation. *See* Dkt. 22 ¶¶ 32-36. Petitioner has acknowledged that the CVM "commence[s] investigations at its own discretion," Dkt. 6 at 10, but has provided no basis to conclude that the technical branch will do so here.

*Third*, Petitioner does not have "the *practical ability* . . . to place [the documents sought]—or the information [they] contain[]—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). All it can do is submit the documents to the SOI, which may then pass them on to the technical branch. Dkt. 22 ¶¶ 34-35; Dkt. 30 ¶ 84. That is not enough to show that the documents are "for use" in the technical branch's investigation. *See, e.g.*, *IJK Palm*, 33 F.4th at 678 (holding that the requested discovery is not "'for use' in a foreign proceeding [because] it must first be used to persuade a third party to initiate that proceeding"); *Certain Funds*, 798 F.3d at 121 (holding that the "for use" requirement is not satisfied where the applicant intends to provide information to a third party "*in the hope* that it might be used" by the third party to initiate foreign proceedings).

*Finally*, SPS is not an "interested person" in the hypothetical investigation because its participation rights in that investigation are so limited that it merely has "the opportunity to present evidence to a party to a potential [proceeding]." *IJK Palm*, 33 F.4th at 679; *see In re SPS I Fundo de Investimento de Acoes - Investimento No Exterior*, 2022 WL 16571326, *2 (D. Del. Nov. 1, 2022) (ruling that Petitioner was not an "interested person" in a different CVM matter because it can "merely give information to the CVM and hope that the CVM decides to use it").

### 3. The CVM Board's Hypothetical Enforcement Proceeding Also Does Not Satisfy The "For Use" or "Interested Person" Factors

For many of the same reasons, the Second Circuit is unlikely to conclude that SPS could satisfy the "for use" factor by pointing to the hypothetical enforcement action before the CVM Board of Commissioners.

*First*, as Petitioner's expert states, judicial review in Brazil's courts is highly unusual, Dkt. 49 ¶ 7, and in any event, a decision of the CVM Board of Commissioners cannot be reviewed on the merits, *id.* ¶ 6.[3]  This limited appellate right is far different from the appellate right that the Supreme Court found dispositive in *Intel*.  Thus, the CVM Board is not a "tribunal."

*Second*, just as the technical branch's investigation is not in "reasonable contemplation," any enforcement action is even more speculative because an enforcement action can occur only if (1) the SOI forwards the complaint to the technical branch, (2) the technical branch decides to open an investigation, and (3) after an investigation, the technical branch decides to pursue charges.  *See* Dkt. 22 ¶¶ 32-38; Dkt. 30 ¶¶ 80-84.  There is no "objective basis" to conclude that any of these events—let alone all of them—will happen.  *IJK Palm*, 33 F.4th at 680.

*Finally*, because the existence of an enforcement action (like the technical branch's investigation) depends on the SOI forwarding Petitioner's complaint to the technical branch for a possible investigation, the requested discovery is not "for use" in the enforcement action and Petitioner is not an "interested person" in that action.

---

[3]  Even the appeal of the CVM Board's decision to the CRSFN—another administrative body—is limited and can only be taken by a party whom the CVM Board imposes penalties upon, Dkt. 49 ¶ 4, n.1; Dkt. 58 ¶ 19.  That is, Petitioner cannot take an appeal if Intervenors are found to be not liable.  Dkt. 58 ¶ 19.

C.      **The Order Granting Discovery Constitutes Error Under The Discretionary Analysis**

Even if the statutory factors are satisfied, Intervenors are likely to show that the Court exceeded its discretion under Section 1782 in granting the Amended Application.  In fact, the errors underlying the order here closely track the errors that led the Second Circuit to hold in *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), that a district court had abused its discretion in granting a Section 1782 application.

As the Second Circuit has long recognized, even after the statutory factors are met, a court need not grant a Section 1782 application.  *Kiobel*, 895 F.3d at 244.  Instead, it should do so only when it would serve the twin aims of the statute—that is, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Id.* (quotation omitted).  In conducting that analysis, courts often apply the four *Intel* factors.  *Id.*  But "[t]he *Intel* factors are not to be applied mechanically.  A district court should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Id.* at 245.  Here, given the factual basis for the Amended Application—coupled with errors on at least two *Intel* factors—Intervenors are likely to show on appeal that the Order constitutes an abuse of discretion.

