**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF<br>SPS I FUNDO DE INVESTIMENTO DE AÇÕES –<br>INVESTIMENTO NO EXTERIOR<br><br>                             *Petitioner,*<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Take<br>Discovery for use in Contemplated Proceeding in the<br>Federative Republic of Brazil. | Case No. 22-mc-00118-LAK |

### PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION
### TO INTERVENORS' MOTION TO STAY DISCOVERY PENDING APPEAL

**BAIRD HOLM LLP**
Jeremy C. Hollembeak
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402.636.8317
Email: jhollembeak@bairdholm.com

**MB SCANLON PLLC**
Gabriela M. Scanlon
(*pro hac vice* application pending)
4301 50th Street NW, 1st Floor
Washington, D.C., 20016
Telephone:  (202) 410-9293
Email: gabriela@mbscanlon.com

*Attorneys for Petitioner SPS I Fundo de Investimento de Ações – Investimento no Exterior.*

April 18, 2024

# TABLE OF CONTENTS

**Page(s)**

LEGAL STANDARD…………………………………………………………………..2

ARGUMENT……………………………………………………………………….……..3

**I.   INTERVENORS FAIL TO SHOW LIKELIHOOD OF SUCCESS ON MERITS** ........ 3

    A.   Barclays NY is Clearly "Found" in This District............................................................ 4

    B.   The Remainder of the Intervenors' Statutory Requirements Arguments Derive From the False Premise That This Court Misconstrued The Underlying Foreign Tribunal And Proceeding. ...................................................................................................................... 6

    C.   The Intervenors' Are Unlikely To Succeed On Appeal From This Court's Findings That SPS Satisfied "For Use" And "Interest Person" Factors. ....................................................... 11

    D.   The Intervenors Cannot Show That the Court Abused Its Discretion in Applying the *Intel* Factors. ....................................................................................................................... 14

**II.  INTERVENORS HAVE NOT SHOWN THEY WILL SUFFER IRREPARABLE HARM**......................................................................................................................... 17

**III. SPS *WILL* SUFFER HARM IF A STAY PENDING APPEAL IS GRANTED** ........... 19

**IV.  PUBLIC INTEREST FAVORS DENIAL OF STAY**...................................................... 20

CONCLUSION…...……………………………………………………….……..25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Al-Attabi*,
No. 21-MC-207-(VSB) (RWL), 2022 WL 1640806 (S.D.N.Y. May 24, 2022) ....................22

*In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery*
*for Use in Foreign Proc.*,
773 F.3d 456 (2d Cir. 2014).............................................................................8, 10

*In re Application of Abraaj Invest. Mgmt. Ltd.*,
No. 20-MC-229 (VSB), 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023)...............................4, 5

*In re Application of Chevron Corp.*,
709 F. Supp. 2d 283 (S.D.N.Y. 2010)...........................................................2, 17, 22

*In re Application of del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)..............................................................................4, 6

*In re Ex Parte Application of Klein*,
No. 20-mc-203 (PKC), 2022 WL 1567584 (S.D.N.Y. May 18, 2022)...................................6

*In re Ex Parte Application of Saul Klein*,
No. 23 Misc. 211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023),
*appeal filed* (2d Cir. Jan. 26, 2024) ....................................................................14

*Church v. Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*,
2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015) ............................................................3

*In re Clerici*,
481 F.3d 1324 (11th Cir. 2007) ("[N]othing in the plain language of § 1782
requires that the proceeding be adjudicative in nature.") .......................................11

*Doe v. East Lyme Bd. of Educ.*,
962 F.3d 649 (2d Cir. 2020)................................................................................7

*Empresa Cubana del Tobaco v. Culbro Corp.*,
2004 WL 925615 (S.D.N.Y. Apr. 30, 2004).............................................................3

*Euromepa S.A. v. R. Esmerian Inc.*,
51 F. 3d 1095 (2d Cir. 1995)..........................................................................22, 25

*In re Furstenberg Fin. SAS*,
785 F. App'x 882 (2d Cir. 2019) .........................................................................13

ii

*Gushlak v. Gushlak*,
486 Fed. App'x 215 (2d Cir. 2012)...................................................................22

*In re Hansainvest Hanseatische Inv.-GmbH*,
No. 18-MC-310 (ALC), 2019 WL 5939860 (S.D.N.Y. Oct. 4, 2019) ("While
Respondents concern is noted, it is one common to every Section 1782 case.") ..17, 18, 19, 21

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
No. 19-MC-80277-TSH, 2020 WL 1274877 (N.D. Cal. Mar. 17, 2020) ...............................18

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
33 F.4th 669 (2d Cir. 2022)...............................................................9, 10

*Intel v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).................................................................... *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015)...............................................................8, 9, 10

*Jock v. Sterling Jewelers, Inc.*,
738 F. Supp. 2d 445 (S.D.N.Y. 2010)...............................................................3

*In re Khrapunov*,
2018 WL 3609045 (N.D. Cal. July 27, 2018).........................................................25

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)...............................................................16, 17

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
385 F.2d 1017 (2d Cir. 1967)...............................................................11

*In re Martinez Sampedro*,
No. 3:18-MC-47 (JBA), 2019 WL 3423568 (D. Conn. July 30, 2019), *aff'd
sub nom. Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14 (2d Cir. 2020) ......................8

*In re Martinez Sampedro*,
No. CV 3:18MC47(JBA), 2020 WL 1158701 (D. Conn. Jan. 16, 2020) (given
that "the goal of § 1782 is to 'provid[e] efficient means of assistance to
participants in international litigation in our federal courts,' the granting of a
stay which delays the disclosure of documents would seem to work against
that goal").................................................................................21

*Mees v. Buiter*
793 F.3d 291 (2d 2015)...............................................................13

*Newspaper Guild/CWA of Albany v. Hearst Corp.*,
2011 WL 541821 (N.D.N.Y. Feb. 8, 2011) ...............................................................3

*Nken v. Holder*,
    556 U.S. 418,434 (2009) ..................................................................................3

*In re Noguer*,
    No. 18-MC-498 (JMF), 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) ...................................17

*In re Platinum Partners Value Arbitrage Fund L.P.*,
    2018 WL 3207119 (S.D.N.Y. June 29, 2018) .....................................................21

*SEC v. Daspin*,
    557 F. App'x 46 (2d Cir. 2014) ...................................................................3

*SEC v. Finazzo*,
    No. M18-304 (KMW), 2008 WL 1721517 (S.D.N.Y. Apr. 11, 2008) .............................2

*SEC v. Univ. Express, Inc.*,
    2007 WL 2245509 (S.D.N.Y. Aug. 3, 2007) .......................................................3

*Tweed-New Haven Airport Authority v. Town of East Haven, Conn.*,
    2009 WL 113447 (D. Conn. Jan. 15, 2009) .......................................................3

*United States v. Sanitation Indus. Assoc.*,
    44 F.3d 1082 (2d Cir. 1999) ......................................................................2