*First*, the only reason that Petitioner is seeking discovery from Barclays NY is **because of a criminally leaked SAR**.[4]  Dkt. 48 at 3 (Petitioner stating in Amended Application that "[*b*]*ased on the SAR*, Barclays NY has documents and information evidencing hundreds of millions if not billions of dollars in previously undisclosed transactions from Unifleisch UK to Target

---

[4]    This, of course, assumes that the SAR was real—something Petitioner has not established and that thus warrants reversal of the Order based on the statutory factors, *see supra* Part I.A.

Companies Valdarco and Lunsville") (emphasis added).  Without the SAR, Petitioner had no

reason to seek documents from Barclays NY.  SARs, however, are intended to be confidential,

thereby encouraging banks to freely report suspected suspicious activity.  *See* 12 C.F.R.

§ 21.11(a), (k); Dkt. 59 ¶ 35.  Granting the application here—and thereby subjecting a bank to

vast discovery requests stemming from a criminally leaked SAR—directly undermines the free

flow of information between banks and regulators that the SAR confidentiality requirements are

meant to promote.  Dkt. 59 ¶ 35.  That cannot be right:  Section 1782 and the SAR

confidentiality laws must be read so as not to undermine each other's policy goals.  *See, e.g.*,

*Fish v. Kobach*, 840 F.3d 710, 736 (10th Cir. 2016) ("[W]henever possible, statutes should be

read in harmony and not in conflict." ) (quotation omitted).

On this point, *Kiobel* is instructive.  There, the Second Circuit gave significant weight

(outside of the *Intel* framework) to the fact that granting the Section 1782 application would

force the target to turn over documents covered by a U.S. protective order in another case.

*Kiobel*, 895 F.3d at 246-47.  Doing so, the court said, would undermine the confidence in the

confidentiality provided by U.S. protective orders—confidentiality that is designed to

"encourage[e] full disclosure of all evidence."  *Id.* at 247.  Thus, "the respect owed to

confidentiality orders" helped show that the district court abused its discretion in granting the

Section 1782 application.  *Id.* at 248.  The same respect owed to SARs, their confidentiality, and

their role in reporting suspicious financial activity here counseled strongly against granting the

Amended Application.

The Order dismissed these concerns by accepting Petitioner's assertion that "[t]here is no

reason to believe that once the subpoena is issued, Barclays will produce any documents it is

prohibited by law from disclosing."  Dkt. 75 at 9-10.  But that assurance does not directly

address the main thrust of Intervenors' argument: Complying with the discovery burdens associated with a Section 1782 subpoena stemming directly from a criminally leaked SAR would discourage the free reporting of suspicious activity that the SAR regulations (with their confidentiality requirements) are designed to promote.

*Second*, Intervenors are likely to show that the Order misapplies *Intel* factor one by focusing on whether Barclays NY is a party to a proceeding before the CVM. Dkt. 75 at 8. The district court in *Kiobel* erred in a similar manner. *See* 895 F.3d at 246. In this circuit, the "relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." *In re Saul Klein*, 2023 WL 8827847, *10 (S.D.N.Y. Dec. 21, 2023) (quotation omitted) (collecting cases). Here, there is no dispute that the CVM is capable (if interested) of obtaining the same information Petitioners seek here from Intervenors themselves in Brazil, to the extent it exists. Dkt. 22 ¶¶ 54-68; Dkt. 30 ¶¶ 58-78.

*Third*, Intervenors are likely to show that the order misapplies *Intel* factor three, which concerns attempts "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. As the highest court in Brazil explained, "evidence obtained by unlawful means contaminates evidence which 'exclusively' results therefrom" is "inadmissible" in Brazilian courts and "may not give rise to a criminal investigation and, with more reason, be the basis of a complaint, request for evidence, and judgment." Dkt. 22 ¶ 50. As noted, Petitioner's Section 1782 discovery requests to Barclays NY stem entirely from the criminally leaked SAR. Thus, "it is very likely" that the CVM would not consider any evidence gained from Barclays NY. Dkt. 22 ¶ 50. Instead, such evidence will

likely be used for other purposes, such as Petitioner's global harassment campaign against Intervenors, as it has done consistently before.