*Wuliger v. Off. of Comptroller of Currency*,
    394 F. Supp. 2d 1009 (N.D. Ohio 2005) .........................................................16

*ZF Automotive US, Inc., et al., v. Luxshare LTD*,
    596 U.S. 619 (2022) ...............................................................................11

SPS I Fundo de Investimento de Ações – Investimento no Exterior ("**SPS**"), petitioner in this action seeking discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782, hereby opposes and respectfully submits this memorandum of law in opposition (the "**Opposition**") to the motion (ECF No. 78, the "**Stay Motion**") and supporting memorandum of law (ECF No. 79, "**Stay MoL**") of Intervenors Joesley Batista, Wesley Batista, JBS S.A. and J&F Investimentos (collectively, the "**Intervenors**") to stay discovery pending completion of their appeal from the Court's March 4, 2024, Memorandum Opinion (ECF No. 75, the "**Mem. Op.**") granting SPS's amended application to subpoena certain designated financial records from The New York Branch of Barclays Bank PLC ("**Barclays NY**").[1]  In support of its Opposition, SPS hereby incorporates its original application and all exhibits thereto (ECF No. 6, the "**Application**"), its amended application and all exhibits thereto (ECF No. 48, the **"Amended Application"**) and all declarations and supplemental declarations (including exhibits) filed in connection therewith, and the third supplemental declaration of Jeremy C. Hollembeak in support of this Opposition and in further support of the Amended Application being filed contemporaneously herewith (the "**Third Suppl. Hollembeak Decl.**").

## PRELIMINARY STATEMENT

This is the second motion for stay pending appeal the Intervenors have filed in this action. Their first stay motion (ECF No. 37) was filed after they appealed this Court's denial of their motion to quash Petitioner's subpoena of JPM pursuant to the original Application (ECF No. 34). This Court correctly and resoundingly denied Intervenors' first stay motion, explaining:

> ***Intervenors*** are mistaken regarding the seriousness of their legal questions, and they ***do not have a material chance of prevailing on appeal***. [….]

---

[1] The Intervenors' instant Stay Motion concerns only the subpoena to be issued to Barclays NY pursuant to the Court's grant of SPS's Amended Application. *See* Stay MoL at 2.

> ***Intervenors' appeal relies on a single premise that already was considered closely and soundly rejected by the Court***. Specifically, Intervenors argue that the relevant "foreign tribunal" is not [CVM] but rather a subdivision of the CVM called the Superintendent Office for Investor Protection and Guidance ("SOI"). Yet ***there is no support in the law or facts for such a narrow view of the relevant foreign tribunal***. To the contrary, the Second Circuit already has affirmed a district court's rejection of a similarly myopic view of the relevant "foreign tribunal" with respect to an analogous government agency in Spain.

*See* Memorandum Opinion issued January 24, 2023 (ECF No. 46), at 3-4.

Intervenors' second stay motion which is now before the Court relies on the exact same grounds as their first, save for one additional issue. That one additional issue – whether Barclays NY is "found" in this district for purposes of § 1782 – also is not a serious legal question, much less an issue of first impression as the Intervenors' contend. Thus, Intervenors once again have raised no issues or concerns warranting a stay pending appeal and there is no reason for the Court to depart from its prior ruling on this new attempt. For the reasons discussed below, and in light of the incorporated submissions and the record before the Court, SPS respectfully submits the Stay Motion should be denied in its entirety.

## LEGAL STANDARD

The Intervenors, as the party seeking a stay, bear a "difficult burden." *United States v. Sanitation Indus. Assoc.*, 44 F.3d 1082, 1084 (2d Cir. 1999). To meet this burden, the Intervenors must establish: (1) a "strong showing that [they are] likely to succeed on the merits"; (2) they will be "irreparably injured absent" a stay; (3) a stay will not "substantially injure the other parties interested"; and (4) a stay would advance the "public interest." *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 300 (S.D.N.Y. 2010), *as corrected* (May 10, 2010), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (quoting *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)). "[T]he burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." *SEC v. Finazzo*, No. M18-304 (KMW), 2008 WL 1721517, at *2 (S.D.N.Y. Apr. 11, 2008).

<u>**ARGUMENT**</u>

The Intervenors once again fail to satisfy their "difficult burden" of demonstrating the propriety of a stay here. They do not have a likelihood of success on the merits, as all of the statutory requirements and discretionary factors that bear on access to discovery under § 1782 cut against them. They are similarly unable to show that the balance of harms from or public interest in a stay weigh in their favor.

**I.      INTERVENORS FAIL TO SHOW LIKELIHOOD OF SUCCESS ON MERITS**

For a stay pending appeal to be warranted here, the Intervenors are required to make a "strong showing" that they are likely to succeed on the merits of their appeal. *Nken v. Holder*, 556 U.S. 418,434 (2009); *SEC v. Daspin,* 557 F. App'x 46, 47 (2d Cir. 2014). The Intervenors argue their appeal from the Memorandum Opinion involves "serious legal questions" that will present the Second Circuit with "issues of first impression," and for "that reason alone" they have made the necessary showing. (*See* Stay MoL at 3 (citing *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010))). The Intervenors are wrong – the Court's denial of their motion to vacate fell well within the ambit of prior binding and persuasive precedent. Simply put, this was not a close case, and the Intervenors' appeal will not raise any issues of first impression.[2] For the reasons set forth below, the Intervenors have failed to meet their difficult burden on this factor.

---

[2]      Courts in this circuit give little weight to an appellant labeling its own appellate issues as ones of first impression. *See, e.g.*, *Church v. Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, 2015 WL 5051769, at *3 (S.D.N.Y. Aug. 26, 2015) (denying stay despite claim that appeal presented "a question of first impression"); *Newspaper Guild/CWA of Albany v. Hearst Corp.*, 2011 WL 541821, at *1 (N.D.N.Y. Feb. 8, 2011) (giving "little weight" to the fact that "the issues presented on appeal may technically be of 'first impression'"); *Tweed-New Haven Airport Authority v. Town of East Haven, Conn.*, 2009 WL 113447, at *3 (D. Conn. Jan. 15, 2009); *SEC v. Univ. Express, Inc.*, 2007 WL 2245509, at *2 (S.D.N.Y. Aug. 3, 2007); *Empresa Cubana del Tobaco v. Culbro Corp.*, 2004 WL 925615, at *5 (S.D.N.Y. Apr. 30, 2004). In *Jock v. Sterling Jewelers, Inc.*, cited by the Intervenors, the "reason alone" that the court there relied upon was not that the issue was one of first impression. Rather, it was the fact that "the thrust of the appeal arguably rests on factual distinctions between this case and *Stolt-Nielsen* that were trumpeted by the dissenting Justices as limitations on the majority's holding" that indicated a likelihood of success. 738 F. Supp. 2d at 447.

**A.    Barclays NY is Clearly "Found" in This District.**

The Intervenors have fallen well short of demonstrating a likelihood of success in showing that Barclays NY is not "found" in this District for purposes of § 1782. Indeed, the Court's ruling on that critical foundational issue is comfortably in line with authority and practice within the Second Circuit.