The Order rejected this argument on the basis that any harm caused by granting the Amended Application could be remedied in Brazil through the exclusion of the produced evidence. Dkt. 75 at 10. But, under that view, *Intel* factor three could never weigh in favor of denying an application because a foreign tribunal is always free to exclude evidence. That view also conflicts with *Kiobel*, where the Second Circuit reversed because, among other things, the district court erred on the third factor by granting an application that would allow the petitioner to obtain discovery in the United States that it could not obtain in the Netherlands—thereby "circumvent[ing] the Netherlands' more restrictive discovery practices." 895 F.3d at 245. There was no suggestion that the Netherlands' ability to later exclude that evidence would alter that analysis. As in *Kiobel*, it should have been dispositive here that Petitioner is violating Brazil's proof-gathering restrictions by seeking documents that cannot be used in Brazil.

Thus, the very same errors that led the Second Circuit to reverse in *Kiobel* (confidentiality issues, *Intel* factor one, and *Intel* factor three) underlie the Order here. Intervenors are thus likely to prevail on appeal for this reason too.

## II.  INTERVENORS WILL SUFFER IRREPARABLE HARM IF DISCOVERY IS NOT STAYED PENDING APPEAL

Absent a stay, Intervenors will suffer irreparable injury. Once discovery occurs, Petitioner will have access to information to which it is not entitled. That harm will likely happen soon as the parties are currently negotiating a protective order to govern Barclays NY's production. And that harm cannot be remedied. After Petitioner's attorneys have the benefit of the knowledge gained by reviewing the documents, no subsequent destruction can erase that knowledge. *See, e.g.*, *In re Accent Delight Int'l Ltd.*, 2018 WL 7473109, *1 (S.D.N.Y. June 27,

14

2018) ("Given . . . the fact that the proverbial bell cannot be unrung once [respondent] discloses the information at issue, the Court concludes that a stay is warranted to maintain the status quo while [respondent] seeks a definitive ruling . . . from the Second Circuit.").

Furthermore, if Petitioner uses any discovery in its hypothetical CVM proceeding during the pendency of Intervenors' appeal, no U.S. court will have the power to secure its return or destruction. This is no abstract concern; it is exactly what happened in *Accent Delight* prior to the Second Circuit's grant of its initial stay. *See* 869 F.3d at 127 ("A three-judge motions panel later granted Bouvier's motion for a stay in its entirety and thus prohibited also the use of the documents in Monaco, but not before Petitioners had submitted the documents produced pursuant to the district court's order in the Monégasque proceeding."). Should Intervenors prevail on appeal, there will be no ability to compel the CVM to prohibit the parties or itself from referencing Intervenors' documents. As such, an order requiring Petitioner to return or destroy Intervenors' documents after they have been produced to Petitioner and potentially filed with the CVM in Brazil could not restore Intervenors to the same position they would have occupied had the petition been denied.

To ensure that Intervenors have an opportunity to appeal the Order and obtain meaningful relief if successful, discovery from Barclays NY should be stayed until the Second Circuit decides Intervenors' appeal. *See, e.g.*, Order, *In re Kiobel*, No. 16-cv-7922(AKH), Dkt. No. 29 ("If [Respondent] produces the documents at issue, and the Court of Appeals subsequently holds that I committed legal error or abused my discretion in granting [applicant's] petition, [applicant's] use of the documents during the interim cannot be undone. Thus, absent a stay, [respondent] will be denied a meaningful opportunity to appeal my January 24 order.").