In this Circuit, the "found" requirement in § 1782 "extends to the limits of personal jurisdiction consistent with due process." *In re Application of del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) ("***Valle Ruiz***"). General personal jurisdiction typically requires that an entity be incorporated (or otherwise organized) in the operative forum or have its principal place of business there. *In re Application of Abraaj Invest. Mgmt. Ltd.*, No. 20-MC-229 (VSB), 2023 WL 2674752, at *4 (S.D.N.Y. Mar. 29, 2023) ("***Abraaj***"). Because the Court determined that Barclays NY does not satisfy either of those requirements, it rightly assessed whether Barclays NY is within the Court's specific personal jurisdiction. In the § 1782 context, that requires determining whether there is a sufficient causal connection between the discovery target's contacts with the District and the specific discovery material sought by the application. *Valle Ruiz*, 939 F.3d at 530. Whether "but for" causation or "proximate cause" is required depends on the nature and extent of the discovery target's District contacts. *Id.* Where financial transactional records are sought, even a proximate causal connection can be established where it is shown that a bank *may* have handled the transactions in question, even if the § 1782 applicant cannot identify specific transactions at the time of application. *Abraaj*, 2023 WL 2674752 at * 5 (granting leave to serve multiple intermediary banks with subpoenas under § 1782 and explaining, "[t]he fact that Applicants cannot point to specific intermediary transactions is not cause for rejecting jurisdiction…; in fact, it is the very reason that Applicants are seeking to subpoena the entities").

Barclays NY is clearly "found" in this District for § 1782 purposes regardless of which specific personal jurisdiction causation standard applies. As amply demonstrated of record in SPS's Amended Application (and supporting submissions), (*see, e.g.,* ECF No. 48, Am. App. at 19-23), there is a strong and direct link between Barclays NY's undisputed correspondent banking practices in its New York City location and the particular financial transactional documents sought by SPS—which documents, indeed, exist by virtue of those very correspondent banking practices. Thus, the record amply supports the Court's determination it "has specific personal jurisdiction over Barclays NY because the documents sought by the amended application resulted from the correspondent banking services Barclays NY provides from New York." (Mem. Op. at 7.)

On appeal, the Intervenors' will seek reversal of this Court's determination that Barclays NY is "found" in this district by impugning the admissibility of the Barclays NY Suspicious Activity Report ("**SAR**"), (*see* Stay MoL at 4), the public disclosure of which through international media first alerted SPS that the Intervenors' had utilized Barclays NY's correspondent banking services to engage in illicit, previously undisclosed transactions. As the above-cited portions of SPS's Amended Application attest, however, the Intervenors' contention that the media-disclosed SAR is the "only proof" here that Barclays NY is "found" in the District is demonstrably false. (*Id.*) And as the Court aptly noted, their argument is fatally flawed in attempting to conflate the SAR with the underlying Barclays NY transactional records actually sought by SPS in its Amended Application. (Mem. Op. at 7.) To the extent the Intervenors are also trying to claim that a § 1782 application can only be granted where it has been conclusively established that specific banking records actually exist, such a contention is without support. *See Abraaj*, 2023 WL 2674752 at * 5 (holding that correspondent banks "potentially serving as intermediaries" for the money transfers of interest to the applicant was sufficient to support specific subject matter

jurisdiction for § 1782 purposes). In any event, the argument is moot now – following the Court's memorandum opinion, Barclays NY has confirmed to counsel for both SPS and the Intervenors that it has located documents within its possession, custody or control in this district that are responsive to SPS's subpoena and that it plans to produce, subject to entry of a protective order which the parties are still negotiating. (Third Suppl. Hollembeak Decl. ¶¶ 16-17).

Finally, the Intervenors' reliance here on *In re Ex Parte Application of Klein*, No. 20-mc-203 (PKC), 2022 WL 1567584 (S.D.N.Y. May 18, 2022) (**"*Klein*"**), is also misplaced. (*See* Stay MoL at 4-5.) In stark contrast to the robust showing in SPS's Amended Application, the applicant in *Klein* made no effort whatsoever to demonstrate *any type or degree* of causal connection between the banking records it sought and the forum contacts of several target banks over which the court lacked general jurisdiction. 2022 WL 1567584 at *4-6. As such, it is completely unsurprising that the *Klein* court found the applicant had failed to satisfy the *Valle Ruiz* jurisdictional requirements with respect to the target banks. *Klein* is thus wholly inapposite and in no way undermines the Court's ruling that Barclays NY is "found" in this District.

### B.    The Remainder of the Intervenors' Statutory Requirements Arguments Derive From the False Premise That This Court Misconstrued The Underlying Foreign Tribunal And Proceeding.

The Intervenors' arguments as to the remaining statutory factors are mere recyclings of arguments that this Court flatly rejected in its thorough Memorandum Opinion concerning SPS's original Application (ECF No. 34, at 7-16) and then subsequently found were not serious questions meriting a stay pending appeal (ECF No. 46, at 3-4). The Intervenors now quibble with the Court's unwillingness to reconsider those thoughtful and conclusive prior legal rulings on the ground that there has not yet been a "final judgment" to support application of collateral estoppel here. (*See* Stay MoL at 5.) Whether the operative preclusion doctrine is collateral estoppel or the law-of-the-

case[3], the Intervenors cite no authority suggesting that the Court is somehow obliged to reconsider rehashed legal arguments that it has long since conclusively rejected in this very matter.

Notwithstanding the lack of any legal or evidentiary basis to further (re)consider the Intervenors' arguments why § 1782's "for use" and "interested person" requirements have not been satisfied, for the sake of completeness, SPS will briefly address the fallacy of those arguments. As this Court already once found (ECF No. 46, at 3-4), all of those arguments derive from a singular premise—that this Court based its decision on an overly-broad misconception of the relevant "foreign tribunal." Specifically, the Intervenors insist the Court erred by treating Brazil's Comissão de Valores Mobiliários ("**CVM**") as a comprehensive single body rather than a collection of separate bodies that just happen to coordinate with each other to perform the function of a single agency of the Brazilian government. Instead, the Intervenors argue the Court should have treated CVM as three separate "tribunals" for purposes of analysis under § 1782: (1) CVM's Superintendent Office for Investor Protection and Guidance ("**SOI**"), which is responsible for receiving and reviewing complaints by investors, like SPS, against public Brazilian companies and control their persons, like the Intervenors, to determine if further investigations and formal charges are warranted; (2) CVM's so-called "technical branch," (Stay MoL at 8), which is responsible for conducting investigations ordered by the SOI;[4] and (3) CVM's Board of Commissioners, which is responsible for adjudicating formal charges issued by a technical branch as well as appeals by investors from decisions by a technical branch not to investigate or bring charges. (*See* ECF No. 22 (the "**Renteria Decl.**") ¶¶ 32-38; Suppl. Gonzalez Decl. ¶¶ 36-39, 52.)

---

[3]     *See Doe v. East Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) ("'[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.'" (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009))).