15

## III.    PETITIONER WILL SUFFER NO INJURY IF IT RECEIVES DOCUMENTS FROM BARCLAYS NY FOLLOWING APPEAL

A stay pending appeal will not substantially injure Petitioner.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (finding the relevant inquiry to be "whether issuance of the stay will substantially injure other parties interested in the proceeding").  Petitioner cannot contest that any delay associated with a stay will have no impact on its ability to submit Section 1782 discovery in a future CVM proceeding.  *Cf. In re Noguer*, 2019 WL 1034190, *5 (S.D.N.Y. Mar. 5, 2019) (denying stay pending appeal where "petitioners may lose altogether any chance to use the materials they seek in the [foreign] appellate proceedings").  Indeed, Petitioner has deliberately held off filing its purported complaint with the CVM despite its "belie[f] the complaint is already sufficient and contains enough detailed allegations and supporting evidence to file as is with CVM."  Dkt. 25 at 6; *see* Dkt. 63 at 9.  It has affirmatively conceded that no deadlines or statute-of-limitations issues would prevent it from filing its complaint with the CVM after the appeal concludes.  Dkt. No. 26 ¶ 48 (stating that "facts under SPS's complaint would not be time barred under Brazilian laws").  Given Petitioner's willingness to sit on its purported CVM complaint and discovery requests here, Petitioner will suffer no injury, let alone "substantial" injury, if a brief stay pending appeal is granted.[5]

## IV.    THE PUBLIC HAS NO INTEREST IN BARCLAYS NY PRODUCING DOCUMENTS PRIOR TO THE COMPLETION OF APPELLATE PROCEEDINGS

Any interest the U.S. public has in aiding Petitioner's hypothetical CVM "proceeding" while Intervenors' appeal is pending is minimal.  For starters, the public interest is best served by

---

[5]    *See Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 WL 3023997, *5 (S.D.N.Y. Apr. 3, 2012) (finding no irreparable harm to parties opposing stay when they would have to wait to receive funds during pendency of stay because "[t]hat delay is not disputed, but the nature and extent of the harm is not comparable to what [party seeking stay] may face absent a stay"), *report and recommendation adopted*, 2012 WL 3023985 (S.D.N.Y. July 24, 2012).

preserving the status quo, allowing Intervenors to fully pursue their appeal. *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978) ("[T]he maintenance of the status quo is an important consideration in granting a stay . . . .").

Moreover, Section 1782 serves little purpose here because Intervenors are present in Brazil, and the CVM has the ability to order Intervenors to produce many if not all of the documents it seeks here from Barclays NY, if they even exist. *See* Dkt. No. 22 ¶¶ 54-68. Thus, Section 1782 discovery in this case is more likely to interfere with the CVM's own investigatory prerogatives, rather than assist it. *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (explaining that the purpose of Section 1782 was to offer "assistance," not "interference" to foreign tribunals). Neither of Section 1782's twin aims would be served by permitting discovery pending appeal.

Finally, the public interest favors a stay here as Petitioner filed this Section 1782 request in response to criminally leaked information, for which the perpetrator was imprisoned in the United States, Dkts. 31-6, 31-7, and for the purpose of harassing Intervenors. As explained in Intervenors' prior briefing, Petitioner has filed a handful of complaints, arbitrations, and suits in Brazil against Intervenors, and filed, prior to this application, another Section 1782 application in the District of Delaware seeking discovery for purported use in a CVM proceeding against the Batistas, all of which have been rejected. *See* Dkt. 21 at 3-6, 9-10; Dkt. 56 at 6-7. And it was recently rebuked by a Brazilian court for its tactics. Dkt. 56 at 6-7. The public interest is not served by permitting a party to pursue burdensome discovery as part of a campaign to harass another party. On the contrary, it is served by limiting "investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012).

## **CONCLUSION**

For the foregoing reasons, the Court should stay the Order pending appeal.


DATED:    New York, New York                    Respectfully submitted,
          April 4, 2024
                                                QUINN EMANUEL URQUHART
                                                & SULLIVAN, LLP


                                                By:  */s/ William B. Adams*
Gavin Frisch                                         Michael B. Carlinsky
111 Huntington Avenue, Suite 520                     William B. Adams
Boston, Massachusetts 02199                          Lucas V.M. Bento
(617) 712-7100                                       51 Madison Avenue, 22nd Floor
gavinfrisch@quinnemanuel.com                         New York, New York  10010
                                                     (212) 849-7000
                                                     michaelcarlinsky@quinnemanuel.com
                                                     williamadams@quinnemanuel.com
                                                     lucasbento@quinnemanuel.com

                                                     *Attorneys for Intervenors Joesley Batista,*
                                                     *Wesley Batista, JBS S.A., and J&F*
                                                     *Investimentos S.A.*