[4]     SPS assumes the "technical branch" Intervenors are referring to is the Superintendent Offices of Company Relation or SEP. However, the CVM has several component offices fitting the description of the term "technical branch," including the SOI itself. *See* Renteria Decl. ¶¶ 34, 36(iii) (referencing branches).

The Intervenors' strategy is clear: Establishing the parameters of the relevant "proceeding before a foreign tribunal" is a necessary first step in determining whether a § 1782 applicant has satisfied the statutory requirements of being an "interested person" seeking discovery "for use" in that proceeding. Here, if the relevant "foreign tribunal" is the CVM as a whole, the parameters of the relevant "proceeding" include all of the rights and procedures available to SPS under CVM's accusatorial system, at all stages and before all of CVM's component offices and the Board of Commissioners. The Intervenors know they have virtually no chance of persuading the Second Circuit that a proceeding with such parameters fails to satisfy § 1782 – a holding the Second Circuit could only reach by dramatically narrowing its longstanding broad reading of the Supreme Court's decision in *Intel*[5] and effectively overruling numerous prior decisions of its own and of lower courts within this circuit.[6] However, *if* the Second Circuit decided to view the relevant "foreign tribunal" here is the SOI alone, then (according to Intervenors' logic) all of the investigative and adjudicative functions performed on investor complaints by CVM's other technical branches and its board of commissioners would be excluded from the analysis of whether a proper "proceeding" exists for purposes of obtaining § 1782 subpoena authority. In other words, Intervenors' appeal hinges on their convincing the Second Circuit to put blinders on and determine whether SOI's intake process for reviewing and deciding what to do next with investor complaints, viewed in isolation, qualifies as a "proceeding before a foreign tribunal."

---

[5]     *See, e.g., Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.,* 798 F.3d 113, 118 (2d Cir. 2015) ("**KPMG**") (explaining *Intel* was an "easy case" and does not establish minimum requirements for Section 1782 eligibility) (discussing *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("**Intel**").

[6]     *See, e.g., In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456 (2d Cir. 2014) ("**Berlamont**"); *In re Martinez Sampedro*, No. 3:18-MC-47 (JBA), 2019 WL 3423568, at *3 (D. Conn. July 30, 2019) (overruling objection and permitting discovery, explaining although applicant's filing of complaint with Spanish CNMV did not trigger a sanction proceeding automatically, the fact that it commenced a review process by CNMV was sufficient to make the sanctioning proceeding "within reasonable contemplation." (citing *Intel*, 542 U.S. at 259)), *aff'd sub nom. Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14 (2d Cir. 2020), as amended (June 5, 2020) ("**Sampedro**").

The Intervenors' motivation for urging such a distorted § 1782 analysis is clear. Only by obscuring the relevant "tribunal" and "proceeding" can the Intervenors argue the Amended Application is distinguishable from the one considered in *Intel*, and indistinguishable from the ones rejected in *IJK*[7] and *KPMG*. In both those cases, the Second Circuit found that the underlying proceeding failed to satisfy § 1782 because it did not provide the applicant direct access to the ultimate adjudicative body, but merely a mechanism to pass on any discovery it obtained to an intermediary who was not obligated to pass it on any further.[8] According to the Intervenors, the same finding should be reached here because SPS has no ability to submit § 1782 discovery directly to CVM's adjudicative units, and therefore must submit it to SOI with nothing more than hope that SOI will send it on for charges or further investigation. (Stay MoL at 6-8).

The Second Circuit will not fall for the Intervenors' ruse. Neither statutory language nor any precedent identified by the Intervenors mandates or otherwise suggests that U.S. district courts must dissect a foreign governmental agency into individual "branches," distinguish between the different functions performed by each branch, and then limit its analysis of § 1782's requirements to those functions performed by the individual branch with which a § 1782 applicant initially interacts. Moreover, as this Court already recognized, "the Second Circuit already has affirmed a

---

[7]     *IJK Palm LLC v. Anholt Servs. USA, Inc.,* 33 F.4th 669 (2d Cir. 2022) ("***IJK***").

[8]     *See Id.,* 33 F.4th at 678 ("The 'proceeding' on which IJK relies is the potential action that *the liquidators* would have discretion to file in a Cayman Court.") (emphasis added)); *KPMG*, 798 F.3d at 121 (applicant Funds admittedly lacked 25% stake necessary to direct Delegate to commence quasi-judicial proceedings, and "[c]onsequently, the Funds are not in a position to direct the Delegate to consider their evidence or submit that evidence to the tribunal").

district court's rejection of a similarly myopic view of the relevant 'foreign tribunal' with respect to an analogous government agency in Spain." (ECF No. 46, at 4 (citing *Sampedro*)).[9]

Even if the SOI were the relevant tribunal (which it is not), as this Court correctly recognized, the Intervenors' "confounding" argument unjustifiably ignores the adjudicative significance of the SOI being duty-bound to review SPS's submissions—quite unlike the liquidators in *IJK* and the Delegate in *KPMG*—and of the SOI's determinations to have those submissions investigated further being subject to appeal before CVM's Board of Commissioners. As such, SOI's review and initial investigation of the allegations in SPS's complaint will necessarily be an "investigation before formal accusation." (ECF No. 34, Mem. Op. at 11 n.37). This language from the current version of § 1782 was added by Congress to prevent court's from applying the statute too narrowly when discovery was being sought for submission to a body that performed investigatory rather than strictly adjudicatory functions. *See, e.g., Berlamont*, 773 F.3d at 460–61 ("The Swiss criminal investigation in the instant case is exactly the type of proceeding that the 1996 amendments to [§ 1782] were intended to reach. The criminal inquiry is a 'proceeding' and an 'investigation' being conducted by a Swiss magistrate.").

Intervenors attempt to avoid this straight-forward application of statutory language by citing to case law that make reference to a § 1782 "tribunal" having "adjudicatory" power or performing "adjudicatory" functions. (Stay MoL at 6). However, none of the decisions cited by Intervenors stand for the proposition that adjudicatory power or functionality is a necessary requirement to constitute a proper § 1782 tribunal. *See, e.g., India*, 385 F.2d at 1018-21 (denying

---

[9]     Intervenors two purported counter-examples are inapposite. (Stay MoL at 7 (citing *ZF Automotive US, Inc., et al., v. Luxshare LTD*, 596 U.S. 619 (2022) ("***ZF Automotive***") and *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017 (2d Cir. 1967) ("***India***")). Neither decision addressed disagreement about the identity of the relevant tribunal or the propriety generally of entire foreign agencies being considered as the relevant "tribunal" for purposes of § 1782.

§ 1782 discovery to Indian tax assessor, noting such assessors "are not acting as judges deciding a litigation between the citizen and the State: they are administrative authorities whose proceedings are regulated by statute," but also clarifying "[w]e do not hold […] that a foreign agency must satisfy all the requirements for adjudicative proceedings under the Administrative Procedures Act to qualify as a 'tribunal' under 28 U.S.C. § 1782"); *ZF Automotive*, 596 U.S. at 637 (acknowledging "Governmental and intergovernmental bodies may take many forms, and we do not attempt to prescribe how they should be structured" to comply with § 1782). *See also In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) ("[N]othing in the plain language of § 1782 requires that the proceeding be adjudicative in nature.").

In sum, the unjustifiably narrow view of the underlying tribunal and proceeding that Intervenors will advance on appeal does not serve as a premise for serious legal questions, much less issues of first impression, and has very little (if any) chance of being accepted by the Second Circuit. As the remainder of Intervenors' statutory argument are outgrowths of this premise, they too have little (if any) likelihood of success on appeal.

## C. The Intervenors' Are Unlikely To Succeed On Appeal From This Court's Findings That SPS Satisfied "For Use" And "Interest Person" Factors.

As noted above, even if the relevant tribunal was SOI instead of the CVM as a whole, the act of an investor such as SPS filing a complaint with SOI gives rise to a "proceeding" for purposes of § 1782 because SOI is duty-bound to review and consider such complaint and the investor has the ability to appeal an adverse decision by SOI not to submit the complaint for further investigation. Importantly, the investor need not persuade a third party outside the SOI (or the CVM generally) to conduct the investigation. Thus, an investor's ability to commence a proceeding by placing evidence directly before a reviewing, investigating and decision-making body through an initial complaint as well as through subsequent submissions, as well as the right

11

of appeal a decision by that body not to conduct or continue an investigation, qualify that investor as an "interested person" for purposes of proceeding in question. Indeed, as this Court held, such qualification is not subject to serious debate in this Circuit. (ECF No. 34, at 13-14.)

It follows that if such investor sought evidence via § 1782 to be included in its initial complaint or subsequent submissions to the SOI/CVM, then the investor's § 1782 application would indeed be seeking evidence "for use" in that proceeding. To argue otherwise on their forthcoming appeal (as they did before this Court), the Intervenors posit that no such proceeding is "reasonably contemplated" here. Restated, Intervenors' cascading argument proceeds as follows: (i) even if an enforcement action before CVM's board of commissioners were a qualifying § 1782 "proceeding,"[10] that proceeding is not within "reasonable contemplation" here because it would be dependent upon the CVM's technical branch bringing charges; (ii) even if the CVM technical branch's investigation and charging decision were a qualifying § 1782 "proceeding," that proceeding is not within "reasonable contemplation" here because it would be dependent upon the SOI forwarding SPS's complaint to the technical branch for further investigation, and (iii) even if the SOI's preliminary review of an investor complaint and determination whether to forward that complaint to a technical branch for further investigation were a qualifying § 1782 "proceeding," that proceeding is not within "reasonable contemplation" here because it would be dependent upon SPS actually submitting a complaint to the SOI through proper channels and the SOI receiving that complaint. (Stay MoL at 8-10). Clearly Intervenors'

---

[10] Unwilling to concede anything, Intervenors argue that even a post-charging enforcement proceeding before CVM's board of commissioners fails to qualify as a § 1782 "proceeding" because an investor purportedly has no ability to seek judicial review of a decision by the commission to acquit alleged bad actors of charges that were brought as a result of the investor's complaint. (Stay MoL at 10). But this is unremarkable, as it mirrors the circumstances of a § 1782 applicant seeking evidence to support a criminal complaint in a foreign jurisdiction that, like the United States, prohibits appealing an acquittal of charges brought by the government. By contrast, as Intervenors themselves admit, bad actors convicted of charges initiated by an investor complaint to the CVM are able to seek appeals outside the CVM. (Stay MoL at 10, n.3).

argument is premised on their myopic view of the CVM as three separate and distinct "tribunals" for purposes of § 1782 analysis, which in turn allows them to advance an improperly narrow and disjointed view of the CVM's procedures for receiving, investigating and adjudicating investor complaints.[11]

Moreover, prong (iii) of Intervenors' argument is no longer a hypothetical dispute. Earlier this month, SPS submitted a complaint to the CVM along with substantial supporting evidence of numerous violations of Brazilian law by the Batistas. (Third Suppl. Hollembeak Decl. ¶ 21). Thereafter, SPS received an official response from the SOI confirming that such complaint and evidence had been received and was being processed. (*Id*. at ¶ 22). Specifically, the SOI's official response expressly (i) confirmed that an administrative proceeding had been initiated to analyze the complaint; and (ii) provided instructions for how any inclusions or amendments to the original complaint should be submitted by means of the Digital Filing system of the CVM (*Protocolo Digital*). (*Id*.). Accordingly, the "Contemplated Proceeding" as it is referred in the Amended Application has now been commenced per (i) above, and SPS will have the ability to submit additional evidence it obtains through this action from Barclays NY (or JPM) by following the instructions provided in (ii) above. (*Id*.). SPS is in the process of obtaining an English translation

---

[11] To the extent Intervenors' argument relies on interpretations of Brazilian law or procedure advanced by their Brazilian counsel that contradict interpretations of the same law or procedure advanced by SPS's Brazilian counsel, the Second Circuit is likely to reject the argument to avoid engaging in a "battle-by-affidavit of international legal experts" that it has repeatedly warned against in the context of disputes over § 1782 discovery requests. *Mees v. Buiter* 793 F.3d 291, 298, n.9 (2d 2015). *See also In re Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) (summary order) ("As for Paul's effort to characterize Applicants' participation rights in a Luxembourg criminal proceeding as too attenuated to satisfy the "for use" prong of the second statutory criterion, these contentions invite the Court to delve into a 'battle-by-affidavit of international legal experts' that turns on a prediction of 'the procedural or substantive law of the foreign jurisdiction,' which is beyond the scope of a Section 1782 inquiry." (quoting *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995)).

of the complaint, which it intends to promptly redact and file with the Court in support of this opposition.[12]  (*Id*. at ¶ 23).

For all these reasons, even if Intervenors were not collaterally estopped from challenging these statutory factors with respect to the Amended Application and the Court's rulings on these factors with respect to the original Application were not the law of the case, the Court's rejection anew of Intervenors' arguments was correct and not subject to serious dispute on appeal.

### D.     The Intervenors Cannot Show That the Court Abused Its Discretion in Applying the *Intel* Factors.

The Intervenors contend that the Court misapplied two of the *Intel* factors and generally abused its overall discretion in granting the Amended Application.  They are wrong in all regards.

As an initial matter, the Intervenors err in contending that the first *Intel* factor is anything other than what the U.S. Supreme Court said it is—namely, whether the § 1782 discovery target is a participant in the foreign proceeding.  Contrary to the Intervenors' suggestion, (*see* Stay MoL at 13), *In re Ex Parte Application of Saul Klein*, No. 23 Misc. 211 (PAE), 2023 WL 8827847 (S.D.N.Y. Dec. 21, 2023), *appeal filed* (2d Cir. Jan. 26, 2024) ("***Saul Klein***"), does not somehow undermine the Supreme Court's *Intel* factor formulation (nor could it possibly have any effect if it purported to do so).  Instead, the passage that the Intervenors quote from *Saul Klein* is focused on the atypical circumstances where there is reason to question the identity of the real party in interest for purposes of § 1782 discovery.  *Id.* at *10.

The Intervenors revert to an aspect of their "fruit of the poisonous SAR" argument in challenging the Court's finding with respect to the third *Intel* factor and the Court's overall exercise of its ultimate discretion.  In sum, the Intervenors contend that granting the Amended Application

---

[12]     The complaint contains information received and/or derived from documents produced by JPM in this action which were marked confidential and therefore must be redacted in accordance with the terms of the protective order previously entered by this Court.  (ECF No. 73).  (*Id*. at ¶ 20).

will both conflict with Brazil's aversion to unlawfully obtained evidence and fatally offend the policies underlying SAR requirements. (*See* Stay MoL at 11-14.) Once again, the Intervenors' attacks on the Amended Application and the Court's Order granting it are misguided and baseless.

As an initial matter, their references to illegally-obtained evidence are sorely misplaced here, as SPS obtained the information set forth in the Barclays SAR through the completely lawful and legitimate channel of international media coverage. Nowhere do the Intervenors cite to any persuasive Brazilian or U.S. authority establishing that Brazilian courts would categorically reject ultimate evidence of potential criminal wrongdoing merely because the party submitting the evidence became aware of its existence because of public media coverage of information unlawfully leaked by someone wholly unrelated to the party submitting the evidence. Without any such clear authority, there is simply no reason for this Court (or any U.S. Court) to conclude that such severely-attenuated circumstances would render all of the information sought in discovery here categorically inadmissible for all potential purposes in Brazil. Without such clear authority, the Intervenors' challenge to the Court's resolution of the third *Intel* factor is effectively toothless. And as the Court aptly noted in its Memorandum Opinion, if a Brazilian court applying Brazilian law ultimately objected to the use of the Barclays NY banking records, it could simply decline to consider them. (Mem. Op. at 10 & n. 40 (citing *Euromepa S.A. v. R. Esmerian Inc.*, 51 F. 3d 1095, 1101 (2d Cir. 1995).)

The Intervenors also once again improperly try to conflate the banking transactional records sought by SPS with the publicly-disclosed Barclays NY SAR. Courts frequently distinguish between the two in discovery disputes, as one court explained:

> While challenges as to the production of a SAR have been largely unsuccessful, the courts confronting these discovery issues have found the records (of the financial institutions) kept in the ordinary course of business (and which may have given rise to creation of a SAR) are not exempt from discovery. While disclosure of the SAR

> is prohibited, the court's ability to manage and direct discovery is not impinged
> upon as it still can direct production of those documents which might support the
> filing of a SAR.

*Wuliger v. Off. of Comptroller of Currency*, 394 F. Supp. 2d 1009, 1018–19 (N.D. Ohio 2005)

(citations omitted).  Moreover, as this Court has readily recognized, (Mem. Op.at 9-10), SPS is not

asking Barclays NY to produce any SARs here, nor is it seeking to somehow force the production

of any other records or information shielded from disclosure by law.  As much as the Intervenors

apparently want to distract from their own alleged wrongdoing by fixating on the third-party leak

of the Barclays NY SAR, that leak has nothing material to do with SPS's efforts to obtain

underlying banking transactional records.  Nor do the Intervenors offer any tangible support for

their weak insinuation that granting the Amended Application here will somehow fatally weaken

future SAR compliance by Barclays NY and/or other banks (notwithstanding the clear strictures

of federal law).

Intervenors' *Intel* factor arguments cannot be salvaged by their insistent reliance on *Kiobel*

*by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) ("***Kiobel***").  In

*Kiobel*, the Second Circuit determined that a district court abused its discretion in granting a § 1782

application due to a confluence of unusual circumstances that render the case completely

distinguishable from this one.  The following facts were material to the *Kiobel* court's ruling:

(1) the discovery target was a corporate party's U.S. counsel; (2) the real party in interest (*e.g.*, the

law firm's client) was itself a direct adversary of the § 1782 applicant in foreign litigation; (3) the

applicant's foreign counsel expressly admitted of record that he was trying to get the requested

information through the U.S. law firm because it was procedurally very difficult to obtain in the

foreign forum; and (4) the documents sought were subject to a protective order in another U.S.

matter.  *Id.* at 245-47.  As a result of these unusual facts, the court's ruling was exceedingly narrow,

simply reaffirming that a "district court should not exercise its discretion to grant a § 1782 petition

for documents held by a U.S. law firm in its role as counsel for a foreign client [and subject to a U.S. protective order] if the documents are undiscoverable from the client abroad[.]" *Id.* at 246. *Kiobel* clearly does not dictate a denial of the Amended Application here, as none of the facts that drove that decision are present here.

For all these reasons, the Intervenors have failed to meet their "heavy burden" to show a likelihood of success on the merits of their appeal.

## II. INTERVENORS HAVE NOT SHOWN THEY WILL SUFFER IRREPARABLE HARM

"[A] stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right, ***even if irreparable injury might otherwise result to the appellant***." *In re Noguer*, No. 18-MC-498 (JMF), 2019 WL 1034190, at *1 (S.D.N.Y. Mar. 5, 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Here, a stay would be an even greater intrusion because none of the Intervenors' claims of irreparable injury withstand scrutiny.

*First*, the Intervenors claim they will suffer irreparable harm absent a stay because their appeal "will effectively become moot once discovery is produced." (*See* Stay MoL at 14.) But the threat of mootness on this basis is present in every appeal from an order granting § 1782 discovery and, without more, is not irreparable harm. *See, e.g.*, *In re Hansainvest Hanseatische Inv.-GmbH*, No. 18-MC-310 (ALC), 2019 WL 5939860, at *3 (S.D.N.Y. Oct. 4, 2019) ("While Respondents concern is noted, it is one common to every Section 1782 case."). Moreover, even if the threat of mootness did raise the specter of irreparable harm, "the seriousness of that threat is inextricably related to the [Intervenors'] likelihood of success on the merits." *In re Application of Chevron Corp.*, 709 F. Supp. 2d at 309 n.46 (citation omitted). The Intervenors therefore "have shown little threat of irreparable injury in light of […] the improbability of success on the merits" for reasons discussed above. *Id.*

*Second*, the Intervenors' alleged inability to "claw back" documents SPS has provided to CVM in the highly unlikely event that Second Circuit reverses the Memorandum Opinion, is likewise insufficient to establish irreparable harm. Rejecting "that precise argument" in another § 1782 action, Judge Carter explained that "Courts […] have been adamant in stating that the mere fact that information, once disclosed, cannot be 'undisclosed' is ... not enough by itself to warrant a finding of irreparable harm." *In re Hansainvest Hanseatische Inv.-GmbH*, 2019 WL 5939860, at \*3 (citing cases) (internal quotations omitted). Moreover, as with their mootness argument, the Intervenors' inability to show a strong likelihood of success on the merits is also fatal to their claim of irreparable harm on this basis. For example, another court explained that it:

> is not persuaded by Respondents' additional argument that they would be irreparably harmed because they would be unable to "claw back" information sought in the subpoenas once it's been produced. For one thing, Respondents go into their appeal armed with a weak chance of success on their argument that the Hainan court proceeding is not encompassed within the scope of § 1782 (the Court found it clearly is). Thus, there would be only a remote chance of the Ninth Circuit overturning this Court's order as it relates to the Hainan court proceeding, and thus a low chance Respondents would even need to claw back most of the information they produce.

*HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-MC-80277-TSH, 2020 WL 1274877 (N.D. Cal. Mar. 17, 2020). Similarly here, the Intervenors have a weak chance of success on their argument that SPS's contemplated CVM proceeding is not encompassed within the scope of § 1782 for the reasons discussed above. Moreover, even if the Second Circuit reverses the Memorandum Order and the CVM nevertheless refuses to disregard and return/destroy documents already submitted by SPS, the Intervenors will still be able to raise a full defense before the CVM. If the Intervenors believe any evidence should not be part of the Foreign Proceeding because it was improperly obtained, recent events in the pending CVM proceeding concerning the JBS-Bertin merger have demonstrated that (a) the Intervenors will have ample opportunity to make that argument to the CVM, and (b) if the CVM agrees with them, it will either not admit the evidence

or give it no weight in its ultimate resolution of the matter. *See, e.g.* Suppl. Gonzalez Decl. ¶¶ 21-29 (describing how the Intervenors objected to admission of evidence submitted by SPS in a different CVM proceeding concerning the JBS-Bertin merger, and how the CVM considered and resolved that objection).

## III. SPS *WILL* SUFFER HARM IF A STAY PENDING APPEAL IS GRANTED

The Intervenors label their argument on its face "[SPS] will suffer *no injury* if it receives documents from Barclays NY following appeal" but then they immediately walk their position back to "[a] stay pending appeal will *not substantially injure* [SPS]." (Stay MoL at 16 (emphasis added)).[13] Substantial or not, however, the prospect of *any* harm precludes the Intervenors from claiming this factor weighs in favor of their requested stay. Facing a similar contention, Judge Carter has explained:

> While Respondents claim that Applicants will suffer no harm, Applicants do, in fact, bear some risk should the stay be continued wholesale. While the timeline of the German litigation has been less than clear, there is no indication that this stay would be "brief," as Respondents allege. […] While Applicants have not presented the strongest case of substantial injury, it is clear that there is some risk to Applicants' ability to utilize the documents requested. As such, while this factor may not weigh in favor of denying the stay, it also does not weigh in favor of granting the stay.

*In re Hansainvest Hanseatische Inv.-GmbH*, 2019 WL 5939860, at *4.

In fact, this factor weighs against a stay here because SPS does face the prospect of substantial harm. According to the most recently available U.S. Court of Appeals Summary of Federal Court Management Statistics, the median time from filing a notice of appeal to disposition in the Second Circuit is 13.6 months. *See* Federal Court Management Statistics for the twelve-

---

[13] If this Court or the Second Circuit were to issue a stay on Intervenors' premise that "any delay associated with a stay will have no impact on [SPS's] ability to submit § 1782 discovery in a future CVM proceeding" (*Id.*), then the Intervenors should be estopped thereafter from raising any statute of limitation, laches or similar defenses before the CVM.

month period ending December 31, 2023 (last retrieved April 14, 2024), *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-2. That means if the Intervenors' stay is granted, SPS is unlikely to obtain any discovery in this action until June 2025 at the earliest, and possibly even much later if the Intervenors were to seek further appeal before the Second Circuit (sitting *en banc*) and/or the U.S. Supreme Court. By contrast, based on discussions between counsel for SPS and Barclays NY, in the absence of a stay Barclays NY is prepared to make a production as soon as a protective order is in place, potentially within just a matter of weeks after this filing. (Third Suppl. Hollembeak Decl. ¶ 17).

Moreover, despite the Intervenors' implication to the contrary, SPS's previously-stated belief that the contemplated CVM Proceeding is not in near-term danger of being time-barred was not an admission that the passage of time is having no negative impact on its ability to successfully engage CVM on the serious matters to be addressed. It goes without saying that litigants who receive evidence earlier in the life cycle of a matter are generally able to conduct themselves far more efficiently and effectively than those who are forced to wait. Delay also creates potential harm by impairing the quantity and/or quality of information received due to fading memories, personnel turnover, and/or information loss and the like. Delay imposes an even greater cost on those litigants who, like SPS, face an adversary that is extremely well-funded, willing to push back at every turn, and does not care whether it achieves its objectives by winning on the merits or simply running out the clock. In short, any further delay in discovery poses a threat of substantial harm to SPS that weighs against granting a stay pending appeal.

## IV.    PUBLIC INTEREST FAVORS DENIAL OF STAY

Finally, the Intervenors have failed to satisfy their "difficult burden" to show that the equities or public interest favor their requested stay. To argue otherwise, the Intervenors make three points, none of which withstand scrutiny.

*First*, the Intervenors wrongly contend the public interest is best served here by a stay of discovery that preserves the *status quo*. (*See* Stay MoL at 16-17.) To the contrary, this Court and others have consistently rejected this contention. Citing a prior decision of this Court, Judge Carter has explained:

> Respondents claim that "the public interest is served by preserving the status quo pending resolution of [the] appeal." Resp. Mot. p. 21. However, in general, discovery serves the "public's interest in justice, fair play, and full disclosure ... as well as truth in foreign actions." *In re Application of Hornbeam Corp.*, 2017 WL 2241522, at *2 (quoting *In re Application of Chevron Corp.*, 709 F.Supp. 2d 283, 310 (S.D.N.Y. 2010)). As such, the fourth and final factor weighs against granting a stay.

*In re Hansainvest Hanseatische Inv.-GmbH*, 2019 WL 5939860, at *1; *see also In re Platinum Partners Value Arbitrage Fund L.P.*, 2018 WL 3207119, at *8 (S.D.N.Y. June 29, 2018) ("The sound administration of justice in federal courts counsels against interference with a court's discovery orders.") (denying stay). Moreover, the public interest weighs against a stay of discovery orders with even greater force in the context of § 1782 actions. *In re Martinez Sampedro*, No. CV 3:18MC47(JBA), 2020 WL 1158701, at *3 (D. Conn. Jan. 16, 2020) (given that "the goal of § 1782 is to 'provid[e] efficient means of assistance to participants in international litigation in our federal courts,' the granting of a stay which delays the disclosure of documents would seem to work against that goal") (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

*Second*, the Intervenors cannot satisfy their difficult burden by rehashing arguments on the discretionary *Intel* factors that this Court soundly rejected. To demonstrate:

| *Compare* Intervenors' Stay MoL (at 17) | *with* Memorandum Opinion |
|---|---|
| "Section 1782 serves little purpose here because Intervenors are present in Brazil, and the CVM has the ability to order Intervenors to produce many if not all of the documents it seeks here…if they even exist." | Rejecting same argument because "Barclays NY is not a participant in the foreign [CVM] proceeding." (p. 8) |

| *Compare* Intervenors' Stay MoL (at 17) | *with* Memorandum Opinion |
|---|---|
| "Section 1782 discovery in this case is more likely to interfere with the CVM's own investigatory prerogatives, rather than assist it." | "Intervenors have not, however, presented the requisite 'authoritative proof' that CVM 'would reject evidence obtained with the aid of section 1782.' … And, as Intervenors acknowledged previously, CVM is 'receptive to U.S. federal court judicial assistance.'" (p. 9) |
| "Neither of § 1782's twin aims would be served by permitting discovery pending appeal." | "[T]he twin aims of Section 1782 would be served by granting the amended application. An appropriately tailored subpoena directed at Barclays NY is an efficient means of assisting SPS in its contemplated CVM proceeding, and providing such assistance encourages foreign countries to provide similar assistance to U.S. courts." (p. 11) |
| "Finally, the public interest favors a stay here as Petitioner filed this Section 1782 request in response to criminally leaked information, for which the perpetrator was imprisoned in the United States…." | Holding (1) that U.S. SAR policy would not be undermined by granting the Amended Application because there is no reason to believe that Barclays NY will produce any documents in response to the SPS subpoena that it is prohibited by law from producing, and (2) Brazil's alleged (but unproven) "fruit of the poisonous tree" doctrine would not be offended because Brazilian tribunals could readily choose to exclude any evidence they deemed problematic. (pp. 9-10) |

Notably, the Second Circuit will be highly deferential to this Court's discretionary rulings, *see, e.g.*, *In re Al-Attabi*, No. 21-MC-207-(VSB) (RWL), 2022 WL 1640806, at *1, n.2 (S.D.N.Y. May 24, 2022) (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998), and *In re Application of Chevron Corp.*, 709 F. Supp. 2d at 304), and will uphold the Memorandum Opinion unless the Intervenors can show that it was "outside the range of permissible decisions." *Gushlak v. Gushlak*, 486 Fed. App'x 215, 218 (2d Cir. 2012). The Intervenors cannot make that showing.

*Third*, and finally, the Intervenors' attempt to play the victim should be rejected. (*See* Stay MoL at 17.) It has been just three-and-a-half years since the Intervenors plead guilty to very

serious corruption charges in this country, following on the heels of similar admissions in Brazil, admitting that for the better part of the last two decades they orchestrated an international bribery scheme that included the payment of nearly $150 million in illicit payments to Brazilian government officials. (*See* ECF No. 34, Memo. Op. at 2-3.) Those plea agreements, which allowed the Intervenors to avoid significant jail time (among other benefits) required them to be fully transparent about their illicit activities with US and Brazilian authorities. For example, the Intervenors' EDNY Plea Agreement provides, in relevant part:

12. […] The Defendant [Intervenor J&F] agrees that its cooperation pursuant to this Paragraph shall include, but not be limited to, the following:

a. The Defendant shall truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Defendant has any knowledge or about whit the Fraud Section [of the U.S. D.O.J.] and the [U.S. Attorneys'] Office [for the E.D.N.Y.] may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Fraud Section and the Office, upon request, any document, record or other tangible evidence about which the Fraud Section and the Office may inquire of the Defendant.

b. Upon request of the Fraud Section and the Office, the Defendant shall designate knowledgeable employees, agents, or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 12(a) above on behalf of the Defendant. **It is understood that the Defendant must at all times provide complete, truthful, and accurate information**.

c. The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. **Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of Defendant, may have material information regarding the matters under investigation**.

d. With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the **Defendant consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including** United States authorities and

**those of a foreign government** as well as MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, deem appropriate.

13. In addition to the obligations of Paragraph 12, during the Term [of three years following October 13, 2020], **should the Defendant learn of any evidence or any allegations of conduct that may constitute a violation of the FCPA anti-bribery provisions had the conduct occurred within the jurisdiction of the United States, the Defendant shall promptly report such evidence or allegation to the Fraud Section and the Office**. […].

Plea Agreement, Cr. No. 20-CR-365 (MKB) (E.D.N.Y. dated October 13, 2020), attached as Exhibit B to SPS's § 1782 Petition [ECF. No. 6] (emphasis added).

Like the documents already obtained from JPM, the documents and information SPS seeks from Barclays NY will very likely show that the Intervenors failed to comply with their sworn obligations under the Plea Agreement.[14] And yet, notwithstanding the substantial crimes they plead guilty to committing (and those that have yet come light), Intervenors Joesley and Wesley Batista just a few weeks ago were appointed to the board of directors of Intervenor JBS – Brazil's largest public company in which Petitioner is a minority shareholder. *See* Bloomberg, *Lula Reunites With Billionaire JBS Brothers As Brazil's China Ties Deepen*, originally published Apr. 12, 2024, available at https://finance.yahoo.com/news/lula-reunites-billionaire-jbs-brothers-163639952.html (last visited April 18, 2024) ("The billionare Barista brothers' stunning comeback is thrusting them into Brazil's highest circles of power less than three weeks after thir appointment to the board of JBS SA."). Truly, their wealth and influence over the powers that be in Brazil are difficult to overstate (*see id.*), and the fact that some of SPS's efforts to hold them to account in Brazil have not been successful is frankly not surprising. Under the circumstances, for the

---

[14] *Cf.* Bento Declaration [ECF No. 23], Exhibit 5, ¶ 15 (acknowledging Intervenors were charged by CVM on September 4, 2020, commencing still-pending CVM enforcement proceeding related to the 2009 JBS-Bertin merger, on credible allegations that "*transaction details were not disclosed to the public so that the Batista Brothers may have increased their shares in JBS to the detriment of the Company's minority shareholders*.") (emphasis added).

Intervenors to play the victim and label those efforts and the instant proceeding as SPS's "campaign to harass" them is tone deaf, to put it mildly.

The Intervenors have had their proverbial "day in court." Barclays NY, for its part, has never appeared in this matter or formally opposed the production SPS is seeking. Thus, Intervenors' efforts to date have delayed SPS from obtaining documents from Barclays NY by at least a year. Granting their request for a stay pending appeal will likely add another year or more to that delay and thereby undermine the "twin aims" of § 1782 of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995); *see* also *In re Khrapunov*, 2018 WL 3609045, at *3 (N.D. Cal. July 27, 2018). For all these reasons the public interest strongly weighs against a stay pending appeal here.

## CONCLUSION

For the foregoing reasons, SPS respectfully requests that the Court enter an order denying the Stay Motion in its entirety.

Dated: April 18, 2024          Respectfully submitted,
       Omaha, Nebraska

                               **BAIRD HOLM LLP**

                               /s/ _____

                               Jeremy C. Hollembeak
                               1700 Farnam Street, Suite 1500
                               Omaha, NE 68102-2068
                               Phone: 402.636.8317
                               Email: jhollembeak@bairdholm.com
                               *Attorneys for Petitioner SPS I Fundo De*
                               *Investimento De Ações – Investimento No Exterior*

6334940.2

25